Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER D'ARCY, Individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| v. | JURY TRIAL DEMANDED |
| SEQUENTIAL BRANDS GROUP, INC., YEHUDA SHMIDMAN, KAREN MURRAY, GARY KLEIN, and ANDREW COOPER, | |
| Defendants. | |

Plaintiff Peter D'Arcy ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, the complaint filed

– 1 –

in *S.E.C. v. Sequential Brands Group, Inc.*, Case No. 1:20-CV-10471 (S.D.N.Y.) (the "SEC Complaint"), a review of the Defendants' public documents, announcements made by Defendants, public filings, wire and press releases published by and regarding Sequential Brands Group, Inc. ("Sequential Brands Group" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Sequential Brands Group securities between November 3, 2016 and December 11, 2020, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and the subsequent damages took place in this judicial district. The Company also maintains an office in Los Angeles County.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.     Defendant Sequential Brands Group, together with its subsidiaries, owns various consumer brands. The company licenses its brands for a range of product categories, including apparel, footwear, fashion accessories, and home goods. The Company promotes, markets, and licenses its brands through various distribution channels, including to retailers, wholesalers, and distributors.

8.     Sequential Brands Group is incorporated in Delaware and its head office is located at 601 West 26th Street, 9th Floor, New York, NY 10001. Sequential Brands Group's securities trade on the NASDAQ Exchange ("NASDAQ") under the ticker symbol "SQBG".

9.     Defendant Yehuda Shmidman ("Shmidman") served as the Company's Chief Executive Officer ("CEO") and as a Director from November 2012 to March 2017.

10.     Defendant Karen Murray ("Murray") served as the Company's CEO and as a Director from April 2017 to October 2019.

11.     Defendant Gary Klein ("Klein") served as the Company's Chief Financial Officer ("CFO") from December 2012 to August 2017.

– 3 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

12.    Defendant Andrew Cooper ("Cooper") served as the Company's President from August 2016 to June 2019. Defendant Cooper also served as the Interim CFO from September 2017 to February 2018.

13.    Defendants Shmidman, Murray, Klein, and Cooper are sometimes referred to herein as the "Individual Defendants."

14.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

15.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

– 4 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

### SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

18.     On November 3, 2016, Sequential Brands Group issued a press release entitled "Sequential Brands Group Announces 2016 Third Quarter Financial Results" (the "November 2016 Press Release"). The November 2016 Press Release listed the Company's goodwill at $305,126,000 and its total current assets at $1,427,303,000 for the period ended September 30, 2016 (unaudited).

19.     The November 2016 Press Release also provided the following operating expenses, net loss, and income from operations (in thousands):

|  | (Unaudited) Three Months Ended September 30, | | (Unaudited) Nine Months Ended September 30, | |
| --- | --- | --- | --- | --- |
|  | 2016 | 2015 | 2016 | 2015 |
| Net revenue | $ 41,952 | $ 22,981 | $ 110,114 | $ 56,833 |
| Operating expenses | 20,180 | 9,960 | 63,077 | 30,561 |
| Income from operations | 21,772 | 13,021 | 47,037 | 26,272 |
| Other income | 150 | - | 243 | 700 |
| Interest expense, net | 14,742 | 6,210 | 36,031 | 17,162 |
| Income before income taxes | 7,180 | 6,811 | 11,249 | 9,810 |
| Provison for income taxes | 3,858 | 2,460 | 5,276 | 3,348 |
| Net income | 3,322 | 4,351 | 5,973 | 6,462 |
| Net income attributable to noncontrolling interest | (2,022) | (1,623) | (5,814) | (3,617) |
| Net income attributable to Sequential Brands  Group, Inc. and Subsidiaries | $ 1,300 | $ 2,728 | $ 159 | $ 2,845 |

20.     On March 2, 2017, Sequential Brands Group issued a press release entitled "Sequential Brands Group Announces Fourth Quarter and Full Year 2016

– 5 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Financial Results" (the "March 2017 Press Release") which listed the Company's goodwill at 307,744,000 and its total current assets at $1,434,863,000 for the year 2016 (unaudited).

