**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER D'ARCY, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>         v.<br><br>YEHUDA SHMIDMAN, KAREN MURRAY, GARY KLEIN, ANDREW COOPER, CHAD WAGENHEIM, PETER LOPS, DAVID CONN, DANIEL HANBRIDGE, LORRAINE DISANTO, WILLIAM SWEEDLER, AARON HOLLANDER, AL GOSSETT, STEWART LEONARD, JR., COHNREZNICK LLP, STEPHEN WYSS, STEPHEN JACKSON, and ROBERT HILBERT,<br><br>         Defendants. | Case No. 1:21-cv-07296-JPO<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS COHNREZNICK LLP, STEPHEN WYSS, STEPHEN JACKSON, AND ROBERT HILBERT'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
(212) 806-5400

*Counsel for Defendants CohnReznick LLP, Stephen Wyss, Stephen Jackson, and Robert Hilbert*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...................................................................................................................3

 I.  Sequential's Goodwill Impairment in the Fourth Quarter of 2017 .........................3

 II.  The SEC's Investigation of Sequential's Goodwill Impairment .............................4

 III. CohnReznick's Role as Sequential's Independent Auditor .....................................6

   A. CohnReznick's 2016 Audit of Sequential's Financial Statements ..............7

   B. CohnReznick's Review of Sequential's Unaudited Financial
    Statements ....................................................................................................8

   C. CohnReznick's 2017-2019 Audits of Sequential's Financial
    Statements ....................................................................................................8

 IV. Plaintiff's Complaint Against CohnReznick, Wyss, Jackson, and Hilbert ..............9

ARGUMENT .......................................................................................................................10

 I.  Plaintiff's claims based on alleged misstatements made before
   November 14, 2017 are barred by the five-year statute of repose. .........................11

 II.  Plaintiff cannot allege claims against CohnReznick for any statements
   made after February 9, 2018, the last date it purchased Sequential securities .......11

 III. Plaintiff fails to allege several elements of its Section 10(b) and
   Rule 10b-5(b) claims against CohnReznick. .........................................................12

   A. Plaintiff fails to allege that CohnReznick made *any* statements –
    misleading or otherwise – in Sequential's Form 10-Q filings. ..................13

   B. Plaintiff fails to allege any material misstatements or omissions
    relating to the risk of an SEC investigation. .............................................13

   C. Plaintiff fails to allege that CohnReznick acted with scienter. ..................14

    1. Plaintiff's near-exclusive reliance on the Consent Orders is
     insufficient to allege scienter. ...........................................................15

    2. Plaintiff fails to allege that CohnReznick acted with scienter
     when it issued its audit opinion on the 2016 Audited Financial
     Statements. .........................................................................................16

    3. Plaintiff fails to allege that CohnReznick acted with scienter
     when it issued its 2017, 2018, and 2019 audit opinions. ...................20

    4. Plaintiff fails to allege that CohnReznick acted with scienter
     when it issued its 2016, 2017, 2018, and 2019 internal control
     opinions. .............................................................................................21

 IV. Plaintiff fails to allege control liability claims against Wyss, Jackson,
   or Hilbert. ............................................................................................................22

        A.      Plaintiff fails to allege that Wyss, Jackson, or Hilbert controlled any primary violations. ...................................................................................22

        B.      Plaintiff fails to allege that Wyss, Jackson, or Hilbert were culpable participants in any primary violations.......................................................24

V.     Arguments raised by the other defendants are equally applicable to CohnReznick....................................................................................................25

CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)............................................................................................17

*Abu Dhabi Inv. Auth. v. Mylan N.V.*,
Case No. 20-CV-1342 (JPO), 2021 WL 516310 (S.D.N.Y. Feb. 10, 2021)...........................11

*In re Advanced Battery Tech., Inc.*,
781 F.3d 638 (2d Cir. 2015)........................................................................................15, 19

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)............................................................................22, 23

*Amorosa v. Gen. Elect. Co.*,
No. 21-CV-3137 (JMF), 2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022)................................16

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*,
690 F.3d 98 (2d Cir. 2012)..............................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................10

*Athale v. SinoTech Energy Ltd.*,
No. 11 Civ. 0531(AJN), 2014 WL 687218 (S.D.N.Y. Feb. 21, 2014) ...................................19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F. 3d 87 (2d Cir. 2007)..............................................................................................12

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)..............................................................................................22

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)..............................................................................................10

*City of Omaha, Neb. Civilian E'ees Ret. Sys. v. CBS Corp.*,679 F.3d 64 (2d Cir.
2012) ...................................................................................................................17, 18

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020)..............................................................................................10

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
No. 19-CV-6180 (LAP), 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021)................................18

*In re DNTW Chartered Accountants Sec. Litig.*,
  172 F. Supp. 3d 675 (S.D.N.Y. 2016)......................................................................16

*DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*,
  413 F. Supp. 3d 187 (S.D.N.Y. 2019)......................................................................24

*Fait v. Regions Financial Corp.*,
  655 F.3d 105 (2d Cir. 2011)............................................................................17, 18

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
  No. 15 Civ. 6369(JFK), 2018 WL 1449206 (S.D.N.Y. 2018)..................................25

*Lattanzio v. Deloitte & Touche LLP*,
  476 F.3d 147 (2d Cir. 2007)...................................................................................13

*In re Lions Gate Enter. Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) .........................................................................13

*Lipow v. Net1 UEPS Tech., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015)......................................................................14

*In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................................21

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  851 F. Supp. 2d 512 (S.D.N.Y. 2012)......................................................................21

*In re Mylan N.V. Sec. Litig.*,
  379 F. Supp. 3d 198 (S.D.N.Y. 2019) (Oetken, J.).................................................24

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)...................................................................................21

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*,
  575 U.S. 175 (2015)...............................................................................................25

*In re Petrobras Sec. Litig.*,
  No. 14-cv-9662 (JSR), 2016 WL 1533553 (S.D.N.Y. Feb. 18, 2016) ....................18

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ...............................................................................12, 14

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012)......................................................................14

*S. Cherry St. LLC v. Hennesseee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009)......................................................................................19

*SEC v. First Jersey Sec., Inc.*,
 101 F.3d 1450 (2d Cir. 1996)........................................................................................22

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
 33 F. Supp. 3d 401 (S.D.N.Y. 2014)..............................................................................25

*SRM Global Master Fund Ltd. P'Ship v. Bear Stearns Co.*,
 829 F.3d 173 (2d Cir. 2016)..........................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007).......................................................................................................15

*Youngers v. Virtus Inv. Partners Inc.*,
 195 F. Supp. 3d 499 (S.D.N.Y. 2016)............................................................................23

**Statutes**

15 U.S.C. § 78u–4(b)(2) ..................................................................................................14

28 U.S.C. § 1658(b)(1) ...................................................................................................25

28 U.S.C. § 1658(b)(2) .................................................................................................2, 11

