UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

PETER D'ARCY, Individually and on Behalf of All          Case No. 1:21-cv-07296 (JPO)
Others Similarly Situated,

                                                        Hon. J. Paul Oetken

                              Plaintiff,

              v.

YEHUDA SHMIDMAN, KAREN MURRAY,
GARY KLEIN, ANDREW COOPER, CHAD
WAGENHEIM, PETER LOPS, DAVID CONN,
DANIEL HANBRIDGE, LORRAINE DISANTO,
WILLIAM SWEEDLER, AARON HOLLANDER,
AL GOSSETT, STEWART LEONARD, JR.,
COHNREZNICK LLP, STEPHEN WYSS,
STEPHEN JACKSON, and ROBERT HILBERT,

                              Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KAREN MURRAY'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS ...................................................................................................................................... 3

LEGAL STANDARD................................................................................................................ 5

ARGUMENT ............................................................................................................................ 6

1)      PLAINTIFF'S 10B-5 CLAIMS AGAINST MS. MURRAY MUST FAIL ...................... 6

        A.      *Plaintiff Has Not Pled Facts Supporting Any Inference of Ms. Murray's
                Scienter, Much Less A Strong Inference* .................................................... 6

                i.      *There are no allegations of Ms. Murray's knowledge or recklessness* ......... 7

                ii.     *There are no allegations regarding Ms. Murray's potential motives* ........ 11

        B.      *Plaintiff Has Not Pled a Misrepresentation or Omission by Ms. Murray* ............ 12

                i.      *SOX Certifications* ..................................................................... 13

                ii.     *Form 10-Ks* ................................................................................ 15

                iii.    *Form 10-Qs*................................................................................. 15

                iv.     *Press Releases*............................................................................. 16

                v.      *Earnings Call* .............................................................................. 17

        C.      *Ms. Murray Cannot Be Liable Under the "Scheme Liability" Provisions
                of Rule 10b-5*............................................................................... 18

2)      PLAINTIFF'S CONTROL PERSON CLAIM UNDER SECTION 20(a) MUST
        ALSO FAIL ........................................................................................... 19

CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashland Inc. v. Morgan Stanley & Co.*,
700 F. Supp. 2d 453 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011) ...............................3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)...................................................................................................19

*C.D.T.S. v. UBS AG*,
No. 12 Civ. 4924, 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd sub
nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d
Cir. 2015) ...............................................................................................................................6

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
No. 11-cv-4665, 2014 WL 4832321 (S.D.N.Y. 2014) ...........................................................9

*ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)..................................................................................................12

*Fait v. Regions Fin. Corp.*,
655 F.3d 105 (2d Cir. 2011)..................................................................................................13

*Foley v. Transocean Ltd.*,
861 F. Supp. 2d 197 (S.D.N.Y. 2012)...............................................................................9, 10

*Francisco v. Abengoa, S.A.*,
481 F. Supp. 3d 179 (S.D.N.Y. 2020).....................................................................................7

*Honeyman v. Hoyt (In Re Carter–Wallace, Inc. Secs. Litig.)*,
220 F.3d 36 (2d Cir. 2000).....................................................................................................7

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)..................................................................................6, 7

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)...................................................................................16

*In re Braskem S.A. Sec. Litig.*,
246 F. Supp. 3d 731 (S.D.N.Y. 2017).......................................................................13, 16, 17

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)...................................................................................17

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
No. 19-cv-6180, 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021)...............................................13

*In re Fannie Mae 2008 Sec. Litig.*,
891 F. Supp. 2d 458 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013)........................15

*In re HEXO Corp. Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021)....................................................................................7, 8

*In re ITT Educ. Servs., Inc. Sec. Litig.*,
34 F. Supp. 298 (S.D.N.Y. 2014) .............................................................................................5

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
982 F. Supp. 2d 277 (S.D.N.Y. 2013)......................................................................................19

*In re Plug Power, Inc. Sec. Litig.*,
No. 21-cv-2004, 2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) .............................................12

*IOP Cast Iron Holdings, LLC v. J.H. Whitney Cap. Partners, LLC*,
91 F. Supp. 3d 456 (S.D.N.Y. 2015).......................................................................................17

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)..........................................................................................12, 15, 17, 18

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)....................................................................................................18

*Lipow v. Net1 UEPS Techs., Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015)......................................................................................10

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2022)............................................................................................................18

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ....................................................................................................6

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................................................14

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
11 F.4th 90 (2d Cir. 2021) ......................................................................................................18

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015).........................................................................................9

*Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011).......................................................................................17

iii

*Ret. Sys. v. YPF Sociedad Anonima*,
  15 F. Supp. 3d 336 (S.D.N.Y. 2014)..................................................................................5

*Saraf v. Ebix, Inc.*,
  No. 21-cv-1589, 2022 WL 4622676 (S.D.N.Y. Sept. 30, 2022) ..........................................9

*SEC v. Rio Tinto*,
  41 F.4th 47, 48–49 (2d Cir. 2022) ...............................................................................18, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................................5

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)...............................................................................................13

