**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
PETER D'ARCY, Individually and On Behalf of  :   Case No. 1:21-cv-07296-JPO
All Other Similarly Situated,                :
                                                             :   *ORAL ARGUMENT REQUESTED*
    Plaintiff,                                :
                                                             :   Honorable J. Paul Oetken
                                                             :
v.                                                           :
                                                             :
YEHUDA SHMIDMAN, KAREN MURRAY,     :
GARY KLEIN, ANDREW COOPER, CHAD    :
WAGENHEIM, PETER LOPS, DAVID CONN, :
DANIEL HANBRIDGE, LORRAINE         :
DISANTO, WILLIAM SWEEDLER, AARON   :
HOLLANDER, AL GOSSETT, STEWART     :
LEONARD, JR., COHNREZNICK LLP,     :
STEPHEN WYSS, STEPHEN JACKSON, and :
ROBERT HILBERT,                    :
                                                             :
    Defendants.                               :
                                                             :
-------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANT GARY KLEIN**
**IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT**

Lyle Roberts
SHEARMAN & STERLING LLP
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: 202.508.8108
Facsimile: 202.508.8100
Email: Lyle.Roberts@Shearman.com

Elizabeth J. Stewart
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.848.7074
Facsimile: 646.848.7074
Email: Elizabeth.Stewart@Shearman.com

Dated: March 23, 2023            *Attorneys for Individual Defendant Gary Klein*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................3

LEGAL STANDARD...........................................................................................................6

ARGUMENT .....................................................................................................................8

I.      The Complaint Should be Dismissed Because it Impermissibly Adopts Allegations from an SEC Complaint and SEC Consent Orders. ...........................8

II.     Plaintiff's Claims Are Barred by the Statute of Limitations.................................11

III.    Plaintiff Has Failed to State a Claim Because Plaintiff Does Not and Cannot Adequately Plead That Mr. Klein's Alleged Opinions About Goodwill and Internal Controls Were False When Made................................................................14

IV.    Plaintiff Fails To Adequately Plead that Mr. Klein Acted With Scienter. ............20

V.     Plaintiff's Section 20(a) Claim Also Must Fail. ....................................................24

CONCLUSION..................................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

*Amorosa v. AOL Time Warner Inc.*,
    409 F. App'x 412 (2d Cir. 2011) ......................................................................................... 12

*Amorosa v. Gen. Elec. Co.*,
    No. 21-CV-3137 (JMF), 2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022)............................. 9, 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...................................................................................................... 24

*Bell Atl. Corp. v. Twombly*,
    *550 U.S.* 544 (2007) .............................................................................................................. 19

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
    750 F.3d 227 (2d Cir. 2014)................................................................................................... 12

*City of N. Miami Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
    19-cv-10825 (JPO), 2021 WL 212337 (S.D.N.Y Jan. 21, 2021)................................................ 9

*City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.,*
    637 F.3d 169 (2d Cir. 2011)................................................................................................... 11

*City of Westland Police and Fire Ret. Sys. v. Metlife, Inc.*,
    129 F. Supp. 3d 48 (S.D.N.Y. 2015)........................................................................... 7, 16, 17

*Dodds v. Cigna Sec., Inc.*,
    12 F.3d 346 (2d Cir. 1993).................................................................................................... 12

*DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*,
    413 F. Supp. 3d 187 (S.D.N.Y. 2019)................................................................................... 25

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009).................................................................................................. 7, 8

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011).................................................................................................. 7, 15

*Finger v. Pearson PLC*,
    No. 17 CIV. 1422 (RJS), 2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019).............................. 15

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
    639 F. App'x 664 (2d Cir. 2016) ..................................................................................... 11, 13

*In re Adient plc Sec. Litig.*,
    No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ..................................... 15

*In re Aratana Therapeutics Inc. Sec. Litig.*,
   315 F. Supp. 3d 737 (S.D.N.Y. 2018)................................................................ 20

*In re AT&T/DirecTV Now Sec. Litig.*,
   No. 19-CV-2892 (VEC), 480 F. Supp. 3d 507 (S.D.N.Y. 2020).............................. 24

*In re Bausch & Lomb, Inc. Secs. Litig.*,
   592 F. Supp. 2d 323 (W.D.N.Y. 2008) .............................................................. 22

*In re Diebold Nixford, Inc. Sec. Litig.*,
   No. 19-CV-6180 (LAP), 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021)................... 23

*In re GE Sec. Litig.*,
   No. 19-cv-1013 (DLC), 2020 WL 2306434, (S.D.N.Y. May 7, 2020) ................... 15

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)............................................................. 6, 20

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ................................................................... 9, 10

*In re Mylan N.V. Sec. Litig.*,
   379 F. Supp. 3d 198 (S.D.N.Y. 2019)................................................................ 25

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015).................................................................. 20

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   No. 20-cv-08585 (LJL), 2022 WL 4085677 (S.D.N.Y. Sep. 2, 2022)………………………..23

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)........................................................................ 8, 21

*Kleinman v. Elan Corp., plc*,
   706 F.3d 145 (2d Cir. 2013)......................................................................... 6, 7

*Kusnier v. Virgin Galactic Holdings, Inc.*,
   21-CV-03070-ARR-TAM, 2022 WL 16745512 (E.D.N.Y. Nov. 7, 2022)............................. 16

*Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp.*,
   902 F. Supp. 2d 329 (S.D.N.Y. 2012)................................................................. 13

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976)........................................................................... 9

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010)...................................................................................... 11

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..............................................................................8, 20, 21

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015).........................................................................6, 7, 14, 15, 16, 18

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)...................................................................................... 6

*Rosi v. Aclaris Therapeutics, Inc.*,
    No. 19-cv-7118 (LJL), 2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021)...................................... 20

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009)..................................................................................... 8, 21

*Schiro v. Cemex*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019)........................................................................ 19

*SEC v. Rio Tinto PLC*,
    41 F.4th 47 (2d Cir. 2022) ..................................................................................... 24

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
    417 F. Supp. 3d 379 (S.D.N.Y. 2019)........................................................... 17, 18, 19, 24

*Stoneridge Inv. Partners, LLC v. Scientific–Atlanta*,
    552 U.S. 148 (2008)................................................................................................ 6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)........................................................................................ 8, 23, 24

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)............................................................................ 6, 7, 18, 19, 20

*Touchstone Strategic Tr. v. Gen. Elec. Co.*,
    No. 19-CV-1876 (JMF), 2022 WL 4536800 (S.D.N.Y. Sept. 28, 2022) ...................... 9, 21, 24

*U.S. S.E.C. v. Citigroup Glob. Mkts. Inc.*,
    827 F. Supp. 2d 328 (S.D.N.Y. 2011)........................................................................ 10

*United States v. Gilbert*,
    668 F.2d 94 (2d Cir. 1981)........................................................................................ 9

