**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

PETER D'ARCY, Individually and on Behalf
of All Others Similarly Situated,

              Plaintiff,

     -against-

YEHUDA SHMIDMAN, KAREN
MURRAY, GARY KLEIN, ANDREW
COOPER, CHAD WAGENHEIM, PETER
LOPS, DAVID CONN, DANIEL
HANBRIDGE, LORRAINE DISANTO,
WILLIAM SWEEDLER, AARON
HOLLANDER, AL GOSSETT, STEWART
LEONARD, JR., COHNREZNICK LLP,
STEPHEN WYSS, STEPHEN JACKSON,
and ROBERT HILBERT,

              Defendants.

------------------------------------------------------- X

No. 1:21-cv-07296 (JPO)

**<u>ORAL ARGUMENT REQUESTED</u>**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**ANDREW COOPER, CHAD WAGENHEIM, PETER LOPS, DAVID CONN, DANIEL**
**HANBRIDGE, LORRAINE DISANTO, WILLIAM SWEEDLER, AARON**
**HOLLANDER, AL GOSSETT, AND STEWART LEONARD, JR.'S**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT AND MOTION TO STRIKE</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT BACKGROUND ...............................................................................................4

    I.     The Company ...........................................................................................................4

    II.    The Sequential Defendants ......................................................................................4

    III.   ASC 350 Impairment Standard ................................................................................5

    IV.   Sequential's Impairment Testing in 2016 And 2017 ...............................................6

        A.    October 1, 2016 Annual Impairment Test.......................................................7

        B.    Q4 2016 Interim Period ..................................................................................7

        C.    Q1 and Q2 2017 Analyses ..............................................................................8

        D.    Q3 2017..........................................................................................................9

        E.    Q4 2017 ........................................................................................................10

    V.     SEC Inquiry ............................................................................................................11

    VI.   Procedural History .................................................................................................12

ARGUMENT ........................................................................................................................13

    I.     The Amended Complaint Fails to Plead Numerous Elements Required for
         Section 10(b) Claims .............................................................................................13

        A.    Plaintiff Fails to Satisfy the Heightened Pleading Requirements for Fraud .........14

           1.    Individuals Are Not Liable for Statements They Did Not Make.....................14

           2.    Plaintiff Fails to Identify the Precise Statements That Are Purportedly
               Misleading with the Requisite Particularity ...................................................16

           3.    Plaintiff's Group Pleading of Scienter Fails to Satisfy
                Heightened Pleading Requirements ...............................................................17

        B.    The Amended Complaint Fails to Allege any Actionable
           Misstatements or Omissions .........................................................................18

           1.    The Alleged Misstatements Concerning the Company's
               Goodwill Impairment Are Non-Actionable Statements of Opinion ................19

           2.    The Alleged Misstatements Are Inactionable Forward-Looking Statements...23

           3.    The SEC Investigation and Lawsuit Was Not Material .................................24

           4.    The Gibson Dunn Defendants Did Not Have a Duty to Disclose any of the
               Purported Omissions Regarding the SEC Investigation, and the Alleged
               Omissions Did Not Make the Company's Statements
               Inaccurate, Incomplete, or Misleading .........................................................25

           5.    Plaintiff Does Not Adequately Allege That Statements Affirming
               the Company Maintained Adequate Internal Controls Were Misleading ........28

C.   The Amended Complaint Fails to Allege Facts Giving Rise to a Strong Inference of Scienter..................................................................29

D.   The Amended Complaint Does Not Adequately Plead Reliance on Alleged Misstatements or Omissions ..................................................35

E.   The Amended Complaint Does Not Plausibly Plead Scheme Liability ...............36

II.   Plaintiff's Section 20(a) Claim Fails Because Its Underlying Section 10(b) Claim Fails ........................................................................................38

III.   The Bulk of Plaintiff's Claims and Allegations Are Time Barred ...........................40

A.   The Unqualified Five-Year Statute of Repose Bars Plaintiff's Claims Based on Alleged Misstatements Made Before November 14, 2017..................40

B.   The Two-Year Statute of Limitations Bars Plaintiff's Challenges to the Alleged Misstatements ..........................................................................41

C.   The Claims Against New Defendants Do Not Relate Back to the Original Complaint for Statute of Limitations Purposes....................................42

IV.   Allegations Based on the SEC Complaint and Settlement Orders Should Be Stricken Under Rule 12(f).........................................................................43

CONCLUSION.........................................................................................................44

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abu Dhabi Inv. Auth. v. Mylan N.V.*,
2021 WL 516310 (S.D.N.Y. Feb. 10, 2021) (Oetken, J.)......................................................41

*Acito v. IMCERA Grp.*,
47 F.3d 47 (2d Cir. 1995) ....................................................................................................26

*In re Alcatel Sec. Litig.*,
382 F. Supp. 2d 513 (S.D.N.Y. 2005)..................................................................................16

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)............................................................................39–40

*Amorosa v. AOL Time Warner Inc.*,
409 F. App'x 412 (2d Cir. 2011)..........................................................................................42

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)................................................................4, 13–14, 35, 38

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017).................................................................... 15, 27–28

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .............................................................................................................35

*Boguslavsky v. Kaplan*,
159 F.3d 715 (2d Cir. 1998)............................................................................................38–39

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)....................................................................................4

*C.D.T.S. v. UBS AG*,
2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom.*
*Westchester Teamsters Pension Funds v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015)..............17

*Chiarella v. United States*,
445 U.S. 222 (1980) .............................................................................................................26

*In re Citigroup, Inc. Sec. Litig.*,
330 F. Supp. 2d 367 (S.D.N.Y. 2004), *aff'd sub nom.*
*Albert Fadem Trust v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006) .............................26

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.*,
2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ....................................................................29

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ....................................................................29

*City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
  450 F. Supp. 3d 379 (S.D.N.Y. 2020)................................................................................17

*City of Westland Police and Fire Ret. Sys. v. Metlife, Inc.*,
  129 F. Supp.3d 48 (S.D.N.Y. 2015) ..................................................................................21

*City of Omaha, Neb. Civilian Emp.'s Ret. Sys. v. CBS Corp.*,
  679 F.3d 64 (2d Cir. 2012)................................................................................. 20, 22, 35

*City of Pontiac General Empls.' Ret. Sys. v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012)................................................................................15

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1992)................................................................................................14

*Das v. Rio Tino, PLC*,
  332 F. Supp. 3d (S.D.N.Y. 2018) ......................................................................................31

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  585 F.3d 677 (2d Cir. 2009)..............................................................................................17

*In re DRDGold Ltd. Sec. Litig.*,
  472 F. Supp. 2d 562 (S.D.N.Y. 2007)................................................................................31

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009).............................................................................24–25, 29–31

*In re Enter. Mortg. Acceptance Co. Sec. Litig.*,
  391 F.3d 401 (2d Cir. 2004)..............................................................................................43

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  352 F. Supp. 2d 429 (S.D.N.Y. 2005)................................................................................38

*Freidus v. Barclays Bank PLC*,
  734 F.3d 132 (2d Cir. 2013)..............................................................................................42

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000)..............................................................................................24

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
  639 F. App'x 664 (2d Cir. 2016)...................................................................................41–42

*In re Gen. Elec. Sec. Litig.*,
  2020 WL 2306434 (S.D.N.Y. May 7, 2020), *aff'd*,
  844 F. App'x 385 (2d Cir. 2021)........................................................................................19

*In re GeoPharma, Inc. Sec. Litig.*,
  399 F. Supp. 2d 432 (S.D.N.Y. 2005)............................................................................15

*Glazer v. Formica Corp.*,
  964 F.2d 149 (2d Cir. 1992)..........................................................................................26

*In re Global Crossing, Ltd. Sec. Litig.*,
  322 F. Supp. 2d 319 (S.D.N.Y. 2004)............................................................................39

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ......................................................................................................18

*In re Iconix Brand Grp.*,
  2017 WL 4898228 (S.D.N.Y. Oct 25, 2006)............................................................31–32

*Iowa Pub. Emp. Ret. Sys. v. Deloitte & Touche LLP*,
  919 F. Supp. 2d 321 (S.D.N.Y. 2013)............................................................................31

*Janbay v. Can. Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012).................................................................28

*Janus Cap. Grp. v. First Derivative Traders*,
  564 U.S. 135 (2011) .................................................................................................14–15

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
  897 F. Supp. 2d 168 (S.D.N.Y. 2012), *aff'd sub nom.*
  *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
  543 F. App'x 72 (2d Cir. 2013)......................................................................................23

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)...........................................................................................36

*In re Lions Gate Entm't Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) ...........................................................................24, 27

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976)...........................................................................................43

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)............................................................................39

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
  939 F. Supp. 2d 360 (S.D.N.Y. 2013).......................................................................40–42

*Lucescu v. Zafirovski*,
  2018 WL 1773134 (S.D.N.Y. Apr. 11, 2018) .................................................................20

*In re Lululemon Sec. Litig.*,
   14 F. Supp 3d 553 (S.D.N.Y. 2014) ...............................................................................14

*Maloney v. Ollie's Bargain Outlet Holdings*,
   518 F. Supp. 3d 772 (S.D.N.Y. 2021).............................................................................32

*In re Marsh & McLennan Cos. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006)................................................................ 25–27, 31

*In re MBIA*,
   700 F. Supp. 2d 566 (S.D.N.Y. 2010).............................................................................33

*Menaldi v. Och-Ziff Cap. Mgmt. Grp.*,
   277 F. Supp. 3d 500 (S.D.N.Y. 2017).............................................................................37

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ..................................................................................................40–41

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003).......................................................................................43

*In re Molycorp, Inc. Sec. Litig.*,
   2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015).................................................................18

*Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
   15 F. Supp. 3d 336 (S.D.N.Y. 2014) ...............................................................................16

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*,
   2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ............................................................ 19, 22

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).............................................................................................31

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ..................................................................................................20–23

*In re Par Pharm., Inc. Sec. Litig.*,
   733 F. Supp. 668 (S.D.N.Y. 1990) ..................................................................................26

*In re PetroChina Co. Sec. Litig.*,
   120 F. Supp. 3d 340 (S.D.N.Y. 2015), *aff'd sub nom.*
   *Klein v. PetroChina Co.*, 644 F. App'x 13 (2d Cir. 2016) ..........................................28–29

*Plumbers & Steamfitters Local 773 Pension Fund v. Can. Imperial Bank of Commerce*,
   694 F. Supp. 2d 287 (S.D.N.Y. 2010).............................................................................22

*Police and Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009).............................................................................32

*Rich v. Maidstone Fin., Inc.*,
   2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ...........................................................................39

*Richman v. Goldman Sachs Grp.*,
   868 F. Supp. 2d 261 (S.D.N.Y. 2012) ..................................................................................26–27

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ............................................................................................. 13, 32

*Roth v. Jennings*,
   489 F. 3d 499 (2d Cir. 2007) .................................................................................................... 4

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001) .......................................................................................................40

*SEC v. China Ne. Petroleum Holdings Ltd.*,
   27 F. Supp. 3d 379 (S.D.N.Y. 2014) ........................................................................................37

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) ...................................................................................................38

*SEC v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) ......................................................................................36

*SEC v. Lee*,
   720 F. Supp. 2d 305 (S.D.N.Y. 2010) ......................................................................................37

*SEC v. Rio Tinto PLC*,
   41 F.4th 47 (2d Cir. 2022) ........................................................................................................36

*SEC v. Sequential Brands Grp.*,
   No. 1:20-cv-10471-JPO (S.D.N.Y. Dec. 11, 2020) ..................................................................44

