UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
PETER D'ARCY, Individually and on Behalf
of All Others Similarly Situated,

             Plaintiff,

    -against-

YEHUDA SHMIDMAN, KAREN
MURRAY, GARY KLEIN, ANDREW
COOPER, CHAD WAGENHEIM, PETER
LOPS, DAVID CONN, DANIEL
HANBRIDGE, LORRAINE DISANTO,
WILLIAM SWEEDLER, AARON
HOLLANDER, AL GOSSETT, STEWART
LEONARD, JR., COHNREZNICK LLP,
STEPHEN WYSS, STEPHEN JACKSON,
and ROBERT HILBERT,

             Defendants.

------------------------------------------------------- X

No. 1:21-cv-07296 (JPO)

**ORAL ARGUMENT REQUESTED**

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
YEHUDA SHMIDMAN'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..................................................................................................................2

    A.    Plaintiff's Sparse Allegations Against Mr. Shmidman ...................................3

    B.    Group Pleading ..............................................................................................5

ARGUMENT ........................................................................................................................6

I.    PLAINTIFF'S CLAIMS AGAINST MR. SHMIDMAN ARE TIME-BARRED.................6

II.    PLAINTIFF HAS NOT STATED A CLAIM FOR VIOLATION OF § 10(b) AND RULE 10b-5 AGAINST MR. SHMIDMAN ...........................................................8

    A.    Plaintiff Has Not Pleaded Any Actionable Misstatement or Omission By Mr. Shmidman ...................................................................................................8

    B.    Plaintiff Has Not Properly Alleged That Mr. Shmidman Acted with Scienter.............10

    C.    Plaintiff Has Not Alleged That Mr. Shmidman Caused Its Purported Losses.............14

III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST  MR. SHMIDMAN UNDER § 20(A) OF THE EXCHANGE ACT ...........................................15

CONCLUSION ...................................................................................................................17

**Cases**

*Amorosa v. AOL Time Warner Inc.*,
    409 F. App'x 412 (2d Cir. 2011) ............................................................................7

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ...........................................................................4, 11

*Barrett v. PJT Partners Inc.*,
    2017 WL 3995606 (S.D.N.Y. Sept. 8, 2017) ........................................................10

*Bayerische Landesbank v. Barclays Capital, Inc.*,
    902 F. Supp. 2d 471 (S.D.N.Y. 2012) ................................................................16

*Bd. of Trustees of City of Ft. Lauderdale*
    *Gen. Emps.' Ret. Sys.*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011) ................................................................13

*Campo v. Sears Holdings Corp.*,
    371 F. App'x 212 (2d Cir. 2010) ........................................................................11

*Carpenters Pension Trust Fund of*
    *St. Louis v. Barclays PLC*,
    750 F.3d 227 (2d Cir. 2014) ................................................................................7

*Cent. States, Se. & Sw. Areas Pension Fund v.*
    *Fed. Home Loan Mortg. Corp.*,
    543 F. App'x 72 (2d Cir. 2013) ..........................................................................14

*City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Grp.*,
    2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ....................................................11

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ..........................................................................................14

*ECA Local 134 IBEW Joint Pension Trust v.*
    *JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ...........................................................................8, 11

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000) ..............................................................................11

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
    639 F. App'x 664 (2d Cir. 2016) ..........................................................................6

*Goldberg v. Gray*,
    No. 5:15-CV-0538 (DNH/TWD),
    2016 WL 4099189 (N.D.N.Y. Aug. 2, 2016) ...........................................................16

*Gurfein v. Ameritrade, Inc.*,
    411 F. Supp. 2d 416 (S.D.N.Y. 2006) .....................................................................13

*Harbinger Capital Partners LLC v. Deere & Co.*,
    632 F. App'x 653 (2d Cir. 2015) ............................................................................15

*Hutchinson v. Perez*,
    2012 WL 5451258 (S.D.N.Y. Nov. 8, 2012) ..........................................................12

*In re AT&T/DirecTV Now Sec. Litig.*,
    No. 19-CV-2892 (VEC),
    2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020) ........................................................15

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
    2021 WL 1226627 (S.D.N.Y. 2021) .......................................................................10

*In re EZCorp, Inc. Sec. Litig.*,
    181 F. Supp. 3d 197 (S.D.N.Y. 2016) .....................................................................16

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) .....................................................................10

*In re HEXO Corp. Sec. Litig.*,
    524 F. Supp.3d 283 (S.D.N.Y. 2014) ......................................................................12

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999) .......................................................................16

*In re PetroChina Co. Sec. Litig.*,
    120 F. Supp. 3d 340 (S.D.N.Y. 2015) ...............................................................10, 11

*In re Plug Power, Inc. Sec. Litig.*,
    2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) ........................................................11

*In re PXRE Grp. Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y.) ..............................................................................11

