**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER D'ARCY, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:21-cv-07296 |
| Plaintiff, | |
| v. | CLASS ACTION |
| YEHUDA SHMIDMAN, KAREN MURRAY, GARY KLEIN, ANDREW COOPER, CHAD WAGENHEIM, PETER LOPS, DAVID CONN, DANIEL HANBRIDGE, LORRAINE DISANTO, WILLIAM SWEEDLER, AARON HOLLANDER, AL GOSSETT, STEWART LEONARD, JR., COHNREZNICK LLP, STEPHEN WYSS, STEPHEN JACKSON, and ROBERT HILBERT, | Honorable J. Paul Oetken |
| Defendants. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................... 1

II.     SUMMARY OF THE LITIGATION AND THE SETTLEMENT ........................... 2

   A. *Background and Procedural History* ........................................................... 2

   B. *The Proposed Terms of Settlement.* ............................................................. 4

III.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR
        PRELIMINARY APPROVAL.............................................................................. 6

   A. *Standards for Preliminary Approval.* ......................................................... 6

   B. *The Proposed Settlement Is Procedurally Fair and the Result of Arms-Length*
      *Negotiations by Experienced and Knowledgeable Counsel.* .......................... 6

   C. *The Proposed Settlement Is Substantively Fair.* ........................................... 7

      1.   Plaintiff and Its Counsel Have Zealously Represented the Class. ........................ 8

      2.   The Stage of the Proceedings Constituted an Appropriate Time to Settle. .......... 9

      3.   The Proposed Settlement is a Favorable Result for the Settlement Class,
           Especially Given the Substantial Risk and Challenges It Faced........................ 10
           a)  The Complexity, Expenses, and Likely Duration of the Litigation. ........... 13
           b)  The Risk of Establishing Liability and Damages ....................................... 14

      4.   The Settlement Treats Settlement Class Members Equitably ............................. 16

      5.   The Proposed Notices Are Constitutionally Sound and Appropriate ................. 17

      6.   The Additional Rule 23(e) Factors Support Preliminary Approval.................... 18

      7.   The Remaining *Grinnell* Factors Support Preliminary Approval....................... 20

IV.     THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS.................... 20

V.      PROPOSED SCHEDULE................................................................................... 23

VI.     CONCLUSION ................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................ 22, 23

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) ............................................................................................ 21

*Chilton v. Chiumento Grp.*,
365 F. App'x 298 (2d Cir. 2010) ............................................................................................ 22

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .............................................................................................. 8, 13

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)............................. 16

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004)..................................................................................... 18

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .................................................................................................... 21

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ...................................................................................................... 7

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .................................................................................................. 20

*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................................... 18

*Flores v. Anjost Corp.*,
No. 11 CIV. 1531 AT, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ........................................ 19

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ............................................................................................................... 21

*Hayes v. Harmony Gold Min. Co.*,
No. 08 CIV. 03653 BSJ, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) .................................... 19

*In re "Agent Orange" Prod. L*iab. Litig.,
597 F. Supp. 740 (E.D.N.Y. 1984) ......................................................................................... 12

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001).................................................................. 9, 13, 15, 16

*In re Comverse Tech., Inc. Sec. Litig.*,
   06-CV-1825 (NGG),2010 WL 2653354 (E.D.N.Y. June 24, 2010) ......................................... 13

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................... 6

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................................... 12, 13

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 17, 22

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................................... 9, 14

*In re IMAX Sec. Litig.*,
   No. 06 CIV. 6128 NRB, 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012)...................................... 19

*In re Indep. Energy Holdings PLC*,
   No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ................................ 7

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ..................................................................................... 10, 14

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................................... 15

*In re Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) .............................................................................................. 16

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)...................................................................................... 8

*In re Petrobras,*
   *Sec.*, 862 F.3d 250 (2d Cir. 2017)......................................................................................... 20

*In re Signet Jewelers Ltd. Sec. Litig.*,
   1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................ 13

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................................... 14

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)................................. 17

iii

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) .................................................................................. 14

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................................. 16

*Khait v. Whirlpool Corp.*,
  No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................ 19

*Lea v. Tal Educ. Grp.*,
  No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................... 7, 21

*Leung v. Home Boy Rest. Inc.*,
  No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ..................................... 6

*Micholle v. Ophthotech Corp.*,
  No. 17-CV-1758 (VSB), 2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022) ................................... 23

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) .................................................................................. 13

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ............................................................................................... 20

*Palacio v. E\*TRADE Fin. Corp.*,
  No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) ............................. 6

*Pearlstein v. BlackBerry Ltd.*,
  No. 13CIV7060CMKHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ................................ 15

*Sharpe v. A&W Concentrate Co.*,
  No. 19-CV-768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021) .............................. 21, 22

*Vargas v. Cap. One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) ........................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .................................................................................................... 6

**Statutes**

15 U.S.C. §78u-4(a)(4) ........................................................................................................... 19
15 U.S.C. § 78u-4(a)(7) ...................................................................................................... 17, 18