21.    The March 2017 Press Release also provided the following operating expenses, net loss, and income from operations (in thousands):

| | Three Months Ended December 31, (Unaudited) | | Year Ended December 31, (Unaudited) | |
|---|---|---|---|---|
| | 2016 | 2015 | 2016 | 2015 |
| Net revenue | $ 45,414 | $ 31,429 | $ 155,528 | $ 88,262 |
| Operating expenses | 22,315 | 28,050 | 85,392 | 58,611 |
| Income from operations | 23,099 | 3,379 | 70,136 | 29,651 |
| | | | | |
| Other (expense) income | (4,053) | 433 | (3,810) | 1,133 |
| Interest expense, net | 14,507 | 12,563 | 50,538 | 29,725 |
| Income (loss) before income taxes | 4,539 | (8,751) | 15,788 | 1,059 |
| | | | | |
| Provision for (benefit from) income taxes | 3,881 | (4,705) | 9,157 | (1,357) |
| Net income (loss) | 658 | (4,046) | 6,631 | 2,416 |
| | | | | |
| Net income attributable to noncontrolling interest | (1,638) | (1,670) | (7,452) | (5,287) |
| Net loss attributable to Sequential Brands Group, Inc. and Subsidiaries | $ (980) | $ (5,716) | $ (821) | $ (2,871) |

22.    On March 14, 2017, Sequential Brands Group filed its annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by Defendant Shmidman. Attached to the 2016 10-K were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Shmidman and Klein attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

23.    The 2016 10-K stated the following, in pertinent part, regarding the Company's goodwill:

*Goodwill and Intangible Assets.* **Goodwill is tested for impairment at the reporting unit level (operating segment or one level below an operating segment) on an annual basis and between annual tests if**

– 6 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

*an event occurs or circumstances change that would more likely than not reduce the fair value of a reporting unit below its carrying value.* In evaluating goodwill for impairment, we first assess qualitative factors to determine whether it is more likely than not that the fair value of a reporting unit is less than its carrying amount. Qualitative factors considered include, for example, macroeconomic and industry conditions, overall financial performance, and other relevant entity-specific events. If we bypass the qualitative assessment, or conclude that it is more likely than not that the fair value of a reporting unit is less than its carrying value, we then perform a two-step goodwill impairment test to identify potential goodwill impairment and measure the amount of goodwill impairment to be recognized, if any.

In the first step, we will compare the estimated fair value of the reporting unit with its carrying value. We have determined that we have a single reporting unit and consider our market capitalization (calculated as total common shares outstanding multiplied by the common equity price per share, as adjusted for a control premium factor) to represent its estimated fair value. If the estimated fair value of the reporting unit exceeds its carrying amount, no further analysis is needed. If, however, the estimated fair value of the reporting unit is less than its carrying amount, the Company will proceed to the second step and calculate the implied fair value of the reporting unit goodwill to determine whether any impairment is required. The implied fair value of the reporting unit goodwill is calculated by allocating the estimated fair value of the reporting unit to all of the unit's assets and liabilities as if the unit had been acquired in a business combination. *If the carrying value of the reporting unit's goodwill exceeds the implied fair value of the goodwill, an impairment loss is recognized in the amount of that excess.*

\*        \*        \*

*Goodwill and trademarks are tested for impairment on an annual basis or sooner, if an event occurs or circumstances change that indicate that the carrying amount of the goodwill or trademarks may not be recoverable*.

– 7 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1

\*      \*      \*

2

*During the year ended December 31, 2016, the Company changed its annual impairment testing date from December 31 to October 1.* The Company believes this new date is preferable because it allows for more timely completion of the annual impairment test prior to the end of its annual financial reporting period. *This change in accounting principle does not delay, accelerate or avoid an impairment charge.* The Company has determined that it will be impracticable to objectively determine projected cash flow and related valuation estimates that would have been used as of each October 1 of prior reporting periods without the use of hindsight. *As such, the Company applied the change in annual impairment testing date prospectively beginning October 1, 2016. The Company performed its annual impairment evaluation of its goodwill as of October 1, 2016. As of December 31, 2016 and 2015, no impairment of goodwill has been identified.*

(Emphasis added.)