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................1

Fed. R. Civ. P. 9(b) ...........................................................................................................1

Defendants CohnReznick LLP, Stephen Wyss, Stephen Jackson, and Robert Hilbert submit this memorandum of law in support of their motion to dismiss the Amended Class Action Complaint (ECF No. 44) ("Am. Compl.") under Fed. R. Civ. P. 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Lead Plaintiff CJD Finance Co., LLC ("Plaintiff") attempts to hold an independent auditor and three of its partners liable under the federal securities law for alleged misstatements or omissions stemming from an audit client's alleged short-term delay in impairing its goodwill. Such claims have no basis in law or fact and fall well-short of the pleading requirements necessary to survive a motion to dismiss. Goodwill is the excess of the purchase price over the fair value of certain assets acquired. Sequential Brands Group, Inc., CohnReznick's audit client, impaired all of its goodwill as of December 31, 2017, reducing the value from $300 million to zero. This action concerns whether Sequential should have instead impaired its goodwill as of year-end 2016 or sometime earlier in 2017. Sequential's failure to do so, Plaintiff argues, made its audited and unaudited financial statements materially misleading. And, even *after* Sequential impaired its goodwill, Plaintiff claims that its subsequent audited financial statements continued to be misleading because Sequential did not disclose that its delay in impairing goodwill subjected it to the risk of an SEC investigation. Plaintiff sued CohnReznick, alleging, without any factual or legal support, that CohnReznick's audit opinions contained misleading statements in violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) for, initially, failing to disclose that goodwill was likely impaired, and then, after the impairment was taken, for failing to disclose the risk of an SEC investigation. Plaintiff also sued Wyss, Jackson, and Hilbert, three CohnReznick partners, as alleged controlling persons of CohnReznick under Section 20(a). All of Plaintiff's claims suffer from multiple deficiencies and should be dismissed.

*First*, some of the allegedly false or misleading statements Plaintiff identifies were made more than five years *before* Plaintiff filed its complaint against CohnReznick, Wyss, Jackson, and Hilbert.  Claims based on those statements must be dismissed as a matter of law because they are barred by the five-year statue of repose in 28 U.S.C. § 1658(b)(2).

*Second*, the rest of the allegedly false or misleading statements Plaintiff identifies were made *after* Plaintiff allegedly purchased Sequential securities.  Claims based on those statements should be dismissed as a matter of law because, under binding authority, Plaintiff cannot maintain claims that relate solely to statements made *after* it purchased the relevant securities.

*Third*, though not clear, Plaintiff appears to be basing its claims against CohnReznick on statements made in Sequential's unaudited financial statements filed with the SEC on Form 10-Qs in 2017, and in particular the third quarter of 2017.  Those claims fail as a matter of law because CohnReznick did not audit Sequential's quarterly financial statements and CohnReznick did not therefore make any statement in those filings.

*Fourth*, the Court should reject Plaintiff's attempt to hold CohnReznick liable for failing to disclose a *potential* risk of an SEC investigation.  Courts in this District routinely hold that a company has no duty to disclose an SEC investigation even after the SEC begins taking investigative steps, such as by issuing a Wells Notice.  By Plaintiff's own admission, the SEC did not take any investigative steps against Sequential until 2019.  (Am. Compl. ¶ 128.)  Putting aside whether it even had a duty to do so, Sequential promptly disclosed the investigation in its audited financial statements for that fiscal year.  There was nothing misleading about Sequential's prior audited financial statements because the SEC had even not begun an investigation of Sequential at that time and there was thus nothing for Sequential to disclose.

*Fifth*, for a host of reasons, Plaintiff fails to allege that CohnReznick acted with scienter. Plaintiff inappropriately relies on findings from two SEC cease-and-desist orders (together, the "Consent Orders") entered against CohnReznick, Wyss, Jackson, and Hilbert, which it cannot use to satisfy applicable pleading requirements for several reasons. Initially, anything of a factual nature in the Consent Orders was *not* admitted by CohnReznick, Wyss, Jackson, or Hilbert. Further, there was no finding of scienter on which Plaintiff can rely here. In addition, any purported reliance by Plaintiff on the Consent Orders is contrary to governing law because quotations from the Consent Orders are treated as "information and belief" allegations, which, on their own, cannot support Plaintiff's securities fraud claim.

*Finally*, Plaintiff's Section 20(a) claims against Wyss, Jackson, and Hilbert should be dismissed as a matter of law for all of the above reasons because Plaintiff fails to allege that CohnReznick engaged in a primary violation, a necessary predicate for control-person liability. In addition, Plaintiff's allegations of control are also insufficient as a matter of law because they are based entirely on Wyss, Jackson, and Hilbert's status as CohnReznick's partners. Plaintiff also fails to allege, as it must, that Wyss, Jackson, and Hilbert were culpable participants in CohnReznick's alleged violations.

## BACKGROUND

### I.    Sequential's Goodwill Impairment in the Fourth Quarter of 2017

Sequential "owns and manages a diversified portfolio of consumer brands in the active and lifestyle categories." (Am. Compl. ¶ 57.) Between 2014 and 2016, Sequential acquired multiple brands and recorded $307 million of goodwill associated with those acquisitions. (*Id.* ¶ 58.) According to Plaintiff, the "$307 million in goodwill 'represents the excess of the purchase price over the fair value of net assets acquired under the acquisition method of accounting.'" (*Id.* ¶ 59) Sequential recorded the goodwill as an intangible asset on its financial

3

statements and was "required to review the value of goodwill . . . at least once a year and record any impairments." (*Id.*)

Sequential wrote off all of its goodwill on its audited financial statements for the year ending December 31, 2017 (at the time, $304.1 million), which were publicly filed with the SEC on March 16, 2018 as part of Sequential's Form 10-K filing (the "2017 10-K"). (*Id.* ¶ 126; Declaration of James L. Bernard ("Bernard Decl.") filed herewith, Ex. 5 at 74.) In a note to its financial statements, Sequential disclosed that there was an "identification of impairment indicators during the quarter ending December 31, 2017," and, as a result, Sequential "performed impairment testing of its goodwill . . . at December 31, 2017." (Bernard Decl., Ex. 5 at 55.) "As a result of its testing, [Sequential] recorded a non-cash goodwill impairment charge of $304.1 million during the quarter ended December 31, 2017." (*Id.*) Sequential thus wrote its goodwill down to zero and reported no goodwill as of December 31, 2017. (*Id.* at 74.)