*Touchstone Strategic Tr. v. Gen. Elec. Co.*,
  No. 19-cv-1876, 2022 WL 4536800 (S.D.N.Y. Sept. 28, 2022), *appeal filed*,
  No. 22-2835 (2d Cir. Oct. 2023)........................................................................................13

*Xu v. Gridsum Holding Inc.*,
  No. 18-cv-3655, 2022 WL 3908006 (S.D.N.Y. Aug. 29, 2022)............................................15

## STATUTES & RULES

15 U.S.C. § 78u–4(b)(2) ...............................................................................................................7

Private Securities Litigation Reform Act ("PSLRA").........................................................5, 15, 19

Sarbanes-Oxley Act of 2002.........................................................................................................3

Securities Exchange Act § 10(b)...............................................................................................6, 8

Securities Exchange Act § 20(a)..........................................................................................6, 19, 20

17 C.F.R. § 240.10b-5..............................................................................................6, 9, 15, 18

17 C.F.R. § 240.10b-5(a) ..........................................................................................................18

17 C.F.R. § 240.10b-5(b) ..........................................................................................................18

17 C.F.R. § 240.10b-5(c) ..........................................................................................................18

Fed. R. Civ. P. 9(b) .........................................................................................................5, 16, 19

**PRELIMINARY STATEMENT**

While the Amended Complaint alleges Sequential Brands Group, Inc. ("Sequential" or the "Company") went through a period of great turmoil from 2015 to 2021, its allegations show that Karen Murray—the Company's CEO from April 2017 through October 2019—had little, if anything, to do with it. Out of the Amended Complaint's 375 enumerated paragraphs, Ms. Murray appears in just 14. And those paragraphs do not contain a single particularized allegation regarding Ms. Murray's conduct or scienter with respect to any purported false or misleading statements. Instead, Plaintiff throws Ms. Murray into an undifferentiated mass of 13 individual defendants, labeling this group the "Sequential Defendants." Ms. Murray submits this brief because, given the total lack of allegations relating to her conduct or scienter, the claims against her must be dismissed.[1]

The Amended Complaint alleges that the Company failed to account properly for a goodwill impairment during a portion of this purported period of turmoil: from November 9, 2016, to December 11, 2020 (the "Class Period"). Crucially, Ms. Murray became CEO of Sequential *after* the majority of the alleged wrongdoing in the Amended Complaint took place, and the Amended Complaint is devoid of allegations that Ms. Murray knew of or recklessly disregarded the existence of *any* wrongdoing. Instead, Ms. Murray is merely alleged to have signed several certifications attached to SEC filings which attest to the accuracy of financial reporting and the existence of internal controls. These certifications were statements of Ms. Murray's *beliefs* at the time they were made, and Plaintiff has not included any allegations regarding what, if anything, Ms. Murray knew at those times. Ms. Murray is also alleged to have

---

[1] Ms. Murray also joins the brief of the Gibson Dunn Defendants and incorporates their arguments in their entirety.

signed two of Sequential's annual reports, but the allegations fail to identify material misrepresentations or omissions from them, and again, the Amended Complaint lacks any allegations as to Ms. Murray's knowledge at the time she signed them. These are fatal pleading defects.

The Amended Complaint is bereft of any other allegations against Ms. Murray. There are no allegations that she witnessed any wrongdoing, spoke to anyone with purported knowledge of the wrongdoing, or was made aware of the scheme alleged in the Amended Complaint. Moreover, Plaintiff does not allege that Ms. Murray knew any of the allegedly false and misleading statements outlined in the Amended Complaint were false, was reckless in not knowing, or possessed any motive to falsify or omit material information. Instead, her supposed liability is tied entirely to her signatures on the SEC filings and corresponding certifications. Under the federal securities laws, however, Plaintiff is required to show a "strong inference" of Ms. Murray's scienter at the time those statements were made, and such signatures, as a matter of law, do not meet this standard.

Nor can Plaintiff tie Ms. Murray to any other allegations in the Amended Complaint. She is not a "maker" under the securities laws of any other statements, including those that were issued after she left Sequential. She cannot be liable for a purported "scheme," because all the allegations relate to misstatements or omissions. And because there was no primary violation, there can be no control person liability either. Overall, the Amended Complaint's near-complete lack of substantive allegations regarding her conduct is fatal. This Court, therefore, should dismiss the Complaint for failure to state a claim as to Ms. Murray.

**FACTS[2]**

Karen Murray was the CEO of Sequential and a Director on its Board from April 2017 to October 2019.[3] Amended Complaint ("Compl.") ¶ 27.  During the Class Period, Sequential owned, promoted, marketed, and licensed a portfolio of consumer brands such as Gaiam® and Jessica Simpson®.  *See* Compl. ¶ 2.