*Woodley v. Wood*,
    No. 20-CV-2357 (ER), 2022 WL 103563 (S.D.N.Y. Jan. 11, 2022)...................................... 22

*Woolgar v. Kingstone Cos., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020)............................................................... 16, 21, 22

*Xiang v. Inovalon Holdings, Inc.,*
    268 F. Supp. 3d 515 (S.D.N.Y. 2017)....................................................................................... 12

*Yaroni v. Pintec Tech. Holdings Ltd.,*
    600 F. Supp. 3d 385 (S.D.N.Y. 2022)......................................................................... 12, 13, 14


**Statutes**

15 U.S.C. § 78u–4(b)(2) ................................................................................................................ 8

28 U.S.C. § 1658(b) ..................................................................................................................... 11


**Rules**

Fed. R. Civ. P. 10......................................................................................................................... 17

**Other Authorities**

*In re Gary S. Klein,*
    Exchange Act Release No. 92611 (August 9, 2021) ...................................................... 5

Defendant Gary Klein respectfully submits this memorandum of law in support of his motion to dismiss the Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint" or "Compl.") filed by the Lead Plaintiff CJD Property Finance Company, LLC ("Plaintiff"), by its attorneys, on behalf of itself and all others similarly situated.

## INTRODUCTION

Plaintiff's securities fraud claims against Defendant Gary Klein, the former CFO of Sequential Brands ("Sequential" or the "Company"), are based entirely on the timing of a goodwill impairment charge. Goodwill is an intangible asset associated with the purchase of one company by another. While a public company must test goodwill for potential impairment, this is an accounting determination produced through an exercise of judgment. In conjunction with various consultants and its outside auditor, Sequential closely reviewed its goodwill starting in late 2016 and eventually recorded an impairment charge in February 2018. Mr. Klein participated in that process before leaving the Company on August 31, 2017 (i.e., almost six months before the charge was taken).

Following the impairment charge, the U.S. Securities and Exchange Commission ("SEC") conducted a thorough investigation and eventually alleged that Sequential should have taken the charge at an earlier date. For its claims against Mr. Klein, the Complaint relies entirely – and improperly – on unproven allegations asserted by the SEC in its complaint against Sequential and settlement order with Mr. Klein. But even if the Court were to credit those allegations (which it should not), the SEC *never charged Mr. Klein with securities fraud*. Instead, Mr. Klein settled books-and-records violations with the SEC, which carry no state of mind requirement and cannot support any inference of fraud.

As a threshold matter, Plaintiff's claims against Mr. Klein are barred by the relevant statute of limitations. Even if the claims were timely (which they are not), the Complaint falls

woefully short of adequately alleging the existence of securities fraud.  Because goodwill

assessments are opinions, Plaintiff must demonstrate that Mr. Klein did not honestly believe in

the accuracy of the Company's assessments or that the assessments did not rest on some

meaningful inquiry, rendering them misleading to a reasonable person reading them fairly and in

context.  Plaintiff fails to meet this demanding standard.  The Complaint – consistent with the

SEC documents on which it is based – is devoid of *any* allegations suggesting that Mr. Klein did

not honestly believe the goodwill impairment testing conclusions reached by Sequential and

reviewed by its outside auditors.  Moreover, the Complaint itself establishes that Mr. Klein

engaged in a meaningful inquiry into the issue.

Plaintiff also challenges certain opinion statements related to the effectiveness of the

Company's internal controls over financial reporting, but those challenges fare no better.

Plaintiff offers no particularized allegations demonstrating that Mr. Klein was aware of any

material weakness in Sequential's internal controls related to goodwill impairment testing at the

time the challenged statements were made.  Plaintiff also ignores that, during the Class Period,

Sequential's independent auditor reviewed the accuracy of the Company's goodwill impairment

testing, and its auditor also reviewed the effectiveness of the Company's internal controls.  The

fact that the auditor took no exception to the Company's conclusions undermines the assertion

that Mr. Klein must have known they were inaccurate at the time.

Finally, and perhaps most importantly, Plaintiff's theory of fraud makes no sense.

Plaintiff alleges no cognizable motive for Mr. Klein to have engaged in this conduct, because

none exists.  Nor does the Complaint cite a single document, or statements from any witness,

supporting the idea that Mr. Klein attempted to defraud investors.  The more compelling

inference from the alleged facts is that Mr. Klein may have made a good faith mistake in his

2

handling of a complicated accounting judgment.  That could suffice to explain the SEC's

decision to bring book-and-records claims, but it falls well short of securities fraud.

## BACKGROUND

This background section sets forth the handful of allegations in the Complaint that relate

specifically to Mr. Klein's alleged actions.  Mr. Klein adopts and incorporates by reference the

Background set forth in the Memorandum of Law in Support of the Motion to Dismiss filed by

Defendants Andrew Cooper, Chad Wagenheim, Peter Lops, David Conn, Daniel Hanbridge,

Lorraine DiSanto, William Sweedler, Aaron Hollander, Al Gossett, and Stewart Leonard, Jr. (the

"Gibson Defendants") and directs the Court to that brief for a fuller summary.

Mr. Klein served as Sequential's Chief Financial Officer from December 2012 through

August 2017.  Compl. ¶ 28.  In this role, he oversaw Sequential's assessments of whether

goodwill was impaired.  *Id*. ¶ 29.  In the fourth quarter of 2016, the Company conducted its

annual goodwill impairment test with the assistance of an external valuation consultant, whom

Sequential had retained to conduct a quantitative assessment of its fair value.  *Id.* ¶ 96.  On

December 6, 2016, the consultant provided a report showing that Sequential had passed the

quantitative test and its goodwill was not impaired as of October 1, 2016.  *Id.* ¶ 97.  Shortly after

receiving the report, Mr. Klein forwarded it to Mr. Hollander, chair of Sequential's Audit

Committee, and CohnReznick LLC ("CohnReznick"), Sequential's auditor.  *Id.* ¶ 98.  Mr.

Hollander asked Mr. Klein, "Do we meet the test today?"  *Id.* ¶ 99.  In response to this question

and "at the direction of Mr. Klein," senior accounting and finance personnel conducted two

internal fair value calculations, which both indicated that the company's market capitalization

had declined below its carrying amount.  *Id.* ¶ 29.  A sustained decline in market capitalization

below book value is one indicator of a potential goodwill impairment that may require further

testing.  *Id.* ¶ 79.

As a result of the two internal fair value calculations, Sequential's senior accounting and finance personnel also conducted a supplemental qualitative analysis of Sequential's goodwill in early 2017. *Id.* ¶ 107. On February 3, 2017, Sequential's Senior Vice President of Finance emailed Mr. Klein that the team would "work on some qualitative talking points to support our company value as it relates to goodwill at 12/31/16" and that the external consultant had been engaged to gather facts "to bolster our argument." *Id.* ¶ 108. There is no allegation concerning Mr. Klein's response to this email. According to the SEC, Mr. Klein did not adequately take into account the internal fair value calculations and other negative factors. *Id.* ¶ 111.