*SEC v. Stoker*,
   865 F. Supp. 2d 457 (S.D.N.Y. 2012) ......................................................................................37

*In re Sequential Brands Grp.*,
   No. 21-bk-11194 (Bankr. D. Del.) ........................................................................................4, 13

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) .....................................................................................................13

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   33 F. Supp. 3d 401 (S.D.N.Y. 2014) ........................................................................................39

*Stratte-McClure v. Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015) .......................................................................................................26

*In re Synchrony Fin. Sec. Litig.*,
    450 F. Supp. 3d 127 (D. Conn. 2020), *aff'd in part, rev'd in part*,
    988 F.3d 157 (2d Cir. 2021)...........................................................................42

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008).........................................................................31

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .....................................................................................30

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ............................................................................26

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)....................................................................20–22

*In re Turquoise Hill Res. Ltd.*,
    2022 WL 4085677 (S.D.N.Y. Sept. 2, 2022) .........................................32–33

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom.*,
    *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..........................................................................27

*United States v. Gilbert*,
    668 F.2d 94 (2d Cir. 1981).............................................................................43

*In re Vale S.A. Sec. Litig.*,
    2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017).................................................23

*In re Vitamin C Antitrust Litig.*,
    995 F. Supp. 2d 125 (E.D.N.Y. 2014) ...........................................................43

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp., Inc.*,
    2013 WL 1345086 (E.D.N.Y. Mar. 29, 2013)................................................16

*Westchester Teamsters Pension Funds v. UBS AG*,
    604 F. App'x 5 (2d Cir. 2015) .......................................................................17

*In re Winstar Commc'ns.*,
    2006 WL 473885 (S.D.N.Y. Feb 27, 2006) ...................................................32

*Xu v. Gridsum Holding Inc.*,
    2022 WL 3908006 (S.D.N.Y. Aug. 29, 2022).................................................15

**STATUTES**

15 U.S.C. § 77q(a) (Securities Act of 1933 § 17(a)) ..........................................1, 12

15 U.S.C. § 78j(b) (Securities Exchange Act of 1934 § 10(b))..........................................*passim*

15 U.S.C. § 78t(a) (Securities Exchange Act of 1934 § 20(a)) ....................................... 3, 38–40

15 U.S.C. § 78u-4(b) ....................................................................................................*passim*

15 U.S.C. § 78u-5 ...............................................................................................................24

28 U.S.C. § 1658(b) .....................................................................................................40–41

28 U.S.C. § 2072(b) .............................................................................................................41

**OTHER AUTHORITIES**

*In the Matter of CohnReznick LLP*, Release No. 4309 (June 8, 2022),
   https://www.sec.gov/litigation/admin/2022/34-95066.pdf...................................................44

*In the Matter of Stephen M. Wyss, CPA, Stephen H. Jackson, CPA,
   and Robert G. Hilbert, CPA*, Release No. 4310 (June 8, 2022),
   https://www.sec.gov/litigation/admin/2022/34-95067.pdf...................................................44

*In re Gary S. Klein*, Release No. (August 9, 2021),
   https://www.sec.gov/litigation/admin/2021/34-92611.pdf ..................................................44

*Third Quarter Financial Results*, Sequential Brands Group (Nov. 3, 2016),
   https://www.globenewswire.com/news-release/2016/11/03/886252/25123/en/
   Sequential-Brands-Group-Announces-2016-Third-Quarter-Financial-Results.html ...............6

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1

Fed. R. Civ. P. 12(f) ............................................................................................... 1, 3, 43

Fed. R. Civ. P. 15...........................................................................................................41–43

**REGULATIONS**

17 C.F.R. § 240.10b-5 .........................................................................................13, 18, 23, 30

17 C.F.R. § 240.12b–2 .........................................................................................................38

Ten of the individual defendants (the "Gibson Dunn Defendants")[1] respectfully submit this memorandum of law in support of their motion to dismiss the claims against them pursuant to Rule 12(b)(6) and to strike improper allegations pursuant to Rule 12(f).

## PRELIMINARY STATEMENT

This lawsuit is a desperate attempt by Plaintiff to wring water from a stone by bringing meritless and unfounded claims against certain former officers and directors—the ten Gibson Dunn Defendants—of the now defunct company, Sequential Brands ("Sequential" or the "Company"). Recognizing that Sequential's chapter 11 filing and subsequent liquidation would make any recovery from the Company nearly impossible, Plaintiff hopes to recover what it could not collect from the Company by smearing the reputation of these ten individuals with allegations that could never be proven, much less sufficiently pled. Even the Securities and Exchange Commission, after spending years investigating the Company, did not go so far as Plaintiff, never naming any one of these ten individuals in the lawsuit it brought against the Company. The SEC did not even bring Section 10(b) fraud charges, instead pleading only what it could—a negligence-based claim under Section 17(a)(3)—that it ultimately settled with the Company with no penalty and no admission of wrongdoing.

Plaintiff now either seeks to hold these ten individual employees responsible for judgment calls that they are not alleged to have made—based on Company information that they are not alleged to have had—or for good-faith opinion statements that cannot form the basis for a Section 10(b) claim. Plaintiff would essentially have this Court substitute Plaintiff's own judgment and opinions for the judgment and opinions of the Company and the Company's

---

[1] The Gibson Dunn Defendants are Andrew Cooper, Chad Wagenheim, Peter Lops, David Conn, Daniel Hanbridge, Lorraine DiSanto, William Sweedler, Aaron Hollander, Al Gossett, and Stewart Leonard, Jr.

(unnamed) finance and accounting personnel, auditor, and valuation consultant, and call it sufficiently pled fraud. Either way, Plaintiff's allegations fail.

This putative class action is brought on behalf of shareholders of Sequential common stock who purchased between November 9, 2016 and December 11, 2020 (the "Class Period"). While the Amended Complaint is verbose, it essentially has two complaints, namely that Sequential allegedly failed to (1) quickly and/or sufficiently adjust the value of its goodwill; and (2) adequately disclose that the SEC was investigating its goodwill analysis and the risk of an SEC lawsuit. With respect to the goodwill adjustments, while it is difficult to discern exactly when Plaintiff thinks the Company should have disclosed an impairment, and in what amount, it appears that Plaintiff believes goodwill was overvalued by some unspecified amount for the fourth quarter of 2016 and the first three quarters of 2017. With respect to the SEC-related allegations, the Gibson Dunn Defendants had no duty to disclose the investigation earlier because the investigation and subsequent lawsuit were not material and, at the time of the investigation, litigation was not substantially certain to occur.

Plaintiff fails to state a claim against the Gibson Dunn Defendants for at least seven reasons. *First*, Plaintiff utterly fails to meet the particularity requirements for fraud under Rule 9(b) and the PSLRA. *Second*, none of the alleged misstatements or omissions actually attributed to any Gibson Dunn Defendant is false or otherwise actionable. The alleged misstatements related to goodwill impairment were inactionable opinion and forward-looking statements. Regarding the alleged misstatements related to the SEC, the Gibson Dunn Defendants had no duty to disclose the SEC investigation before the Company did so on March 13, 2020, because they are not alleged to have been aware of the investigation, the investigation was not material, and the eventual SEC enforcement action was not "substantially certain."

2

*Third*, Plaintiff fails to plead facts giving rise to a strong inference of scienter, including that any Gibson Dunn Defendant had motive to defraud. It instead relies on conclusory allegations about what Gibson Dunn Defendants knew or should have known based primarily on their corporate titles—a pleading approach repeatedly rejected in this Circuit. *Fourth*, Plaintiff fails to adequately plead reliance on fraudulently inflated stock prices. All alleged "red flags" related to the eventual goodwill impairment were available to the public and would have been reflected in the Company's stock price.

*Fifth*, Plaintiff fails to adequately plead scheme liability as a matter of law. *Sixth*, because Plaintiff fails to plead necessary elements of its Section 10(b) claim, its Section 20(a) claim must also fail. *Finally*, Plaintiff's claims are time barred. The Amended Complaint was filed on November 14, 2020, which is more than two years after Plaintiff should have discovered sufficient information to adequately plead its complaint. In addition, the five-year statute of repose bars Plaintiff's claims based on statements made before November 14, 2017.

For each—or any—of these reasons and others explained below, the Gibson Dunn Defendants respectfully urge the Court to dismiss the Amended Compliant with prejudice. Additionally, allegations based on the SEC Complaint and Settlement Orders should be stricken under Rule 12(f).

3

## RELEVANT BACKGROUND

### I.      The Company

Sequential was a publicly traded company that owned a portfolio of consumer brands, primarily in the fashion and home categories.[2]  Ex. 7 (2016 10-K) at 4.[3]  Its assets included "goodwill."  Ex. 1 (Am. Compl., Dkt. 44) ¶ 58.  The Company filed for reorganization under chapter 11 of the Bankruptcy Code on August 31, 2021, several years after the initial complained-of events.  *In re Sequential Brands Grp.*, No. 21-bk-11194 (Bankr. D. Del.).  On March 3, 2022, a Plan of Liquidation became effective in which the Company would be wound down and liquidated for the benefit of creditors.  *Id.*

### II.     The Sequential Defendants

The Amended Complaint asserts claims against thirteen individuals referred to as the "Sequential Defendants."[4]  Ex. 1 ¶ 40.  The ten Gibson Dunn Defendants are all of the Sequential Defendants except for Gary Klein, Yehuda Shmidman, and Karen Murray.  Although the Amended Complaint lumps the Gibson Dunn Defendants together, these ten Defendants were employed by the Company at varying times and in varying capacities.  Ex. 2 ("Timeline").  For example, Defendant Cooper served as the interim CFO only from September 2017 to February 2018, and left the Company in June 2019, whereas Defendants Conn and DiSanto did not join the Company until January 2020 and October 2020, respectively.  Ex. 1 ¶¶ 30–39; Ex 2.

---

[2] On a motion to dismiss, the Court "need not accept as true an allegation that is contradicted by documents on which the complaint relies."  *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) (citation omitted).  Thus, the Court may consider the entirety of statements or documents incorporated into or referenced in the Amended Complaint, SEC filings, and any other documents on which Plaintiff relied.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The Court may also take judicial notice, including of public records that are integral to the complaint.  *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007).

[3] Unless otherwise indicated, all references to exhibits are to exhibits attached to the Declaration of Mary Beth Maloney, executed on March 23, 2022, and filed herewith.

[4] All capitalized terms have the definitions set forth in the Amended Complaint unless otherwise defined herein.

4

**III.     ASC 350 Impairment Standard**

Goodwill "represents the excess of the purchase price over the fair value of net assets acquired under the acquisition method of accounting." Ex. 1 ¶ 59.  It reflects the value of a company's brand name, customer base, customer relations, employee relations, propriety technology, and estimates of future cash flows.  *See* Ex. 1 ¶ 59; Ex. 8 (2017 10-K) at F-28.  In accordance with ASC 350, the relevant Generally Accepted Accounting Principles (GAAP) provision regarding goodwill, Sequential periodically tested for a goodwill "impairment," which is "when the carrying amount of a reporting unit that includes goodwill exceeds its fair value." Ex. 1 ¶¶ 73–74; ASC 350-20-35-28.[5]

Because it is an intangible asset, determining a brand's goodwill necessarily requires judgment.  ASC 350-20-35-22; ASC 350-20-35-25; *see also* Ex. 8 (2017 10-K) at 24, F-18.  As a result, the determination of a goodwill impairment is inherently subjective.  It is also non-reversible decision—if factors change and the impairment is later determined to no longer be appropriate, the impairment cannot be reversed.  ASC 350-20-35-13.