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 n.20 ...........................................................................................12

*In re Vale S.A. Sec. Litig.*,
    No. 1:15-cv-9539-GHW,
    2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ........................................................16

*In re VEON Ltd. Sec. Litig.*,
2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017) ........................................................8

*Int'l Ass'n of Heat v. IBM*,
205 F. Supp. 3d 527 (S.D.N.Y. 2016) ..................................................................12

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ................................................................................14

*Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp.*,
902 F. Supp. 2d 329 (S.D.N.Y. 2012) ...................................................................7

*Lucescu v. Zafirovski*,
2018 WL 1773134 (S.D.N.Y. Apr. 11, 2018) ........................................................9

*MBIA Sec. Litig.*,
700 F. Supp. 2d 566 (S.D.N.Y. 2010) ..................................................................12

*Monro Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
15 F. Supp. 3d 336 (S.D.N.Y. 2014) ......................................................................9

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan*
*v. MDC Partners, Inc.*,
2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ..................................................9, 13

*Plumbers & Steamfitters Local 773 Pension Fund v.*
*Can. Imperial Bank of Commerce*,
694 F. Supp. 2d 287 (S.D.N.Y. 2010) ....................................................................9

*Rok v. Identiv, Inc.*,
No. 15-CV-5775-CRB, 2017 WL 35496
(N.D. Cal. Jan. 4, 2017) ........................................................................................9

*Ross v. Lloyds Banking Grp., PLC*,
546 F. App'x 5 (2d Cir. 2013) ..............................................................................15

*Saraf v. Ebix, Inc.*,
--- F. Supp.3d ---, 2022 WL 4622676
(S.D.N.Y. Sept. 30, 2022) ....................................................................................12

*Southland Sec. Corp. v. INSpire Insurance Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ...............................................................................13

*Special Situations Fund III QP, L.P. v.*
*Deloitte Touche Tohmatsu CPA, Ltd.*,
33 F. Supp. 3d 401 (S.D.N.Y. 2014) ....................................................................16

*Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*,
 No. 21-2698-CV, 2022 WL 17587853
 (2d Cir. Dec. 13, 2022) ........................................................................15

*Touchstone Strategic Tr. v. Gen. Elec. Co.*,
 No. 19-CV-1876 (JMF), 2022 WL 4536800
 (S.D.N.Y. Sept. 28, 2022) ...................................................................15

*Yaroni v. Pintec Tech. Holdings Ltd.*,
 No. 20-CV-8062 (JMF),
 2022 WL 1215450 (S.D.N.Y. Apr. 25, 2022) ......................................7

**Other Authorities**

28 U.S.C. § 1658(b) ........................................................................................6

Private Securities Litigation Reform Act of 1995
 ("PSLRA") ....................................................................................passim

Securities Exchange Act of 1934 ("Exchange Act") ...............................2, 15

**Rules**

15 U.S.C. § 78u-4(b)(4) ...............................................................................14

Fed. R. Civ. P. 12(b)(6) ..................................................................................1

Fed. R. Civ. P. 9(b) ......................................................................................1, 8

Rule 10b-5 ...........................................................................................passim

Defendant Yehuda Shmidman respectfully submits this memorandum of law in support of his motion, pursuant to Fed. R. Civ. P. 12(b)(6), 9(b), and the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), to dismiss the Amended Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiff's claims against Mr. Shmidman—the former Chief Executive Officer of Sequential Brands Group, Inc. ("Sequential" or the "Company"), who is scarcely mentioned in the Amended Complaint for the basic reason that he left the Company before virtually the entire class period—are time-barred and patently defective on multiple grounds.

Although the Amended Complaint is a whopping 137 pages and 375 paragraphs long, there are no particularized factual allegations against Mr. Shmidman—none—that provide any basis for liability. Only *eight* paragraphs in the entire Amended Complaint even mention Mr. Shmidman by name, three of which simply include Mr. Shmidman in a list of defendants. (¶¶ 40, 90, 102.)[2] Another three paragraphs make the unremarkable and uncontroversial allegation that Mr. Shmidman left his position as the Company's CEO in March 2017. (¶¶ 26, 61, 120.) Mr. Shmidman is not alleged to have had any specific involvement whatsoever in the evaluation of the Company's goodwill; or any of the Company's financial decisions in 2017; or the Company's 2020 decision to disclose an SEC inquiry that post-dated his resignation by *more*

---

[1] Mr. Shmidman also joins in the arguments advanced by the other Sequential Defendants in their motions to dismiss, including that the allegations based on the SEC Complaint and settlement orders should be stricken under Rule 12(f).

[2] References to "¶" are to the Amended Class Action Complaint, ECF 44, filed November 14, 2022, and attached as Ex. 1 to the Declaration of Adina Levine, filed herewith; references to "Ex." are to the exhibits attached to the Levine Declaration; and all terms not otherwise defined have the meaning ascribed to them in the Amended Complaint.