**Rules**

Fed. R. Civ. P. 23 (e)(2) ...................................................................................................... 6, 8

Fed. R. Civ. P. 23(a)(2) ................................................................................................. 21
Fed. R. Civ. P. 23(e)(1) ................................................................................................... 6
Federal Rule of Civil Procedure ("Rule") 23 ...................................................... 1, 2, 20
Rule 23(a)(3) ................................................................................................................. 22
Rule 23(b)(3) ............................................................................................................ 20, 22
Rule 23(e) ........................................................................................................................ 7
Rule 23(e)(2)(C) ........................................................................................................... 10
Rule 23(e)(3); and (d) .................................................................................................... 8

## **Other Authorities**

2 W. Rubenstein, *Newberg on Class Actions* §4:50 ...................................................... 21

*Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995) .................................. 17

Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Lead Plaintiff CJD Finance Company, LLC ("Lead Plaintiff" or "CJD") respectfully submits this memorandum of law and the accompanying Declarations of Ivy T. Ngo and Brett Wilmot, in support of its unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") in the above-captioned action, conditional certification of the Settlement Class, and entry of the proposed Preliminary Approval Order. The Settlement is memorialized in a Stipulation of Settlement (the "Stipulation") filed concurrently herewith.[1]

## I.    INTRODUCTION

Pursuant to the proposed Settlement, Defendants have agreed to cause to be paid $9,750,000 in cash in exchange for the release of all claims asserted in the Action.[2] It is the result of a comprehensive assessment of the strengths and weaknesses of the claims asserted by Lead Plaintiff in the Action and the significant cash consideration payable under the Settlement to purchasers and acquirers of securities of Sequential Brands Group, Inc. ("Sequential" or the "Company") during the Class Period. This Settlement represents an excellent recovery for the Settlement Class and will eliminate the risk and uncertainty of continued proceedings, as well as the difficulties associated with securing evidence from a bankrupt company to prove the claims asserted. As shown below, the proposed Settlement, which was reached with the aid of a highly experienced mediator, is fair, reasonable, and adequate, and warrants the Court's approval.

---

[1]    Unless otherwise noted, capitalized terms used herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement dated October 30, 2024 (the "Stipulation" or "Stip."), filed herewith; all emphasis is added; and internal citations are omitted.

[2]    Yehuda Shmidman, Karen Murray, Gary Klein, Andrew Cooper, Chad Wagenheim, Peter Lops, David Conn, Daniel Hanbridge, Lorraine DiSanto, William Sweedler, Aaron Hollander, Al Gossett, and Stewart Leonard, Jr. are the "Individual Defendants". CohnReznick LLP, Stephen Wyss, Stephen Jackson, and Robert Hilbert are the "Auditor Defendants" (collectively with the Individual Defendants, "Defendants", and collectively with Lead Plaintiff, the "Parties").

Accordingly, with Defendants' consent, Lead Plaintiff moves this Court to enter the proposed Preliminary Approval Order that would, *inter alia*: (1) grant preliminary approval of the Settlement; (2) preliminarily certify the Settlement Class for settlement purposes under Fed. R. Civ. P. 23; (3) preliminarily appoint Lead Plaintiff as the class representative for the proposed Settlement Class; (4) preliminarily appoint the law firm of Freedman Normand Friedland LLP as Class Counsel for the Settlement Class; and (5) approve the proposed class notice program, including the form, content and methods of distribution.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Background and Procedural History

At the end of 2016, Sequential had over $307 million in goodwill resulting from seven acquisitions of major consumer brands between 2014 to 2016. Just a year later, on November 9, 2017, Sequential revealed a decline in consumer brands, causing its stock price to fall $38.80, or $40.9%. A few months later, Sequential wrote off all $304.1 million of its goodwill in 4Q17. When this news was disclosed before markets opened on February 28, 2018, Sequential's stock price fell $12.00 per share, or over 13%, that day. Subsequently, the SEC initiated an investigation into Sequential's goodwill, which was not disclosed until March 31, 2020 and caused its stock price to fall $5.20 per share, or over 48%, by April 1, 2020. Finally, after the SEC filed a complaint against Sequential on December 11, 2020 ("SEC Complaint"), detailing how it had failed "to take into consideration clear, objective evidence of likely goodwill impairment, which avoided and delayed a material write down to goodwill in the fourth quarter of 2016 and the first three quarters of 2017," Sequential's stock price fell $2.03 per share, or over 11%, that day.

On March 16, 2021, Peter D'Arcy filed a class complaint in the United States District Court for the Central District of California, bringing claims under §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 as promulgated thereunder, and §20(a)

2

of the Exchange Act against Sequential, Shmidman, Murray, Klein, and Cooper. On March 17, 2021, that action was assigned to the Honorable District Judge John F. Walter. On June 11, 2021, Judge Walter appointed CJD as Lead Plaintiff and Freedman Normand Friedland LLP (f/k/a Roche Freedman LLP) as Lead Counsel for the class in the Action.