24.    The 2016 10-K misrepresented that the following "risk" had not materialized:

*We have a significant amount of goodwill and other intangible assets, including our trademarks, recorded on our balance sheet. As a result of changes in market conditions and declines in the estimated fair value of these assets, we may, in the future, be required to write-down a portion of this goodwill and other intangible assets and such write-down would adversely affect our results of operations.*

*As of December 31, 2016, goodwill represented $307.7 million, or 21.4% of our total consolidated assets, and intangible assets represented $1.0 billion, or 71.8% of our total consolidated assets.* Under current accounting principles generally accepted in the United States ("GAAP"), goodwill and indefinite-lived intangible assets are not amortized, but instead are subject to impairment evaluation based on related estimated fair values, with such testing to be done at least annually. Our trademarks are reviewed for impairment whenever events or changes in circumstances indicate that the carrying amount

– 8 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

may not be recoverable. ***Any write-down of goodwill or intangible assets resulting from future periodic evaluations would, as applicable, either decrease our net income or increase our net loss and those decreases or increases could be material.***

(Emphasis added.)

25.     The 2016 10-K stated the following, in pertinent part, regarding the Company's operating expenses, net loss, and income from operations:

| | Years Ended December 31, | | Change (Dollars) | Change (Percentage) |
|---|---|---|---|---|
| | 2016 | 2015 | | |
| | (in thousands, except percentages) | | | |
| Net revenue | $  155,528 | $   88,262 | $   67,266 | 76.2% |
| Operating expenses | 85,392 | 58,611 | 26,781 | 45.7% |
| Income from operations | 70,136 | 29,651 | 40,485 | 136.5% |
| Other (expense) income | (3,810) | 1,133 | (4,943) | -436.3% |
| Interest expense, net | 50,538 | 29,725 | 20,813 | 70.0% |
| Income before income taxes | 15,788 | 1,059 | 14,729 | 1390.8% |
| Provision for (benefit from) income taxes | 9,157 | (1,357) | 10,514 | -774.8% |
| Consolidated net income | 6,631 | 2,416 | 4,215 | -174.5% |
| Net income attributable to noncontrolling interest | (7,452) | (5,287) | (2,165) | 40.9% |
| Net loss attributable to Sequential Brands Group, Inc. and Subsidiaries | $    (821) | $   (2,871) | $    2,050 | 71.4% |

26.     The 2016 10-K stated the following, in pertinent part, regarding the Company's internal controls:

Our management, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our internal control over financial reporting as of the end of the period covered by this report. In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in *Internal Control-Integrated Framework*, as issued in 2013. ***Based on our management's assessment, our management concluded that our internal control over financial reporting was effective as of December 31, 2016, based on those criteria.***

(Emphasis added.)

– 9 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

27.     On May 4, 2017, Sequential Brands Group issued a press release entitled "Sequential Brands Group Announces First Quarter 2017 Financial Results" (the "May 2017 Press Release"). The May 2017 Press Release listed the Company's goodwill at $307,744,000 and its total current assets at $1,426,639,000 for the period ended March 31, 2017 (unaudited).

28.     The May 2017 Press Release also provided the following operating expenses, net loss, and income from operations (in thousands):

| | (Unaudited) | |
| | Three Months Ended March 31, | |
| | 2017 | 2016 |
| --- | --- | --- |
| Net revenue | $ 39,400 | $ 34,008 |
| Operating expenses | 23,408 | 21,977 |
| Income from operations | 15,992 | 12,031 |
| Other income | 34 | 93 |
| Interest expense, net | 14,486 | 10,690 |
| Income before income taxes | 1,540 | 1,434 |
| Provision for income taxes | 585 | 399 |
| Net income | 955 | 1,035 |

29.     On May 10, 2017, Sequential Brands Group filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the period year ended March 31, 2017 (the "1Q17 10-Q"). The 1Q17 10-Q was signed by Defendant Klein. Attached to the 1Q17 10-Q were certifications pursuant to SOX signed by Defendants Murray and Klein attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