## II.     The SEC's Investigation of Sequential's Goodwill Impairment

In the third quarter of 2019, the SEC began an investigation of Sequential relating to its goodwill impairment. (Am. Compl. ¶ 128.) Plaintiff alleges that, as part of the investigation in 2019, "the SEC began interviewing witnesses in connection with' [Sequential's] 'controls and practices surrounding impairment analyses of goodwill and intangible assets in 2016 and 2017.'" (*Id.*) Sequential disclosed the investigation in its audited financial statements for the year ending December 31, 2019. (Bernard Decl., Ex. 7 at 137.) The SEC did not send Sequential a "Wells Notice" related to the investigation until July 2020, after Sequential disclosed the investigation. (Am. Compl. ¶ 131.) And, later in 2020, the SEC filed a four-count complaint against Sequential alleging claims relating to the goodwill impairment, including a claim for "Negligence-Based Fraud" under Section 17(a)(3) of the Securities Act. (Bernard Decl., Ex. 8 ¶¶ 139-47.)

4

In its own complaint, Plaintiff borrows heavily from the SEC's complaint, as well as the SEC's Order Instituting Cease-and-Deceased Proceedings against Gary S. Klein, Sequential's former CFO. (*See* Am. Compl. ¶¶ 96-101, 104-111.) Relying on "internal calculations" conducted by Sequential in early December 2016, Plaintiff (like the SEC) alleges that Sequential had "objective evidence . . . demonstrating that it was more likely than not that [Sequential's] goodwill was impaired," but that Sequential "reject[ed]" this evidence and instead "undertook a qualitative assessment to answer [that] exact question." (Am. Compl. ¶¶ 96-105; *see also id.* ¶¶ 108-09 (discussing internal emails sent in February 2017).) Plaintiff claims that Sequential should have "[written] down the likely impaired goodwill" on its audited financial statements for the year ending December 31, 2016, and its failure to do so rendered those financial statements materially misstated. (*Id.* ¶¶ 112-13.)

In addition to filing its audited financial statements on the 2016 10-K, Sequential also filed with the SEC, on Form 10-Q filings, unaudited financial statements for the first, second, and third quarters of 2017 (respectively, the "1Q17 10-Q," "2Q17 10-Q," and "3Q17 10Q"). (Bernard Decl., Exs. 2-4.) According to Plaintiff, during those quarters, "other triggering events occur[red]," which are alleged to have further indicated that Sequential's goodwill was impaired, including a decrease in Sequential's stock price and Sequential's issuance of "downward revised earnings guidance for a second time in a period of three months." (Am. Compl. ¶¶ 117-24.) Sequential, however, did not take a goodwill impairment in any of the unaudited financial statements filed on their Form 10-Qs, which were filed on May 10, 2017, August 9, 2017, and November 13, 2017, respectively. (*Id.* ¶¶ 148, 154, 160.) Plaintiff alleges that, because Sequential did not take a goodwill impairment during those quarters, its "goodwill balance was overstated" on the associated quarterly financial statements. (Am. Compl. ¶ 126.) Plaintiff also

5

alleges that, "[b]y not writing down at least $100 million of Sequential's goodwill in FY16, or at least notifying the investing public of that likely impaired goodwill, Defendants exposed unwitting investors to the risk of the SEC investigating and bringing suit against it." (*Id.* ¶ 127.)

### III.   CohnReznick's Role as Sequential's Independent Auditor

CohnReznick served as Sequential's independent auditor from 2013 through 2020. (*Id.* ¶ 49.) In that capacity, CohnReznick audited Sequential's year-end financial statements and issued audit opinions with respect to such year-end financial statements, which were included in Sequential's annual Form 10-K filings. (*Id.*; *see also* Bernard Decl., Ex. 1 at 64, Ex. 5 at 42, Ex. 6 at 79, Ex. 7 at 82.) CohnReznick also conducted reviews (not audits) of Sequential's quarterly financial statements. (Am. Compl. ¶¶ 237, 263, 286.[1]) Wyss "served as the CohnReznick engagement partner on the 2016 and 2017 audits of Sequential and the interim reviews between the audits." (Am. Compl. ¶ 53.) Jackson "served as the CohnReznick engagement quality control review ('EQCR') partner for the 3Q17 review and 2017 annual audit of Sequential." (*Id.* ¶ 54.) Hilbert "served as CohnReznick's Managing Partner of Assurance and National Director of Accounting during the 3Q17 review and 2017 annual audit of Sequential." (*Id.* ¶ 55.)

On June 8, 2022, the SEC entered the Consent Orders, one against CohnReznick and one against Wyss, Jackson, and Hilbert. (*See* Bernard Decl., Exs. 9-10.) CohnReznick, Wyss, Jackson, and Hilbert did *not* admit or deny any findings in the Consent Orders. (Bernard Decl., Ex. 9 at 2, Ex. 10 at 2.) The Consent Orders are *not* based on any alleged violations of Section 10(b), Rule 10b-5, or on any other scienter-based statute, rule, or regulation. (*Id.*, Ex. 9 ¶¶ 40-93, Ex. 10 ¶¶ 41-75.) Rather, the underlying violations were all negligence-based, and the

---

[1] In an audit, an auditor issues an audit opinion which is included along with the financial statements, but in a review an auditor does not issue an opinion and makes no statement concerning the financial statements. (*See* Bernard Decl., Exs. 2-4.)

Consent Orders specifically reflect that the claims did _not_ require findings of scienter.  (*See id.*, Ex. 9 ¶ 40 (Rule 102(e) and Section 4C require "negligent conduct"); *id.* ¶ 89 (claim under Sections 13(a), 13(b)(2)(A), and related regulations based on "a non-scienter based violation" and only require "a showing of negligence"); *see also id.*, Ex. 10 ¶¶ 41, 74 (same non-scienter, negligence based violations).)  No finding of scienter was made.

### A.      CohnReznick's 2016 Audit of Sequential's Financial Statements

Plaintiff's allegations relating to CohnReznick's audit of Sequential's financial statements as of December 31, 2016 (the "2016 Audited Financial Statements") are in paragraphs 254 to 261 of the complaint and are copied verbatim from the Consent Orders.  (Am. Compl. ¶¶ 254-61.)  According to those allegations, Wyss audited Sequential's 2016 goodwill assessment by "relying on the Goodwill Memorandum as a primary basis for his conclusion [that Sequential did not need to take a goodwill impairment, and he] failed to consider other relevant and objective evidence indicating impairment of goodwill."  (*Id.* ¶ 261.)  Quoting directly from the Consent Orders, Plaintiff alleges that "Wyss therefore *should have known* that, if Sequential were to perform a quantitative goodwill impairment test as of year-end using the Market Approach, that calculation would have indicated that goodwill was at least likely impaired."  (*Id.* ¶ 260 (emphasis added).)

On March 14, 2017, CohnReznick issued an audit opinion in which it concluded that Sequential's "consolidated financial statements [as of December 31, 2016 and 2015] present fairly, in all material respects, the financial position of Sequential Brand Groups, Inc. and Subsidiaries as of December 31, 2016 and 2015."  (*Id.* ¶ 303.)  CohnReznick's audit opinion was included in the 2016 10-K, which Sequential filed on March 14, 2017.  (Bernard Decl., Ex. 1 at 64; *see also* Am. Compl. ¶ 139.)  The 2016 Audited Financial Statements reported goodwill of $307 million as of December 31, 2016.  (Bernard Decl., Ex. 1 at 65.)