Ms. Murray's only alleged connection to the allegations here is the appearance of her signature on a handful of Sequential filings with the U.S. Securities and Exchange Commission ("SEC").  *See* Compl. ¶¶ 134, 169, 183.  During her time as CEO, Ms. Murray signed eight certifications made pursuant to the Sarbanes-Oxley Act of 2002 ("SOX certifications").  *Id.* ¶¶ 148, 154, 160, 169, 176, 178, 180, 183.  Six of these certifications were filed along with Sequential's quarterly reports on Form 10-Qs, while the other two were filed along with the 2017 and 2018 Form 10-Ks.  *Id.* ¶¶ 148, 154, 160, 176, 178, 180.  All eight certifications contain the same substantive language: that "[b]ased on [her] knowledge," Ms. Murray: (a) did not believe the report contained any untrue statements of material fact or omitted any such facts, (b) believed that the materials in the filings "fairly present[ed]" the financial condition of the company, and (c) had disclosed any material changes to the Company's internal controls.  Weiss Decl. Ex. 2 (Sequential's Third Quarter 2018 Form 10-Q) at Ex. 31.1.  The Amended Complaint does not allege Ms. Murray signed any of the Form 10-Qs herself; it alleges that other individuals from

---

[2] A true and correct copy of the Amended Complaint is included for the Court's convenience as Exhibit ("Ex.") 1 to the Declaration of Jonathan Weiss ("Weiss Decl.") submitted herewith.

[3] The Amended Complaint at one point alleges that Ms. Murray departed in October 2020.  *See* Compl. ¶ 9.  All other references to Ms. Murray's departure accurately reflect the date as October 2019.  *Id.* ¶¶ 27, 129, 192.  For clarity, Ms. Murray resigned from Sequential on October 1, 2019.  *See* Weiss Decl. Ex. 3 (October 7, 2019 Sequential Form 8-K).  This Court may take judicial notice of SEC filings.  *See, e.g.*, *Ashland Inc. v. Morgan Stanley & Co.*, 700 F. Supp. 2d 453, 461 n.4 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011).

Sequential signed them.  Ms. Murray also signed two of Sequential's annual reports on Form 10-K with the SEC, for Fiscal Years 2017 and 2018.  Compl. ¶¶ 169, 183.

The allegations in the Amended Complaint center on Sequential's public valuation of its "goodwill."  *See, e.g.*, *id.* ¶¶ 4-10.  In 2016 and early 2017, before Ms. Murray joined Sequential, the company informed investors that it was changing the company's annual goodwill impairment testing date from December 31 to October 1 and applied that change beginning in Fiscal Year 2016.  *Id.* ¶ 92.

The 2017 Form 10-K, which Ms. Murray signed, contained several statements about the company's goodwill.  *Id.* ¶ 170.  First, the 2017 Form 10-K stated that the change to the Company's impairment testing date "did not delay, accelerate or avoid an impairment charge."  *Id*.  Second, the 10-K stated that due to certain impairment indicators, Sequential had performed a quantitative assessment of its goodwill on September 30, 2017 but found that goodwill was not impaired as of that date.  *Id.* ¶ 173.  Third, the 2017 10-K contained information about Sequential's annual impairment testing from 2017—including the Company's use of the "Income Approach" to assess the existence of any impairment.  *See id*.  However, the Amended Complaint alleges that other individuals developed and imposed this approach, not Ms. Murray.  *Id.* ¶ 122.  Fourth, the 2017 10-K disclosed a goodwill impairment charge of $304.1 million during the quarter ended December 31, 2017 from an impairment testing conducted at the end of the year.  *Id.* ¶ 170.  The 2017 Form 10-K indicated this was "[d]ue to the identification of impairment indicators" during that quarter and went on to explain that it was "triggered in the fourth quarter of 2017 by the continued decline of [Sequential's] stock price and the related decline in [Sequential's] market capitalization."  *Id.* ¶ 171-72.  It also found that internal control of financial reporting was effective as of December 31, 2017.  *Id.* ¶ 174.

The 2018 Form 10-K signed by Ms. Murray contained near identical language detailing the impairment analyses conducted in September and December of 2017. *Id.* ¶¶ 184-89. It also stated that "[Sequential's] management concluded that [Sequential's] internal control over financial reporting was effective as of December 31, 2018." *Id.* ¶ 189.

Sequential also issued press releases in connection with several of the SEC filings issued during Ms. Murray's tenure, which, among other things, contained statements about the Company's goodwill. *Id.* ¶¶ 147, 153, 159, 165. The Amended Complaint does not detail the author or authors of these press releases.

Ms. Murray left her position as Sequential's CEO on October 1, 2019. Ex. 3; *see also* Compl. ¶ 129. She has not had any professional involvement with the Company since that date.

## LEGAL STANDARD

While a court must accept a complaint's factual allegations as true in deciding a motion to dismiss, it need not credit threadbare recitals of elements supported by conclusory statements. *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima,* 15 F. Supp. 3d 336, 351-52 (S.D.N.Y. 2014).[4] A complaint alleging securities fraud, moreover, is subject to two heightened pleading standards. *In re ITT Educ. Servs., Inc. Sec. Litig.*, 34 F. Supp. 298, 304 (S.D.N.Y. 2014). Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be pleaded with specificity, and the Private Securities Litigation Reform Act ("PSLRA") requires a plaintiff to "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Under the PSLRA, the

---

[4] The Amended Complaint relies heavily on a related SEC complaint filed in Case No. 1:20-cv-10471 (S.D.N.Y.). Notably, the SEC complaint does not mention Ms. Murray, or make any allegations relating to her as Sequential's former CEO.

facts must give rise to a "strong inference of scienter", an "exacting [standard] that present[s] no small hurdle for the securities fraud plaintiff." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (internal quotations and citations omitted).