On February 16, 2017, Mr. Hanbridge emailed Mr. Klein that "[CohnReznick] did not seem concerned or think that we should have an impairment, but that could change if/when they take a deeper look." *Id.* ¶ 109. There is no allegation that CohnReznick changed its opinion. Senior accounting and finance personnel at the Company (which would have included Mr. Klein), with the help of its third-party valuation specialist and approval from CohnReznick, conducted qualitative analyses in the first two quarters of 2017 to determine if the company had experienced any triggering events. *Id.* ¶¶ 262-63. Sequential determined not to take a goodwill impairment charge in the first two quarters of 2017, and CohnReznick reviewed these interim assessments and took no exception. *Id.* ¶ 262.

The SEC filed a complaint against Sequential on December 11, 2020 (the "SEC Complaint"). *S.E.C. v. Sequential Brands Grp., Inc.*, Case No. 1:20-cv-10471 (S.D.N.Y. Dec. 11, 2020). On August 21, 2021, the SEC announced a settlement with Mr. Klein (the "Klein

Order"),[1] which was entered without Klein admitting or denying the findings therein. [2]  Compl. ¶ 29.  In the Klein Order, the SEC does *not* allege Mr. Klein believed that Sequential's goodwill was likely impaired during his tenure as CFO, that Mr. Klein knew that the Company's disclosures and books and records did not accurately reflect its goodwill or that Sequential's internal controls over financial reporting were deficient, or that Mr. Klein had any intent to conceal such information from investors.  Even after the SEC's probe of the issue, Sequential determined that no write-down in goodwill was appropriate during the Relevant Period and continued to disagree with the SEC's assessment of the relevant standards.  *See id.* ¶¶ 131, 195, 206, 208, 212, 213, 216, 222.

Plaintiff asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 alleging that material misstatements and omissions were made regarding the Company's business, operations, and internal controls.  The alleged misrepresentations from the time period when Mr. Klein served as CFO of Sequential – and therefore the only misrepresentations for which he supposedly can be held responsible – are limited to: (a) Sequential's public disclosures about goodwill and impairment testing (*id.* ¶¶ 135, 137-138, 140, 142, 147, 149, 151, 153, 155, 157), (b) SOX and related certifications in SEC filings attesting to the accuracy of financial reporting and the disclosure of any material changes to the Company's internal control over financial reporting (*id.* ¶¶ 134, 139, 142, 148, 154), and (c) a risk factor in Sequential's 2016 Form 10-K about the possibility that the Company might need to write-down its goodwill (*id.* ¶ 145).

---

[1] *In re Gary S. Klein*, Exchange Act Release No. 92611, Accounting & Auditing Enforcement Release No. 4241, Administrative Proceeding File No. 3-20456 (August 9, 2021), https://www.sec.gov/litigation/admin/2021/34-92611.pdf.

[2] The findings in the Klein Order were made pursuant to Mr. Klein's offer of settlement and are explicitly not binding on any other person or entity in any proceeding.  Klein Order at 2.

**LEGAL STANDARD**

Plaintiff's claims arise under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.  To successfully state a Rule 10b-5 claim, a plaintiff must adequately plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta*, 552 U.S. 148, 157 (2008).

A Section 10(b) plaintiff must plausibly allege that a material statement is false and "demonstrate with specificity why and how that is so."  *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *accord Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152–53 (2d Cir. 2013).  "Falsity is a failure to be truthful—it is not a misapprehension, misunderstanding, or mistake of fact at the time a statement was made."  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014), *aff'd,* 604 F. App'x 62 (2d Cir. 2015).  And "whether a statement is 'misleading' depends on the perspective of a reasonable investor: The inquiry . . . is objective."  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186-87 (2015) (citation omitted).

In *Omnicare*, the Supreme Court held that statements of opinion or belief, like the accounting judgments at issue in this case, are only false if (1) the opinion or belief is itself a factual misstatement; or (2) the opinion or belief omits a material fact or information that, in its full factual context, would cause the statement to mislead a reasonable investor.  575 U.S. at 182-87.[3]  Under the first prong, a statement of opinion is itself a statement that the speaker holds the

---

[3] Although *Omnicare* involved claims brought under Section 11 of the Securities Act of 1933, the Second Circuit has held it applies to Section 10(b) claims under the Exchange Act as well.  *See generally Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

relevant belief. *Id.* at 183. Therefore, an opinion or belief only is actionable if "the 'defendant's opinions were both false and not honestly believed when they were made.'" *Kleinman*, 706 F.3d at 153 (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011)).

Under the second *Omnicare* prong, even if a statement of opinion is literally accurate (i.e., it is honestly held), it still may be actionable if the opinion omits to state facts necessary to make the opinion not misleading. *Omnicare*, 575 U.S. at 186-87. The Court explicitly rejected the possibility that a statement of opinion could be false because "external facts show the opinion to be incorrect," because a company failed to "disclose[] some fact cutting the other way," or because the company did not disclose that others disagreed with its opinion. *Id.* at 176.[4] Instead, to establish that an opinion was misleading on the basis of the omission of discrete factual representations, a plaintiff must show "that the statement did not 'rest on some meaningful . . . inquiry,' rendering it 'misleading to a reasonable person reading the statement fairly and in context.'" *City of Westland Police and Fire Ret. Sys. v. Metlife, Inc.*, 129 F. Supp. 3d 48, 72 (S.D.N.Y. 2015) (quoting *Omnicare*, 575 U.S. at 188, 194). Alleging an opinion is misleading on this basis is "no small task" for plaintiffs, and a court must consider not only the full statement being challenged and the context in which it was made, but also other statements made by the company, and other publicly available information, including the customs and practices of the relevant industry. *Id.*

Additionally, to survive a motion to dismiss, the PSLRA establishes that a well-pleaded securities fraud claim must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). "The requisite state

---

[4] The Second Circuit has noted the Supreme Court's "caution[ ] against an overly expansive reading of [the *Omnicare*] standard," highlighting the Supreme Court's holding that "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts," and "[a] reasonable investor does not expect that every fact known to an issuer supports its opinion statement." *Tongue*, 816 F.3d at 210.

of mind in a section 10(b) and Rule 10b–5 action is an intent 'to deceive, manipulate, or defraud.'" *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007)). A strong inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

In the Second Circuit, a strong inference of scienter "can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *JP Morgan Chase*, 553 F.3d at 198. Conscious misbehavior "encompasses deliberate illegal behavior," *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000), whereas recklessness includes "conscious recklessness" or "a state of mind *approximating actual intent, and not merely a heightened form of negligence*." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (quoting *Novak*, 216 F.3d at 312) (emphasis in original). A plaintiff adequately pleads recklessness where it alleges that the defendant: (1) knew facts or had access to information contradicting its public statements; or (2) failed to review or check information that it had a duty to monitor. *See Novak*, 216 F.3d at 308. If a motive to commit fraud has not been shown, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

## ARGUMENT

### I.    The Complaint Should be Dismissed Because it Impermissibly Adopts Allegations from an SEC Complaint and SEC Consent Orders.