For the annual impairment test, ASC 350 allows a company to first assess *qualitative* factors.[6]  ASC 350-20-35-3A.  If the totality of these factors indicates it is more likely than not that the fair value of a reporting unit is less than its carrying amount, or if the company chooses to bypass the qualitative analysis, ASC 350 requires a company to proceed to a two-step *quantitative* impairment test (1) to calculate the fair value of the reporting unit and compare it to

---

[5] FASB Accounting Standards Codification (ASC) is the source of authoritative non-governmental GAAP.

[6] Qualitative factors include: macroeconomic conditions; industry and market considerations; overall financial performance; relevant entity-specific events such as changes in management, key personnel, strategy, or customers; bankruptcy; litigation; and a sustained decrease in share price (both in absolute terms and relative to peers).  ASC 350-20-35-3C.  These are non-exhaustive examples, ASC 350-20-35-3F, the presence of which does not necessarily trigger a quantitative test, ASC 350-20-35-3G.  Rather, a company is to assess the "totality of events or circumstances," including "positive and mitigating events and circumstances" and "the extent to which" such factors may impact the likelihood of a goodwill impairment.  ASC 350-20-35-3C; ASC 350-20-35-3D; ASC 350-20-35-3F.

the company's goodwill, and (2) to measure the amount of a goodwill impairment loss to be recognized (if any). ASC 350-20-35-3E; ASC 350-20-35-4. In estimating fair value, "the market price of an individual equity security . . . may not be representative of the fair value of the reporting unit as a whole" and "need not be the sole measurement basis." ASC 350-20-35-22; ASC 350-20-35-23. Instead, "a valuation technique based on multiples of earnings or revenue or a similar performance measure may be used if that technique is consistent with the objective of measuring fair value." ASC 350-20-35-24.

Sequential engaged a third-party valuation specialist to assist with quantitative valuation measures. Ex. 1 ¶¶ 96, 173 (quoting Ex. 8 [2017 10-K]), 188 (quoting Ex. 9 [2018 10-K]). In addition, Sequential's auditor, CohnReznick,[7] performed audit testing and review procedures on the Company's financial statements at each period, including its goodwill assessment, and never disagreed with the Company's judgment. In addition to annual testing, ASC 350 also requires companies to conduct interim quantitative tests between its annual tests if the company identifies impairment indicators. ASC 350-20-35-30. Impairment indicators are identified using the qualitative factors discussed above.

## IV.    Sequential's Impairment Testing in 2016 And 2017

In 2015, the rise of online shopping contributed to a decrease in in-store sales in the retail sector and, as a result, the value of many retail stocks, including Sequential, began to drop. Ex. 1 ¶¶ 3, 87; Ex. 3 ("Stock Price Chart"). In Q4 2016, just before the start of the Class Period, Sequential announced revised earnings that were five percent below projections.[8] In response,

---

[7] Defendant CohnReznick LLP is a public accounting firm that served as Sequential's independent auditor from 2013 to 2020. Ex. 1 ¶ 49. CohnReznick conducted quarterly reviews and issued clean annual audit opinions on Sequential's financial statements during all relevant periods. Ex. 1 ¶ 49.

[8] *Sequential Brands Group Announces 2016 Third Quarter Financial Results*, Sequential Brands Group (Nov. 3, 2016), https://www.globenewswire.com/news-release/2016/11/03/886252/25123/en/Sequential-Brands-Group-Announces-2016-Third-Quarter-Financial-Results.html.

6

Sequential's stock price fell approximately 43 percent. *See* Ex. 1 ¶ 87; Ex. 3 (stock price chart). But after that momentary drop on November 4, 2016, Sequential's stock shot back up, regaining more than half of its losses within two weeks. *Id.* Throughout December 2016, the stock price fluctuated, with moderate increases and decreases. *Id.*

### A.    October 1, 2016 Annual Impairment Test

On November 9, 2016, Sequential announced that it had decided as of September 30, 2016, to change its annual impairment testing from an "as-of" December 31 to "as of" October 1—a testing date that is frequently used by public companies. Ex. 1 ¶ 135 (quoting Ex. 10 [3Q16 10-Q]). The Company believed this change would allow for more timely completion of the annual impairment test prior to the end of its annual financial reporting period; the Company did not believe it had a goodwill impairment at this time. Ex. 1 ¶ 135; Ex. 10 (3Q16 10-Q).

For its 2016 annual test, Sequential's external valuation specialist used a market capitalization methodology, which multiplies the number of common shares by the stock price, adjusting for a control premium (the "Market Approach"). Ex. 1 ¶¶ 96–97. On December 6, 2016, the specialist concluded that goodwill was not impaired as of October 1, 2016. Ex. 1 ¶ 97. Plaintiff does not allege otherwise. CohnReznick reviewed the annual impairment test and issued its audit report signing-off on Sequential's 2016 financial statement, including the finding of no goodwill impairment. Ex. 1 ¶¶ 258, 261.

### B.    Q4 2016 Interim Period

By December 2016, the Company's stock price had partially recovered from its drop in early November. Ex. 1 ¶¶ 87, 99. In December 2016, "senior accounting and finance personnel" at Sequential (whom Plaintiff never identifies) allegedly conducted two quantitative Market Approach analyses, applying Sequential's stock prices as of December 14, 2016 and December

7

31, 2016 (the "December 2016 Calculations"). Ex. 1 ¶¶ 100–01. Plaintiff alleges the December 2016 Calculations indicated a possible impairment. Ex. 1 ¶¶ 100–01.

During interim periods such as Q4 of 2016, the Company was required to assess the existence of potential impairment indicators. The Company's senior accounting and finance personnel believed the November stock drop, reflected in the December 2016 Calculations, was not an impairment indicator because their opinion was that the market was undervaluing the Company. Ex. 1 ¶ 104. They logically and reasonably concluded that the November 2016 five percent revision in earnings guidance did not mean that the Company was only worth 60 percent of what it had been the day before. *See* Ex. 1 ¶ 104; Ex. 7 (2016 10-K) at F-11. In other words, the Company concluded and disclosed that the retail downturn in the overall economy was *not* indicative of the Company's fair value. *See* Ex. 7 (2016 10-K) at 16, F-11.

The Company shared its position, which was supported by a valuation report prepared by its third-party valuation specialist, with CohnReznick, who again took no issue with the Company's assessment and conclusions. Ex. 1 ¶¶ 259, 261. CohnReznick agreed that the Company's year-end financial statements presented fairly its financial position in accordance with GAAP in all material respects, including its goodwill. Ex. 1 ¶ 261.

### C.    Q1 and Q2 2017 Analyses

In the first two quarters of 2017, as it did every quarter, the Company again assessed whether any impairment indicators existed. Senior accounting and finance personnel, with the help of Sequential's third-party valuation specialist and approval from CohnReznick, conducted qualitative analyses. Ex. 1 ¶¶ 262–63. During this period, the Company had experienced routine developments, including the CEO's resignation, downward revisions to its earning guidance, and further declines in its stock price. Ex. 1 ¶¶ 120, 262. Using its judgment, informed by its external valuation specialist's market analysis and the totality of the circumstances consistent

8

with ASC 350, Sequential did not view these developments as impairment indicators.  Ex. 1 ¶ 121 (quoting Ex. 11 [1Q17 10-Q], Ex. 12 [2Q17 10-Q]).  CohnReznick reviewed these interim assessments and took no exception.  Ex. 1 ¶ 264.

**D.    Q3 2017**

In the third quarter, the Company again determined after extensive review and consultation with its valuation specialist and CohnReznick that its goodwill was not impaired.  Ex. 1 ¶¶ 122, 285–86.  Nonetheless, Sequential asked its valuation specialist to conduct a quantitative test as of September 30, 2017.  Ex. 1 ¶¶ 173 (quoting Ex. 8 [2017 10-K]), 269.

In determining fair value, Sequential's valuation specialist prepared estimates using two measures:  the Market Approach and a discounted cash flow analysis (the "Income Approach").  Ex. 1 ¶¶ 268–69.  The Income Approach was a detailed analysis that factored in discount rates, projected annual revenue growth rates, and projected long-term growth rates.  Ex. 1 ¶ 173 (quoting Ex. 8 [2017 10-K]).  The valuation specialist reported that the Company's fair value using the Market Approach was approximately $245 million and using the Income Approach was approximately $650 million.  Ex. 1 ¶ 269.  The valuation specialist cited three factors causing the difference in estimates, all of which supported the conclusion that public markets had mispriced Sequential's stock:  (1) the market unfairly grouped Sequential with other out-of-favor companies in the retail industry with business models incomparable to Sequential; (2) the market undervalued the tax amortization benefit of its brands, which Sequential believed would become significant in future periods when it was more profitable; and (3) the Company's high leverage ratio created a "perception overhang."  Ex. 1 ¶ 270.

Based on a conclusion from CohnReznick, the valuation specialist evaluated goodwill using the Income Approach.  Ex. 1 ¶¶ 274–75.  It validated the Income Approach by quantifying the factors that were mispricing Sequential's stock and explaining the difference between the

9

Income and Market Approaches. Ex. 1 ¶ 275. The valuation specialist concluded that goodwill was not impaired. *See* Ex. 1 ¶¶ 163 (quoting Ex. 13 [3Q17 10-Q]), 274. Most public companies use the Income Approach to evaluate the fair value of its business units, and Sequential believed this method best reflected its fair value. *See* Ex. 1 ¶¶ 163 (quoting Ex. 13 [3Q17 10-Q]), 274–75.

Sequential sent these findings to CohnReznick, Ex. 1 ¶ 269, which determined that the disparity in estimated values obtained between the approaches did not render the Income Approach inaccurate. Ex. 1 ¶ 274. CohnReznick reasoned that Sequential could rely on the method that it believed best reflected its fair value if the Company supplemented its valuation report to reconcile that value to the other measure. Ex. 1 ¶ 274. This recommendation tracks with ASC 350. ASC 350-20-35-22; ASC 350-20-35-23; ASC 350-20-35-24. CohnReznick signed off on the Company's reasonable conclusion that goodwill was not impaired and approved the Company's earnings release and documented its findings. Ex. 1 ¶¶ 286–87.

E.    Q4 2017

During the fourth quarter of 2017, the Company identified impairment indicators and undertook a quantitative analysis. Ex. 1 ¶ 125 (quoting Ex. 8 [2017 10-K]). Again, Sequential considered both the Market Approach and the Income Approach. *Id.* This time, the gap between the two measures was greater than in Q3 2017, and the Company felt for the first time that it could not reconcile the difference between the Income Approach and the Market Approach valuations. *Id.* So, in its best judgment, the Company determined that the Market Approach better reflected its estimated fair value. *Id.*

As a result, the Company wrote down the full value of its goodwill, $304.1 million, in Q4 2017. *Id.* CohnReznick concurred with the Company's judgment that goodwill first became

impaired in Q4 2017 and that goodwill was impaired in full in that quarter.  Ex. 1 ¶ 307 (quoting

CohnReznick's 2017 audit opinion).[9]

## V.    SEC Inquiry

In Q3 2019, the SEC allegedly began conducting interviews in connection with the

Company's controls and practices surrounding impairment analyses of goodwill and intangible

assets in 2016 and 2017.  Ex. 1 ¶ 128.  Plaintiff alleges that Company statements at this point

were misleading because they failed to disclose *from the outset* of the initial interviews that the

"SEC investigation was material as the SEC would be bringing a suit against the Company."