*than two years*. Plaintiff also alleges that Mr. Shmidman signed two SOX certifications on behalf of Sequential covering the end of 2016 (¶¶ 134, 139) but notably fails to allege that such certifications were false or misleading or made with scienter.

These bare allegations against Mr. Shmidman fall far short of pleading a violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5. The Amended Complaint fails to plead any actionable misstatement from Mr. Shmidman's last months at Sequential, or allegations of scienter in connection with any such misstatement—and even if Plaintiff had pleaded such a claim (it has not), it would be barred by the statute of limitations. Nor does the Amended Complaint plead a claim for "control person" liability under § 20(a) of the Exchange Act. Because the Amended Complaint does not allege (nor could it) that Mr. Shmidman exerted any control over, or had any culpable participation in, the alleged fraud (including actions that occurred long *after* he left Sequential), the claim for control person liability fails.

## BACKGROUND[3]

The Amended Complaint purports to assert Exchange Act claims on behalf of a putative class of purchasers of Sequential common stock from November 9, 2016 to December 11, 2020. (¶ 1.) As Plaintiff acknowledges, Mr. Shmidman left Sequential in March 2017, shortly after the beginning of the class period. (¶ 26.) While the Amended Complaint has lumped Mr. Shmidman in with twelve other individuals who were affiliated with Sequential (using the self-serving term the "Sequential Defendants"), Mr. Shmidman did not work with or overlap with the majority of

---

[3] For purposes of this motion, we provide only the background relevant to the claims against Mr. Shmidman. A more fulsome description of the Amended Complaint is set forth in the Memorandum of Law in Support of the Motion to Dismiss filed by Defendants Andrew Cooper, Chad Wagenheim, Peter Lops, David Conn, Daniel Hanbridge, Lorraine DiSanto, William Sweedler, Aaron Hollander, Al Gossett, and Stewart Leonard, Jr. (the "Gibson Defendants").

the Sequential Defendants, most of whom started at the Company after he left Sequential. (¶¶ 27, 31, 32, 33, 34, 35, 39, 40.)

### A. Plaintiff's Sparse Allegations Against Mr. Shmidman

The Amended Complaint does not allege that Mr. Shmidman ever had any involvement in the calculation of the Company's goodwill. (*E.g.* ¶¶ 106-109.) Nor does it allege that Mr. Shmidman was involved in any financial decisions in 2017, let alone the decision to disclose the SEC inquiry—which occurred more than *two years* after he left Sequential. (¶¶ 122-125, 128-129.)

As noted, Mr. Shmidman is mentioned by name in only eight paragraphs in the Amended Complaint, including those that simply lump Mr. Shmidman in a list with other Defendants. (¶¶ 40, 90, 102.) Three other paragraphs discuss Mr. Shmidman's *departure* from the Company: Mr. Shmidman was the Company's Chief Executive Officer and a Director on its Board from November 2012 to March 2017. (¶¶ 26, 61, 120.) Mr. Shmidman left the Company shortly after the beginning of the Class Period. (¶¶ 60-61.) Far from providing any facts that suggest Mr. Shmidman knew *before he left* that the Company's goodwill was likely impaired, Plaintiff alleges that the "removal of Defendant Shmidman" was *itself* supposedly a triggering event that should have suggested to the Company that its goodwill was impaired. (¶ 120.)

In addition, Plaintiff alleges that Mr. Shmidman signed the Sarbanes-Oxley (SOX) certification on behalf of Sequential in the 2016 Q3 Form 10-Q and signed the 2016 Form 10-K and related SOX certification. (¶¶ 134, 139.) Those SOX certifications stated that "based on [Mr. Shmidman's] knowledge" the financial information included in the reports were accurate for the periods presented in the report. In relevant part, the SOX certifications stated:

> **Based on my knowledge**, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the

circumstances under which such statements were made, not misleading *with respect to the period covered by this report*;

*Based on my knowledge*, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant *as of, and for, the periods presented in this report*;

The registrant's other certifying officer and I . . . have . . . [e]valuated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, *as of the end of the period covered by this report* based on such evaluation; and [d]isclosed in this report any *change* in the registrant's internal control over financial reporting *that occurred during the period covered by the annual report* that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting . . .

*See* Exs. 2, 3 (emphasis added). The certifications also note that Mr. Shmidman had disclosed to

the Company's auditors all significant deficiencies and material weaknesses in the design or

operation of internal controls over financial reporting. *Id.*[4]

As Plaintiff acknowledges, both the 2016 Q3 Form 10-Q and the 2016 Form 10-K made

extraordinarily extensive disclosures about the calculation and evaluation of the Company's

goodwill, including prospective write-downs of that goodwill. ¶ 135; *see also* 2016 10-K

(attached as Exhibit 7 to the Declaration of Mitchell A. Karlan, executed on March 23, 2022, and

submitted with the Gibson Defendants' motion to dismiss), pp. 17, 27, F-11. For example, the

2016 10-K disclosed: "We have a significant amount of goodwill and other intangible assets,

including our trademarks, recorded on our balance sheet. As a result of changes in market

---

[4] The Court may take judicial notice of Sequential's public filings, which Plaintiff quotes in the Amended Complaint. *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

conditions and declines in the estimated fair value of these assets, ***we may, in the future, be***

***required to write-down a portion of this goodwill and other intangible assets*** and such write-

down would adversely affect our results of operations." *See* 2016 10-K p. 17 (emphasis added).

Conspicuously missing from the Amended Complaint are allegations that Mr. Shmidman

himself had failed to evaluate the internal controls over financial reporting that he certified, or

that he knew facts suggesting that his certification was inaccurate. (*See* ¶¶ 136, 141.) While the

Amended Complaint recklessly groups all of the Defendants together (without any allegations

against Mr. Shmidman specifically) to allege that Defendants all failed to monitor the

Company's internal controls (*id.*), it further alleges that any supposed failure in internal controls

began only in 2017—*after* the period covered by the SOX certifications that Mr. Shmidman

signed (¶¶ 115-17.)

### B.    Group Pleading

Plaintiff also has included Mr. Shmidman in the defined term "Sequential Defendants."

(¶ 40.) But even a cursory glance at the numerous times Plaintiff uses the self-serving term

"Sequential Defendants" demonstrates that Mr. Shmidman cannot be included in that group:

- The "Sequential Defendants" allegedly deceived the market "*throughout the first three quarters of 2017.*" (¶ 114.) That was after Mr. Shmidman had ***left*** Sequential. (¶ 26.)

- "Because of the continued decline in Sequential's stock price and other triggering events, the Sequential Defendants were forced to face the reality that the Company would not pass its annual goodwill impairment test *as of October 1, 2017. . .*" and then the "Sequential Defendants" performed a goodwill impairment test "*for the third quarter of 2017* utilizing a different methodology." (¶ 122.) Again, these events post-dated Mr. Shmidman's departure from Sequential. (¶ 26.)

- The "Sequential Defendants" relied on the Income Approach "until they were forced to switch back to the Market Approach *after December 31, 2017 . . .*" (¶ 124.) Again, this occurred after Mr. Shmidman had ***left*** Sequential. (¶ 26.)

- Even after the Company had received a Wells Notice from the SEC on *July 17, 2020*, the "Sequential Defendants continued to assure investors that its disclosure controls and procedures and internal control over financial reporting were effective for the rest of the Class Period." (¶ 131.) This was more than *three years* after Mr. Shmidman had left Sequential. (¶ 26.)

- The "Sequential Defendants" provided supposedly "misleading justifications for the negative information revealed *on February 28, 2018 and March 31, 2020*, which maintained the artificial inflation in the Company's share price. . ." (¶ 330.) Mr. Shmidman was not involved whatsoever with Sequential at this time.

<u>ARGUMENT</u>

## I. PLAINTIFF'S CLAIMS AGAINST MR. SHMIDMAN ARE TIME-BARRED

As an initial matter, Plaintiff's claims against Mr. Shmidman are barred by the applicable statute of limitations, which bars claims not brought within two years of discovery of the facts constituting the violation. 28 U.S.C. § 1658(b). For Section 10(b) claims, the statute of limitations commences when "with reasonable diligence, a plaintiff could have discovered facts indicating that 'a defendant made a material misstatement with the intent to deceive – not merely innocently or negligently." *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 666 (2d Cir. 2016).

The claims against Mr. Shmidman (which are based on his signing a SOX certification on November 9, 2016, and Sequential's 10-K and related SOX certification on March 14, 2017) are untimely if a reasonably diligent plaintiff had sufficient information to plead those claims by March 15, 2019, two years before the complaint was filed. Here, Plaintiff's own allegations show that it had sufficient information to plead its claims by no later than February 28, 2018, when Sequential publicly announced that it was taking a goodwill impairment charge. Because the initial complaint in this action was not filed until March 16, 2021, over *three years* later, the claims are time-barred. (ECF No. 1.)

Plaintiff affirmatively alleges that the announcement of the impairment charge was a "corrective disclosure." (¶¶ 319, 329 (alleging that the disclosure revealed the truth about the value of Sequential's goodwill to the market and caused investor losses).) Such a disclosure is "a disclosure of the fraud by which the available public information regarding the company's financial condition was corrected." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014). Having alleged that the fraud about Sequential's goodwill valuation was revealed to the market on February 28, 2018, Plaintiff cannot also maintain that it was not on constructive notice of any claims against Mr. Shmidman by that date. *See Yaroni v. Pintec Tech. Holdings Ltd.*, No. 20-CV-8062 (JMF), 2022 WL 1215450, at *6 (S.D.N.Y. Apr. 25, 2022) ("[w]here, as here, the company issues a disclosure that a plaintiff relies on to demonstrate that the registration statement contained misstatements or omissions, '[t]he corrective disclosure date is the same as the constructive notice date for purposes of limitations.'") (citing *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011)).