The parties stipulated to transfer the action to the United States District Court for the Southern District of New York, where the SEC Complaint was pending. After the stipulation was granted, this Court received the action on August 31, 2021. That same day, Sequential filed for Chapter 11 bankruptcy relief. On February 22, 2022, the Bankruptcy Court confirmed the First Amended Joint Plan of Liquidation, which enjoined the continuation of this action against Sequential. Accordingly, Plaintiff moved to voluntarily dismiss Sequential on September 20, 2022, which was granted on September 26, 2022.

Meanwhile, in the SEC Action, this Court upheld the SEC Complaint and denied Sequential's motion to dismiss on September 30, 2021. The SEC subsequently charged and settled against Klein, CohnReznick, Wyss, Jackson, and Hilbert on June 8, 2022.

On November 14, 2022, Lead Plaintiff filed a consolidated amended complaint (the "Complaint") asserting claims against the Individual Defendants under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5, against CohnReznick under §10(b) and Rule 10b-5, and against Wyss, Jackson, and Hilbert under §20(a). Among other things, the Complaint alleged that the Individual Defendants made materially false and misleading statements about Sequential's business, financial well-being, goodwill, and the SEC investigation during the Class Period. The Complaint further alleged that the Auditor Defendants failed to comply with auditing standards by issuing clean audit reports that they knew or should have known contained false or misleading statements. As a result of Defendants' conduct, the Complaint alleged that the price of Sequential

3

Securities was artificially inflated and declined when the truth was revealed.

On March 23, 2023, Defendants served their motions to dismiss the Complaint. On May 24, 2023, Lead Plaintiff served its memorandum of law in opposition to Defendants' motions.

In July 2023, Lead Plaintiff and the Individual Defendants agreed to engage in private mediation and for Robert A. Meyer, Esq. of JAMS to act as mediator. A full-day mediation session before Mr. Meyer was held on October 10, 2023. In advance of that session, Lead Plaintiff and the Individual Defendants exchanged detailed mediation statements, which addressed the issues of liability and damages. The session ended with an agreement in principle to settle the Action and release all claims against the Individual Defendants in return for a $6,250,000.00 cash payment for the benefit of the Settlement Class.

In September 2023, Lead Plaintiff and the Auditor Defendants agreed to engage in private mediation. Counsel for Lead Plaintiff and the Auditor Defendants engaged in numerous calls and email exchanges to share their respective views on the case to attempt to reach a settlement. After numerous back and forths, discussions, and negotiations, these exchanges ended with an agreement in principle to settle the Action and release all claims against the Auditor Defendants in return for a $3,500,000.00 cash payment for the benefit of the Settlement Class.

Following these settlements in principle, the parties continued their good faith efforts to resolve the case and to negotiate a Term Sheet, which was executed April 23, 2024. The Term Sheet contemplated full release of Defendants' liability in return for a cash payment of $9.75 million for the benefit of the Settlement Class, subject to negotiation of the Stipulation and approval by the Court. The Stipulation (along with the Exhibits thereto) reflects the final and binding agreement, and a compromise of all matters in dispute, between the Settling Parties.

**B.      The Proposed Terms of Settlement.**

The Settlement Class is defined as all persons and entities (including legal beneficiaries

or participants in such entities) who purchased or otherwise acquired Sequential Securities during the Class Period, which is November 3, 2016 through December 11, 2020, inclusive.

Under the terms of the Settlement, Lead Plaintiff is securing a total benefit for the Settlement Class of $9,7500,000, which Defendants will pay, or cause to be paid, into an Escrow Account, and which, together with accrued interest, constitutes the Settlement Fund. Stipulation, ¶¶12-13. In exchange for this payment, Lead Plaintiff and the Settlement Class will release their claims in the Sequential Action against Defendants and other Released Defendant Parties. *Id*. at ¶¶4-11. Lead Plaintiff proposes that a nationally recognized class action settlement administrator, Angeion Group (the "Claims Administrator"), be appointed, subject to the Court's Approval. Preliminary Approval Order, ¶9, *see also* Ngo Decl. ¶15; Wilmot Decl. ¶¶4-7.

Once the Notice and Administration Expenses, Taxes and Tax Expenses, Lead Plaintiff Award, and Fee and Expense Award have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – will be distributed pursuant to the Court-approved Plan of Allocation to all Authorized Claimants who are entitled to a distribution of at least $10.00 (so that the payments made are economically rational given the costs associated therewith). Any amount remaining following the distribution because of uncashed or returned checks will be redistributed as feasible, until it is no longer economical to make further distributions. All Settlement Class Members will receive the same distribution depending on the number of shares they held at various points in the Class Period, as determined by the Plan of Allocation. The Plan of Allocation will be applied uniformly to all Class Members that submit valid and timely claims. The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

The proposed Settlement is an excellent recovery on the claims asserted against

5

Defendants and is in all respects fair, adequate, reasonable, and in the best interests of the Settlement Class.