30.     The 1Q17 10-Q stated the following, in pertinent part, regarding the Company's goodwill:

> **Goodwill is tested for impairment at the reporting unit level (operating segment or one level below an operating segment) on an annual basis and between annual tests if an event occurs or**

– 10 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

*circumstances change that would more likely than not reduce the fair value of a reporting unit below its carrying value.* In evaluating goodwill for impairment, the Company first assesses qualitative factors to determine whether it is more likely than not that the fair value of a reporting unit is less than its carrying amount. Qualitative factors considered include, for example, macroeconomic and industry conditions, overall financial performance, and other relevant entity-specific events. If the Company bypasses the qualitative assessment, or concludes that it is more likely than not that the fair value of a reporting unit is less than its carrying value, it then performs a goodwill impairment test to identify potential goodwill impairment and measure the amount of goodwill impairment to be recognized, if any.

(Emphasis added.)

31.    The 1Q17 10-Q stated the following, in pertinent part, regarding the Company's assets, goodwill, operating expenses, net loss, and income from operations (in thousands):

|  | March 31, 2017 | December 31, 2016 |
|---|---|---|
|  | (Unaudited) | (Note 2) |
| **Assets** | | |
| Current Assets: | | |
| Cash | $ 21,457 | $ 19,133 |
| Restricted cash | 1,521 | 1,521 |
| Accounts receivable, net | 44,879 | 53,195 |
| Available-for-sale securities | 6,178 | 7,673 |
| Prepaid expenses and other current assets | 4,822 | 4,366 |
| Total current assets | 78,857 | 85,888 |
| Property and equipment, net | 6,815 | 7,674 |
| Intangible assets, net | 1,030,065 | 1,030,212 |
| Goodwill | 307,744 | 307,744 |
| Other assets | 3,158 | 3,345 |
| Total assets | $ 1,426,639 | $ 1,434,863 |

– 11 –
CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

| | Three Months Ended March 31, | |
| --- | --- | --- |
| | 2017 | 2016 |
| Net revenue | $ 39,400 | $ 34,008 |
| Operating expenses | 23,408 | 21,977 |
| Income from operations | 15,992 | 12,031 |
| Other income | 34 | 93 |
| Interest expense, net | 14,486 | 10,690 |
| Income before income taxes | 1,540 | 1,434 |
| Provision for income taxes | 585 | 399 |
| Net income | 955 | 1,035 |
| Net income attributable to noncontrolling interest | (2,135) | (2,111) |
| Net loss attributable to Sequential Brands Group, Inc. and Subsidiaries | $ (1,180) | $ (1,076) |

32.     On August 9, 2017, Sequential Brands Group filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the period year ended June 30, 2017 (the "2Q17 10-Q"). The 2Q17 10-Q was signed by Defendant Klein. Attached to the 2Q17 10-Q were certifications pursuant to SOX signed by Defendants Murray and Klein attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

33.     The 2Q17 10-Q stated the following, in pertinent part, regarding the Company's goodwill:

– 12 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

***Goodwill is tested for impairment at the reporting unit level (operating segment or one level below an operating segment) on an annual basis and between annual tests if an event occurs or circumstances change that would more likely than not reduce the fair value of a reporting unit below its carrying value.*** In evaluating goodwill for impairment, the Company first assesses qualitative factors to determine whether it is more likely than not that the fair value of a reporting unit is less than its carrying amount. Qualitative factors considered include, for example, macroeconomic and industry conditions, overall financial performance, and other relevant entity-specific events. If the Company bypasses the qualitative assessment, or concludes that it is more likely than not that the fair value of a reporting unit is less than its carrying value, it then performs a quantitative goodwill impairment test to identify potential goodwill impairment and measure the amount of goodwill impairment to be recognized, if any.