### B.    CohnReznick's Review of Sequential's Unaudited Financial Statements

Plaintiff's allegations relating to CohnReznick's review of Sequential's unaudited financial statements for the first, second, and third quarters of 2017 are copied almost verbatim from the Consent Orders.  (*See* Am. Comp. ¶¶ 262-90.)  For publicly filed companies, an auditor audits only the year-end financial statements reflected in a company's 10-K filing.  CohnReznick therefore did not audit Sequential's 10-Q filings and made no statements in those filings.  The overwhelming bulk of Plaintiff's allegations regarding these reviews focus on Sequential's 2017 third quarter financial statements.  (*Id.* ¶¶ 266-90.)  In particular, Plaintiff focuses on alleged "concerns" raised by "CohnReznick's internal valuation specialist" about whether Sequential had "sufficient evidentiary support for [its] assertions" relating to goodwill and CohnReznick's efforts to resolve these concerns.  (*Id.* ¶ 276; *see also id.* ¶¶ 277-90.)  According to Plaintiff, CohnReznick "convened multiple meetings among the disagreeing staff" and subsequently told Sequential that it could "file its quarterly report on Form 10-Q."  (*Id.* ¶¶ 285-86.)

On November 13, 2017, Sequential filed its unaudited financial statements with the SEC on the 3Q17 10-Q.  (*Id.* ¶ 160.)  The unaudited financial statements reported goodwill of $304 million as of September 30, 2017.  (Bernard Decl., Ex. 4 at 4.)  None of the statements in the 3Q17 10-Q were attributed to CohnReznick, and CohnReznick was not even mentioned or referenced in the filing.  (*See generally id.*)

### C.    CohnReznick's 2017-2019 Audits of Sequential's Financial Statements

Plaintiff makes almost no allegations relating to CohnReznick's audits of Sequential's financial statements as of December 31, 2017 (the "2017 Audited Financial Statements"), December 31, 2018 (the "2018 Audited Financial Statements"), and December 31, 2019 (the "2019 Audited Financial Statements").  And the sparse allegations they do make are conclusory and unsupported by any factual assertions.  (Am. Compl. ¶¶ 291-92.)  It bears repeating that, in

8

the 2017 Audited Financial Statements, Sequential wrote off, down to zero, all its goodwill.  (*Id.* ¶ 126; *see also* Bernard Decl., Ex. 5 at 74.)  According to Plaintiff, "[e]ven though Sequential reported a goodwill impairment in 4Q17," Sequential's "3Q17 financial statements materially overstated [its] assets and earnings" because "Sequential's goodwill was impaired by 3Q17." (Am. Compl. ¶ 291.)  It then alleges, without factual elaboration, that CohnReznick "remained aware" of these facts and that, "[a]s a direct result of this knowledge, CohnReznick knew or recklessly disregarded that Sequential's delay in writing off any goodwill until 4Q17 exposed [Sequential] to the risk of a material SEC investigation resulting in a suit against the Company." (*Id.*)  Plaintiff also alleges, again without factual elaboration, that "the CohnReznick Defendants also knew or should have known that, for Fiscal Years 2018 and 2019, Sequential's consolidated financial statements were not free of material misstatements under prior GAAP violations, as detailed *supra*."  (*Id.* ¶ 292.)  Sequential disclosed the SEC investigation in the 2019 Audited Financial Statements.  (Bernard Decl., Ex. 7 at 137.)

IV.    **Plaintiff's Complaint Against CohnReznick, Wyss, Jackson, and Hilbert**

Plaintiff filed its complaint against CohnReznick, Wyss, Jackson, and Hilbert, on November 14, 2022.  (*See* ECF No. 44.)  It alleges that CohnReznick's audit opinions for 2016 through 2019 contained false or misleading statements.  (Am. Compl. ¶¶ 302-18.)  The at-issue statements all relate to CohnReznick's conclusions that they conducted their audits in accordance with applicable auditing standards, that they had a reasonable basis for issuing their audit opinions, and that "Sequential's consolidated financial statements fairly represented the financial picture of the Company."  (Am. Compl. ¶¶ 304, 308, 312, 316.)  Plaintiff makes similar allegations about statements in CohnReznick's separate "internal control" opinions.  (*See id.* ¶¶ 306, 310, 314, 318.)  It asserts one "false statements" claim against CohnReznick under Section 10(b) of the Exchange Act and Rule 10b-5(b).  (*See id.* ¶¶ 363-71.)  And it asserts one

9

claim against Wyss, Jackson, and Hilbert for control liability under Section 20(a), alleging that Wyss, Jackson, and Hilbert controlled CohnReznick's violations.  (*See id.* ¶¶ 372-75.)

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations."  *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678.  In deciding this motion, the Court may consider documents quoted in the complaint, as well as Plaintiff's allegations.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

In addition, "[a] complaint alleging securities fraud must also satisfy the heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the 'PSLRA'), 15 U.S.C. § 78u–4(b)."  *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012).  Under Rule 9(b), "averments of fraud [must] be 'state[d] with particularity.'"  *Id.*  To satisfy this requirement, Plaintiff must, among other things, "explain why the statements were fraudulent."  *Id.*  The PSLRA also requires "that securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.* (internal quotation marks omitted).

I.      **Plaintiff's claims based on alleged misstatements made before November 14, 2017 are barred by the five-year statute of repose.**

Plaintiff's Section 10(b) and Rule 10b-5(b) claims against CohnReznick are subject to a five-year statute of repose.  28 U.S.C. § 1658(b)(2).  To assert timely claims, Plaintiff must "allege that [CohnReznick] made . . . misrepresentations within five years of the filing of [the] complaint."  *SRM Global Master Fund Ltd. P'Ship v. Bear Stearns Co.*, 829 F.3d 173, 177 (2d Cir. 2016).  The statute of repose may not be equitably tolled and is not subject to claims of a continuing violation.  *See Abu Dhabi Inv. Auth. v. Mylan N.V.*, Case No. 20-CV-1342 (JPO), 2021 WL 516310, at *2-3 (S.D.N.Y. Feb. 10, 2021) (Oetken, J.).  Plaintiff filed its complaint against CohnReznick on November 14, 2022.  (Bernard Decl., Ex. 12.)  Under the applicable statute of repose, claims based on statements made before November 14, 2017 are time-barred.