## ARGUMENT

As one of the "Sequential Defendants" (Compl. ¶ 40), Ms. Murray is implicated by two of the four counts of the Amended Complaint: alleged violations of: (1) Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and (2) Section 20(a) of the Exchange Act. The 10b-5 claim must fail as to Ms. Murray because the Amended Complaint lacks any particularized allegations as to her conduct that could amount to a violation. And because a Section 10(b) violation is a necessary predicate to a Section 20(a) claim, Plaintiff's Section 20(a) claim against Ms. Murray must also be dismissed.

### 1)  PLAINTIFF'S 10B-5 CLAIMS AGAINST MS. MURRAY MUST FAIL.

The Amended Complaint does not state a claim under Section 10(b) and Rule 10b-5 because Plaintiff has failed to allege with the required specificity: (1) that Ms. Murray acted with the requisite knowledge of any fraud; (2) that Ms. Murray made any false statements; or (3) that Ms. Murray participated in any sort of scheme that would give rise to liability. For all these reasons and those set forth by the Gibson Dunn Defendants, *see* Gibson Dunn Defs' Br. ("GDC Br.") Argument § I, Ms. Murray should be dismissed from this litigation.

   A.  *Plaintiff Has Not Pled Facts Supporting Any Inference of Ms. Murray's Scienter, Much Less A Strong Inference.*

To state a claim for violation of Section 10(b) and Rule 10b-5, "[s]cienter must be separately pled and individually supportable as to each defendant." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 161 (S.D.N.Y. 2021) (citation omitted). Scienter "is not amenable to group pleading." *C.D.T.S. v. UBS AG*, No. 12 Civ. 4924,

2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015).  A plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2).  Not only must a complaint allege each defendant acted with scienter, but it must plead a strong inference that is not "merely reasonable or permissible" but is "cogent and compelling."  *In re Aegean*, 529 F. Supp. 3d at 148 (citing *Tellabs*, 551 U.S. at 324).  A complaint may do so by either alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or that show defendants had both motive and opportunity to commit fraud.  *Honeyman v. Hoyt (In Re Carter–Wallace, Inc. Secs. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000).  Plaintiff has done neither.

> i.      *There are no allegations of Ms. Murray's knowledge or recklessness.*

For the claims against Ms. Murray to survive on a conscious misbehavior theory, Plaintiff must show that her conduct was "highly unreasonable and . . .  represent[ed] an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." [5]  *Id*. (citation omitted).  Crucially, Plaintiff must establish "what the [d]efendants knew and when they knew it" to plead a strong inference of scienter.  *In re HEXO Corp. Sec. Litig.,* 524 F. Supp. 3d 283, 314 (S.D.N.Y. 2021) (citation omitted).  Yet the Amended Complaint contains *no* allegations regarding what Ms. Murray knew, or when, let alone the particularized allegations necessary to support a strong inference of scienter.

---

[5] Moreover, where—as here—a plaintiff fails to allege a motive to commit fraud, the strength of the plaintiff's allegations that indicate a defendant's conscious misbehavior or recklessness "must be correspondingly greater" than if a motive or opportunity had been pled.  *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 213 (S.D.N.Y. 2020) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).

As a preliminary matter, Ms. Murray plainly cannot have had knowledge of Sequential's purported failure to take a proper impairment charge against its goodwill—including the issuance of public statements on the goodwill testing methodology and results—before she started at the Company. Nearly all of Plaintiff's allegations regarding the purported "scheme" took place before Ms. Murray's tenure as Sequential's CEO began. *See* Compl. ¶¶ 87-114.

Even for the allegedly false or misleading statements that were issued when Ms. Murray was at the Company, the Amended Complaint does not plead anything close to the strong inference of scienter required to maintain a claim against Ms. Murray.

First, the only allegations relating to the purported scheme that took place while Ms. Murray was at Sequential are related to the Company's decision to employ the Income Approach in the third quarter of 2017. But the Amended Complaint does not contain any allegations regarding Ms. Murray's role in that decision, or even her being informed of the change.[6] Though the Amended Complaint asserts that the Sequential Defendants are "liable as direct participants" in the alleged wrongdoing (Compl. ¶ 43), it fails to point to any action taken by Ms. Murray regarding the use of the Income Approach. *See In re HEXO*, 524 F. Supp. 3d at 314 (multiple changes with respect to reporting inventory and impairment loss figures did not support an inference of scienter when complaint lacks allegations of contemporaneous contradictory information shown to defendants). There are simply no particularized allegations showing Ms.