Plaintiff's allegations that rely on the SEC Complaint, the Klein Order, and the consent orders with CohnReznick and certain of its partners – which is virtually every substantive

8

allegation in the Complaint – should be disregarded in their entirety.  The Second Circuit has made it clear that "references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure."  *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir. 1976)); *see also United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981).  As a result, "[c]ourts generally do not consider averments taken from uncorroborated allegations embedded in a complaint in another action or parroted allegations for which counsel has not conducted independent investigation." *Touchstone Strategic Tr. v. GE*, No. 19-CV-1876 (JMF), 2022 WL 4536800, at *2 (S.D.N.Y. Sep. 28, 2022) (internal citations and quotation marks omitted).

In *Touchstone*, the court specifically addressed the use of a consent judgment between the SEC and a company in later litigation against that same company.  The court concluded that the "Second Circuit has cautioned that a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues – such as the SEC Order in this case, which includes a proviso that GE neither admits nor denies the SEC's allegations – cannot be used as evidence in subsequent litigation between that corporation and another party."  *Id.* at *2 (citations and internal quotations omitted).[5]  Accordingly, courts routinely disregard or strike unproven allegations drawn from complaints filed, and consent orders entered, in SEC proceedings.  *See, e.g.*, *Amorosa v. Gen. Elec. Co.*, No. 21-CV-3137

---

[5] *Accord City of N. Miami Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, 19-cv-10825 (JPO), 2021 WL 212337 (S.D.N.Y Jan. 21, 2021) (Oetken, J.), *aff'd sub nom. Town of Davie Police Officers Ret. Sys. v. City of N. Miami Beach Police Officers' and Firefighters' Ret. Plan*, 2021 WL 5142702 (2d Cir. Nov. 5, 2021) (holding that *Lipsky* rule is limited to situations where, as here, the unadjudicated orders are being used against the same defendants).

(JMF), 2022 WL 3577838, at *3 (S.D.N.Y. Aug. 19, 2022) (disregarding allegations taken from the complaint in a separate action and an SEC order); *U.S. S.E.C. v. Citigroup Glob. Mkts. Inc.*, 827 F. Supp. 2d 328, 333 (S.D.N.Y. 2011) ("allegations of the complaint that give rise to the consent judgment are not evidence of anything [and] 'neither [an SEC] complaint nor reference to [such] a complaint which results in a consent judgment may properly be cited in the pleadings in a parallel private action and must instead be stricken") (citation omitted); *Merrill Lynch.*, 218 F.R.D. at 79 (striking allegations that referred to or relied upon SEC complaints and complaints filed in other litigations).

Here, the SEC Complaint was resolved as to Mr. Klein in conjunction with the August 9, 2021 Klein Order, in which Mr. Klein neither admitted nor denied the allegations of the SEC Complaint.  Compl. ¶ 29.  Likewise, the SEC Complaint was resolved as to CohnReznick and Defendants Wyss, Jackson, and Hilbert (the "CohnReznick Partner Defendants") – in the CohnReznick Order and the CohnReznick Partner Order, respectively – pursuant to settlements in which CohnReznick and the CohnReznick Partner Defendants neither admitted nor denied the allegations of the SEC Complaint.  *See id.* ¶ 14.  Accordingly, the voluminous allegations in the Complaint that cite, copy, reference, or rely upon the SEC Complaint, the Klein Order, the CohnReznick Order, or the CohnReznick Partner Order are immaterial and should be disregarded or stricken.[6]  Absent these allegations copied from the SEC materials, there is no substance to Plaintiff's claims against Mr. Klein, and those claims are subject to dismissal on that basis alone.

---

[6] Specifically, paragraphs 12, 24, 29, 90, 96-101, 104-11, 113, 120, 122, 127, 128, 133, 254-90 and 322-26 should be stricken from the Complaint.

II.        **Plaintiff's Claims Are Barred by the Statute of Limitations.**

Private actions asserting claims under Section 10(b) and Rule 10b-5 must be brought within two years after the discovery of the facts constituting the violation.  28 U.S.C. § 1658(b). This period is triggered once the plaintiff discovers, or with reasonable diligence should have discovered, the facts constituting the violation (whichever is earlier).  *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010).  For purposes of this "discovery rule," a fact is "discovered" when "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.,* 637 F.3d 169, 175 (2d Cir. 2011)*.*  For Section 10(b) claims, the statute of limitations "cannot commence until, with reasonable diligence, a plaintiff could have discovered facts indicating that 'a defendant made a material misstatement *with the intent to deceive* – not merely innocently or negligently." *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 666 (2d Cir. 2016) (emphasis in original) (citation omitted).

The initial complaint in this action was filed on March 16, 2021.  ECF Doc. No. 1.  The claims against Mr. Klein (which are based entirely on alleged misstatements about Sequential's goodwill that were made *before* any impairment charge was taken) therefore are untimely if a reasonable investor could have had sufficient information to plead those claims by March 15, 2019 (two years prior to filing).  Here, Plaintiff's own allegations show that such facts were or should have been known by February 28, 2018, when Sequential announced it was taking the impairment charge.  While Plaintiff may argue that the impairment charge was not enough to put him on notice that Sequential Brands acted fraudulently, that argument is belied by his own complaint.

First, Plaintiff alleges that the announcement of the impairment charge was a corrective disclosure.  Compl. ¶¶ 319, 329 (alleging the disclosure revealed the truth about the value of

11

Sequential's goodwill to the market and caused investor losses).  Under well-established Second Circuit precedent, a corrective disclosure is "*a disclosure of the fraud* by which the available public information regarding the . . . company's financial condition was corrected."  *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014) (internal quotations and citations omitted) (emphasis added).  Having alleged that the supposed fraud about Sequential's goodwill valuation was revealed to the market on February 28, 2018, even if only partially, Plaintiff cannot now assert that he was not on notice of his claims against Mr. Klein as of that date.  *See Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 396 (S.D.N.Y. 2022) ("[w]here, as here, the company issues a disclosure that a plaintiff relies on to demonstrate that the registration statement contained misstatements or omissions, '[t]he corrective disclosure date is the same as the constructive notice date for purposes of limitations.'") (quoting *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011)).[7]