*E.g.*, Ex. 1 ¶¶ 193.  But Plaintiff does not allege that the Gibson Dunn Defendants—much less

any specific individual defendant—knew or had reason to know about the interviews, that the

interviews would lead to a Wells Notice, or that the Wells process would lead to a lawsuit.[10]

On March 31, 2020, before it received a Wells Notice, the Company disclosed the existence

of the SEC investigation, even though it had no reason to believe the investigation was material.

By July 17, 2020, the Company had received a Wells Notice from the SEC related to this

investigation.  The Wells Notice marked the first time the Company was informed of the nature of

the violations that the SEC believed it had uncovered, as well as the nature of the enforcement

proceedings to be initiated against the Company.  In its next quarterly report, filed on August 14,

2020, the Company disclosed the Wells Notice.  It stated:

> On July 17, 2020, the Company received a "Wells Notice" from the SEC related to
> this investigation.  A Wells Notice is neither a formal charge of wrongdoing nor a
> final determination that the recipient has violated any law . . . The Company
> believes that it has complied with GAAP and SEC rules during such periods in all
> financial matters including goodwill and intangible assets but can provide no

---

[9] Plaintiff has not alleged that the Company restated its financial statements for Q4 2016, Q1 2017, Q2 2017, or Q3 2017, nor that the Company's external valuation specialist or CohnReznick advised the Company to do so.

[10] Defendants Mr. Cooper, Mr. Conn, and Ms. DiSanto, were not even at the Company at this time.

assurance that the SEC will agree ultimately . . . The Company cannot predict the duration or outcome of this matter.  Costs related to this matter may be significant.

Ex. 1 ¶ 216 (quoting Ex. 14 [2Q20 10-Q]).  The Company released a similar statement in its third quarter 2020 10-Q (Ex. 16), informing investors of the SEC investigation and continuing to disagree with the SEC's assessment of the relevant standards.  Ex. 1 ¶ 222.  On December 11, 2020 the SEC filed its complaint alleging that Sequential violated, *inter alia*, Section 17(a)(3) of the Securities Act of 1933.  Ex. 1 ¶ 322.

Ultimately, the SEC did not prove anything.  It brought a negligence claim against the Company under Section 17(a), but not fraud claims under Section 10(b), and the Company settled without admitting any wrongdoing or paying a civil penalty.  Ex. 1 ¶ 14; Ex. 6 (SEC Settlement Order).  The SEC brought no claims whatsoever against the Gibson Dunn Defendants.  Even after the SEC's probe of the issue and its professionals' judgment, Sequential determined that no write-down in goodwill was appropriate during the Relevant Period, and continued to disagree with the SEC's assessment of the relevant standards.  *See* Ex. 1 ¶¶ 131, 195, 206, 208, 212, 213, 216, 222.  And the Company is not alone; its auditor continues to agree that Sequential's financial statements were materially stated in accordance with GAAP and continues to stand behind its unqualified opinion on the Company's financial statements.

## VI.    Procedural History

On March 16, 2021, Peter D'Arcy, seeking to act on behalf of a class of investors largely encompassed by the proposed class here, filed the original complaint in this action.  Dkt. 1.  On May 17, 2021, CJD Finance Company LLC moved to become lead plaintiff, which the court granted on June 11, 2021.  Dkt. 12, 25.  On June 14, 2021, D'Arcy voluntarily dismissed his claims.  Dkt. 26.

On March 3, 2022, Sequential's Plan of Liquidation became effective. *In re Sequential Brands Grp.*, No. 21-bk-11194 (Bankr. D. Del). On September 26, 2022, Sequential was voluntarily dismissed from this lawsuit. Dkt. 37. On November 14, 2022, now-lead Plaintiff filed an Amended Complaint. Dkt. 44, in which it added as defendants Mr. Wagenheim, Mr. Lops, Mr. Conn, Mr. Hanbridge, Ms. DiSanto, Mr. Sweedler, Mr. Hollander, Mr. Gossett, Mr. Leonard, CohnReznick LLP, Mr. Wyss, Mr. Jackson, and Mr. Hilbert.

## ARGUMENT

Plaintiff cannot successfully plead multiple elements of its Exchange Act and related claims, and much of its allegations against the Gibson Dunn Defendants are barred by the applicable statutes of limitations and repose. The action should be dismissed with prejudice as to the Gibson Dunn Defendants.

### I.    The Amended Complaint Fails to Plead Numerous Elements Required for Section 10(b) Claims

To state a claim under §10(b) and Rule 10b-5, a plaintiff must allege that the defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ASTI Commc'ns, Inc.*, 493 F.3d at 105. Plaintiff also must satisfy the heightened pleading requirements of the PSLRA and Rule 9(b) by stating with particularity the circumstances constituting fraud. *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010) (citing 15 U.S.C. § 78u-4(b)(1)). Under Rule 9(b), a complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

13

In addition, the PSLRA requires securities fraud complaints to state with particularity "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and . . . facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1); *see also ASTI Commc'ns, Inc.*, 493 F.3d at 99; *In re Lululemon Sec. Litig.*, 14 F. Supp 3d 553, 570 (S.D.N.Y. 2014). "[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1992).

Plaintiff fails to satisfy the heightened pleading requirements with regard to multiple essential Section 10(b) elements. Plaintiff fails to identify a speaker for a number of alleged misstatements. Even when it does allege that a Gibson Dunn Defendant was the speaker of a statement, it fails to adequately allege that the statements were actionably false or misleading or that any of the Gibson Dunn Defendants spoke with the requisite scienter. Furthermore, Plaintiff does not and cannot show it relied on any alleged misstatements or omissions.

**A.      Plaintiff Fails to Satisfy the Heightened Pleading Requirements for Fraud**

**1.      Individuals Are Not Liable for Statements They Did Not Make**

Rule 9(b) requires a plaintiff to allege a speaker for each alleged misstatement or omission. Fed. R. Civ. P. 9(b). Defendants cannot be liable as speakers under Section 10(b) for statements they did not "make." *Janus Cap. Grp. v. First Derivative Traders*, 564 U.S. 135, 141–42 (2011) ("[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). Plaintiff attempts to hold *all* Defendant's responsible as makers of all alleged misstatements during the Class Period by apparently invoking the group pleading doctrine. Ex. 1¶¶ 43, 344. The group pleading doctrine has allowed some plaintiffs to "rely on a presumption that written statements that are group-published," such as SEC filings and press releases, "are statements made by all

14

individuals with direct involvement in the everyday business of the company." *City of Pontiac General Empls.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 373 (S.D.N.Y. 2012).

But the group pleading doctrine is unviable, or at least greatly diminished, after *Janus*. *See, e.g.*, *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 639–40 (S.D.N.Y. 2017) (group pleading does not survive, in part because the Court in *Janus* cut back on sweeping allegations against groups of corporate insiders who were merely involved in creating or disseminating statements, requiring plaintiffs to attribute statements to a maker with *ultimate* authority); *Xu v. Gridsum Holding Inc.*, 2022 WL 3908006, at *8 (S.D.N.Y. Aug. 29, 2022) ("[A]fter *Janus*, the group-pleading doctrine is no longer viable.").

Even if group pleading survives *Janus*, it would fail here as it rests on the assumption that multiple corporate officers may work as a group to produce particular documents. *In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432, 445 (S.D.N.Y. 2005) (bare allegation of defendant's board membership, absent a specific allegation that defendant played a role in preparing a statement or otherwise took part in the company's daily operations at the time did not justify applying the group pleading doctrine because the doctrine only applies to corporate insiders with active daily roles in the relevant companies or transactions).

Except for where it alleges that a Gibson Dunn Defendant signed alleged misstatements, Plaintiff is silent as to who "made" each statement. Plaintiff further fails to allege which of the Defendants were involved in the everyday business of the Company at the time each statement was made, and as such the group pleading doctrine does not apply. The Court is left to guess which Defendant, if any, is alleged to be a "maker" of the statements and on what grounds. Consequently, the Gibson Dunn Defendants can only be considered speakers of the documents they personally signed. *See* Ex. 4 ("Alleged Misstatements Chart"). In addition, claims

15

stemming from the six Press Releases allegedly issued by "the Company" should be dismissed because the Amended Complaint does not adequately plead a speaker for any of them.  *See* Ex. 1 ¶¶ 137, 147, 153, 159, 165, 191.

### 2. Plaintiff Fails to Identify the Precise Statements That Are Purportedly Misleading with the Requisite Particularity

Plaintiff must explain why each alleged misstatement was fraudulent and must state with particularity "*each statement* alleged to have been misleading," and "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1) (emphasis added); Fed. R. Civ. P. 9(b).  Plaintiff fails to identify the statements that are purportedly misleading, instead using "long block quotes of public statements . . . with smaller sections alleged to be misleading highlighted in bold . . . .[which] often follow one after the other without . . . explaining how and why each individual section is misleading."  *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp., Inc.*, 2013 WL 1345086, at *5 (E.D.N.Y. Mar. 29, 2013); *see also Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 354–55 (S.D.N.Y. 2014); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 534–35 (S.D.N.Y. 2005).

Plaintiff's block quotes, which apparently contain multiple alleged misstatements, are followed by laundry lists of some combination of eleven alleged falsehoods "and/or" omissions.  Ex. 1 ¶¶ 136–224.  Plaintiff does not distinguish which misrepresentation or omission is tied to which statement, improperly leaving the Court to guess.  In addition, the allegations do not address the substance of the purportedly false statements, or show that they were false when they were made.  *E.g.*, Ex. 1 ¶¶ 172–75 (listing eight allegedly false or misleading statements without providing any reason those statements were misleading); Ex. 1 ¶¶ 184–190 (listing 15 allegedly false or misleading statements, each of which was allegedly false or misleading for some unspecified combination of five misstatements and/or omissions); Ex. 1 ¶¶ 198–199 (alleging

16

that a statement regarding Mr. Lop's resignation was false and/or misleading without explaining how any alleged misstatements or omissions made that statement of objective fact misleading).

### 3.    Plaintiff's Group Pleading of Scienter Fails to Satisfy Heightened Pleading Requirements

In cases involving multiple defendants, Rule 9(b) and the PLSRA require plaintiffs to plead a plausible, particularized factual basis for scienter for *each individual defendant*—"guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009); *C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Funds v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015) (summary order) ("Scienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading."). Plaintiff fails to allege facts to show scienter for any individual Gibson Dunn Defendant. For this reason alone, Plaintiff's claims must fail.

The Amended Complaint makes a handful of vague, sweeping, and conclusory allegations that the "Sequential Defendants" knew or should have known facts contrary to Sequential's public representations. *See, e.g.*, ¶¶ 42, 344. These general allegations directed merely at the group of "Sequential Defendants" cannot establish the scienter of any, let alone each Defendant, which is required as a matter of law. *See City of Omaha Police and Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 419 (S.D.N.Y. 2020).

Because it impermissibly attempts to rely on group pleading to establish scienter, Plaintiff fails to make *any* plausible allegations regarding the scienter of Mr. Conn, Ms. DiSanto, Mr. Lops, or Mr. Wagenheim. It only attempts to argue that these Defendants signed various SEC filings and had scienter as part of the group of "Sequential Defendants." This group pleading cannot raise a strong inference of scienter for these individuals. At the very least, the

17

claims against these four Defendants should be dismissed.  "[I]n the absence of more particularized allegations of scienter, that certain Defendants signed or certified SEC disclosures is insufficient to support a finding of scienter."  *In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1097355, at \*12 (S.D.N.Y. Mar. 12, 2015).