In addition, the market reaction to Sequential's disclosure was extremely negative, with a significant drop in Sequential's stock price (¶ 319), which followed a long series of stock price declines and downward earnings guidance revisions in 2016 and 2017. (¶¶ 256, 262.) Under these circumstances, constructive notice was triggered no later than the impairment disclosure date. *See Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp.*, 902 F. Supp. 2d 329, 347-48 (S.D.N.Y. 2012) (barring Exchange Act claims in light of share price declines and noting it is "simply not plausible that a share price decline of 95% in a 15-month period could pass without shareholders being put on notice that a reasonably diligent investigation may reveal a problem with the company").

In short, the Amended Complaint itself establishes that Plaintiff was on notice of its claims no later than the disclosure of the impairment charge on February 28, 2018. That alone is sufficient to establish that the claims against Mr. Shmidman are time barred and should be dismissed.

## II. PLAINTIFF HAS NOT STATED A CLAIM FOR VIOLATION OF § 10(b) AND RULE 10b-5 AGAINST MR. SHMIDMAN

Even if Plaintiff had timely filed its claims, it has failed entirely to state a viable cause of action against Mr. Shmidman. Plaintiff's claim that the Sequential Defendants violated Section 10(b) and Rule 10b-5 is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. *See In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at *4 (S.D.N.Y. Sept. 19, 2017). Plaintiff must allege facts sufficient to show that *each defendant*, in connection with the purchase or sale of securities: (i) made a materially false statement or omitted a material fact; (ii) with scienter; and (iii) and that the plaintiff's reliance on the defendant's action caused plaintiff's injury. *ECA Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009). Plaintiff has failed to plead any of these requisite elements with respect to Mr. Shmidman, let alone all three as required.

### A. Plaintiff Has Not Pleaded Any Actionable Misstatement or Omission By Mr. Shmidman

Plaintiff does not—and cannot—meet its burden of proving that Mr. Shmidman "made a materially false statement or omitted a material fact." *ECA*, 553 F.3d at 197. The Amended Complaint's only allegations against Mr. Shmidman are that he signed a SOX certification on behalf of Sequential in the 2016 Q3 Form 10-Q, and signed Sequential's 2016 Form 10-K and accompanying SOX certification. (¶¶ 134, 139.)

As an initial matter, because Plaintiff does not identify any statement that was supposedly false or misleading, it cannot satisfy the PSLRA requirements, having "fail[ed] to individually

identify the specific statements asserted to be false and/or misleading." *See Rok v. Identiv, Inc.,* No. 15-CV-5775-CRB, 2017 WL 35496, at *9 (N.D. Cal. Jan. 4, 2017) (dismissing securities claim because plaintiff failed to identify specific statement in SOX certification that was false or misleading); *Monro Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 354–55 (S.D.N.Y. 2014) (dismissing alleged misstatements presented in large block quotations without specifying why each statement was misleading).

But even if Plaintiff could overcome this threshold hurdle, none of Mr. Shmidman's statements are actionable. Plaintiff does not demonstrate that Mr. Shmidman misrepresented any fact in the Company's disclsoures regarding how it evaluated its goodwill. *See also N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, 2016 WL 5794774 at *10 (S.D.N.Y. Sept. 30, 2016) (rejecting fraud claim based on plaintiff's assertion that defendant failed to record necessary goodwill impairment after revenues declined and major client departed, on grounds that complaint alleged nothing more than plaintiff's disagreement with defendant's accounting judgments, which are insufficient to support a fraud claim); *Lucescu v. Zafirovski*, 2018 WL 1773134 (S.D.N.Y. Apr. 11, 2018) (allegations that "same circumstances" that led to eventual impairment had existed earlier were insufficient to show that defendant did not believe his statements that earlier impairment charge was unnecessary); *Plumbers & Steamfitters Local 773 Pension Fund v. Can. Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 303 (S.D.N.Y. 2010) ("The allegations regarding [a company's] write-downs amount to fundamental disagreements with [d]efendants' business judgments in a tumultuous economic downturn—claims that are not actionable under Section 10(b) and Rule 10b-5.").