### III.    THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

#### A.    <u>Standards for Preliminary Approval.</u>

The law favors settlement, particularly in class actions and other complex cases that tie up substantial judicial resources, use up parties' time and money, and whose resolution typically takes years. *Palacio v. E\*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at \*7 (S.D.N.Y. June 22, 2012); Newberg on Class Actions (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007).

Rule 23(e) provides a two-step process for approving class action settlements. First, if a proposed settlement would bind class members, the court should evaluate it to determine whether giving notice to class members would be justified. Fed. R. Civ. P. 23(e)(1). Second, once notice is given, the court should approve the proposed settlement upon a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23 (e)(2). Notice to class members should be directed if, based upon the parties' showing, it appears likely that the court will be able to approve the settlement under Rule 23(e)(2) and certify the class for the purposes of settlement.

#### B.    <u>The Proposed Settlement Is Procedurally Fair and the Result of Arms-Length Negotiations by Experienced and Knowledgeable Counsel.</u>

Courts presume that a proposed settlement is fair and reasonable when it results from arm's-length negotiations by informed and experienced counsel. *Wal-Mart Stores, Inc. v. Visa*

*U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate if "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties"). Here, Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to deciding to settle. As described above, the Settlement with the Auditor Defendants was reached only after extensive arm's-length negotiations between the parties' counsel. In addition, the Settlement with the Individual Defendants was reached only after extensive arm's-length negotiations before Robert A. Meyer, Esq. of JAMS, a nationally recognized mediator highly experienced in securities class actions. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (A "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("[T]hat the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."). After litigating for over two years and engaging in substantial motion practice, Lead Plaintiff and its counsel had an adequate basis for assessing the Settlement Class's claims and Defendants' defenses when they agreed to the Settlement.

### C.  The Proposed Settlement Is Substantively Fair.

A settlement is substantively fair when the relief to the class is adequate after evaluating Rule 23(e) and Grinnell factors. *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *9 (S.D.N.Y. Nov. 30, 2021). The Grinnell factors consist of:

> (1) [T]he complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Rule 23(e)(2) also provides factors for the Court's consideration, which overlap considerably with the Grinnell factors. Under Rule 23(e)(2), a court should consider whether: (a) the class representative and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (d) the proposal treats class members equitably relative to each other. *See In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) ("The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's Grinnell factors and focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

### 1.    Plaintiff and Its Counsel Have Zealously Represented the Class.

Lead Plaintiff and Lead Counsel conducted an extensive investigation after the appointment of lead plaintiff to amend the complaint, which included consulting with an accounting expert, doings extensive factual and legal research, and reviewing Sequential's voluminous bankruptcy filings. Lead Plaintiff and its counsel also opposed Defendants' multiple motions to dismiss.

Lead Counsel continued its zealous representation throughout Settlement negotiations, refusing to recommend settlement approval until after being satisfied that the terms were

8

favorable to Lead Plaintiff and the Settlement Class. After meditating for a full day before a highly-experienced mediator, Robert A. Meyer, Esq., on October 10, 2023, Lead Plaintiff and the Individual Defendants reached an agreement in principle. Following that full-day session, counsel for Lead Plaintiff and for the Auditor Defendants engaged in numerous calls and email exchanges to share their respective views on the case to attempt to reach a settlement, ending with an agreement in principle. Following these settlements in principle, the parties continued their good faith efforts to resolve the case and continued to negotiate a Term Sheet.

**2.      The Stage of the Proceedings Constituted an Appropriate Time to Settle.**

Lead Plaintiff had enough information to evaluate the Settlement. That there has been no formal discovery in this case does not weigh against preliminary approval. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425–26 (S.D.N.Y. 2001) ("To approve a proposed settlement ... the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make ... an appraisal of the Settlement."); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve— indeed, formal discovery need not have necessarily been undertaken yet by the parties."). As set out above, before reaching the Settlement, Plaintiff, *inter alia*, analyzed copious public information, consulted with accounting and damages experts, and analyzed and responded to Defendants' motions to dismiss. Thus, Lead Plaintiff and Lead Counsel entered the Settlement well aware of the Action's strengths and weaknesses, particularly in light of this Court's assessment of the SEC Complaint, Sequential's bankruptcy filings, and the input received from the abovementioned experts.

**3.     The Proposed Settlement is a Favorable Result for the Settlement Class, Especially Given the Substantial Risk and Challenges It Faced.**

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account [] the costs, risks, and delay of trial and appeal[]" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Settlements benefit class members by providing them with an immediate and certain recovery. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006) ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate.").