***The quantitative goodwill impairment test compares the estimated fair value of a reporting unit with its carrying value.*** The Company has determined that it has a single reporting unit and considers its market capitalization (calculated as total common shares outstanding multiplied by the common equity price per share, as adjusted for a control premium factor) to represent its estimated fair value. If the estimated fair value of the reporting unit exceeds its carrying amount, no further analysis is needed. ***If, however, the estimated fair value of the reporting unit is less than its carrying amount, the Company will recognize an impairment charge for the amount by which the carrying value exceeds the reporting unit's fair value.***

(Emphasis added.)

34.    The 2Q17 10-Q stated the following, in pertinent part, regarding the Company's assets, goodwill, operating expenses, net loss, and income from operations (in thousands):

– 13 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

| | | June 30, 2017 | December 31, 2016 |
|---|---|---|---|
| | | (Unaudited) | (Note 2) |
| **Assets** | | | |
| Current Assets: | | | |
| Cash | $ | 19,734 $ | 19,133 |
| Restricted cash | | 1,521 | 1,521 |
| Accounts receivable, net | | 49,231 | 53,195 |
| Available-for-sale securities | | - | 7,673 |
| Prepaid expenses and other current assets | | 4,223 | 4,366 |
| Total current assets | | 74,709 | 85,888 |
| Property and equipment, net | | 6,579 | 7,674 |
| Intangible assets, net | | 1,033,503 | 1,030,212 |
| Goodwill | | 304,123 | 307,744 |
| Other assets | | 3,328 | 3,345 |
| Total assets | $ | 1,422,242 $ | 1,434,863 |

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2017 | 2016 | 2017 | 2016 |
| Net revenue | $ 42,144 | $ 34,154 | $ 81,544 | $ 68,162 |
| Operating expenses | 17,900 | 20,920 | 41,308 | 42,897 |
| Income from operations | 24,244 | 13,234 | 40,236 | 25,265 |
| Other expense (income) | 1,801 | - | 1,767 | (93) |
| Interest expense, net | 14,877 | 10,599 | 29,363 | 21,289 |
| Income before income taxes | 7,566 | 2,635 | 9,106 | 4,069 |
| Provision for income taxes | 3,115 | 1,019 | 3,700 | 1,418 |
| Net income | 4,451 | 1,616 | 5,406 | 2,651 |
| Net income attributable to noncontrolling interests | (1,921) | (1,681) | (4,056) | (3,792) |
| Net income (loss) attributable to Sequential Brands Group, Inc. and Subsidiaries | $ 2,530 | $ (65) | $ 1,350 | $ (1,141) |

35.     The statements contained in ¶¶18-34 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) in late

– 14 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

2016, the Company knew or should have known that its goodwill was likely impaired; (2) the Company avoided and delayed the material write down to goodwill in late 2016 through 2017; (3) the Company understated its operating expenses and net loss and also materially overstated its income from operations, goodwill, and assets from late 2016 through 2017; (4) the Company's internal controls were deficient; (5) the Company has failed to restate, correct, or disclose relevant improprieties, deceptive conduct, misstatements, omissions, and control violations; (6) as a result of the foregoing, the Company was at greater risk of regulatory scrutiny and enforcement; and (7) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

36.   On November 9, 2017, Sequential Brands Group issued a press release entitled "Sequential Brands Group Announces Third Quarter 2017 Financial Results" (the "November 2017 Press Release"). The November 2017 Press Release announced that "[i]ncluded in the net loss for the third quarter 2017 were non-cash impairment charges of $36.5 million for indefinite-lived intangible assets related to the trademarks of five of the Company's non-core brands[,]" marking the first time the Company noted its need for impairment charges related to intangibles and its assets generally.

37.   The November 2017 Press Release also listed the Company's goodwill at $304,123,000 and its total current assets at $1,381,329,000 for the period ended September 30, 2017 (unaudited).

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

38.   On this news, Sequential Brands Group's stock price fell $36.80 per share, or 38%, to close at $58.00 per share on November 9, 2017, damaging investors.