CohnReznick's audit opinion on the 2016 Audited Financial Statements was filed on March 14, 2017.  (Am. Compl. ¶¶ 139, 303.)  Sequential filed its 2017 10-Qs on May 10, 2017, August 9, 2017, and November 13, 2017.  (*Id.* ¶¶ 148, 154, 160.)  These filings were all made before November 14, 2017.  Because the complaint against CohnReznick was not filed until November 14, 2022, all claims based on those filings are barred by the five-year statute of repose.  *See SRM Global Master Fund Ltd. P'Ship*, 829 F.3d at 177.  And, because Plaintiff is unable to "state a claim [against CohnReznick] under Section 10(b)" based on pre-November 14, 2017 statements, their "Section 20(a) claim[s]" against Wyss, Jackson, and Hilbert based on those same statements "must also fail for want of a primary violation."  *Id.*

II.     **Plaintiff cannot allege claims against CohnReznick for any statements made after February 9, 2018, the last date it purchased Sequential securities.**

Plaintiff's claims against CohnReznick are based on allegations that it "purchased Sequential securities at artificially inflated prices during the Class Period."  (Am. Compl. ¶ 22; *see also id.* ¶ 302.)  Under well-settled Second Circuit authority, these claims "must be dismissed

11

if [Plaintiff does] not adequately allege the issuance of fraudulent misleading statements *prior to* [P]laintiff's purchase, given that [Plaintiff] cannot share in any recovery based solely on statements made after the date of purchase." *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 104 (2d Cir. 2021) (internal quotation marks omitted) (emphasis added). Plaintiff last purchased Sequential securities on February 9, 2018. (Bernard Decl., Ex. 11; Am. Compl. ¶ 22.) The only *pre*-February 9, 2018 statements at issue in the complaint are statements made in the 2016 10-K or the 10-Qs filed in 2017. Those statements were all made more than five years before the complaint against CohnReznick was filed (on November 14, 2022). (Am. Compl. ¶¶ 139, 148, 154, 160 (statements made on March 14, May 10, August 9, and November 13, 2017)); *see also supra* at 11. Plaintiff's only potentially timely claims are based on *post*-February 9, 2018 statements – specifically, statements made in the 2017 Audited Financial Statements (March 16, 2018), the 2018 Audited Financial Statements (March 14, 2019), or the 2019 Audited Financial Statements (March 31, 2020). (*See* Am. Compl. ¶¶ 307-18.) But those claims fail as a matter of law because the allegedly false or misleading statements were all made *after* Plaintiff last purchased Sequential securities on February 9, 2018.

III.   **Plaintiff fails to allege several elements of its Section 10(b) and Rule 10b-5(b) claims against CohnReznick.**

Putting aside that Plaintiff's claims against CohnReznick are either untimely or not actionable as a matter of law, Plaintiff's sole count against CohnReznick is for alleged material misstatements or omissions. (Am. Compl. ¶¶ 363-71.) To state a valid claim, Plaintiff must allege that CohnReznick "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F. 3d 87, 105 (2d Cir. 2007). Plaintiff's claims against

12

CohnReznick should be dismissed because they fail to allege that CohnReznick (1) made *any* statements in Sequential's Form 10-Q filings; (2) made any material misstatements or omissions about the potential risk of an SEC investigation; or (3) acted with scienter.

### A.    Plaintiff fails to allege that CohnReznick made *any* statements – misleading or otherwise – in Sequential's Form 10-Q filings.

CohnReznick did not make any statements whatsoever in Sequential's Form 10-Q filings. (*See generally* Bernard Decl., Exs. 2-4.)  Accordingly, Plaintiff's claims against CohnReznick should be dismissed to the extent they are based on statements in the Form 10-Q filings because those statements "did not purport to be audited by [CohnReznick], did not contain an audit opinion by [CohnReznick], and were not attributed to [CohnReznick] when they were disseminated."  *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 154 (2d Cir. 2007).

### B.    Plaintiff fails to allege any material misstatements or omissions relating to the risk of an SEC investigation.

Plaintiff recognizes that, once Sequential took the goodwill impairment on the 2017 Audited Financial Statements, there was no longer any potential overstatement of goodwill on those or any subsequent financial statements because goodwill was completely written down. (*See, e.g.*, Am. Compl. ¶ 126.)  Trying to salvage its claims, particularly in light of its statute of repose problems, Plaintiff alleges that, even after Sequential wrote down its goodwill, its financial statements continued to contain material misstatements or omissions because they failed to disclose the potential risk of an SEC investigation relating to the timing of Sequential's goodwill impairment.  (*See id.* ¶¶ 127-33.)  This alleged omission is not actionable.  A company does not even have a duty to disclose an *actual* SEC investigation – for example, when the SEC issues a Wells Notice, which is the document that informs a company of the nature of enforcement proceedings the SEC plans to initiate.  *See In re Lions Gate Enter. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 15 (S.D.N.Y. 2016) ("no independent duty to disclose a Wells Notice or an

13

SEC investigation"); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 276 (S.D.N.Y. 2012) (no "obvious duty to disclose [the] receipt of Wells Notice").  Because there is no duty to disclose an actual investigation, Sequential certainly had no duty to disclose a *potential* SEC investigation before the SEC even began taking any investigative steps. CohnReznick therefore had no duty to insist that Sequential make such disclosure on its audited financial statements. *See Plumber & Steamfitters Local 773 Pension Fund*, 11 F.4th at 98 ("companies do not have a duty to disclose uncharged, unadjudicated wrongdoing"); *Lipow v. Net1 UEPS Tech., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015) (no duty to disclose "material risk of regulatory scrutiny").

Here, Plaintiff alleges that there was a "risk of an SEC investigation," which, by its own admission, only "began to materialize at least by 3Q19."  (Am. Compl. ¶ 128.)  The mere fact that an investigation into Sequential was possible (even if it eventually materialized in a Well Notice) did not impose on CohnReznick a duty to require disclosure of the *potential* risk of an investigation before the third quarter of 2019.  Sequential thereafter promptly disclosed the SEC's investigation in the 2019 Audited Financial Statements (before it even received a Wells Notice).  It disclosed that it had "been cooperating with an investigation by the [SEC] into the Company's controls and practices surrounding impairment analyses of goodwill and intangible assets in 2016 and 2017" and that the investigation began "[i]n the late third quarter and the fourth quarter of 2019."  (Bernard Decl., Ex. 7 at 137.)  Under the authorities cited above, Plaintiff cannot maintain its claim against CohnReznick for failing to require disclosure of the risk of an SEC investigation before Sequential did so in the 2019 Audited Financial Statements.

**C.      Plaintiff fails to allege that CohnReznick acted with scienter.**

To validly allege Section 10(b) and Rule 10b-5(b) claims against CohnReznick, Plaintiff must "state with particularity facts giving rise to a strong inference that [CohnReznick] acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2).  This standard requires the Court to

14

"engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  An inference qualifies as "strong" only if it is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* Plaintiff cannot merely "set out facts from which, if true, a reasonable person *could* infer that [CohnReznick] acted with the required intent." *In re Advanced Battery Tech., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (internal quotation marks omitted) (emphasis in original).