---

[6] Similarly, the Amended Complaint does not allege that Ms. Murray had any role in decisions regarding disclosure of the SEC investigation. For all the reasons stated in the Gibson Dunn Defendants' Brief, *see* GDC Br. at Arg. §§ I(A)(3), I(B)(3)–(4), & IV, there is no Section 10(b) violation relating to failure to disclose the SEC investigation, and in any event the Amended Complaint does not allege that Ms. Murray was involved in Company disclosures during the period relevant to the investigation given her impending departure.

Murray knew or should have known the Company was inappropriately disclosing its goodwill to support a 10b-5 claim against her.

Second, Plaintiff's attempt to use Ms. Murray's signature on various SEC filings and SOX certifications to plead scienter is unavailing. Absent allegations that a defendant had contemporaneous awareness of falsity, courts in this District have "uniformly" held that signing a SOX certification will not support an inference of scienter. *Saraf v. Ebix, Inc.*, No. 21-cv-1589, 2022 WL 4622676, at *5 (S.D.N.Y. Sept. 30, 2022) (collecting cases); *see also Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 615 (S.D.N.Y. 2015) ("Plaintiff cannot raise an inference of fraudulent intent based on the signing of a certification without alleging any facts to show a concomitant awareness of or recklessness to the materially misleading nature of the statements"). Because the Amended Complaint does not contain a single allegation regarding Ms. Murray's "awareness of or recklessness to" Sequential's purported failure to impair its goodwill, her signatures on the Company's public statements and SOX certifications cannot support an inference of scienter, much less the requisite "strong inference."

Third, Plaintiff cannot show Ms. Murray's scienter through allegations regarding her position within the Company and supposed knowledge as a result thereof. Courts in this district have "long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11-cv-4665, 2014 WL 4832321, at *19 (S.D.N.Y. 2014) (citation omitted). This is because "[s]cienter cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information." *Foley v. Transocean Ltd.*, 861 F. Supp. 2d 197, 212 (S.D.N.Y. 2012)

9

(citation omitted); *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) ("[T]o establish an inference of scienter, Plaintiff must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions.") (collecting cases).

Here, Plaintiff attempts to show a strong inference of scienter by claiming that the Sequential Defendants, including Ms. Murray, "must have been aware" of the true value of Sequential's goodwill "given [their] high-level corporate position[s]." *Foley*, 861 F. Supp. 2d at 212. The Amended Complaint alleges that "[t]he Sequential Defendants, because of their positions with Sequential, had access to non-public information about its business operations and prospects [and] financial condition." Compl. ¶ 41. It asserts that the Sequential Defendants had access to such information by means of their "access to internal corporate documents, conversations, and connections with other corporate officers and employees, attendance at management and/or Board meetings and committees thereof." *Id.* It then attempts to link the Sequential Defendants' alleged "access to material adverse nonpublic information concerning Sequential's goodwill" to their actual "possession of such information" as the basis for the claim that the Sequential Defendants "knew or recklessly disregarded the fact that the adverse facts [regarding the Company's goodwill] had not been disclosed to, and were being concealed from, the investing public." *Id.* ¶ 42.[7]

These allegations are exactly the type that courts in this District have found insufficient to show a strong inference of scienter, as they are based entirely on Ms. Murray's position at the

---

[7] *See also* Compl. ¶ 349 ("The Sequential Defendants were the most high-level executives . . . and members of the Company's management team. . . . By virtue of their responsibilities and activities . . . ."); *id.* ¶ 80 ("Management plays a critical role in the operation and growth of companies, like Sequential, including establishing the internal control environment . . . .").

Company, and not her receipt of any specific information regarding its goodwill.  The Amended Complaint does not claim Ms. Murray received or reviewed (let alone played a role in) the alleged external valuation report, *id.* ¶ 96-102, nor the supplemental analysis to the Goodwill Memorandum in October 2016, *id.* ¶ 107-110.  Thus, Plaintiff has not pled that Ms. Murray had any knowledge that goodwill was "likely" impaired at the end of 2016.[8]  Nor has Plaintiff alleged that Ms. Murray received any information regarding the methodology change to Sequential's goodwill impairment test to the Income Approach for the third quarter of 2017 or its change back to the Market Approach in connection with the 2017 Form 10-K.  *Id.* ¶¶ 122-25.  The allegations regarding her position at the Company are therefore insufficient to show her knowledge of or recklessness as to the Company's statements on its goodwill.

> ii.    *There are no allegations regarding Ms. Murray's potential motives.*

The Amended Complaint also lacks any actionable allegations about Ms. Murray's motives.  It baselessly asserts, rather, that the Sequential Defendants all had some motive or opportunity to perpetrate the conduct alleged in the Amended Complaint, *id.* ¶ 348, but never details what that motive was.  At best, Plaintiff asserts that "there was a real risk that a large stock drop would occur when th[e] impairment became public," and that by not disclosing the impairment, Sequential could "understate its operating expenses and net loss [and] overstate its income from operations, goodwill and total assets."  *Id.* ¶ 112.  But the "desire for the corporation to maintain the appearance of profitability, keep stock prices high to increase officer compensation, and sustain the success of an investment does not suffice to establish a motive."