Second, on February 28, 2018, Sequential announced the write-down of the full value of its goodwill of $304.1 million.  Compl. ¶ 126.  The market reaction was extremely negative, with a sharp decline in Sequential's stock price and the issuing of critical reports by analysts.  *Id.* ¶¶ 319-320.  Moreover, this came after a long series of Sequential stock price declines and earnings guidance downward revisions in 2016 and 2017.  *Id*. ¶¶ 256, 262.  Under these factual

---

[7] Although *Yaroni* involved claims brought under the Securities Act of 1933, courts apply the same standards when assessing the timeliness of claims brought under the Securities Act as they do to claims brought under the Exchange Act.  *Xiang v. Inovalon Holdings, Inc.,* 268 F. Supp. 3d 515, 521 (S.D.N.Y. 2017) ("[T]he Second Circuit has previously recognized that the statute of limitations provisions of both the Securities and the Exchange Acts are similar, as 'the statutory periods for claims under either of these provisions begin to run when the claim accrued or upon discovery of the facts constituting the alleged fraud.' . . . It logically follows, then, to apply the same standard to both Acts.") (quoting *Dodds v. Cigna Sec., Inc*., 12 F.3d 346, 350 (2d Cir. 1993)).

circumstances, the case law is again clear that constructive notice was triggered no later than the impairment disclosure date. *See Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp.*, 902 F. Supp. 2d 329, 347 (S.D.N.Y. 2012) (Exchange Act claims barred by statute of litigations in light of share price declines prior to disclosure; "[i]t is simply not plausible that a share price decline of 95% in a 15-month period could pass without shareholders being put on notice that a reasonably diligent investigation may reveal a problem with the company").

Finally, Plaintiff asserts in the Complaint that there were many contemporaneous, public indicators that Sequential should have taken the impairment charge earlier, including the Company's share price declines, investor concerns over the Company's debt, the earnings guidance downward revisions in 2016 and 2017, and the removal of Defendant Shmidman from his position as CEO in 2017. Compl. ¶¶ 99, 112, 118, 120. Indeed, Plaintiff's claims against Mr. Klein are largely based on his supposed failure to disclose two internal calculations that the SEC later alleged showed that goodwill might have been impaired as early as Q4 2016. *Id.* ¶ 4. But Plaintiff concedes (as it must) that the omitted internal calculations "*used the same methodology that Sequential had disclosed in its SEC filings.*" *Id.* ¶ 323 (emphasis added). In other words, an investor could have used public information to replicate those calculations and reach his or her own determination as to whether, based on the results, the goodwill impairment should have been taken at an earlier date.[8] Any assertion by Plaintiff that a "reasonable investigation" could not have revealed the supposed fraud prior to March 15, 2019 beggars belief. *See Gavin/Solmonese LLC*, 639 F. App'x at 667; *see also Yaroni*, F. Supp. 3d at 399 ("To

---

[8] These internal calculations were calculated by simply multiplying the number of shares of Sequential's stock outstanding by the stock price and adjusting for a control premium. Klein Order ¶¶ 2, 11.

trigger the statute of limitations, disclosures do not have to perfectly match the allegations that a plaintiff chooses to include in its complaint.") (citation omitted).

In sum, the Complaint makes it clear on its face that investors were put on notice of potential fraud by the disclosure of the impairment charge on February 28, 2018. Nothing more is required for the Court to find that all of the claims against Mr. Klein, which are based entirely on alleged misstatements made before that date, should be dismissed.

### III.  Plaintiff Has Failed to State a Claim Because Plaintiff Does Not and Cannot Adequately Plead That Mr. Klein's Alleged Opinions About Goodwill and Internal Controls Were False When Made.

The alleged misstatements made during Mr. Klein's tenure at Sequential are statements of opinion concerning either the Company's goodwill or its internal controls over financial reporting. These statements cannot serve as the basis for Plaintiff's claims because Plaintiff has not pleaded with particularity that Mr. Klein did not genuinely believe his stated opinions, or that he omitted information that, in its full factual context, would cause the statements to mislead a reasonable investor. *Omnicare*, 575 U.S. at 182-87.

The claims against Mr. Klein are based on opinions presented by Sequential in its SEC filings. In particular, the Complaint alleges that Mr. Klein made misleading statements concerning (1) the Company's goodwill, assets, and income data, (2) when goodwill is tested for impairment by the Company, (3) the change in the annual impairment testing date from December 31 to October 1 and that this change did not delay, accelerate, or avoid an impairment change, (4) that, as of December 31, 2016 and 2015, no impairment of goodwill had been identified, and (5) the adequacy of Sequential's internal controls over financial reporting as they related to the goodwill impairment testing. Compl. ¶¶ 134, 135, 137-40, 142, 143, 147-49, 151, 153-55, 157.

14

Statements concerning a company's goodwill are inherently statements of opinion. *Fait*, 655 F.3d at 110 ("Estimates of goodwill depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact."); *In re GE Sec. Litig.*, No. 19cv1013 (DLC), 2020 WL 2306434, at 14, (S.D.N.Y. May 7, 2020) ("Goodwill balances are accounting estimates produced through an exercise of judgment."). Similarly, the Company's disclosure in its 10-K for 2016 that "[b]ased on our management's assessment, our management concluded that our internal control over financial reporting was effective as of December 31, 2016" provided Mr. Klein's opinion on their effectiveness. Accordingly, under *Omnicare*, these statements are only actionable if Mr. Klein either did not honestly believe the statements or failed to engage in a material inquiry to support the statements.

As to the goodwill claims, there are no particularized allegations that Mr. Klein did not sincerely believe the disclosures concerning goodwill, even if his beliefs were incorrect or unreasonable. *See, e.g.*, *In re Adient plc Sec. Litig.*, No. 18-CV-9116 (RA), 2020 WL 1644018, at \*16-17 (S.D.N.Y. Apr. 2, 2020) (plaintiffs failed to sufficiently allege facts showing that Defendants did not believe the challenged opinions at the time they made the statements). Plaintiff's bald allegations that Mr. Klein and the other Sequential Defendants "knew or recklessly disregarded" that the statements were false are entirely conclusory. *Finger v. Pearson PLC*, No. 17 CIV. 1422 (RJS), 2019 WL 10632904, at \*13 (S.D.N.Y. Sept. 16, 2019) (dismissing "conclusory" allegations of scienter where plaintiffs failed to plead "facts to suggest that Defendants did not subjectively believe that their projections, opinions, and valuations were correct when made").