All of Plaintiff's claims related to the SEC investigation and threat of lawsuit should be dismissed for the same reason.  The Amended Complaint does not make *any specific allegations* about what any individual Defendant knew about the SEC investigation, threat of an SEC enforcement, or the Wells Notice.  The Amended Complaint never specifically alleges when the investigation became material, let alone when anyone at the Company should have known it was.  Further, the Amended Complaint only alleges that "the Company" received the Wells Notice.  It does not allege that any individual Defendant received or even knew about the Wells Notice until it was publicly disclosed—and those individual Defendants who had left the Company or not yet joined could not have known about the Wells Notice.  As detailed above, any allegation that the "Sequential Defendants" knew of or recklessly disregarded the SEC investigation, risk of a lawsuit, or Wells Notice must fail because Plaintiff cannot adequately allege the requisite state of mind of any individual Defendant.

For the same reason, claims related to statements about the Company's internal controls should be dismissed.  The Amended Complaint only provides a conclusory allegation that, because of their positions within the Company, "the Sequential Defendants had access to adverse undisclosed information about Sequential's . . . internal controls."  Ex. 1 ¶ 41–43.

**B.      The Amended Complaint Fails to Allege any Actionable Misstatements or Omissions**

To state a claim under §10(b) and Rule 10b-5, a plaintiff must allege a material misrepresentation or omission.  15 U.S.C. § 78u-4(b)(1); *Halliburton Co. v. Erica P. John Fund,*

18

*Inc.*, 573 U.S. 258, 267 (2014).  Even if Plaintiff has stated its claims with the requisite specificity, it has not adequately alleged that any of the alleged misstatements were either material or false.

The alleged misstatements about the Company's goodwill are not actionably false or misleading because they were statements of *opinion*, reflecting the Company's judgment as allowed by ASC 350.  The alleged omissions about the SEC investigation were not omissions at all as the Company publicly disclosed both.  Finally, Plaintiff's conclusory allegations that the Company's internal controls were insufficient, without more, cannot show that affirmations regarding the internal controls were false.

### 1.   The Alleged Misstatements Concerning the Company's Goodwill Impairment Are Non-Actionable Statements of Opinion

Plaintiff alleges that the Gibson Dunn Defendants made ten statements that were misleading for some combination of seven reasons, including that the Gibson Dunn Defendants avoided an earlier impairment and did not disclose the results of the December 2016 Calculations.  *See, e.g.*, Ex. 1 ¶¶ 141, 144.[11]

These ten statements were opinion statements because, as is the case with all goodwill statements, they "depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact" and "will vary depending on the particular methodology and assumptions used."  *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*, 2016 WL 5794774, at *10 (S.D.N.Y. Sept. 30, 2016) (citation omitted); *In re Gen. Elec. Sec. Litig.*, 2020 WL 2306434, at *14 (S.D.N.Y. May 7, 2020), *aff'd*, 844 F. App'x 385 (2d Cir. 2021) ("Goodwill balances are

---

[11] Three of the Gibson Dunn Defendants—Ms. DiSanto, Mr. Hanbridge, and Mr. Wagenheim—are not adequately alleged to have been "makers" of any statements regarding the Company's goodwill. *See supra* Arg. § I.A.1.

accounting estimates produced through an exercise of judgment."). Statements of opinion are actionable only if: (1) "the speaker did not hold the belief she professed," or (2) the speaker omitted information making the statement misleading to a reasonable investor. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185–87 (2015); *Tongue v. Sanofi*, 816 F.3d 199, 209–10 (2d Cir. 2016).

> a. **The Amended Complaint Fails to Adequately Allege That the Gibson Dunn Defendants Did Not Hold the Beliefs they Professed**

To show that failure to take an earlier impairment amounts to a material misstatement or omission under the first *Omnicare* prong, a plaintiff must "plausibly allege that defendants did not believe the statements regarding goodwill at the time they made them." *City of Omaha, Neb. Civilian Emp.'s Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 67–68 (2d Cir. 2012). The Amended Complaint lacks even a conclusory allegation that any of the Gibson Dunn Defendants did not believe their goodwill statements at the time they made them.

Furthermore, just as in *CBS Corp.*, here, Plaintiff's claims center on an allegation that the Gibson Dunn Defendants had reason to know there was a need for interim impairment testing due to a downward stock price trajectory and lowered earnings guidance. Ex. 1 ¶ 120. But such alleged indicators are not enough to plausibly demonstrate that the Gibson Dunn Defendants knew that it was more likely than not that an interim test would reveal its goodwill was overvalued, nor to allege that they did not hold the beliefs they professed. *CBS Corp.*, 679 F.3d at 68 (finding that an allegation that defendants were aware of facts that should have led them to begin interim impairment testing earlier was not enough to show that defendants did not believe their statements of opinion regarding goodwill, reasoning that plaintiff, at most, pleaded defendant's failure to comply with GAAP, which itself does not amount to securities fraud); *see also Lucescu v. Zafirovski*, 2018 WL 1773134, at *12 (S.D.N.Y. Apr. 11, 2018) (finding that

20

allegations that the company had experienced financial losses for five quarters and allegations that the "same circumstances" that led to the eventual impairment had existed earlier did not show that defendant did not believe his statements that an earlier impairment charge was unnecessary).

> **b.** **The Amended Complaint Fails to Adequately Allege That the Gibson Dunn Defendants Made Omissions in Their Opinion Statements That Would Mislead a Reasonable Investor**

If a plaintiff alleges falsity under the second *Omnicare* prong, it "must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Tongue*, 816 F.3d at 209. "A reasonable person, who understands a statement of opinion in its full context, would expect not just that the issuer believes the opinion (however irrationally), but that the opinion rest[s] on some meaningful . . . inquiry." *City of Westland Police and Fire Ret. Sys. v. Metlife, Inc.*, 129 F. Supp.3d 48, 71 (S.D.N.Y. 2015) (internal citations omitted). Accordingly, to establish than an opinion was misleading, a plaintiff must show "that the statement did not rest on some meaningful . . . inquiry." *Id.*

The Gibson Dunn Defendants' inquiry into the Company's goodwill from late 2016 to late 2017 involved internal analysis (Ex. 1 ¶¶ 29, 96–99, 107–09), qualitative tests (Ex. 1 ¶ 104), and consultation with an external valuation expert and an outside auditor (Ex. 1 ¶¶ 107, 109, 122, 254–56, 274). A Goodwill Memorandum (Ex. 5), details Sequential's in-depth analysis of the information that Plaintiff alleges was omitted in the goodwill analysis. Ex. 1 ¶ 107; Ex. 5 at 4–6. It ultimately concluded there was no goodwill impairment as of October 1, 2016 and no impairment event as of December 31, 2016. Ex. 5 at 5–6.

21

The December 2016 Calculations and information that Plaintiff argues demonstrated a possible impairment, including the stock price decline and lowered earnings guidance, were simply facts "cutting the other way" in accounting determinations that call for companies to exercise judgment. *Omnicare*, 575 U.S. at 210–11. Courts have even concluded that allegations of a downward trajectory of the company's market capitalization, declining advertising revenues for some reporting units, analysts' expectations of a decline in the industry, and the company's own anticipation of an economic slowdown did not "plausibly demonstrate that defendants knew, nor even had reason to know . . . that it was more likely than not that interim impairment testing would reveal that the goodwill of any specific reporting unit was overvalued." *CBS Corp.*, 679 F.3d at 67–68.

The Company was not obligated to disclose its own internal calculations that it believed to be inaccurate just because they were in tension with other analyses. Such an omission is not misleading to a reasonable investor, who understands that some facts underlying goodwill determinations may be in conflict. *Tongue*, 816 F.3d at 210 (finding that "reasonable investors . . . understand that opinions sometimes rest on a weighing of competing facts"). The fact that a plaintiff disagrees with a defendant's goodwill opinion does not amount to securities fraud. *MDC Partners*, 2016 WL 5794774, at *10 (finding that plaintiff's assertion that defendant failed to record a necessary goodwill impairment after revenues declined and a major client departed alleges nothing more than disagreement with defendant's accounting judgments, which cannot support a fraud claim); *Plumbers & Steamfitters Local 773 Pension Fund v. Can. Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 303 (S.D.N.Y. 2010) ("The allegations regarding [a company's] write-downs amount to fundamental disagreements with [d]efendants' business judgments in a tumultuous economic downturn—claims that are not actionable under

Section 10(b) and Rule 10b-5."); *see also Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 181 (S.D.N.Y. 2012), *aff'd sub nom. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013).

A reasonable investor expects "not just that the issuer believes the opinion (however irrationally), but that it fairly aligns with the information in the issuer's position at the time." *Omnicare*, 575 U.S. at 189. Plaintiff alleges that Gibson Dunn Defendants failed to disclose the December 2016 Calculations and that they should have known that the Company was impaired because of the December 2016 Calculations. Ex. 1 ¶¶ 104–05, 141. But Plaintiff fails to adequately allege that any of the Gibson Dunn Defendants had access to or were even aware of these calculations. *See* Ex. 1 ¶ 104. If this information is not alleged to be in the issuer's possession at the time, then it cannot serve to mislead a reasonable investor.

Furthermore, any alleged omission of the results of the December 2016 Calculations could not have been misleading because Plaintiff had all the information it needed to discover the same results through simple math—the number of outstanding shares and the Company's stock price. *See, e.g.*, Ex. 7 (2016 10-K) (including all consolidated balance sheets and goodwill testing procedure). Using information the Company publicly disclosed, a reasonable investor could have discovered a possible impairment, if there was one.

### 2. The Alleged Misstatements Are Inactionable Forward-Looking Statements

Many of the challenged statements are, in whole or in part, forward-looking, including "statements whose truth cannot be ascertained until some time after they are made." *In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *24 (S.D.N.Y. Mar. 23, 2017) (citation omitted). These statements include "the plans and objectives of management for future operations," "future economic performance," and "a projection of revenues, income . . . , [or] earnings,"

23

which are, according to PSLRA's safe harbor rule, not actionable so long as they are accompanied by cautionary language. 15 U.S.C. § 78u-5(i)(1). Statements that defendants allegedly made about future income projections as well as future lawsuit threats that also contain cautionary language are therefore not actionable. Ex. 1. ¶¶ 209, 213, 217, 223.

### 3. The SEC Investigation and Lawsuit Was Not Material

To prevail, Plaintiff must demonstrate the alleged misstatements and omissions regarding the SEC investigation and eventual lawsuit were material. But it has not. A material misstatement or omission is one "that a reasonable investor would have considered significant in making investment decisions." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000); *see also ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009). Plaintiff alleges the Gibson Dunn Defendants' belief that any outstanding legal matters would not have a material adverse effect on their business was materially false or misleading because they knew "the SEC would be bringing a suit against the Company." *E.g.*, Ex. 1 ¶ 197. Even if Plaintiff had actually alleged that any Gibson Dunn Defendants knew that the SEC would bring a lawsuit—which it does not—the mere fact that the SEC did eventually bring a lawsuit does not make the earlier investigation material.

To determine if an investigation was material, the Second Circuit considers both qualitative facts and a quantitative numerical threshold. *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 14 (S.D.N.Y. 2016). The quantitative threshold includes the risk of a significant fine. *Id. Lions Gate* held that the omission of a preliminary SEC staff investigation was not material because plaintiffs did not plead how knowledge of the investigation would have significantly altered an investor's total mix of information. *Id.* at 14. In *Lions Gate*, where a civil penalty was ordered, the Court held that the company had no duty to disclose the investigation or settlement amount until the settlement was entered into. *Id.* at 14–15. Here, the

Amended Complaint summarizes the SEC's allegations, but does not provide the outcome or even allege that there was a risk of a significant fine, much less any monetary penalties against the Company (because there were none).  *See, e.g.*, Ex. 1 ¶¶ 127, 133; Ex. 6.  The omission of an SEC investigation for which there was no settlement in place during the Class Period and for which there was no penalty (*see* Ex. 6), could not have significantly altered an investor's total mix of information.