Nor is there anything actionable in the SOX certifications. It is well established that SOX certifications are statements of opinion which "contain an important qualification that the certifying officer's statements are true based on his or her knowledge." *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *12 (S.D.N.Y. 2021). Mr. Shmidman's certifications simply state that, based on Mr. Shmidman's knowledge, there were no untrue statements in the forms he signed, and he disclosed any "change" in the Company's internal reporting with respect to the time period covered by the report, namely, ***fiscal year 2016***. Plaintiff does not allege any particularized facts that show that Mr. Shmidman had any "knowledge" that anything in the 2016 Q3 Form 10-Q or the 2016 Form 10-K was untrue. Nor does Plaintiff allege any facts showing that that there was any "change" in the internal controls over financial reporting in 2016 or that Mr. Shmidman failed to evaluate the internal controls in 2016, as he reported he did. These facts alone are fatal to Plaintiff's calims. *See Barrett v. PJT Partners Inc.,* 2017 WL 3995606, at *6 (S.D.N.Y. Sept. 8, 2017) (SOX certifications not false when plaintiff did not allege that defendants did not, in fact, evaluate the company's internal controls and did not, in fact, report any issues to board and auditors); *In re Gentiva Sec. Litig.,* 932 F. Supp. 2d 352, 370 (E.D.N.Y. 2013) (dismissing allegation that SOX certifications were misleading because company's internal controls over financial reporting were not "effective"); *In re PetroChina Co. Sec. Litig.,* 120 F. Supp. 3d 340, 358–60 (S.D.N.Y. 2015), *aff'd,* 644 F. App'x 13 (2d Cir. 2016) (same).

**B.    Plaintiff Has Not Properly Alleged That Mr. Shmidman Acted with Scienter**

Plaintiff also has failed to plead the requisite scienter to state a claim against Mr. Shmidman—an independent ground for dismissal. Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The required state of mind in a Rule 10b-5 action is "an intent to deceive, manipulate or defraud." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168 (2d

Cir. 2000). To satisfy the PSLRA's pleading requirements for scienter, a plaintiff must allege

facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or

(2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*

*Commc'ns*, 493 F.3d at 99. "Plaintiffs must plead scienter with respect to each defendant," and

the scienter allegations against each defendant are judged separately. *City of Monroe Emps. Ret.*

*Sys. v. Hartford Fin. Servs. Grp.,* 2011 WL 4357368, at *13 (S.D.N.Y. Sept. 19, 2011).

Plaintiff does not allege that Mr. Shmidman had any motive or opportunity to overstate

the Company's goodwill.[5] Accordingly, the "strength of the circumstantial allegations" of

conscious misbehavior or recklessness "must be correspondingly greater." *Campo v. Sears*

*Holdings Corp.,* 371 F. App'x 212, 215-16 (2d Cir. 2010) (citation omitted). Allegations of

"merely enhanced negligence" or that a defendant "ought to have known" are not sufficient. *In re*

*PXRE Grp. Sec. Litig.*, 600 F. Supp. 2d 510, 535 (S.D.N.Y.), *aff'd*, 357 F. App'x 393 (2d Cir.

2009) (citations omitted).

The Amended Complaint does not include any allegations that satisfy this high standard.

The vast majority of the alleged conduct occurred *after* Mr. Shmidman left Sequential, and the

law is settled that where, as here, the defendant was not employed by the Company, the "failure

to establish that the underlying fraud occurred during the applicable timeframe is in itself

dispositive." *In re PetroChina Co. Sec. Litig.,* 120 F. Supp. 3d at 358 (dismissing securities

claims based on actions when individual defendants were not employed by company); *see also In*

---

[5] While the Amended Complaint makes a single conclusory allegation regarding motive (¶ 348), there are **no** specific allegations whatsoever that Mr. Shmidman "benefitted in some concrete and personal way from the purported fraud" beyond motives that are common to most corporate officers. *ECA, Local 134 IBEW Joint Pension Trust of Chi.*, 553 F.3d at 198; *see also In re Plug Power, Inc. Sec. Litig.*, 2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) ("desire for the corporation to maintain the appearance of profitability, keep stock prices high to increase officer compensation, and sustain the success of an investment does not suffice to establish a motive.").