The Settlement represents a very favorable result for the Settlement Class. Lead Plaintiff has estimated recoverable damages, under a single-trader model, of approximately $28.1 million for the Class Period, which, as stated above, alleges that the corrective disclosures and stock price declines occurred in November 2017, February 2018, March 2020, and December 2020. But this amount could be far less depending on various scenarios.[3] Thus, the $9.75 million Settlement falls well within the range of reasonableness and supports preliminary approval. Indeed, the recovery here is approximately 34.7% of estimated damages, many times the 1.8% median percentage recovery in securities class actions in 2023.[4]

This is a favorable result under the circumstances. Lead Plaintiff alleges that the Individual Defendants misled investors regarding (1) the Company's notice of impaired goodwill by the end of 2016, (2) the Company's avoidance and delay in addressing the changed

---

[3]     Defendants estimated damages to be much less than Plaintiff.

[4]     Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review, at 26, Fig. 22 (NERA Economic Consulting Jan. 24, 2023), https://www.lexology.com/library/detail.aspx?g=93f1d421-f66f-43d5-a56f-248e8bd829df.

circumstances by changing the start date of the annual impairment test in 3Q16 and then using the Income Approach while dismissing the Market Approach results for its impairment testing in 3Q17, and as a result, (3) the Company failed to write off its impaired goodwill until 4Q17, overstating its income from operations, pre-tax income, net income, goodwill, and assets from 4Q16 through 3Q17, (4) the Company had deficient internal controls, and (5) the Company faced a high likelihood of having the SEC investigate and file a lawsuit against it.

Lead Plaintiff further alleges that the Auditor Defendants misled investors by issuing clean audit reports and failing to withdraw them despite: (1) concerns raised by its own Engagement Quality Control Review ("EQCR") partner, National Director of SEC Services, and internal valuation specialists about Sequential's unsupportable goodwill valuation; (2) prohibiting the EQCR from completing his review of the goodwill impairment prior to Sequential issuing its earnings release; (3) knowledge of the ongoing internal disagreement regarding impairment; (4) notifying Sequential that it had completed its interim review—without obtaining or reviewing more evidence or performing more procedures—so Sequential could file its Form 10-Q without any goodwill impairment; (5) creating a work paper that purported to describe the engagement team's conclusions prior to filing the Form 10-Q based on new data and justifications that were not documented prior to filing; and (6) knowledge of the risk of a material SEC investigation and lawsuit and likelihood of the previously issued financial statements being materially misstated.

Both sets of allegations would have been difficult to establish. Indeed, cases against auditors are especially difficult and have been increasingly dismissed outright on the pleadings.[5]

---

[5]    Colleen Honigsberg, Shivaram Rajgopal, and Suraj Srinivasan, *The Changing Landscape of Auditor Litigation and its Implications for Audit Quality* (Sept. 27, 2017), https://law.stanford.edu/wp-content/uploads/2017/10/Honigsberg_et_al_Oct_2017-1.pdf

Specific challenges abounded. For example, against the Individual Defendants, Lead Plaintiff would have had to adequately plead and prove that their statements about Sequential's goodwill were fraudulent despite the fact that their finance team would be able to claim they worked closely with Sequential's outside auditor to confirm its impairment analyses and an expert valuation advisor to assist with quantitative valuations. Moreover, despite the SEC's complaint only being based on negligence, Plaintiff's case would have required proof that the statements were fraudulent and materially misleading.

Lead Plaintiff would have also had to overcome the Auditor Defendants arguments that its claim was barred by the five-year statute of repose and that it had not adequately alleged liability against CohnReznick.

Lead Plaintiff also faced challenges regarding pleading and establishing scienter. If Lead Plaintiff survived Defendants' motions to dismiss, he would have to conduct document discovery and depositions in a case where the allegations hinge on complex accounting analyses. There was a risk Lead Plaintiff might not develop sufficient evidence to survive summary judgment. Finally, even if it did, Lead Plaintiff would still be trying a securities fraud case before a jury against Defendants who were purportedly attempting to comply with the federal securities laws regarding when and how to impair goodwill.

The adequacy of the amount offered in settlement must be judged not "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which recognizes "the uncertainties of law and

12

fact in any particular case and the concomitant risks and costs necessarily inherent" in taking any litigation to completion. *In re Giant Interactive*, 279 F.R.D. at 162. Here, the Settlement falls within the range or reasonableness of approved settlements in the Second Circuit.[6] Accordingly, the Settlement falls within the range of possible approval.

a)  The Complexity, Expenses, and Likely Duration of the Litigation.

"'[S]ecurities class actions are generally complex and expensive to prosecute.'" *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020). "[M]ost securities fraud cases, are complex and challenging as regards both liability and damages." *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 424. Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the [PSLRA]." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). As noted, this case involved a highly technical underlying subject matter, in addition to the complex issues of proof usually attendant to securities fraud litigation.