39.   On November 13, 2017, Sequential Brands Group filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the period year ended September 30, 2017 (the "3Q17 10-Q"). The 3Q17 10-Q was signed by Defendant Cooper. Attached to the 3Q17 10-Q were certifications pursuant to SOX signed by Defendants Murray and Cooper attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

40.   The 3Q17 10-Q stated the following, in pertinent part, regarding the Company's goodwill:

> **Goodwill is tested for impairment at the reporting unit level (operating segment or one level below an operating segment) on an annual basis and between annual tests if an event occurs or circumstances change that would more likely than not reduce the fair value of a reporting unit below its carrying value.** In evaluating goodwill for impairment, the Company first assesses qualitative factors to determine whether it is more likely than not that the fair value of a reporting unit is less than its carrying amount. Qualitative factors considered include, for example, macroeconomic and industry conditions, overall financial performance, and other relevant entity-specific events. If the Company bypasses the qualitative assessment, or concludes that it is more likely than not that the fair value of a reporting unit is less than its carrying value, it then performs a quantitative goodwill impairment test to identify potential goodwill impairment and measure the amount of goodwill impairment to be recognized, if any.
>
> **During the quarter ended September 30, 2017, as a result of its qualitative assessment of the likelihood of goodwill impairment, the Company identified potential impairment indicators and determined**

– 16 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

*that a quantitative assessment was necessary.* Fair value for the quantitative assessment was determined under an income approach using estimates of discounted future cash flows (the "DCF Method"). The DCF Method relies on assumptions such as the Company's projected future earnings and appropriate discount rates. The Company corroborated the results of the DCF Method by reconciling to within a reasonable range of its market capitalization (calculated as total common shares outstanding multiplied by the common equity price per share, as adjusted for a control premium factor). Reconciling items identified included the benefit of the Company's fully reserved tax assets for which the market capitalization may not be giving full value. *Based on the results of the quantitative assessment, the Company determined goodwill was not impaired for the period ended September 30, 2017.*

(Emphasis added.)

41.    The 3Q17 10-Q stated the following, in pertinent part, regarding the Company's assets, goodwill, operating expenses, net loss, and income from operations (in thousands):

| | | September 30, 2017 | December 31, 2016 |
|---|---|---|---|
| | | (Unaudited) | (Note 2) |
| **Assets** | | | |
| Current Assets: | | | |
| Cash | $ | 12,515 | $ | 19,133 |
| Restricted cash | | 1,527 | 1,521 |
| Accounts receivable, net | | 50,632 | 53,195 |
| Available-for-sale securities | | - | 7,673 |
| Prepaid expenses and other current assets | | 6,367 | 4,366 |
| Total current assets | | 71,041 | 85,888 |
| | | | |
| Property and equipment, net | | 6,205 | 7,674 |
| Intangible assets, net | | 995,348 | 1,030,212 |
| Goodwill | | 304,123 | 307,744 |
| Other assets | | 4,612 | 3,345 |
| Total assets | $ | 1,381,329 | $ | 1,434,863 |

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

|  | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
|  | 2017 | 2016 | 2017 | 2016 |
| Net revenue | $ 39,025 | $ 41,952 | $ 120,569 | $ 110,114 |
| Operating expenses | 16,071 | 20,180 | 57,379 | 63,077 |
| Impairment charges | 36,505 | - | 36,505 | - |
| (Loss) income from operations | (13,551) | 21,772 | 26,685 | 47,037 |
| Other (income) expense | (214) | (150) | 1,553 | (243) |
| Interest expense, net | 15,237 | 14,742 | 44,600 | 36,031 |
| (Loss) income before income taxes | (28,574) | 7,180 | (19,468) | 11,249 |
| (Benefit from) provision for income taxes | (3,842) | 3,858 | (142) | 5,276 |
| Net (loss) income | (24,732) | 3,322 | (19,326) | 5,973 |
| Net loss (income) attributable to noncontrolling interests | 552 | (2,022) | (3,504) | (5,814) |
| Net (loss) income attributable to Sequential Brands Group, Inc. and Subsidiaries | $ (24,180) | $ 1,300 | $ (22,830) | $ 159 |