In addition, because Plaintiff does not allege that CohnReznick had "any motive . . . to defraud," and instead "premises [its] claim entirely on a theory or recklessness, 'the strength of the circumstantial allegations must be correspondingly greater.'" *Id.*  As a result of the above legal requirements, Plaintiff's allegations must show that CohnReznick's conduct was "highly unreasonable, representing an extreme departure from the standards of ordinary care." *Id.*  For independent auditors, like CohnReznick, the allegations of scienter must "approximate an actual intent to aid in the fraud being perpetrated by the audited company,' as, for example when a defendant conducts an audit so deficient as to amount to no audit at all, or disregards signs of fraud so obvious that the defendant must have been aware of them." *Id.* (internal citation omitted).  It is not enough for Plaintiff merely to allege "GAAP violations or accounting irregularities, or even a lack of due diligence . . . absent 'evidence of corresponding fraudulent intent.'" *Id.* (internal citation omitted).  Plaintiff's allegations of scienter fall well short of satisfying these exacting standards.

### 1. Plaintiff's near-exclusive reliance on the Consent Orders is insufficient to allege scienter.

For its scienter allegations, Plaintiff relies almost exclusively on the Consent Orders. (*See* Am. Compl. ¶¶ 254-64, 266-90.)  Plaintiff's attempt to use the Consent Orders as a crutch is

insufficient to satisfy its pleading obligations. Such an approach has been squarely rejected in this Court. "[D]irect quotations from [an] SEC Order are to be considered in the nature of allegations upon information and belief which cannot ordinarily form the basis of a fraud claim." *Amorosa v. Gen. Elect. Co.*, No. 21-CV-3137 (JMF), 2022 WL 3577838, at *3 (S.D.N.Y. Aug. 19, 2022); *see also In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 690 (S.D.N.Y. 2016) (reliance on SEC order inappropriate where "[t]he factual findings in the cease and desist order mirror—rather than supplement—Plaintiffs' allegations in the Amended Complaint"). Plaintiff's reliance on the Consent Orders is particularly inappropriate here because the SEC's findings only support non-scienter, negligence based violations. (*See* Bernard Decl., Ex. 9 ¶¶ 40, 89, Ex. 10 ¶¶ 41, 74.) Because "negligent conduct does not meet the standard for conscious misbehavior or recklessness, the [Consent Orders] do[] not establish that [CohnReznick] acted with scienter." *In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d at 690-91.

### 2. Plaintiff fails to allege that CohnReznick acted with scienter when it issued its audit opinion on the 2016 Audited Financial Statements.

Plaintiff's untimely claims relating to the 2016 Audited Financial Statements should also be dismissed for the independent reason that Plaintiff fails to allege that CohnReznick acted with scienter when it issued its audit opinion. There are four problems with Plaintiff's misguided attempt to cobble together a cognizable theory of scienter. First, Plaintiff acknowledges that CohnReznick performed audit work and thus fails to satisfy the "no audit at all" standard. Second, Plaintiff does not allege any signs of fraud that were so obvious CohnReznick must have been aware of them. Third, Plaintiff does not allege, as it must, that CohnReznick had access to any specific information that contradicted the information it relied on in its audit opinion. And,

fourth, Plaintiff cannot rely on alleged violations of auditing standards standing alone to satisfy its obligation to allege scienter.

First, Plaintiff does not allege that CohnReznick's audit was so deficient as to amount to no audit at all.  Plaintiff, in fact, acknowledges that CohnReznick performed "audit work" relating to goodwill.  (Am. Compl. ¶ 258.)  This work, according to Plaintiff, included CohnReznick's receipt of a "Goodwill Memorandum," which "described the company's methodology and basis for its conclusion that there was no goodwill impairment as of its annual testing date, October 1, 2016."  (*Id.*)  Sequential's conclusion was also "supported by a valuation report, prepared by [a] third party valuation specialist."  (*Id.* ¶ 259.)  And, moreover, Sequential addressed whether any events had occurred during the fourth quarter of 2016 indicating that goodwill was likely impaired.  (*See id.* ¶ 258.)  Given these allegations, Plaintiff admits that there is no basis to argue "no audit at all" as a means to allege scienter.

Second, Plaintiff likewise does not assert here there were any signs of fraud so obvious that CohnReznick must have been aware of them.  Plaintiff alleges just one fact that it claims CohnReznick was aware of: the "significant decline" in Sequential's stock price during the fourth quarter of 2016.  (Am. Compl. ¶ 259.)  That single allegation is insufficient to allege scienter because merely being aware of Sequential's "general financial deterioration" does "not plausibly demonstrate that defendants knew, nor even had reason to know, . . . that it was more likely than not that interim impairment testing would reveal that the goodwill of any specific reporting unit was overvalued."  *See City of Omaha, Neb. Civilian E'ees Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012).[2]

---

[2] *City of Omaha* relies on *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011), a case that was partially abrogated in 2015.  *See Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020) (discussing abrogation).  The partial abrogation relates to whether a statement

Third, Plaintiff does not even allege that CohnReznick had access to any information that contradicted Sequential's analysis of its goodwill, which is independently fatal to its scienter allegations. Plaintiff, in fact, admits that the information CohnReznick received *supported* Sequential's conclusion that its goodwill was not impaired. (Am. Compl. ¶ 259.) Because there was support for Sequential's conclusion, Plaintiff does not allege, as it must, "that the failure to take an impairment charge earlier was . . . an error so grievous that it . . . rose to the level of fraud." *In re Diebold Nixdorf, Inc., Sec. Litig.*, No. 19-CV-6180 (LAP), 2021 WL 1226627, at *14 (S.D.N.Y. Mar. 30, 2021). Similarly, to the extent Plaintiff's theory of scienter is premised on CohnReznick's alleged failure to recognize that, *if different information had been considered*, such information might have indicated that goodwill was likely impaired, that theory does not support a strong inference of scienter either. "Without specific allegations regarding [an auditor's] *awareness of, and reaction to*, [alleged events indicating fraud] . . . such events do not give rise to a strong inference of [the auditor's] fraudulent intent." *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (JSR), 2016 WL 1533553, at *2 (S.D.N.Y. Feb. 18, 2016) (emphasis added).

Plaintiff's pleading failure is particularly pronounced in this case because Plaintiff concedes that, during the relevant period, Sequential "conducted a subjective, qualitative assessment to conclude that the market was unfairly undervaluing the Company and that its goodwill was not impaired." (Am. Compl. ¶ 104.) According to Plaintiff, this qualitative assessment was contradicted by separate "internal calculations" performed by Sequential. (*Id.* ¶ 102.) Even if there are "internal calculations" that contradict the qualitative assessment,

---

of opinion can be false or misleading, and it did not overrule *Fait* but instead expanded the circumstances in which opinion statements can support misstatement claims. *See id. City of Omaha*'s holding remains good law even after the abrogation of *Fait* and directly repudiates Plaintiff's claim that CohnReznick acted with scienter by disregarding signs of fraud.