---

[8] Assuming *arguendo* that the Press Releases or Form 10-Qs issued by Sequential during Ms. Murray's time as CEO (but not signed by her) are attributable to her, Plaintiff has also failed to allege Ms. Murray knew those statements were inaccurate.  *Accord* GDC Br. at Arg. §§ I(A)(3), I(C).

11

*In re Plug Power, Inc. Sec. Litig.*, No. 21-cv-2004, 2022 WL 4631892, at \*11 (S.D.N.Y. Sept. 29, 2022). These types of general motives common to most corporate officers do not constitute "motive" for the purpose of establishing scienter and do not relate to a specific motive held by Ms. Murray in any event. *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Without specifically alleging Ms. Murray's motive, Plaintiff's attempt to plead scienter under a motive and opportunity theory fails as a matter of well-established law.

> B. *Plaintiff Has Not Pled a Misrepresentation or Omission by Ms. Murray.*

In addition to the many reasons why Plaintiff has failed to state a claim for a misrepresentation or omission in his Amended Complaint,[9] it has not pled the existence of any false or misleading statements by Ms. Murray. First, the only statements at issue in the Amended Complaint that Ms. Murray actually made are the eight SOX certifications and two Form 10-Ks that she signed. But because Plaintiff has failed to allege those statements contained material misrepresentations or omissions, his claims also fail as to Ms. Murray. Second, numerous other statements at issue in the Amended Complaint were made by others: Ms. Murray is not alleged to have signed the SEC Form 10-Qs, nor to have been the author of various press releases or to have made statements at earnings calls.[10] She cannot be liable for those, either, because she was not the maker of the statements. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011).

---

[9] *See* Point 1(A), *supra*; GDC Br. at Arg. § I.

[10] The only statements other than the form 10-Q or 10-K's alleged to have occurred during Ms. Murray's tenure are two press releases. Ms. Murray is not alleged to have made any of these statements.

12

More globally, Ms. Murray cannot be liable for statements made while she was not with the Company. *See In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 762 (S.D.N.Y. 2017) (former CEO not liable for statements made after he left his position). Though grouped with the "Sequential Defendants," Ms. Murray had no role in the preparation or filing of Sequential statements before she began working there in April of 2017. *See* Compl. ¶ 27. Thus, she cannot be liable for statements made before that time. *See id.* ¶¶ 134-35, 137-40, 142-43, 145. Similarly, because she was not the maker of any statement from after her time at Sequential ended in October 2019, *see id.* ¶ 27, she cannot be liable for those statements either, *see id.* ¶¶ 191-92, 194-96, 198, 200-06.

### i.    SOX Certifications

In this Circuit, "[e]stimates of goodwill depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) (abrogated on other grounds). Goodwill assessments, rather, are an "exercise of judgment,"—*i.e.*, opinions. *Touchstone Strategic Tr. v. Gen. Elec. Co.*, No. 19-cv-1876, 2022 WL 4536800, at *5 (S.D.N.Y. Sept. 28, 2022), *appeal filed*, No. 22-2835 (2d Cir. Oct. 2023); *accord* GDC Br. at Arg. § I(B)(1). Similarly, SOX certifications are statements of opinion which "contain an important qualification that the certifying officer's statements are true based on his or her knowledge." *In re Diebold Nixdorf, Inc., Sec. Litig.*, No. 19-cv-6180, 2021 WL 1226627, at *12 (S.D.N.Y. Mar. 30, 2021) (citation omitted). Because these eight statements were all statements of opinion, to give rise to liability under the securities laws, Plaintiff must plead that Ms. Murray "did not hold the belief she professed," or that she omitted "information whose omission makes the [opinion] statement misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir.

13

2016) (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186, 194 (2015)).

The Amended Complaint contains no such allegations. As noted above, the Amended Complaint contains no allegations whatsoever regarding Ms. Murray's state of mind, let alone that she did not believe the statements in her SOX certifications.[11]  *Accord* GDC Br. at Arg. § I(B)(1)(a). And an opinion cannot be misleading by omission unless it omits material supporting facts that "conflict with what a reasonable investor would take from the statement itself . . . ." *Omnicare,* 575 U.S. at 189. More specifically, the Supreme Court has held that establishing an actionable opinion on this basis requires showing the opinion did not rest on some "meaningful legal inquiry—rather than, say, on mere intuition, however sincere." *Id.* at 188. Plaintiff must identify particular (and material) facts "going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context. That is no small task for an investor." *Id.* at 194 (citation omitted). Plaintiff has not satisfied this requirement. They offer nothing to suggest that Ms. Murray knew of any misrepresentations regarding Sequential's financial statements or deficiencies in the Company's internal controls at the time she signed the SOX certifications, and for that reason, they cannot form the basis of any misstatement or omission.