Plaintiff also fails to plausibly allege that Mr. Klein received direct contradictory information demonstrating that his opinions were incorrect.  Plaintiff points repeatedly to the December 2016 internal calculations performed by "senior accounting and finance personnel" that allegedly concluded that goodwill was "more likely than not" impaired, but the mere existence of contradictory information is insufficient.  *Kusnier v. Virgin Galactic Holdings, Inc.*, No. 21-CV-03070-ARR-TAM, 2022 WL 16745512, at \*22 (E.D.N.Y. Nov. 7, 2022) ("[I]t is not enough for plaintiffs to allege that a report was made to an individual defendant or that the individual defendant attended a meeting about the report . . . .").  Indeed, as stated in the Klein Order relied upon by Plaintiff, the supposed issue was that Sequential "did not appropriately account for this quantitative evidence of likely impairment," not that the calculations themselves were sufficient to conclusively establish the existence of an impairment.  Klein Order at 2.  What Plaintiff fails to provide here are any documents or witness statements indicating that Mr. Klein believed that the internal calculations, or any other evidence of potential impairment available to him, required the taking of a goodwill impairment charge.  Accordingly, these allegations are insufficient to demonstrate that Mr. Klein's statements were false when made.  *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 220 (S.D.N.Y. 2020) (allegations that defendants received "reports detailing significant undervaluation found on the books" and/or attended "meetings about the reports," were not particularized facts indicating that defendants believed that the loss reserves were false or inaccurate).[9]

Plaintiff's claims fare no better under the second prong of *Omnicare*, where they must show that the goodwill opinions did not rest on some meaningful inquiry.  *City of Westland*, 129

---

[9] The allegations concerning the December 2016 internal calculations should also be disregarded because they improperly rely on the SEC Complaint and related consent orders.  *See supra* Section I.

16

F. Supp. 3d at 72 (an opinion about a financial metric cannot rely solely upon subjective views). Here, the Complaint is replete with details about the meaningful inquiry that Mr. Klein undertook in connection with Sequential's goodwill impairment testing, which included internal analyses (*see* Compl. ¶¶ 29, 96-99, 107-09) and extensive consultation with an external valuation expert and the Company's outside auditor (Compl. ¶¶ 107, 109, 254-56). *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 397 (S.D.N.Y. 2019) (holding that a complaint does not establish a defendant's failure to undertake a meaningful factual inquiry when it details a "complex" internal analytical process, "as well as an auditing scheme designed to . . . detect weaknesses in that process."). While the Complaint alleges that the year-end 2016 goodwill impairment memorandum created by Sequential did not correctly assess the need for an impairment (Compl. ¶¶ 107-109, 258-261), the memorandum more than adequately demonstrates that Mr. Klein and Sequential carefully considered the issue. *See* Ex. 1, Q4 2016 – Goodwill Impairment Analysis Memo, at 5-6.[10]

The goodwill impairment memorandum notes that the Company's stock price drop triggered a re-evaluation of goodwill impairment by management. *Id.* at 5 ("From the time that the Company performed its annual goodwill impairment analysis at 10/1/2016 to year-end the Company's stock price experienced a decline from $8.00 to $4.68."). The memorandum describes the reasoning underpinning management's conclusion that an impairment event had not occurred that would make it more likely than not that the fair value of the Company had dropped below its carrying value. *Id.* at 4-6 (noting that changes in EBITDA and net income forecasts were primarily due to a higher than expected post-acquisition cost-structure, not

---

[10] The Court can consider the goodwill impairment memorandum in deciding this motion because Plaintiff cites the memorandum in the Complaint. Compl. ¶¶ 107-110 (citing SEC Complaint at 22-24); Fed. R. Civ. P. 10.

fundamental changes to the business; "financial performance trends have been positive through 2016, which is expected to continue in 2017"; and the Company "continues to generate sufficient cash flows to meet operational needs and service its debt obligations."). And, finally, the memorandum concludes that "Management believes that the stock price depreciation for SQBG since the impairment test on October 1, 2016 is due to the overall industry being out of favor with investors combined with the reaction to the downward revised guidance that the Company released along with its Q3 results . . . Sequential's financial performance, growth rates, and historical trading multiples, combined with the strategic opportunities in place at year-end and into 2017, would indicate a significantly higher fair value as a whole in an orderly transaction." *Id.* at 6.

Based on the goodwill impairment memorandum and other internal and external analyses cited in the Complaint, there can be no question that Sequential and Mr. Klein undertook a meaningful inquiry under the relevant accounting standard (ASC 350-20-3-3C).[11] Plaintiff alleges, at most, purported deficiencies in Sequential's application of a complicated accounting standard, allegations which amount to "fact[s] cutting the other way," *Tongue v. Sanofi*, 816 F.3d 199, 210, 214 (2d Cir. 2016) (quoting *Omnicare*, 575 U.S.at 189), or "information that ran counter to the opinion." *Id.* at 212. Even if the SEC were correct as to Sequential's supposed mishandling of the goodwill impairment testing (which has never been proven), that conclusion is insufficient to establish that the opinion statements were false based on the failure to disclose the lack of a material inquiry. *See Sjunde*, 417 F. Supp. 3d at 397 ("GE's estimates of its

---

[11] "In evaluating whether it is more likely than not that the fair value of a reporting unit is less than its carrying amount, an entity shall assess relevant events and circumstances. Examples of such events and circumstances include . . . Macroeconomic conditions . . . Industry and market considerations . . . Overall financial performance . . . [and] Other relevant entity-specific events such as changes in management." ASC 350-20-35-3C. All of these items were considered in the goodwill impairment memorandum.

insurance reserves — and the implied message that those estimates were based on an adequate inquiry and accurate inputs — do not run counter to facts showing, for example, that some of the models underlying the estimates were not validated, lacked adequate supporting documentation, were created using less sophisticated software, or used 'hard-cod[ed]' assumption values rather than variables.").[12]

Similarly, Plaintiff's internal controls claims are based entirely on the fact that the SEC has alleged Mr. Klein caused "internal controls violations related to the Company's failure to impair goodwill in a timely manner."  Compl. ¶ 14.  Whatever the merits of that unsupported assertion, it does nothing to establish the falsity of Mr. Klein's *opinion* as to the effectiveness of Sequential's internal controls as of the issuance of the 2016 Form 10-K.  *See, e.g.*, *Schiro v. Cemex*, 396 F. Supp. 3d 283, 299 (S.D.N.Y. 2019) ("Although Cemex later disclosed that its financial controls had not been effective during this time period . . . the 2014 and 2015 statements did not state that the Company's internal controls were effective—they stated only that management had concluded as much . . . .").  As with the goodwill allegations, the Complaint does not allege any facts showing that Mr. Klein did not sincerely believe that the Company's internal controls over financial reporting were effective or that Mr. Klein failed to engage in a material inquiry into the effectiveness of those controls.[13]

---

[12] With respect to Sequential's statements in the Q3 2016 10-Q and 2016 10-K concerning the change in the annual impairment testing date from December 31 to October 1 and that this change did not delay, accelerate, or avoid an impairment change, Plaintiff alleges that these statements were misleading because they omitted that this change enabled the company to avoid and delay addressing the changed circumstances involving the share price declines. Compl. ¶¶ 136, 144, 175.  But the factual allegations in the Complaint establish plausible nonfraudulent explanations for these statements—i.e., that the earlier impairment testing date allowed for more timely completion of the annual impairment test prior to the end of the annual financial reporting period.  *Id.* ¶¶ 135, 142, 170-71; *see Bell Atl. Corp. v. Twombly, 550 U.S.* 544, 566–67 (holding that a plaintiff does not plausibly allege an unlawful motive where the pleaded facts "could equally have been" explained by legitimate business motivations).  It also is notable that the SEC did *not* allege, as part of the Klein Order, that there was anything improper about Sequential's decision to change the testing date, never mind that it was part of some fraudulent scheme.