Qualitative factors include:  (1) concealment of an unlawful transaction, (2) significance of the misstatement in relation to the company's operations, and (3) management's expectation that the misstatement will result in a significant market reaction.  *ECA, Local 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 197–99.  Plaintiff here does not allege the existence of any qualitative factors in connection with the SEC investigation or eventual lawsuit.

> **4.    The Gibson Dunn Defendants Did Not Have a Duty to Disclose any of the Purported Omissions Regarding the SEC Investigation, and the Alleged Omissions Did Not Make the Company's Statements Inaccurate, Incomplete, or Misleading**

Even if the SEC investigation were material, Plaintiff must still plausibly allege a duty to disclose, which they cannot and do not.  *See In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006).  Plaintiff merely alleges that various statements made throughout the Class Period were misleading based on some combination of the following:  (1) Defendants exposed the Company to the risk of a material SEC investigation and lawsuit because they did not write down goodwill when Sequential's share price initially declined, (2) the Company was being investigated by the SEC, and (3) current and/or former employees were being interviewed by the SEC.

Even if Plaintiff had adequately alleged that any Gibson Dunn Defendants actually knew the above—which Plaintiff does not—Plaintiff's claims relating to the SEC investigation fail for

two reasons.  *First*, "[a]s the Supreme Court has made clear[,] . . . the concepts of materiality and duty to disclose are different." *Glazer v. Formica Corp.*, 964 F.2d 149, 156 (2d Cir. 1992). "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. United States*, 445 U.S. 222, 235 (1980).  Corporations are "not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  The "duty to speak" arises only when there is (1) "a corporate insider trading on confidential information," (2) "a statute or regulation requiring disclosure," or (3) "a corporate statement that would otherwise be inaccurate, incomplete, or misleading." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015) (cleaned up).  None is present here.

A company is only required to disclose a government investigation if litigation is "substantially certain to occur." *Richman v. Goldman Sachs Grp.*, 868 F. Supp. 2d 261, 275 (S.D.N.Y. 2012); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004), *aff'd sub nom. Albert Fadem Trust v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006); *In re Marsh & McLennan Cos.*, 501 F. Supp. 2d at 471 (disclosures predicting pending litigation not required "absent an allegation that the litigation was substantially certain to occur during the relevant period" (cleaned up)).  Substantial certainty requires more than a chance, risk, or a speculative possibility of litigation.  *In re Par Pharm., Inc. Sec. Litig.*, 733 F. Supp. 668, 678 (S.D.N.Y. 1990); *see also Acito v. IMCERA Grp.*, 47 F.3d 47, 53 (2d Cir. 1995).  Plaintiff's allegation that the Gibson Dunn Defendants exposed the Company to the "risk" of a material investigation does not mean they were required to make a disclosure.  Plaintiff has not pled—nor could it—that SEC staff knew it would recommend bringing charges against the Company, much less whether the Commission would bring such charges.

26

Furthermore, SEC investigations and Wells Notices are not required to be disclosed because they do not indicate that litigation is substantially certain to occur. *In re Lions Gate*, 165 F. Supp. 3d at 11–12. After issuing a Wells Notice, the SEC Enforcement Division may choose not to recommend an action and, regardless, the SEC may decide not to authorize filing of an action. *Id*. Investigations are not pending legal proceedings. *Id.* at 18; *see also Richman*, 868 F. Supp. 2d at 274. Plaintiff does not allege any facts showing that litigation was substantially certain at any time between the Company's Wells Notice disclosures in August and November 2020 and when the SEC filed its suit in December 2020.

*Second*, a corporation also has no general duty to "disclose uncharged, unadjudicated wrongdoings or mismanagement." *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *31 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *see also In re Banco Bradesco*, 277 F. Supp. 3d at 651 (finding that a requirement that a filing company disclose risk factors specific to the company does not affirmatively require disclosure of uncharged illegal conduct). A duty to disclose uncharged misconduct only arises when the alleged omission is sufficiently connected to existing disclosures such that those statements are rendered misleading. *In re Marsh & McLennan Cos.*, 501 F. Supp. 2d at 469.

Plaintiff alleges that certain statements were misleading because they omitted that the SEC would bring a suit against the Company related to goodwill write-offs and GAAP violations. *E.g.*, Ex. 1 ¶¶ 193, 210. Despite these conclusory allegations they fail to show that the Company or its employees actually engaged in misconduct. The Company has always maintained that it did not violate GAAP or culpably avoid writing off goodwill. The Gibson Dunn Defendants could not have been operating under a duty to disclose misconduct they or the

Company did not engage in.  And even if any Gibson Dunn Defendants were aware of the SEC's allegations before the Company disclosed the investigation in March 2020, they were not required to disclose SEC uncharged, unadjudicated, and ultimately unproven allegations.  *See In re Banco Bradesco*, 277 F. Supp. 3d at 651.

Despite the fact that the Company was under no duty to disclose the SEC investigation or Wells Notice, it did in fact disclose both in a timely manner.  The Company disclosed on March 31, 2020, before it even received a Wells Notice, that it was cooperating in an SEC investigation.  Ex. 1 ¶ 208 (quoting 2019 10K).  And when the Company received a Wells Notice by July 17, 2020, it disclosed in its very next filing on August 14, 2020, warning that although it believed that it had complied with GAAP and SEC rules, it "can provide no assurance that the SEC will agree ultimately."  Ex. 1 ¶ 216 (quoting Ex. 14 [2Q20 10-Q]).  Plaintiff has failed to show that the Gibson Dunn Defendants violated any duty to disclose the SEC investigation, nor has it shown that any prior statements were rendered misleading due to any perceived omission.

### 5.  Plaintiff Does Not Adequately Allege That Statements Affirming the Company Maintained Adequate Internal Controls Were Misleading

Plaintiff also alleges that the Gibson Dunn Defendants misled investors by affirming in reports filed during the Class Period that the Company maintained adequate internal controls over its financial reporting.  Ex. 1 ¶ 306.  But a plaintiff must do more to allege "why or how" a company's internal controls "were materially deficient at the time" of the challenged statements.  *See Janbay v. Can. Solar, Inc.*, 2012 WL 1080306, at *9 (S.D.N.Y. Mar. 30, 2012) (dismissing a Section 10(b) claim where "[t]he Complaint [did] not allege any facts explaining why or how [the company's] internal controls were materially deficient at the time [the company] made any of the challenged statements"); *see also In re PetroChina Co. Sec. Litig.*, 120 F. Supp. 3d 340, 359 (S.D.N.Y. 2015) (dismissing a Section 10(b) claim that "d[id] not claim that [defendant]

failed to evaluate its internal controls or disclose any weaknesses to its auditors" or "make any allegation as to how or why [defendant's] internal controls were inadequate"), *aff'd sub nom. Klein v. PetroChina Co.*, 644 F. App'x 13 (2d Cir. 2016); *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.*, 2011 WL 4357368, at *22 (S.D.N.Y. Sept. 19, 2011).

Beyond its disagreements with Defendants' judgment in impairment testing, Plaintiff does not make any allegation as to how or why the Company's internal controls were deficient at the time of the challenged statements, nor does it explain how any such deficiency could be attributed to or within the knowledge of the Gibson Dunn Defendants. *See* Ex. 1 ¶¶ 115–126. Like the plaintiff in *PetroChina*, here, Plaintiff does not claim that the Gibson Dunn Defendants failed to evaluate the Company's internal controls or disclose any weaknesses to its auditors. In fact, throughout the Class Period, CohnReznick audited and found that the Company "maintained, in all material respects, effective internal control over financial reporting." Ex. 1 ¶ 305, 309, 313, 315. Moreover, "[c]ourts in this Circuit have found statements . . . [p]roclaiming compliance with ethical and legal standards to be non-material." *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *15 (S.D.N.Y. Sept. 29, 2014) (citing *ECA*, 553 F.3d at 206). Nor did Mr. Cooper's replacement as CFO change any of his decisions or statements. For this reason alone, any alleged misstatements regarding the Company's internal controls and compliance with GAAP are not actionable.

### C. The Amended Complaint Fails to Allege Facts Giving Rise to a Strong Inference of Scienter

The fraud claims against the Gibson Dunn Defendants must be dismissed because they fail to satisfy Rule 9(b)'s requisite "strong inference" of scienter. Even where Plaintiff attempts to allege the scienter of individual Gibson Dunn Defendants, it does not do so with the requisite particularity. Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind." 15 U.S.C. 78u-4(b)(2)(A); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The required state of mind in a Section 10(b) and Rule 10b-5 action is an "intent to deceive, manipulate, or defraud," or at least recklessness, which can be alleged either by facts: (1) showing both motive and opportunity to commit fraud; or (2) that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *ECA*, 553 F.3d at 198. The allegations must present a strong inference of scienter that is "more than merely plausible or reasonable." *Tellabs*, 551 U.S. at 314. Consequently, Plaintiff is required to plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference of nonfraudulent intent. Plaintiff has made no such showing. Because courts repeatedly have refused to allow group pleadings of scienter, and have refused to infer scienter from speculative allegations regarding what defendants may have had access to, Plaintiff has not met its pleading burden.

The Amended Complaint makes a single conclusory allegation regarding Gibson Dunn Defendants' motive: "the Sequential Defendants had motive and opportunity to perpetuate the fraudulent scheme and course of conduct." Ex. 1 ¶ 348. Even if this allegation was not an impermissible group pleading, is not enough to show scienter. A plaintiff alleging motive and opportunity must include specific allegations that defendants "benefitted in some concrete and personal way from the purported fraud" beyond motives that are common to most corporate officers. *ECA*, 553 F.3d at 198.

Where Plaintiff cannot show particularized motive, it must at least raise a strong inference of scienter with evidence of conscious misbehavior or recklessness. *Id.* at 198–99. Plaintiff has failed to plead either. "Intentional misconduct is easily identified since it encompasses deliberate illegal behavior, such as securities trading by insiders privy to

30

undisclosed and material information . . . or knowing sale of a company's stock at an unwarranted discount." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). On the other hand, recklessness is "at the least, . . . extreme departure from the standards of ordinary care" such that "the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA*, 553 F.3d at 198. And when, as here, a complaint fails to allege motive, the strength of the circumstantial allegations generally must be correspondingly greater. *Id.* at 198–99. Plaintiff does not state with particularity the circumstances constituting a strong inference of misbehavior or recklessness.

At most, Plaintiff alleges that while Sequential took an impairment in Q4 2017, Defendants committed an accounting error by failing to take an impairment in prior quarters. However, courts have held that "to demonstrate scienter through proof of conscious misbehavior or recklessness requires a plaintiff to offer 'far more than a misapplication of accounting principles[,]'" even if those accounting errors "occurred over an extended period of time." *In re Iconix Brand Grp.*, 2017 WL 4898228, at *18 (S.D.N.Y. Oct 25, 2006) (quoting *Iowa Pub. Emp. Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 333 (S.D.N.Y. 2013).