*re UBS AG Sec. Litig.,* 2012 WL 4471265, at *22 n.20 ("the Court dismisses all claims against the Individual Defendants to the extent that they rely on any part of the alleged frauds that occurred before they assumed those roles or after they left UBS"). Plaintiff has not alleged any facts which would demonstrate that Mr. Shmidman knew anything contrary to what was represented in the third quarter 10-Q or the 2016 10-K. *Supra,* pp. 4, 8-10. *See also In re HEXO Corp. Sec. Litig.,* 524 F. Supp.3d 283, 314 (S.D.N.Y. 2014) (multiple changes with respect to reporting inventory and impairment loss figures did not support an inference of scienter when complaint lacks allegations of contemporaneous contradictory information shown to defendants). And the mere signing of a SOX certification is "insufficient to support a strong inference of recklessness in the absence of more particularized allegations." *Hutchinson v. Perez,* 2012 WL 5451258, at *6 (S.D.N.Y. Nov. 8, 2012) ("Plaintiff cannot rely on the mere fact that Defendants . . . signed certifications . . . to support recklessness.") (quoting *MBIA Sec. Litig.,* 700 F. Supp. 2d 566, 590 (S.D.N.Y. 2010)). "Courts in this District have uniformly held that SOX certifications will not support an inference of scienter where, as here, a plaintiff does not allege that the defendants had contemporaneous awareness of falsity." *Saraf v. Ebix, Inc.*, --- F. Supp.3d ---, 2022 WL 4622676, at *5 (S.D.N.Y. Sept. 30, 2022) (collecting cases); *see also Int'l Ass'n of Heat v. IBM,* 205 F. Supp. 3d 527, 536 (S.D.N.Y. 2016) ("'required certifications under Sarbanes-Oxley . . . add nothing substantial to the scienter calculus because 'allowing Sarbanes-Oxley certifications to create an inference of scienter in every case where there was an accounting error or auditing mistake made by a publicly traded company would eviscerate the pleading requirements for scienter set forth in the PSLRA.'") (citations omitted).

To the extent Plaintiff claims scienter based on Mr. Shmidman's position at the Company, that too "has been repeatedly rejected by courts in this District as supportive of an

inference of scienter." *See N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.,* 2016 WL 5794774, at *21 (S.D.N.Y. Sept. 30, 2016) (rejecting scienter allegations based on the "fact that a defendant held a supervisory position or a position of authority," including chairman of the board and CEO); *Bd. of Trustees of City of Ft. Lauderdale Gen. Emps.' Ret. Sys.,* 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011) ("[C]ourts in [SDNY] have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight.") (citation and internal quotation marks omitted).

Nor can Plaintiff allege scienter through its allegations that lump the "Sequential Defendants" together. *See Gurfein v. Ameritrade, Inc.,* 411 F. Supp. 2d 416, 426-27 (S.D.N.Y. 2006) ("Plaintiff lumps defendants together at various points in the amended complaint, making allegations against "defendants," without specifying which defendant plaintiff is referring to . . . This sort of broad-brush allegation against numerous defendants is inadequate.") (citation omitted); *see also Southland Sec. Corp. v. INSpire Insurance Solutions, Inc*., 365 F.3d 353, 364 (5th Cir. 2004) (the "group pleading" doctrine "cannot withstand the PSLRA's specific requirement that the untrue statements or omissions be set forth with particularity as to 'the defendant' and that scienter be pleaded with regard to 'each act or omission.'").

Finally, although it is not needed, other allegations in the Amended Complaint actually *negate* the required inference of scienter. Plaintiff has alleged that Mr. Shmidman's resignation itself was a triggering event that should have suggested that the Company's goodwill was impaired. (¶ 120.) Thus, even if the Court could ignore that the Amended Complaint is devoid of a single fact showing any knowledge by Mr. Shmidman (it should not), Plaintiff's own allegations suggest that *Mr. Shmidman's departure* should have triggered the Company's

evaluation of a potential goodwill impairment, which by definition excludes Mr. Shmidman from any involvement in such an evaluation.

## C.     Plaintiff Has Not Alleged That Mr. Shmidman Caused Its Purported Losses

The Amended Complaint also fails because it does not (and cannot) allege that Mr. Shmidman caused Plaintiff any loss. The PSLRA states that "[i]n any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). This loss causation requirement "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). Under Rule 10b-5, Plaintiff must allege proximate causation as well as economic loss. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

Plaintiff cannot show that any of its losses were caused by Mr. Shmidman's signing of the SOX certifications in connection with the Q3 2016 10-Q and 2016 Form 10-K filings. Those filings *themselves* made extensive disclosures surrounding the evaluation of the Company's goodwill and the Company's belief that the retail downturn was not indicative of its fair value. ¶ 135; *Supra, pp.* 4-5. Plaintiff alleges only that the Company should have adjusted its goodwill after the stock drops in 2016—but the movement of the stock price, too, was publicly available. *See Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (affirming dismissal on loss causation grounds where company "made extensive disclosures about its investments and internal controls throughout the class period" and

thus alleged corrective disclosures were "based on information that was already publicly available").[6]

### III. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. SHMIDMAN UNDER § 20(A) OF THE EXCHANGE ACT

Plaintiff's claim for "control person" liability under Section 20(a) of the Exchange Act also fails. Plaintiff must allege "'(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.'" *Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x 653, 657 (2d Cir. 2015) (affirming dismissal of § 20(a) claim) (citation omitted); *Ross v. Lloyds Banking Grp., PLC*, 546 F. App'x 5, 12 (2d Cir. 2013)) (same). Plaintiff does not meet this standard.