The Settlement spares the Settlement Class years of delay and millions of dollars in expenses, while providing an immediate and substantial benefit that is way above the mean settlement recovery obtained in these type of cases (when expressed as a percent of the loss). Without the Settlement, the Settlement Class would incur substantial costs and engage in prolonged litigation through motions to dismiss, class certification, summary judgment, a jury trial, and subsequent appeals. Discovery costs, including document production and hosting fees,

---

6    *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason [] why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").

as well as experts—for class certification, loss causation, damages, and subject-matter—would easily reach into the millions of dollars. Moreover, the fact that Sequential is a bankrupt corporation posed further difficulties in terms of access to documents and witnesses for depositions and trial.

Further, securities class actions that go to trial typically take over a decade from filing to affirmance on appeal. Indeed, they are so lengthy and so complex that Lead Plaintiff risks that the law may shift beneath its feet, jeopardizing even seemingly secure victories under then-existing standards. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (Supreme Court decision after jury verdict in plaintiffs' favor reduced billion dollar verdict to ~ $78 million).

Thus, the Settlement benefits the Settlement Class by guaranteeing an immediate recovery while sparing Settlement Class Members from millions of dollars in litigation costs and many years of delay.

b)  The Risk of Establishing Liability and Damages

"In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Securities Litigation*, 283 F.R.D. at 189; *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283 (S.D.N.Y. 1999) (Proof of damages is "particularly risky ... in commodity price manipulation cases"). Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Securities Litigation*, 233 F.R.D. at 310.

Substantial risks existed in this Action that further prosecution may have yielded limited

14

or no recovery. While Lead Plaintiff believes the case had sufficient merit to survive a motion to dismiss, the Court may not have agreed and could have granted Defendants' motions to dismiss.

Assuming Lead Plaintiff successfully moved for class certification, which would likely entail extensive expert reports, and managed to secure favorable evidence through very complex discovery, it would have to survive Defendants' motions for summary judgment. Lead Plaintiff would rely substantially on expert evidence to prove loss causation and damages, including to explain the accounting underlying impairing goodwill. Because Lead Plaintiff bears the burden of proof, Defendants could win at summary judgment on any number of issues through a Daubert motion. Moreover, for securities fraud claims, Lead Plaintiff also must plead and prove scienter, and "proof of state of mind is inherently difficult." *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 426; *accord Pearlstein v. BlackBerry Ltd.*, No. 13CIV7060CMKHP, 2022 WL 4554858, at *5 (S.D.N.Y. Sept. 29, 2022).

Finally, Lead Plaintiff would have to present its case to a jury. These are difficult cases to try from plaintiff's perspective. As noted, Defendants would argue that goodwill did not need to be impaired because Sequential's fundamentals were still intact despite the rise in online shopping that caused significant challenges to brick-and-mortar retailers. Indeed, to explain why Defendants' statements were false, Lead Plaintiff would have to explain and compare the Income Approach and the Market Approach to assessing goodwill, the quantitative evidence, the qualitative assessment, and the impairment process – and then get the jury to agree with Plaintiff's position on them. With a battle of the experts over complex subject-matter, jury confusion would be a significant danger for Plaintiff, which could lead to jurors simply concluding that Lead Plaintiff had not sufficiently proven they were entitled to relief. *See, e.g., In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed

15

issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."). Lead Plaintiff would also need the jury to credit its experts to prove loss causation and damages, adding another layer of uncertainty and risk. *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 426–27 ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he 'jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable.'").

Even if it prevailed at trial, Lead Plaintiff would have to survive Defendants' inevitable appeals. *See In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) ("[V]ictory—even at the trial stage—is not a guarantee of ultimate success" where "given the number of defendants and the complexity of the issues, appeals are a distinct possibility."). This case could easily generate more than its share of appellate issues because it involves multiple defendants and complex accounting matters. The Settlement avoids these risks and provides the Settlement Class with an immediate and guaranteed recovery.

### 4.    The Settlement Treats Settlement Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate if the settlement treats class members equitably relative to one another. The proposed Settlement does so here, because the proposed Plan of Allocation treats all claimants uniformly. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005); *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 429–30.

16

As described in the Notice, the Plan of Allocation has a rational basis and was formulated by Class Counsel based on fairness and reliability principles. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007). Under the proposed Plan of Allocation, each claimant will receive a *pro-rata* share of the Net Settlement Fund, which is determined by the ratio that the claimant's allowed claim bears to the total of all allowed claims. The premise of the Plan of Allocation is that Settlement Class Members sustained damages by purchasing their Sequential Securities at artificially inflated prices, consistent with the allegations in the Action. The Plan of Allocation is substantially similar to other plans of allocation that have been approved and successfully implemented in other securities class action settlements, including within this Circuit. *See id.* at *14 ("Each valid claim will then be calculated so that each authorized claimant will receive, on a proportionate basis, the share of the net settlement fund that the claimant's recognized loss bears to the total recognized loss of all authorized claimants."); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

### 5.       The Proposed Notices Are Constitutionally Sound and Appropriate

Preliminary approval of the proposed Settlement permits notice to be given to the Settlement Class Members of a hearing on final settlement approval, at which they and the settling parties may be heard. *See Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995). Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with

17

the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27. The requirements of the PSLRA and due process are similar. 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