42.    The statements contained in ¶¶36-42 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) in late 2016, the Company knew or should have known that its goodwill was likely impaired; (2) the Company avoided and delayed the material write down to goodwill in late 2016 through 2017; (3) as a result of the foregoing, the Company understated its operating expenses and net loss and also materially overstated its income from operations, goodwill, and total assets from late 2016 through 2017; (4) the Company's internal controls were deficient; (5) the Company has failed to restate, correct, or disclose relevant improprieties, deceptive conduct, misstatements, omissions, and control violations; (6) as a result of the foregoing, the Company was at greater risk of regulatory scrutiny and enforcement; and (7) as a result,

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

43.     On February 28, 2018, before trading hours, Sequential Brands Group issued a press released entitled "Sequential Brands Group Announces Fourth Quarter and Full Year 2017 Financial Results" which belatedly announced the goodwill adjustment. The press release stated the following, in pertinent part, regarding the goodwill adjustment:

> ***The goodwill adjustment represents a one-time, non-cash charge of $304.1 million that was driven by the Company's stock price during the fourth quarter*** – as well as the increase in the Company's book value related to tax reform – which resulted in an assessed fair value of equity that was significantly below its net book value.

(Emphasis added.)

44.     On this news, Sequential Brands Group's stock price fell $6.80 per share, or 8%, to close at $76.00 per share on February 28, 2018, further damaging investors.

45.     Then on December 11, 2020, the SEC the SEC Complaint alleging that the Company failed "to take into consideration clear, objective evidence of likely goodwill impairment, which avoided and delayed a material write down to goodwill in the fourth quarter of 2016 and the first three quarters of 2017 (the 'Relevant Period')."

46.     According to the SEC Complaint, "***Sequential conducted two internal calculations as of mid-December 2016 and year-end 2016 that showed that its goodwill was likely impaired.*** These internal calculations used the same methodology that Sequential had disclosed in its SEC filings and had used in

– 19 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

connection with its annual goodwill impairment testing just weeks before. Sequential ignored this clear, objective, quantitative evidence of likely impairment." (Emphasis added.)

47.     Further, according to the SEC Complaint, "By avoiding an impairment to its goodwill in 2016, Sequential's financial statements and SEC filings materially understated its operating expenses and net loss and materially overstated its income from operations, goodwill, and total assets. This created a false impression of its financial health and ability to execute on its business plan. Sequential carried forward its material errors, resulting in material misstatements and omissions in Sequential's financial statements and SEC filings for the first three quarters of 2017. Sequential belatedly impaired all of its goodwill—$304.1 million—in the fourth quarter of 2017."

48.     Indeed, the SEC Complaint alleges that "[i]f Sequential had reasonably conducted goodwill impairment testing in the fourth quarter of 2016, then that test would have shown that Sequential's goodwill was impaired by over $100 million, a material amount[,]" and that "*Sequential had in its possession facts and information tending to show that its statement that goodwill was not impaired was materially false and misleading. Those facts were not known to investors or the independent auditor.*" (Emphasis added.)

49.     Connectedly, the SEC Complaint alleges that "During the Relevant Period, *Sequential's internal accounting controls relating to the assessment of goodwill impairment were deficient in design and application*, and failed to provide reasonable assurance that its financial statements were materially accurate and that it accounted for goodwill in compliance with governing accounting standards." (Emphasis added.)

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

50.     On this news, Sequential Brands Group's stock price fell $2.03 per share, or 11%, to close at $16.20 per share on December 11, 2020, further damaging investors.

51.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Sequential Brands Group during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

54.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants' acts as alleged violated the federal securities laws;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

(f)    whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

58.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's securities are traded in efficient markets;

(d)    the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)    the Company traded on NASDAQ, and was covered by multiple analysts;

(f)    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to

– 23 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)   Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

59.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

60.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

61.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.   This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material

– 24 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

64.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

65.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

66.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the

– 25 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

67.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

68.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

69.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

70.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

71.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

73.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

74.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

75.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

– 28 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1

2 | Dated: March 16, 2021

3

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
<u>/s/Laurence M. Rosen</u>
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

– 29 –

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL
SECURITIES LAWS