18

Plaintiff does *not* allege that CohnReznick ever received those internal calculations. Thus, the calculations cannot support an inference of scienter against CohnReznick. *See Athale v. SinoTech Energy Ltd.*, No. 11 Civ. 0531(AJN), 2014 WL 687218, at *7 (S.D.N.Y. Feb. 21, 2014) (no scienter where plaintiffs failed to "sufficiently pled that [auditor] had access to the incriminating information"); *see also S. Cherry St. LLC v. Hennesseee Grp. LLC*, 573 F.3d 98, 112 (2d Cir. 2009) (no scienter where plaintiff failed to allege "any fact . . . that (a) *was known to [defendant]* and (b) created a strong inference that [defendant] had a state of mind approximating an actual intent either to relay false or misleading information . . . or to aid in the fraud being perpetrated") (emphasis added).

Fourth, Plaintiff's allegations that CohnReznick violated "PCAOB Standards" by "fail[ing] to carry out additional appropriate tests of goodwill as part of its audit[] of Sequential's 2016 financial statements" cannot save its deficient scienter allegations. (Am. Compl. ¶ 265.) Plaintiff cannot adequately allege scienter by relying on alleged "GAAP violations or accounting irregularities, or even a lack of due diligence . . . absent 'evidence of corresponding fraudulent intent.'" *In re Advanced Battery Tech., Inc.*, 781 F.3d at 644 (internal citation omitted). Even assuming, as Plaintiff claims, CohnReznick violated auditing standards during its 2016 audit, there are no corresponding allegations that it did so with fraudulent intent.

In sum, Sequential's decision to not impair goodwill on the 2016 Audited Financial Statements was, by Plaintiff's own allegations, supported by a memorandum prepared by Sequential, a third-party valuation report, and a subsequent analysis performed by Sequential. (*See* Am. Compl. ¶ 258-59.) The only so-called "red flags" Plaintiff point to in an attempt to show that those sources fraudulently misrepresented goodwill were internal calculations and analyses that Plaintiff does not even allege CohnReznick ever received. (*See id.* ¶ 102.)

19

### 3.    Plaintiff fails to allege that CohnReznick acted with scienter when it issued its 2017, 2018, and 2019 audit opinions.

Sequential wrote off all of its goodwill on the 2017 Audited Financial Statements. (*See* Am. Compl. ¶ 126; *see also* Bernard Decl., Ex. 5 at 74.) Plaintiff does not allege that these or any subsequently issued financial statements overstate goodwill, nor could it because goodwill was reported as having no value. (Bernard Decl., Ex. 5 at 74.) Accordingly, Plaintiff does not allege any fraudulent misstatements based on the reported value of goodwill as of December 31, 2017 or thereafter. Instead, it claims that the 2017 Audited Financial Statements were fraudulent because they did not disclose the risk of the SEC investigating the timing of Sequential's goodwill impairment – *i.e.*, an investigation into whether the impairment should have been taken in the third quarter of 2017, not the fourth quarter. (*See* Am. Compl. ¶ 291.) Plaintiff also alleges that this same error was repeated in the 2018 Audited Financial Statements and the 2019 Audited Financial Statements. (*See id.* ¶ 292.)

Plaintiff's scienter allegations concerning CohnReznick's 2017, 2018, and 2019 audits are nonexistent. CohnReznick's audit of the 2017 Audited Financial Statements began sometime after January 1, 2018. Plaintiff makes only two factual allegations (quoted directly from the Consent Orders) that post-date January 1, 2018, and those allegations relate to work CohnReznick did as part of its 3Q 2017 review, not the audit work CohnReznick performed in the first quarter of 2018. (*Id.* ¶¶ 287-88.) Plaintiff does not allege a single fact about CohnReznick's audit work for its 2017, 2018, and 2019 audit opinions, let alone sufficient factual allegations giving rise to a strong inference of scienter.

Moreover, at the time CohnReznick issued its 2017 and 2018 audit opinions, Sequential had no duty to disclose a potential SEC investigation. *See supra* at 13-14. This is fatal to Plaintiff's allegations of scienter because "'recklessness cannot be inferred from the failure to

20

disclose' facts [CohnReznick] had no duty to disclose." *In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*, 272 F. Supp. 2d 243, 264 (S.D.N.Y. 2003) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir.2001)).  And, as for CohnReznick's 2019 audit opinion, putting aside whether Sequential had a duty to do so, it is indisputable that Sequential *did* disclose the SEC's investigation.  (Bernard Decl., Ex. 7 at 137.)  Because "adequate disclosures [were] made, it cannot be said that [CohnReznick's] conduct is 'highly unreasonable and represents an extreme departure from the standards of ordinary care.'" *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 529 (S.D.N.Y. 2012).  Plaintiff's allegations of scienter for the 2017, 2018, and 2019 audits fail as a matter of law.

### 4. Plaintiff fails to allege that CohnReznick acted with scienter when it issued its 2016, 2017, 2018, and 2019 internal control opinions.

For the years ending December 31, 2016 through December 31, 2019, CohnReznick also issued opinions on Sequential's internal controls, which were included as part of Sequential's annual Form 10-Ks filings.  (Bernard Decl., Ex. 1 at 60, Ex. 5 at 38, Ex. 6 at 66, Ex. 7 at 69.)  Plaintiff bases its claims against CohnReznick, in part, on these internal control opinions.  (Am. Compl. ¶¶ 305-06, 309-10, 313-14, 317-18.)  These claims all suffer from the same deficiencies identified above, namely (1) claims based on the opinion in the 2016 10-K is barred by the statute of repose; (2) claims based on the opinions in the subsequent 10-Ks are barred because they all post-date Plaintiff's last purchase of securities in February 2018; and (3) Plaintiff fails to allege that CohnReznick acted with scienter when it issued any of its internal control opinions. *See supra* at 11-21.  The "internal control" claims should also be dismissed for the independent reason that "the failure of a non-fiduciary accounting firm to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

21

Plaintiff does not allege that CohnReznick was aware of any red flags relating to Sequential's internal controls over goodwill or the disclosure of regulatory investigations or litigation risk. Plaintiff therefore fails to allege scienter based on any of the "internal control" disclosures.

**IV.     Plaintiff fails to allege control liability claims against Wyss, Jackson, or Hilbert.**

To allege valid claims for "control person liability under § 20(a), 'a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.'" *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014). For all the reasons discussed above, Plaintiff fails to allege any Section 10(b) and Rule 10b-5(b) claims against CohnReznick. Therefore, the Section 20(a) claims must be dismissed against Wyss, Jackson, and Hilbert for failure to allege a primary violation by CohnReznick, the alleged controlled person. *See id.* In addition, Plaintiff's Section 20(a) claims also should be dismissed because Plaintiff fails to allege that Wyss, Jackson, or Hilbert controlled any of CohnReznick's alleged violations or that they were culpable participants in those alleged violations.