---

[11] An opinion may also be misleading if it includes embedded supporting facts that are untrue. *See Omnicare*, 575 U.S. at 185–86. In fact, the Amended Complaint contains no allegations regarding supporting facts supplied in the SOX certifications at all. Rather, it simply states that the certifications were attestations of the accuracy of Sequential's financial reporting and disclosures of material changes to the Company's internal controls. *E.g.*, Compl. ¶ 148.

14

ii.    *Form 10-Ks*

For the reasons described above and in the Gibson Dunn Defendants' brief, *see* GDC Br. at Arg. § I(B), the claims based on the 2017 and 2018 Form 10-Ks filed with the SEC are similarly deficient.

iii.    *Form 10-Qs*

Ms. Murray also may not be liable for the allegedly false statements found in Sequential's 10-Qs filed during her tenure because she is not a "maker" of those Form 10-Qs. To be liable for a violation of Rule 10b-5, Ms. Murray must have "made" the allegedly material misstatements. *Janus*, 564 U.S. at 141. "For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 142. Courts in this Circuit have applied *Janus* to hold that executives may be liable when they: (1) had ultimate authority over the company's' statement; (2) signed the company's statement; (3) ratified and approved the company's statement; or (4) where the statement is attributed to the executive. *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013). Absent explicit attribution, courts look to various indicia of control to decide whether an executive had "ultimate authority" over it. *Xu v. Gridsum Holding Inc.*, No. 18-cv-3655, 2022 WL 3908006, at *5 (S.D.N.Y. Aug. 29, 2022). When, for example, a corporate executive owns the majority of company shares or is alleged to have edited and approved documents in question, ultimate control may be found. *See id.* at *5–7. But "a mere presumption" that an executive worked on a statement by virtue of her role within the company is insufficient to satisfy the PSLRA's

15

particularity requirements and Rule 9(b). *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 640 (S.D.N.Y. 2017).

The Amended Complaint, however, contains explicit attribution: it alleges that *other* Defendant's signed the Form 10-Qs, while Ms. Murray is only alleged to have signed the Form 10-Ks and SOX certifications. *See, e.g.*, Compl. ¶ 148. Her position as CEO is not sufficient to sustain primary liability claims for the statements made in any of the Form 10-Qs which she did not sign. *See In re Braskem*, 246 F. Supp. 3d at 762. *Braskem* is instructive, as it involved the CEO of a company being sued for securities violations stemming from, *inter alia*, several SEC filings the company made during his tenure. *Id.* at 741. In dismissing the claims against the CEO, the court noted that the CEO was not alleged to have signed any of the SEC filings which the court found to be actionable, nor did the complaint allege that the CEO "played any role in bringing about any statements" in the filings. *Id.* at 762. Instead, the only allegations relating to the CEO were "global and general" and "not particularized at all . . . ." *Id.* Because the Amended Complaint similarly "lacks any specific factual allegation regarding [Ms. Murray's] role in the creation, formulation, or dissemination of [Sequential's] public filings," she cannot be deemed the "maker" of the statements in the 10-Qs. *Id.*

And in all events, for the reasons described in the Gibson Dunn Defendants' brief, *see* GDC Br. at Arg. § I(B), none of those statements contained misrepresentations or omissions.

> iv.    *Press Releases*

Similarly, Ms. Murray was not a "maker" of any of the four press releases that were issued during her tenure at Sequential.[12] The complaint alleges only that "the Company issued

---

[12] The four press releases alleged to have been issued during this period are from May 4, 2017 (Compl. ¶ 147), July 27, 2017 (*id.* ¶ 153), November 9, 2017 (*id.* ¶ 159), and February 28, 2018 (*id.* ¶ 165). While the Amended Complaint takes issue with various other releases during the Class Period, Ms. Murray either had not begun her

16

. . . press release[s]," and does not specify who, if anyone, they are attributable to.  *E.g.*, Compl. ¶ 147.  The Amended Complaint does not allege that Ms. Murray signed the Press Releases, nor that she had ultimate control over them.  The only "indic[ation] of control" possibly gleaned from the complaint is that Ms. Murray was CEO at the time they were issued.  Courts in this district require more to find ultimate control.  *See, e.g.*, *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 240 (S.D.N.Y. 2018) (finding defendant was "maker" of company press release where he was president, treasurer, secretary, and sole board member of company); *IOP Cast Iron Holdings, LLC v. J.H. Whitney Cap. Partners, LLC*, 91 F. Supp. 3d 456, 473 (S.D.N.Y. 2015) (defendants were "makers" where, *inter alia*, they owned an overwhelming majority of the company's shares); *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) (defendant holding company was a "maker" of registration statements where it was sole owner of outstanding stock in the company and controlled more than 50% of the company's voting power). The Amended Complaint does not allege that any comparable situation exists; in fact, it does not make any allegations regarding Ms. Murray's role in drafting the press releases at all.  Thus, Ms. Murray cannot be liable for any misstatements or omissions from the four press releases.

          *v.*      *Earnings Call*

Finally, the Amended Complaint also takes issue with statements made during an earnings call during Ms. Murray's time as CEO.  Compl. ¶¶ 166-67.  Like the Form 10-Qs and

---

tenure at Sequential or had already exited the Company at the time those were issued, and thus cannot be liable for them either. *See In re Braskem*, 246 F. Supp. 3d at 762.  At a minimum, Ms. Murray lacked "ultimate authority" over any statements issued when she was not an officer of Sequential. *Janus*, 564 U.S. at 142.