[13] The allegedly misleading SOX certifications and risk factor about the potential for future write-downs of goodwill are not actionable as false statements either.  "The law in this District is clear and uniform that such SOX

**IV.      Plaintiff Fails To Adequately Plead that Mr. Klein Acted With Scienter.**

For many of the same reasons that the Complaint fails to plead falsity with respect to the opinion statements regarding Sequential's goodwill and internal controls, it also fails to plead with particularity facts giving rise to a strong inference of Mr. Klein's scienter, under either the motive-and-opportunity or conscious misbehavior approaches. *See, e.g.*, *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 534 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (noting falsity and scienter requirements are essentially identical with regard to opinion statements). The Complaint's allegations as to Mr. Klein's supposed knowledge are conclusory and based entirely, and improperly, on SEC assertions in unadjudicated proceedings that do not themselves allege that Mr. Klein acted with scienter. *See In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018) (scienter inadequately plead where complaint failed to cite any "internal documents or confidential witness statements tending to suggest that defendants knowingly deceived shareholders").

To sufficiently allege scienter under a "motive and opportunity" theory, a plaintiff must show that the defendant "benefitted in some concrete and personal way from the purported fraud." *Novak*, 216 F.3d at 307-08; *see also Lululemon*, 14 F. Supp. 3d at 573 ("Motive and opportunity require plausible allegations that the maker of a statement could, and had the likely prospect of, realizing concrete benefits by the misstatement."). Here, Plaintiff does not plead that Mr. Klein had any cognizable motive to avoid taking a goodwill impairment charge. *See* Compl. ¶¶ 348-51. There are no allegations that Mr. Klein engaged in any insider trading during

---

certifications do not provide a stand-alone basis for liability under Section 10(b). Either the SEC filings contain materially misleading statements (in which case those statements can form the basis for liability) or they do not contain such statements. An allegation that the certification is false and misleading adds nothing." *Rosi v. Aclaris Therapeutics, Inc.*, No. 19-cv-7118 (LJL), 2021 WL 1177505, at *21 (S.D.N.Y. Mar. 29, 2021). Similarly, Plaintiff's allegation that the risk factor omitted to state that goodwill was already impaired presupposes that Mr. Klein held that opinion as of the date of the disclosure. As discussed, however, Plaintiff has failed to adequately plead the existence of any material misstatements or omissions about goodwill in Sequential's SEC filings.

the relevant time period or that he in any other way realized a concrete personal benefit as a result of the alleged misstatements.  At most, the Complaint alleges Mr. Klein was motivated to obtain a strong financial performance for the Company (*id.* ¶ 250), which is too generic a motive to support an inference of scienter.  *See Touchstone*, 2022 WL 4536800, at *2 ("Motives that are common to most corporate officers, such as the desire for a corporation to appear profitable and the desire to keep stock prices high . . . do not constitute 'motive' for purposes of this inquiry.").

Having failed to allege any adequate motive for Mr. Klein to have engaged in securities fraud, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142.  Instead, Plaintiff baldly alleges that if the Sequential Defendants "did not have actual knowledge of the misrepresentations and/or omissions alleged, they were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading, or turning a blind eye toward the true facts that were available to them." Compl. ¶ 351.  When relying on a theory that a defendant was reckless, however, plaintiffs must allege facts demonstrating "'a state of mind *approximating actual intent*, and *not merely a heightened form of negligence*.'"  *S. Cherry St.*, 573 F.3d at 109 (quoting *Novak*, 216 F.3d at 312) (emphasis in original).

Nothing in the Complaint demonstrates that Mr. Klein acted with anything close to "actual intent" to commit fraud in providing his opinions about goodwill and the Company's internal controls.  The fact that Mr. Klein was aware of potential evidence of a goodwill impairment does not mean that he did not honestly believe that an impairment charge was not required under the applicable accounting standards.  *See Woolgar*, 477 F. Supp. 3d at 238 (holding that allegations that defendants received reports "detailing significant undervaluation found on the books" and attended meetings about those reports, was not sufficient to allege that

21

defendants did not believe that the challenged accounting statements were accurate).  Moreover, the Company retained an external valuation expert to assist in its annual goodwill impairment testing, who provided the Company with a report in December 2016 showing that goodwill was not impaired.  Compl. ¶¶ 96-97.  And CohnReznick took no issue with the Company's conclusions and agreed that the Company's year-end 2016 financial statements and 2017 interim financial statements presented its financial position fairly in accordance with GAAP in all material respects, including its goodwill.  *Id.* ¶¶ 259, 261.  *See Woolgar*, 477 F. Supp. 3d at 193 ("[T]he fact that Kingstone's independent auditor and independent actuary were unable to identify any material inaccuracies or weaknesses undermines a finding of recklessness on Defendants' part.").

The Complaint's allegations likewise do not establish that Mr. Klein knew, at the time of the year-end 2016 certification, of any alleged internal control deficiencies.  Instead, Plaintiff baldly states, without any factual support, that "Sequential and the Sequential Defendants were deliberately reckless in not knowing or turning a blind eye to the fact that the Company's internal controls were deficient."  Compl. ¶ 330.  This is clearly insufficient.  *See, e.g.*, *Woodley v. Wood*, No. 20-CV-2357 (ER), 2022 WL 103563, at *8 (S.D.N.Y. Jan. 11, 2022) ("The fact that a defendant had a duty to review the Company's internal controls is not a substitute for specific allegations that he was provided with information that demonstrated the inadequacy of those internal controls."); *In re Bausch & Lomb, Inc. Secs. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (finding no scienter where plaintiffs did not "offer any particularized allegation[s] of an inference that management's assessment of internal controls . . . were not honestly and reasonably believed to be true when made").[14]

---

[14] Plaintiff alleges that the SOX certifications in Sequential's 10-Q's for the third quarter of 2016 and the first two quarters of 2017, and its 10-K for 2016, "attesting to the accuracy of financial reporting and the disclosure of any

When Plaintiff's scienter allegations are viewed holistically, as they are required to be under the *Tellabs* decision, it is clear that his theory of fraud as to Mr. Klein makes no sense. According to Plaintiff, Mr. Klein (in conjunction with all of Sequential's senior officers and outside auditor) knowingly engaged in a fraudulent scheme to avoid a $100 million impairment charge in late 2016, only to have Sequential turn around a year later and voluntarily implement a complete $304.1 million impairment. Plaintiff does not, because it cannot, allege that Mr. Klein obtained any concrete personal benefit from this delay. Nor does the Complaint cite a single document, or statements from any witness, supporting the idea that Mr. Klein attempted to defraud investors through this delay.