If a plaintiff seeks to plead scienter by alleging defendant's knowledge of or access to certain facts, it must allege that specific contradictory information was available to the defendants at the same time they made the allegedly misleading statement. *In re Marsh & McLennan Cos.*, 501 F. Supp. 2d at 483–84 (compiling Second Circuit cases); *Das v. Rio Tino, PLC*, 332 F. Supp. 3d, 786,813 (S.D.N.Y. 2018). Moreover, "where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (quotation marks and alteration omitted); *see also In re*

31

*DRDGold Ltd. Sec. Litig.*, 472 F. Supp. 2d 562, 572 (S.D.N.Y. 2007) (rejecting a "'pleading technique that couples a factual statement with a conclusory allegation of fraudulent intent' in an attempt to create a strong inference of scienter" (quoting *Rombach*, 355 F.3d at 176)).  Although the Amended Complaint mentions some reports that allegedly contradict Defendants' public statements, it utterly fails to allege that any of the Gibson Dunn Defendants had access to that information at the time of the alleged misstatements.

Instead, the Amended Complaint rests on the impermissible inference that the Gibson Dunn Defendants had access to contrary information "because of their positions with Sequential." Ex. 1 ¶ 41–42.  Complaints may not imply scienter "solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information." *Police and Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 234 (S.D.N.Y. 2009) (quoting *In re Winstar Commc'ns.*, 2006 WL 473885, at *7 (S.D.N.Y. Feb 27, 2006)); *see also Maloney v. Ollie's Bargain Outlet Holdings*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (holding that recklessness could not be inferred from an allegation that executives were "hands-on" and therefore must have been aware of critical issues at the company); *cf. In re Turquoise Hill Res. Ltd.*, 2022 WL 4085677, at *50 (S.D.N.Y. Sept. 2, 2022) (holding that allegations of specific statements from former employees about defendants' knowledge prior to their public statements, that the substance of meetings was reported to an individual defendant, a statement from a contractor that he discussed issues with the defendants and continued to follow up with them, and a screenshot of an email in which defendants referred to the "magnitude of what is happening" were enough to plaintiff create a strong inference that defendants were aware of facts that contradicted their public statements); *In re Iconix*, 2017 WL 4898228, at *18 (holding that a

32

finding of strong circumstantial inference of scienter is undermined when plaintiffs do not cite to statements from confidential witnesses or internal documents that show that Defendant knew they were engaged in improper accounting practices).

Like the complaint in *In re MBIA*, 700 F. Supp. 2d 566 (S.D.N.Y. 2010), which did not provide any facts showing defendants had access to adverse information, here, the Amended Complaint concludes that certain Defendants knew of or recklessly disregarded a possible earlier impairment because they had access to the December 2016 Calculations without alleging any facts that show they had access to the analyses. But unlike the plaintiff in *Turquoise Hill*, here Plaintiff does not allege the existence of statements or emails from employees showing that they reported the December 2016 Calculations to *any* of the Gibson Dunn Defendants. Plaintiff also never alleges that any Gibson Dunn Defendant, except Mr. Cooper—who appropriately vetted the changes with independent auditors and external valuation experts in Q3 2017 (Ex. 1 ¶ 122)—were involved in any of the decisions regarding the impairment test date or methodology, were even made aware of those decisions before they were announced to the public, or that they understood or should have understood the alleged significance of those changes.

Even if the Amended Complaint did allege facts showing that any Gibson Dunn Defendants had access to information contradicting the Company's public statements, Plaintiff's scienter allegations are still insufficient because they are not at least as plausible as "competing inferences drawn from the facts alleged." *Turquoise Hill*, 2022 WL 4085677, at *48 (finding that, contrary to the inference urged by plaintiffs that the defendant sought to trick investors, the complaint created an inference that the defendant was not in control of adverse information and was itself kept in the dark because if the entity controlling the information was in fact committing fraud, it had no reason to provide the speaker of public statements with the "true"

information).  Instead, the Amended Complaint supports an even stronger competing inference that the individual Gibson Dunn Defendants honestly believed there was no impairment before the fourth quarter of 2017.  For example, the Company disclosed the change in impairment test date publicly and provided an entirely plausible, non-fraudulent reason for this change—that the Company believed the new October 1 date was preferable because it would "allow[] for more timely completion of the annual impairment test prior to the end of [its] annual financial reporting period."  Ex. 1 ¶ 170 (quoting Ex. 8 [2017 10-K]).  In addition, the Amended Complaint provides facts that support a non-fraudulent reason for using the Income Method for its third quarter 2017 impairment test.  During that quarter, the Company discussed this method in depth with both CohnReznick and the Company's third party valuation specialist, with all parties concluding that the Income Method did accurately measure the Company's fair value.  Ex. 1 ¶¶ 122, 274–75, 286.

Plaintiff asks the Court to infer that—despite repeated assurances from CohnReznick and an external valuation specialist that the Company was not impaired and that their testing methodology was accurate—the individual Gibson Dunn Defendants should have known that their auditors and consultants were wrong and that their Goodwill was likely impaired.  But the Amended Complaint contains ample facts showing that the Gibson Dunn Defendants had reason to believe their public statements about the Company's Goodwill were accurate.  *E.g.*, Ex. 1 ¶¶ 107, 109, 270.  Combined with the fact that it does show that the Gibson Dunn Defendants had access to the December 2016 Calculations, the Amended Complaint gives rise to the more plausible inference that the Gibson Dunn Defendants did not intentionally nor recklessly ignore a possible earlier impairment.

**D.      The Amended Complaint Does Not Adequately Plead Reliance on Alleged Misstatements or Omissions**

Plaintiff must plausibly allege reliance, also called transaction causation.  *ATSI Commc'ns, Inc.*, 493 F.3d at 106.  Plaintiff uses the fraud on the market doctrine to show its reliance on alleged misstatements and omissions.  Ex. 1 ¶ 331.  This doctrine creates a rebuttable presumption that shareholders rely on a company's public misrepresentations when trading its stock in an efficient market because share prices reflect publicly known information.  *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988).

Here, Plaintiff cannot plausibly allege that any alleged misstatements or omissions caused Plaintiff to rely on a fraudulently inflated price because all alleged "red flags" calling for impairment testing were public.  *CBS Corp.*, 679 F.3d at 69 (finding that defendant's market price reflected, at all relevant times, "the need for, if any, or culpable failure to undertake, if any, interim impairment testing" because the difference between defendant's book value and market capitalization, declines in advertising revenues, expectations of analysts regarding the relevant sector, and the fact that the last impairment test occurred before the appearance of red flags were all known to the public).

It is clear from the Amended Complaint that all information alleged to constitute "red flags" calling for interim impairment testing—in particular, the stock price decline beginning in November 2016, the overall decline of stock prices in the retail industry, the Company's issuance of downward revised earnings guidance, and Defendant Shmidman's announcement that he was stepping down as CEO—were matters of public knowledge.  *See* Ex. 1 ¶¶ 3, 61, 120; *cf. CBS Corp.*, 679 F.3d at 69.  Like in *CBS Corp.*, where the public knew the defendant's last impairment test occurred before the appearance of red flags, here, the public knew at all pertinent times that, before eventually taking an impairment, the Company's only impairment tests during

35

the Class Period were conducted as of October 1, 2016, before the November stock price drop, and in 3Q17, using the DCF method. Ex. 1 ¶¶ 142, 163. Plaintiff alleges that the market for Sequential securities was efficient, that Sequential regularly communicated with the public, and that material news about Sequential was rapidly reflected in its stock price throughout the Class Period. Ex. 1 ¶ 332. Therefore, Plaintiff's own allegations show that the Company's market price reflected at all pertinent times the need for, if any, or culpable failure to undertake, if any, interim impairment testing. Consequently, it cannot plausibly allege that the market price of Sequential stock was inflated by the Gibson Dunn Defendants' alleged fraud in failing to undertake interim impairment testing. In addition, because the Company disclosed the SEC investigation and the receipt of a Wells Notice even though it was never required to do so, Plaintiff cannot plausibly allege that Sequential's stock price was fraudulently inflated by any failure to disclose this information. Because Plaintiff does not plausibly allege that Sequential stock prices were fraudulently inflated, it cannot allege that it relied upon fraudulently inflated prices.

### E.  The Amended Complaint Does Not Plausibly Plead Scheme Liability

Scheme liability requires the performance of a deceptive act that is distinct from the alleged misstatements and omissions, such as dissemination. *SEC v. Rio Tinto PLC*, 41 F.4th 47, 49 (2d Cir. 2022); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (reasoning that alleged misrepresentations or omissions cannot be the "sole basis" for scheme liability); *SEC v. Kelly*, 817 F. Supp. 2d 340, 343–44 (S.D.N.Y. 2011) ("[W]here the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, courts have routinely rejected [a plaintiff's] attempt to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'"). Otherwise, virtually any claim for misrepresentations or omissions liability

36

would state a claim for scheme liability.  Even a "deceptive cover-up" to conceal bribery and misrepresentations is not sufficiently distinct where it merely "repackage[s] the misrepresentation allegations."  *Menaldi v. Och-Ziff Cap. Mgmt. Grp.*, 277 F. Supp. 3d 500, 519–20 (S.D.N.Y. 2017).

The instant matter involves none of the inherently bad acts that typically form the basis of scheme liability—*e.g.*, executing manipulative stock trades, creating or financing a sham entity, or colluding to defraud others.  *See, e.g.*, *SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010) (listing examples); *see also SEC v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 385 (S.D.N.Y. 2014) (related-party transactions funneled company's net revenue into family accounts); *SEC v. Stoker*, 865 F. Supp. 2d 457, 467 (S.D.N.Y. 2012) (bank induced investor to buy risky investment that bank itself had bet against).

Rather, Plaintiff impermissibly attempts to bootstrap scheme liability onto its allegations of misrepresentations and omissions.  Ex. 1 ¶ 343 ("In furtherance of this unlawful scheme, plan, and course of conduct, the Sequential Defendants took the actions set forth herein").  All of the actions "set forth herein" are the alleged misstatements and omissions.

Indeed, Plaintiff alleges conduct that was deceptive *only because of* Defendants' alleged misrepresentations of the Company's goodwill impairment and subsequent investigation.  Ex. 1 ¶ 343 ("The Defendants . . . carried out a plan, scheme, and course of conduct which was intended to, and did:  (a) deceive the investing public . . . and, (b) cause Plaintiff and other members of the class to purchase Sequential securities at artificially inflated prices").  Plaintiff alleges no facts to support its conclusory allegation that the Sequential Defendants participated in a fraudulent scheme by preparing and/or disseminating misstatements or omissions.  *See* Ex. 1 ¶¶ 46, 344, 347.  Plaintiff's scheme liability claims therefore fail and must be dismissed.

**II.     Plaintiff's Section 20(a) Claim Fails Because Its Underlying Section 10(b) Claim Fails**

To establish a prima facie case of a control person claim, Plaintiff must allege: (1) an underlying primary violation; (2) the defendant's control over the primary violator; and (3) the defendant's culpable participation in the primary violation. *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)). Plaintiff fails to plausibly plead any of the essential Section 20(a) elements.

First, Plaintiff's Section 20(a) claim necessarily fails because the Amended Complaint fails to make out multiple essential elements of the underlying Section 10(b) claim. Where a plaintiff "fails to allege any primary violation . . . it cannot establish control person liability." *ATSI Commc'ns, Inc.*, 493 F.3d at 108; *see also First Jersey Sec.*, 101 F.3d at 1472–73.

Second, Plaintiff has not adequately alleged that any of the Gibson Dunn Defendants had control over any alleged primary violators. "[A] determination of § 20(a) liability requires an *individualized* determination of a defendant's control of the primary violator." *Boguslavsky*, 159 F.3d at 720 (emphasis added). A plaintiff can establish that a defendant had control over a primary violator by showing that the defendant "possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *First Jersey Sec.*, 101 F.3d at 1472–73 (quoting 17 C.F.R. § 240.12b–2).