As to the first element, for the reasons stated in the motion to dismiss of the Gibson Dunn Defendants and above, there has been no primary violation that would give rise to Section 20(a) liability. But even if the Court were to find that there was a primary violation, the Amended Complaint offers no allegations sufficient to show that Mr. Shmidman controlled Sequential sufficient to meet the second element, other than the mere fact that he was the CEO for several

---

[6] For the same reasons that the Amended Complaint contains no false statement or scienter as to Mr. Shmidman, there also are no deceptive acts engaged in by Mr. Shmidman, either by himself or in concert with the other Defendants, and therefore Plaintiff cannot bring any claim for "scheme liability" under Rule 10b-5(a) or (c). *See In re AT&T/DirecTV Now Sec. Litig.*, No. 19-CV-2892 (VEC), 2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020), *aff'd sub nom. Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, No. 21-2698-CV, 2022 WL 17587853 (2d Cir. Dec. 13, 2022) (holding that where plaintiffs "have failed to plead either scienter or a deceptive act separate from alleged misrepresentations or omissions, their scheme liability claim fails."); *see also Touchstone Strategic Tr. v. Gen. Elec. Co.*, No. 19-CV-1876 (JMF), 2022 WL 4536800 (S.D.N.Y. Sept. 28, 2022) (dismissing scheme liability claims where the complaint alleged only misstatements and omissions, "not inherently deceptive conduct" and cautioning that that courts should not "allow private litigants to repackage their misstatement claims as scheme liability claims to evade the pleading requirements imposed in misrepresentation cases.") (quotations omitted).

months at the very beginning of the Class Period. (¶ 44: "the Sequential Defendants, *by reasons of their positions with Sequential* were 'controlling persons' within the meaning of Section 20(a) of the Exchange Act") (emphasis added).) That is insufficient to state a claim for control person liability under Section 20(a). *See Goldberg v. Gray*, No. 5:15-CV-0538 (DNH/TWD), 2016 WL 4099189, at *7 (N.D.N.Y. Aug. 2, 2016) ("Officer or director status alone does not constitute control for the purposes of § 20(a) liability."); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999) ("Officer or director status alone does not constitute control;" granting motion to dismiss § 20(a) claim).

As to the third element, Plaintiff does not even attempt to plead that Mr. Shmidman "was, in some meaningful sense, a culpable participant in [the] alleged fraud." *Bayerische Landesbank v. Barclays Capital, Inc.*, 902 F. Supp. 2d 471, 474 (S.D.N.Y. 2012) (dismissing § 20(a) claim).[7] Plaintiff alleges only that "the Sequential Defendants *had the power and influence* to cause the Company to engage in the unlawful conduct complained of herein." (¶ 44 (emphasis added).) That is a far cry from alleging that Mr. Shmidman actually *participated* in the alleged fraud— which, as detailed above, is alleged to have occurred largely *after* he left Sequential. Far more is required to allow Section 20(a) claims to proceed. *See Bayerische Landesbank,* 902 F. Supp. 2d

---

[7] While district courts are split as to the meaning of "culpable participation," with some courts holding that notice pleading is sufficient, "the majority of district courts in this Circuit have required Section 20(a) plaintiffs to allege that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,* 33 F. Supp. 3d 401, 437 (S.D.N.Y. 2014), *aff'd*, 645 F. App'x 72 (2d Cir. Apr. 8, 2016). *See In re EZCorp, Inc. Sec. Litig.,* 181 F. Supp. 3d 197, 212 (S.D.N.Y. 2016) (Carter, J) (collecting cases). This Court need not decide this issue because even adopting the minority rule, Plaintiff has failed to plead facts showing that Mr. Shmidman acted with any culpability. *See In re Vale S.A. Sec. Litig.,* No. 1:15-cv-9539-GHW, 2017 WL 1102666, at *34 (S.D.N.Y. Mar. 23, 2017) ("even assuming that 'culpable participation' is a less stringent standard than scienter, Plaintiffs simply do not allege facts showing that Defendant [] acted with any culpability in connection with the dissemination of the statements that survive, on a primary violation basis, Defendants' motion to dismiss.")

at 474-75 (allegation that an individual "was aware of or directly participated in the fraud," including by concealing adverse information, was conclusory and insufficient to sustain a 20(a) claim).

## **CONCLUSION**

For the foregoing reasons, Mr. Shmidman respectfully requests that the claims against him in the Amended Complaint be dismissed with prejudice.

Dated: March 23, 2023

Respectfully submitted,

_/s/Adina Levine_
Adina Levine
Michael M. Pomerantz
CYRULNIK FATTARUSO LLP
55 Broadway, Third Floor
New York, NY 10006
646 844 2466
alevine@cf-llp.com
mpomerantz@cf-llp.com

*Attorneys for Defendant Yehuda Shmidman*