The proposed Notice program includes: (a) mailing or emailing the Long Notice with a link to the Claims Administrator's website and its mailing address and telephone number, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Claim Form, Preliminary Approval Order, and Stipulation on a website maintained by the Claims Administrator; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) disseminating the Summary Notice in the *Wall Street Journal* and over *PR Newswire*. *See* Stipulation at ¶23 and Ex. A-3. These methods suffice. *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 149 (S.D.N.Y. 2001) (notice sufficient where it "was reasonably calculated ... to apprise Class Members of (i) the pendency of this action, (ii) their right to exclude themselves from the Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement ... (iv) their right to appear at the Fairness Hearing ... , and (v) the binding effect of the Orders and Judgment in this action"); *see also Manual Third § 30.41* (approving use of combined class notice and settlement notice where appropriate). The Long Notice contains all the information required by the PSLRA, 15 U.S.C. §78u-4(a)(7). *See* Stipulation*,* Ex. A-1.

**6.     The Additional Rule 23(e) Factors Support Preliminary Approval.**

The proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) will be implemented in a manner historically proven to be effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by the fulsome publication of the Summary Notice in the *Wall Street Journal* and over *PR Newswire*, a national newswire service. In addition, a Settlement-specific website will be created where Settlement-

18

related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. Stipulation, ¶23. The Settlement also contemplates a comprehensive claims administration process, which requests information, via a Proof of Claim form, necessary to calculate a claimant's recognized loss amount under the Plan of Allocation. The Claims Administrator will process the claims, calculate recognized losses under the Plan of Allocation and, ultimately, distribute the Net Settlement Fund to Authorized Claimants.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment[.]" The proposed Notice states that Lead Counsel intends to seek an award of attorneys' fees of up to 25% of the Settlement Amount as well as litigation expenses not to exceed $45,000, plus interest on these amounts at the same rate as earned by the Settlement Fund. *See* Stipulation, Ex. A-1 at 5. In addition, Lead Plaintiff will seek an award of up to $5,000 pursuant to 15 U.S.C. §78u-4(a)(4) to compensate him for his time spent in connection with its representation of the Settlement Class. *Id*. The requested fee is below the percentage fee awards typically granted in other comparable securities class actions in this Circuit.[7] The requested 25% fee is also **below** the range of percentage fees typically awarded in non-securities, complex class actions within the Second Circuit, further confirming the reasonableness of the requested award.[8]

---

[7]     *See, e.g., Erlandson v. Triterras, Inc., et al.*, No. 7:20-cv-10795-CS, ECF 82 at 1 (S.D.N.Y. Sept. 8, 2022) (awarding one-third of $9 million recovery); *Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 1:18-cv-09848-PGG, ECF 130 at 1 (S.D.N.Y. May 12, 2022) (awarding one-third of $7.5 million recovery); *In re IMAX Sec. Litig.*, No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *7 (S.D.N.Y. Aug. 1, 2012) (finding 33% of $12 million settlement reasonable); *Hayes v. Harmony Gold Min. Co.*, No. 08 CIV. 03653 BSJ, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (unpubl.).

[8]     *See, e.g., Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement in FLSA case as "reasonable and 'consistent with the norms of class litigation in this circuit"; citing other awards of 33%); *Flores v. Anjost Corp.*, No. 11 CIV. 1531 AT, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (awarding 1/3 of settlement amount in wage-and-hour case).

With respect to the timing of payment, the Stipulation provides that any attorneys' fees and expenses awarded shall be paid to Lead Counsel after the Court executes the Judgment and an order awarding such fees and expenses. Stipulation, ¶20. This will be communicated to the Settlement Class in the Long Notice and the Summary Notice.

### 7.    The Remaining *Grinnell* Factors Support Preliminary Approval

*Grinnell* contains several factors that are not coextensive with those in Rule 23(e)(2) which also support preliminary approval. The second *Grinnell* factor (the reaction of the class) is premature at this time, as notice of the Settlement has not yet been disseminated.

***The risk of certifying a class has relatively little weight***: While class certification is by no means assured, Lead Plaintiff believes it would not present a significant challenge in this Action.

***The ability of Defendants to withstand a greater judgment supports approval***: Sequential is a bankrupt company. Without the Settlement, Lead Plaintiff would not reach judgment for several years. The potential inability of Defendants to withstand a greater judgment over the course of this litigation supports approval.

## IV.    THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS

A class will be certified where the Rule 23(a) requirements – numerosity, commonality, typicality, and adequacy of representation – are satisfied, plus the requirements of one sub-section of Rule 23(b). *See* Fed. R. Civ. P. 23; *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). Conditional certification of a class for settlement purposes only is proper where settlement occurs prior to certification of a class. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

The Parties consent to, and seek, settlement certification under Rule 23(b)(3). A class should be objectively ascertainable, a "modest threshold" for certification. Fed. R. Civ. P. 23(b)(3); *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). For the reasons stated below,

20

certification of a Settlement Class would be appropriate here. Accordingly, the Court should proceed with authorizing notice, Lead Plaintiff should be appointed Class Representative, and Lead Counsel should be appointed Class Counsel.