> **A.     Plaintiff fails to allege that Wyss, Jackson, or Hilbert controlled any primary violations.**

Control may be alleged "by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise.'" *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996). The alleged controlling persons "must not only have actual control over the primary violator, but have actual control over the *transaction* in question." *In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (internal quotation marks omitted) (emphasis in original). Plaintiff seeks to satisfy its pleading obligation by alleging that Wyss, Jackson, and

22

Hilbert had the requisite control over CohnReznick's alleged primary violations "[b]y virtue of their executive positions." (Am. Compl. ¶ 373; *see also id.* ¶ 374 (alleging that Wyss, Jackson, and Hilbert "are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same"). Plaintiff's do not allege sufficient facts to allow for a plausible inference of control.

First, Plaintiff's claim fails at the outset because "status alone is not sufficient to establish control person liability." *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524-25 (S.D.N.Y. 2016) (rejecting allegation that control established "by virtue of [the defendants'] status"); *see also In re Alstom SA*, 406 F. Supp. 2d at 487 ("officer or director status alone does not constitute control for the purposes of Section 20(a) liability"). Like in *Youngers*, Plaintiff alleges that Wyss, Jackson, and Hilbert are controlling persons "[b]y virtue of their executive positions" with CohnReznick. (Am. Compl. ¶ 373.) And like in *Youngers*, this Court should find that such an allegation is not enough to show control for a Section 20(a) claim.

Second, Plaintiff's claims are based on alleged fraudulent misstatements or omissions in Sequential's Form 10-K and 10-Q SEC filings. There are no factual allegations that would allow for a plausible inference that Wyss, Jackson, or Hilbert controlled those filings, the specific transactions at issue in Plaintiff's complaint. The filings were made by Sequential, not by CohnReznick, and they were signed by Sequential's officers and directors, not Wyss, Jackson, or Hilbert. (*See* Am. Compl. ¶¶ 139, 148, 154, 160, 169, 183, 200.) Moreover, CohnReznick's audit opinions are signed by CohnReznick, the entity, not Wyss, Jackson, or Hilbert, individually in their official capacities as CohnReznick partners. (Bernard Decl., Ex. 1 at 64, Ex. 5 at 42, Ex. 6 at 79, Ex. 7 at 82.) As for the 10-Qs, Plaintiff itself alleges that "CohnReznick's senior management" resolved an internal disagreement involving Wyss, Jackson, Hilbert, and others at

23

CohnReznick, and that "CohnReznick's senior management decided . . . that the engagement team could authorize Sequential to file its quarterly report on Form 10-Q [for the third quarter of 2017]." (Am. Compl. ¶ 286.) Assuming, as Plaintiff alleges, that the amorphous "senior management" at CohnReznick authorized CohnReznick's engagement team to act, then Wyss, Jackson, and Hilbert did not control that decision.

Third, there are no allegations whatsoever about what, if any, control Wyss, Jackson, or Hilbert exercised over CohnReznick's audits for fiscal years 2016 through 2019. (*See id.* ¶¶ 254-61, 291-92.) And, in fact, Plaintiff does not even allege that Wyss, Jackson, or Hilbert had *any* involvement with Sequential after the 2017 audit. (*See id.* ¶¶ 53-55 (allegations about Wyss limited to "the 2016 and 2017 audits of Sequential and the interim reviews between the audits," and allegations about Jackson and Hilbert limited to "the 3Q17 review and 2017 annual audit of Sequential").) Plaintiff's claims against Wyss, Jackson, and Hilbert under Section 20(a) must fail because Plaintiff has not made *any* factual allegations to support an inference that Wyss, Jackson, or Hilbert controlled CohnReznick's alleged primary violations.

### B.    Plaintiff fails to allege that Wyss, Jackson, or Hilbert were culpable participants in any primary violations.

Plaintiff's Section 20(a) claims also fail because Plaintiff does not allege that Wyss, Jackson, or Hilbert were culpable participants in any alleged primary violations. Most Courts in this District, including Your Honor, have held that "[t]he heightened pleading standards of the PSLRA . . . apply with respect to the" culpable participation prong of a Section 20(a) claim. *DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 220 (S.D.N.Y. 2019) (collecting cases); *see also In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 215-16 (S.D.N.Y. 2019) (Oetken, J.) (most courts require "a plaintiff [to] allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to

24

survive a motion to dismiss" a Section 20(a) claim); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438-39 (S.D.N.Y. 2014) (collecting cases and "holding that 'culpable participation' is an element of a Section 20(a) claim that must be pleaded with the same particularity as scienter"). To the extent Plaintiff attempts to allege culpable participation at all, those allegations overlap entirely with their allegations of scienter against CohnReznick. (*See* Am. Compl. ¶¶ 254-301.) Because Plaintiff fails to allege that CohnReznick acted with scienter, *see supra* at 14-22, Plaintiff also fails to allege that Wyss, Jackson, and Hilbert were culpable participants in any primary violations. *See In re Inv. Tech. Grp., Inc. Sec. Litig.*, No. 15 Civ. 6369(JFK), 2018 WL 1449206, at \*8 (S.D.N.Y. 2018) (same analysis applies where scienter and culpable participation arguments "overlap entirely").

## V.      Arguments raised by the other defendants are equally applicable to CohnReznick.

Several of the other defendants, including the Gibson Dunn Defendants, raise additional arguments for dismissal that apply equally to CohnReznick, Wyss, Jackson, and Hilbert. Accordingly, if the Court dismisses the complaint for any of the following reasons, that dismissal should also apply to CohnReznick, Wyss, Jackson, and Hilbert: (1) CohnReznick's at-issue statements are nonactionable opinion statements about goodwill, *see Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175 (2015) – and for CohnReznick, there are two-layers of opinions, namely CohnReznick's opinion on Sequential's opinion of the value of its goodwill; (2) Plaintiff fails to plead reliance on any of the at-issue statements; and (3) in addition to being bared by the five-year statute of repose, the claims are also independently untimely under the separate two-year statute of limitations in 28 U.S.C. § 1658(b)(1).

## CONCLUSION

The claims asserted against CohnReznick, Wyss, Jackson, and Hilbert (Counts III and IV) should be dismissed with prejudice.

Dated: New York, NY
March 23, 2023

Respectfully submitted,

/s/ James L. Bernard

James L. Bernard
David M. Cheifetz
Patrick N. Petrocelli
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, NY 10038
Tel.: (212) 806-5400
Fax: (212) 806-6006
jbernard@stroock.com
dcheifetz@stroock.com
ppetrocelli@stroock.com

*Counsel for Defendants CohnReznick LLP,
Stephen Wyss, Stephen Jackson, and
Robert Hilbert*

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2023, a true and correct copy of the foregoing was filed with the Court's electronic case filing (ECF) system, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ James L. Bernard
James L. Bernard