17

the press releases, Ms. Murray is not alleged to have made the statements in question and thus not a "maker" under *Janus*. *See* 564 U.S. at 141.

### C. Ms. Murray Cannot Be Liable Under the "Scheme Liability" Provisions of Rule 10b-5.

To the extent that Plaintiff is pursuing a "scheme liability" claim against the Sequential Defendants, that too must fail.[13]  Because the alleged misstatements and omissions are the exclusive basis of Plaintiff's claims against Ms. Murray, she cannot—without more—be liable under Rule 10b-5(a) or (c), which are sometimes referred to as the "scheme liability" provisions. *SEC v. Rio Tinto plc*, 41 F.4th 47, 48–49 (2d Cir. 2022).

"To state a scheme liability claim, a plaintiff must show: (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90 (2d Cir. 2021) (internal quotations and citation omitted).  The Second Circuit has recently opined on the law in this area.  *See Rio Tinto*, 41 F.4th at 49.

In *Rio Tinto*, the SEC argued that "allegations of misstatements and omissions alone are sufficient to state a scheme liability claim." *Id.* at 48–49.  Rejecting the SEC's theory, the Second Circuit held that courts in this circuit are still bound by *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), which requires "something *beyond* misstatements and omissions, such as dissemination," *Rio Tinto*, 41 F.4th at 49.  But there is nothing more alleged of Ms. Murray.  She is not alleged to have disseminated any statements, *cf. Lorenzo v. SEC*, 139 S. Ct. 1094, 1099 (2022), nor are there any allegations that Ms. Murray concealed information from

---

[13] Though it is not clear what theory Plaintiff is proceeding under as to Ms. Murray specifically, Plaintiff appears to seek to hold all the "Sequential Defendants" liable under all three subsections of Rule 10b-5.  *See* Compl. ¶ 345 (using language found in 17 C.F.R. §§ 240.10b-5(a), 240.10b-5(b), and 240.10b-5(c)).

auditors or, for that matter, played any role in the auditing process, *cf. Rio Tinto*, 41 F.4th at 54. Just as the Court feared in *Rio Tinto*, Plaintiff here has attempted to repackage his misstatement claims as scheme liability claims. *See id.* at 54–55. Permitting this type of scheme liability claim to move forward would allow Plaintiff to "evade the pleading requirements imposed in misrepresentation cases"—namely, the heightened pleading requirements of the PSLRA for misstatement or omissions claims. *See id.* (citing 15 U.S.C. § 78u-4(b)(1)); *accord* GDC Br. at Arg. § I(E). Thus, under *Rio Tinto*, the scheme liability claim against her must fail.

### 2) PLAINTIFF'S CONTROL PERSON CLAIM UNDER SECTION 20(a) MUST ALSO FAIL.

To state a claim against Ms. Murray for a violation of Section 20(a), Plaintiff must show "(1) a primary violation by the controlled person; (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). Plaintiff's claims against Ms. Murray fail for two reasons: first, because Plaintiff has failed to state a primary violation, and second, because Plaintiff has not shown Ms. Murray was a culpable participant in the controlled persons fraud in any sense whatsoever.

As to the first element, for the reasons stated in the Gibson Dunn Defendants' brief, *see* GDC Br. at Arg. § II, and above, there has been no primary violation that would give rise to Section 20(a) liability. Even if this court were to find that there was a primary violation, however, Plaintiff has still failed to plead that Ms. Murray was in any meaningful sense a culpable participant in the purported fraud. The heightened pleading standards of Rule 9(b) and the PLSRA apply to the culpable participation prong of a Section 20(a) claim. *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277 (S.D.N.Y. 2013). To plead culpable participation,

19

Plaintiff must allege particularized facts of Ms. Murray's conscious misbehavior or recklessness—her scienter. *Id.* Because, as described above, Plaintiff has made virtually no substantive allegations regarding Ms. Murray, and certainly none alleging that she was aware of or recklessly disregarded the allegedly improper conduct in the Amended Complaint, Plaintiff's 20(a) claim against her must fail as well.

## CONCLUSION

For the foregoing reasons and those stated in the joint brief, the Amended Complaint should be dismissed.


Dated:  Los Angeles, CA             Respectfully submitted,
         March 23, 2023

                                    */s/ Jonathan M. Weiss*
                                    Jonathan M. Weiss
                                    **PROSKAUER ROSE LLP**
                                    2029 Century Park East
                                    Suite 2400
                                    Los Angeles, CA 90067
                                    Telephone: 310-557-2900
                                    E-mail: jweiss@proskauer.com

                                    Julia D. Alonzo
                                    **PROSKAUER ROSE LLP**
                                    Eleven Times Square
                                    New York, New York 10036
                                    Telephone: 212-969-3000
                                    E-mail: jalonzo@proskauer.com