Instead, the Complaint actually creates a negative inference of scienter by detailing how, starting in October 2016, Mr. Klein oversaw goodwill impairment testing that involved extensive consultation with an external valuation specialist and CohnReznick, the Company's outside auditor. Compl. ¶¶ 29, 96-99, 107-108, 254-56, 262-63. Although there was evidence suggesting that a goodwill impairment charge might be necessary, all of these experts agreed that it was reasonable for the Company to conclude – both for year-end 2016 and the first two quarters of 2017 – that no charge was necessary. *Id.* And even the SEC, in bringing its claims related to the goodwill impairment, notably chose *not* to bring any claims against Mr. Klein (or

---

material changes to the Company's internal control over financial reporting and all fraud" were misleading because defendants failed to disclose that goodwill was likely impaired in December 2016 and that by moving its annual impairment testing date the Company was able to delay writing off goodwill. *See* Compl. ¶¶ 134 (3Q16 10Q), 139 (2016 10K), 148 (1Q17 10Q), 154 (2Q17 10Q). But the SOX certifications were qualified with the language "based on my knowledge," and Plaintiff has failed to adequately allege that Mr. Klein acted with the relevant scienter with respect to the goodwill impairment charge. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20-cv-08585 (LJL), 2022 WL 4085677, at *40 (S.D.N.Y. Sep. 2, 2022) (no liability where SOX certification "contained an important qualification that the certifying officer's statements are true based on his knowledge" and plaintiffs had not sufficiently alleged the requisite scienter) (citations omitted); *In re Diebold Nixford, Inc. Sec. Litig.*, No. 19-CV-6180 (LAP), 2021 WL 1226627, at *12 (S.D.N.Y. Mar. 30, 2021) (SOX certifications not misleading where "Plaintiff offers nothing beyond conjecture to suggest that Individual Defendants knew – at the time they signed their certifications – of any misrepresentations in DN's financial statements or deficiencies in the Company's internal controls").

23

any of the other defendants) that required a showing of scienter, instead alleging only that Mr.

Klein had violated books-and-records requirements in failing to take an impairment charge as of

year-end 2016.  Klein Order at 2.

The more compelling inference from the alleged facts is that Mr. Klein may have made a

good faith mistake in his handling of a complicated accounting judgment.  *See Sjunde*, 417 F.

Supp. 3d at 399 (holding that under the "'comparative inquiry' called for by the PSLRA," the

"alternative inference" that the defendant's accounting calculations were based on "out-of-date"

assumptions and "sloppy practices . . . is more compelling than the inference of fraud") (quoting

*Tellabs*, 551 U.S. at 314).  But good faith mistakes cannot form the basis for securities fraud

claims.[15]

### V.          Plaintiff's Section 20(a) Claim Also Must Fail.

To state a claim against Mr. Klein for a violation of Section 20(a), Plaintiff must show

"(1) a primary violation by the controlled person; (2) control of the primary violator by the

defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the

controlled person's fraud."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007).  For the reasons stated herein and in the memorandum of law submitted by the Gibson

---

[15] For the same reasons that Plaintiff has failed to adequately plead falsity or scienter as to the alleged misrepresentations in the Complaint, he cannot establish the existence of any deceptive acts engaged in by Mr. Klein, either by himself or in concert with the other Defendants, and therefore Plaintiff also has alleged no basis for a finding of "scheme liability" under Rule 10b-5(a) or (c).  *See SEC v. Rio Tinto PLC*, 41 F.4th 47, 53 (2d Cir. 2022) (". . . misstatements and omissions can form *part* of a scheme liability claim, but an actionable scheme liability claim also requires something *beyond* misstatements and omissions . . .") (emphasis in original); *In re AT&T/DirecTV Now Sec. Litig.*, No. 19-CV-2892 (VEC), 480 F. Supp. 3d 507 (S.D.N.Y. 2020), *aff'd sub nom. Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, No. 21-2698-CV, 2022 WL 17587853 (2d Cir. Dec. 13, 2022) (holding that where plaintiffs "have failed to plead either scienter or a deceptive act separate from alleged misrepresentations or omissions, their scheme liability claim fails."); *see also Touchstone*, 2022 WL 4536800, at *6 (dismissing scheme liability claims where the complaint alleged only misstatements and omissions, "not inherently deceptive conduct" and cautioning that the Second Circuit noted in *Rio Tinto* that "[a]n overreading of *Lorenzo* might allow private litigants to repackage their misstatement claims as scheme liability claims to evade the pleading requirements imposed in misrepresentation cases.") (citation and quotation marks omitted).

24

Defendants in support of their motion to dismiss, Plaintiff has failed to demonstrate the existence of a primary violation of the federal securities laws while Mr. Klein was CFO of Sequential (i.e., up until August 31, 2017). Moreover, to adequately allege that Mr. Klein culpably participated in the alleged fraud, Plaintiff was required to provide facts establishing a strong inference of his scienter. *DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 220 (S.D.N.Y. 2019) (collecting cases); *see also In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 215-16 (S.D.N.Y. 2019) (Oetken, J.) (most courts in this District require "a plaintiff [to] allege some level of culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss" a Section 20(a) claim). As set forth above at length, Plaintiff has failed to meet this pleading burden. Plaintiff's Section 20(a) claim against Mr. Klein should be dismissed.

## CONCLUSION

For all of the reasons set forth herein, Mr. Klein respectfully requests that the Court strike those allegations in the Complaint that copy, reference, or rely upon the SEC Complaint or settlement orders and dismiss the claims against him with prejudice.

Dated: Washington, DC
       March 23, 2023

                                      SHEARMAN & STERLING LLP

                                      By:     */s/ Lyle Roberts*
                                              Lyle Roberts
                                              SHEARMAN & STERLING LLP
                                              401 9th Street, NW, Suite 800
                                              Washington, DC 20004
                                              Telephone: 202.508.8108
                                              Facsimile: 202.508.8100
                                              Email: Lyle.Roberts@shearman.com

                                              Elizabeth J. Stewart
                                              SHEARMAN & STERLING LLP
                                              599 Lexington Avenue
                                              New York, NY 10022
                                              Telephone: 212.848.7074
                                              Facsimile: 646.848.7074
                                              Email: Elizabeth.Stewart@Shearman.com

                                              *Attorneys for Individual Defendant Gary
                                              Klein*

26