Exercise of influence is not sufficient to establish control for purposes of Section 20(a). *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005) ("Control . . . is not the mere ability to persuade, but almost always means the practical ability to *direct* the actions of people who issue or sell securities") (emphasis in original) (citation and quotation marks omitted). Importantly, pleading defendant's officer or director status alone is

38

not enough to establish that they exercised actual control over primary violators.  *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 351 (S.D.N.Y. 2004)  ("plaintiffs have failed to allege a single fact, outside of these defendants' positions, indicating that either exercised actual control over the primary violators"); *Rich v. Maidstone Fin., Inc.*, 2002 WL 31867724, at *11 (S.D.N.Y. Dec. 20, 2002) ("pleading officer or director status alone is not enough"); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 436 (S.D.N.Y. 2001) ("Officer or director status alone does not constitute control for the purposes of § 20(a) liability").

The Amended Complaint does not allege with particularity any *individualized* facts showing that any of the Gibson Dunn Defendants had control over any of the other Defendants. It only includes conclusory allegations that the Gibson Dunn Defendants as a group had control over primary violators solely due to their positions as executives and directors at the Company. *See, e.g.*, Ex. 1 ¶¶ 44, 349.

Third, the Amended Complaint has not alleged any facts showing that the Gibson Dunn Defendant's culpably participated in the alleged Section 10(b) violation.  Section 20(a) liability also requires an "individualized determination" of the defendant's "particular culpability." *Boguslavsky*, 159 F.3d at 720.  Plaintiff must state with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct, or that the controlling person failed to review or check information that he or she had a duty or monitor, or that the controlling person ignored obvious signs of fraud.  15 U.S.C. § 78u–4(b)(2); *In re Alstom SA*, 406 F. Supp. 2d 433, 491–92 (S.D.N.Y. 2005); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014) (finding plaintiff did not

39

adequately allege culpable participation where it only alleged that defendant participated in preparing an SEC filing).

Even if the Amended Complaint had adequately alleged that any of the Gibson Dunn Defendants had control over any of the other Defendants, it fails to allege with particularity any facts showing that any of the Gibson Dunn Defendants were at least reckless is exercising that control.  *See supra* Arg. § I.C.  The Amended Complaint does not give rise to a strong inference that any of the Gibson Dunn Defendants knew or should have known that any other Defendant was engaged in fraud or ignored obvious signs of fraud.  *See supra* Arg. § I.C.  Furthermore, the Amended Complaint does not even attempt to allege that any of the Gibson Dunn Defendants had a duty to monitor information.  For these reasons, Plaintiff's Section 20(a) claim must fail.

Finally, if the Court does find that Plaintiff has adequately pled a §10(b) claim against any of the Gibson Dunn Defendants, then Plaintiff's Section 20(a) claim against the same individuals must be dismissed.  A defendant cannot be held liable as both a primary violator and a controlling person.  *In re Alstom*, 406 F. Supp. 2d at 486; *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001).

## III.   The Bulk of Plaintiff's Claims and Allegations Are Time Barred

Plaintiff's claims, which allege "fraud, deceit, manipulation, or contrivance" under the Exchange Act, "may be brought not later than the earlier of . . . 2 years after the discovery of the facts constituting the violation; or . . . 5 years after such violation."  *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 378 (S.D.N.Y. 2013) (quoting 28 U.S.C. § 1658(b)).

### A.   The Unqualified Five-Year Statute of Repose Bars Plaintiff's Claims Based on Alleged Misstatements Made Before November 14, 2017

The statute of repose applicable here is "an unqualified bar on actions instituted '5 years after such violation.'"  *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010) (quoting 28 U.S.C.

40

§ 1658(b)(2)).  As this court has already held, it is ironclad and cannot be extended by equitable tolling principles or continuing violation theories.  *Abu Dhabi Inv. Auth. v. Mylan N.V.*, 2021 WL 516310, at *3 (S.D.N.Y. Feb. 10, 2021) (Oetken, J.) (collecting cases and rejecting argument that the statute of repose runs from the *last* violation).  Nor can the Rule 15 relation-back doctrine save claims that the statute of repose prohibits, as made clear by the Rules Enabling Act.  28 U.S.C. § 2072(b); *In re Longtop*, 939 F. Supp. 2d at 380.

Plaintiff filed the Amended Complaint on November 14, 2022.  As the five-year statute of repose runs from the time allegedly fraudulent representations were made, Plaintiff's claims based on alleged misstatements or omissions before November 14, 2017 are barred.  *See* Ex. 1 ¶¶ 135, 137–38, 140, 142–43, 145, 147–49, 151, 153, 155, 157, 159, 161, 163; *see* Ex. 4 at 1–6.[12]

### B. The Two-Year Statute of Limitations Bars Plaintiff's Challenges to the Alleged Misstatements

Plaintiff's claims are also barred by the statute of limitations, which requires that a securities fraud claim be brought within "2 years after the discovery of the facts constituting the violation."  28 U.S.C. § 1658(b)(1).  "Discovery" of facts "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known."  *Merck & Co.*, 559 U.S. at 648.  A Plaintiff need not discover everything about a fact; a fact is "discovered" when a "reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint."  *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 666–67 (2d Cir. 2016) (affirming the district court's determination that "a substantial portion" of the allegations in the complaint "was either known or freely available to investors"

---

[12] Although Mr. Cooper was named in the original Complaint, which included these six disclosures, Mr. Cooper is only plausibly alleged to have been the speaker of one of those disclosures—the 3Q17 10-Q (Ex. 13).  *See* Ex. 4.

before the limitations deadline).  Moreover, in evaluating when to start the limitations period, courts consider "storm warnings," including about valuations, that would lead investors exercising reasonable diligence to "discover[] sufficient facts" to plead their claims.  *Id.* at 667.

Plaintiff had constructive notice of its claims by the time of the Company's "corrective disclosure," at which time the claims were "discover[able] through reasonable diligence." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138 (2d Cir. 2013); *see also Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011).  And in cases of multiple possible disclosures, the "first partial corrective disclosure" starts the statute of limitations period.  *In re Synchrony Fin. Sec. Litig.*, 450 F. Supp. 3d 127, 160 (D. Conn. 2020), *aff'd in part, rev'd in part*, 988 F.3d 157 (2d Cir. 2021); *see also Freidus*, 734 F.3d at 139.

Here, the limitations period for claims related to the goodwill impairment began when the Company made a corrective disclosure on February 28, 2018.  Ex. 1 ¶ 319.  The limitations period for claims related to the SEC investigation and risk of lawsuit began when the Company disclosed the investigation on April 1, 2020.  Ex. 1 ¶ 321.  Each was more than two years before Plaintiff filed the operative complaint. But even if we consider the disclosure of the Wells Notice on August 14, 2020 as the discovery date, Plaintiff's claims are still barred.  At that point, Plaintiff knew about the Company's changes to its goodwill impairment testing, its eventual impairment, the SEC investigation regarding that impairment, and that the SEC was considering a lawsuit.  *See* Ex. 1 ¶¶ 3, 87, 90, 92–93, 112, 118, 120–21, 125, 129, 135, 159, 161–63, 165–66, 208, 216, 319, 321.

## C.    The Claims Against New Defendants Do Not Relate Back to the Original Complaint for Statute of Limitations Purposes

As discussed above, Rule 15 cannot overcome the five-year statute of repose.  *In re Longtop*, 939 F. Supp. 2d at 379–80; *supra* Arg. § III.A.  To be sure, Rule 15 permits relation

42

back for statute of limitations purposes in certain circumstances.  However, when an amendment adds new defendants, the claims against the later-added defendants relate back to the date of the initial complaint only if the initial omission of the defendants was a "mistake concerning the proper party's identity" rather than a "matter of choice."  Fed. R. Civ. P. 15(c)(1)(C); *In re Enter. Mortg. Acceptance Co. Sec. Litig.*, 391 F.3d 401, 405 n.2 (2d Cir. 2004).

Rule 15 does not override the statute of limitations where, as here, "[t]he plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable."  *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 129–31 (E.D.N.Y. 2014) (holding that applying Rule 15 otherwise "would gut the policies underlying periods of limitation, because filing a complaint would effectively become an indefinite toll of the statute of limitations").  The Amended Complaint adds for the first time nine of the ten new Gibson Dunn Defendants, all of whom could have been included in the original Complaint and were brought more than two years after the statute of limitation period began.

## IV.     Allegations Based on the SEC Complaint and Settlement Orders Should Be Stricken Under Rule 12(f)

Allegations that copy, reference, or rely upon on complaints, settlements, and consent orders from a different litigation, including SEC actions, that did not result in an adjudication on the merits or findings of fact are "immaterial," do not equate to well pleaded facts, and must be stricken from the pleading pursuant to Rule 12(f).  *E.g.*, *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892–94 (2d Cir. 1976); *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 78–79 (S.D.N.Y. 2003).  Here, no fewer than eighteen paragraphs in the Amended Complaint cite to the SEC Complaint, twenty-two cite to the CohnReznick Order, thirty-six cite to the CohnReznick Partner Order, and six cite to the Klein Order.  Ex. 1 ¶¶ 12, 29, 90, 96–101, 104–05, 107–11, 113–20, 122, 128, 254–90.

The SEC Complaint and these Orders merely state the Commission's findings; the Orders themselves explicitly state that they "are not binding on any other person or entity in this or any other proceeding."[13] This Court should strike or decline to consider, at a minimum, those fifty-seven paragraphs that copy, reference, or rely upon the SEC Complaint and settlement orders.

## CONCLUSION

For each—*or any one*—of the foregoing reasons, the Gibson Dunn Defendants respectfully request that the Court strike those allegations in the Amended Complaint that copy, reference, or rely upon the SEC Complaint or settlement orders and dismiss with prejudice the Amended Complaint with prejudice for failure to state a claim against them.

---

[13] *See SEC v. Sequential Brands Grp.*, No. 1:20-cv-10471-JPO (S.D.N.Y. Dec. 11, 2020), Dkt. 1, https://www.sec.gov/litigation/complaints/2020/comp24981.pdf (SEC Complaint); *In the Matter of CohnReznick LLP*, Release No. 4309 at 2 n.3 (June 8, 2022), https://www.sec.gov/litigation/admin/2022/34-95066.pdf (CohnReznick Order); *In the Matter of Stephen M. Wyss, CPA, Stephen H. Jackson, CPA, and Robert G. Hilbert, CPA*, Release No. 4310 at 2 n.3 (June 8, 2022), https://www.sec.gov/litigation/admin/2022/34-95067.pdf (CohnReznick Partner Order); *In re Gary S. Klein*, Release No. 4241 at 2 n.1 (August 9, 2021), https://www.sec.gov/litigation/admin/2021/34-92611.pdf (Klein Order).

Dated: March 23, 2023
       New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Mary Beth Maloney*

    Mary Beth Maloney
    Mitchell A. Karlan
    Monica Loseman
    Marc Aaron Takagaki
    Andrew C. Bernstein

    200 Park Avenue
    New York, NY  10166-0193
    Telephone:  212.351.4000
    Facsimile:  212.351.4035
    mmaloney@gibsondunn.com
    mkarlan@gibsondunn.com
    mloseman@gibsondunn.com
    mtakagaki@gibsondunn.com
    abernstein@gibsondunn.com

    *Attorneys for Defendants Andrew Cooper, Chad Wagenheim, Peter Lops, David Conn, Daniel Hanbridge, Lorraine DiSanto, William Sweedler, Aaron Hollander, Al Gossett, and Stewart Leonard, Jr.*

45