First, approximately 37 to 40 million shares were issued and outstanding during the Class Period, easily satisfying numerosity. *See* Complaint, ¶337; *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("A proposed class of more than 40 members presumptively satisfies the numerosity requirement."). While the precise number of Settlement Class Members is unknown, it certainly exceeds any number considered practical for joinder.

Second, because the Settlement Class's claims arise from the same alleged misstatements and omissions in the same documents and rely on the same theories of liability, questions of law and fact are common to the Settlement Class. Fed. R. Civ. P. 23(a)(2); *Tal Educ.*, 2021 WL 5578665 at *6. Rule 23(a)(2) simply requires common questions of law or fact that are susceptible to class-wide proof. *See* 2 W. Rubenstein, *Newberg on Class Actions* §4:50, 196-97 (5th ed. 2012). Identicality of facts and legal questions is not necessary – commonality is met where the plaintiff demonstrates a common question. *Id.* "Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public." *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012).

Third, Lead Plaintiff's claims are typical of the Settlement Class's because they share the same factual and legal underpinnings. The heart of the inquiry is whether the claims of the plaintiff and the class are interrelated such that class treatment is economical. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). This element "focuses on whether the named plaintiff's interests align with the interests of the rest of the class." *Sharpe v. A&W Concentrate Co.*, No. 19-CV-768 (BMC), 2021 WL 3721392, at *4 (E.D.N.Y. July 23, 2021). "Interests align

when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id*. Here, Plaintiff's claims are akin to those of other Settlement Class Members. Defendants' alleged course of conduct uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury from the artificially inflated market prices of Sequential Securities during the Class Period, and their decline upon the corrective disclosures. Thus, Plaintiff's claims are typical of other Settlement Class Members' claims because, like all other members, it purportedly was injured when the truth about Defendants' alleged fraud was revealed. Accordingly, Rule 23(a)(3)'s typicality requirement is met.

Fourth, Lead Plaintiff will adequately represent the Settlement Class. The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The adequacy inquiry also tests the qualifications of Plaintiff's counsel to represent a class. *Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010). There are no apparent conflicts of interest between Lead Plaintiff and the absent Settlement Class Members. *See In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. at 453 ("[N]o conflict between the class representatives and the other class members" where "[a]ll share the common goal of maximizing recovery."). Lead Plaintiff has been committed to the vigorous prosecution of this Action from the outset and has reached a resolution that it believes is in the best interests of all Settlement Class Members. Further, the firm seeking to represent the Settlement Class is highly qualified and experienced in representing investors in such class actions. *See* Ngo Decl. at ¶17 & Ex. 2.

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to individual

adjudications. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc.*, 521 U.S. at 625. This securities fraud case is no different. Resolution of Plaintiff's allegations – including questions of liability, causation, and damages – are susceptible to generalized proof; and such generalized inquiries predominate over any issues specific to individual class members. *See Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022).

Finally, superiority is satisfied as there are likely thousands of class members nationwide, and consolidating their claims is in the interests of efficiency and judicial economy. *See id.* at *4. Accordingly, class certification is appropriate for Settlement purposes.

## V.    PROPOSED SCHEDULE

Lead Plaintiff proposes the following schedule as set forth in the Preliminary Approval Order:

| | |
|---|---|
| Last day to complete mailing of Notices and Claim Forms. | Within 21 calendar days after entry of the Preliminary Approval Order (¶13). |
| Claims Administrator shall place the Stipulation, Notice, and Proof of Claim and Release on a website dedicated to the administration of this Settlement. | Within 21 calendar days after entry of the Preliminary Approval Order (¶15). |
| Last day for potential Class Members to request exclusion from the Class. | 21 days before Settlement Hearing (¶22). |
| Last day for Class Members to submit objections to the Stipulation, Settlement, Plan of Allocation, and any Fee and Expense Application. | 21 days before Settlement Hearing (¶24). |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the applications for Fee and Expense Awards. | 35 calendar days before Settlement Hearing (¶26). |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Fee and Expense Awards. | 7 days before Settlement Hearing (¶26). |
| Settlement Hearing | [] |

## VI.    CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval thereof and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order, directing that notice be sent to Settlement Class Members and settling a date for the final approval hearing.

Dated: October 30, 2024                              Respectfully,

/s/ *Ivy T. Ngo*
Ivy T. Ngo (*pro hac vice*)
Devin (Velvel) Freedman
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
ingo@fnf.law
vel@fnf.law
Tel.: 786.924.2900
Fax: 646.392.8842

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2024, a true and correct copy of the foregoing was filed electronically using the Court's electronic filing system and notice of this filing will be sent to all registered parties.

/s/ *Ivy T. Ngo*
Ivy T. Ngo, Esq.

25