**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER D'ARCY, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:21-cv-07296 |
| Plaintiff, | |
| v. | <u>CLASS ACTION</u> |
| YEHUDA SHMIDMAN, KAREN MURRAY, GARY KLEIN, ANDREW COOPER, CHAD WAGENHEIM, PETER LOPS, DAVID CONN, DANIEL HANBRIDGE, LORRAINE DISANTO, WILLIAM SWEEDLER, AARON HOLLANDER, AL GOSSETT, STEWART LEONARD, JR., and COHNREZNICK LLP, | Honorable J. Paul Oetken |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) APPROVAL OF PLAN OF ALLOCATION, AND (3) LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARD TO PLAINTIFF <u>PURSUANT TO 15 U.S.C. §78u-4(a)(4)</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................................ 3

III.  THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT ................. 4

IV.   THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ................... 5

      A.    Standards for Final Approval of Class Action Settlements ................................. 5

      B.    The Settlement Is Fair, Adequate, and Reasonable............................................. 6

      1.    The Settlement Satisfies the Requirements of Rule 23(e)(2) ................................. 6

            a.    Plaintiff and Lead Counsel Adequately Represented the Class....................... 7

            b.    The Settlement Resulted from Robust Arm's-Length Negotiations................. 8

            c.    The Settlement Is Adequate Given the Costs, Risks, and Delay of Trial and
                  Appeal ............................................................................................................. 8

                  1) The Risks of Establishing Liability at Trial ............................................... 8

                  2) The Added Costs and Delay of Recovery in Continued Litigation............ 11

            d.    The Proposed Method for Distributing Relief Is Effective............................ 11

            e.    The Requested Attorneys' Fees Are Reasonable............................................ 12

            f.    The Only Agreement Between the Parties Is the Stipulation ......................... 12

            g.    The Settlement Treats Class Members Equitably ........................................... 12

      2.    The Settlement Satisfies the Remaining Grinnell Factors ................................... 13

            a.    The Lack of Objections to Date Supports Final Approval ............................ 13

            b.    Plaintiff Had Sufficient Information to Resolve the Case ............................. 13

            c.    Maintaining All Misstatements and Corrective Disclosures, the Class Period,
                  and Class Action Status Through Trial Presents Substantial Risk ................. 14

            d.    Defendants' Ability to Withstand a Greater Judgment.................................. 15

            e.    The Settlement Amount Is More Than Reasonable ....................................... 15

V.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE................................. 16

VI.   NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS............... 16

VII.  REASONABLE ATTORNEYS' FEES SHOULD BE AWARDED ........................ 17

      A.    Attorneys' Fees and Expenses Should Be Awarded from the Common Fund .................. 17

      B.    The Court Should Award a Reasonable Percentage of the Common Fund ..................... 18

      C.    The Requested Fee Is Reasonable Under the Percentage-of-the-Fund Method .............. 19

      D.    Considering the Relevant Factors Confirm the Requested Fee Is Reasonable ................ 19

      1.    The Time and Labor Expended by Counsel............................................................ 19

      2.    The Magnitude and Complexity of the Litigation................................................. 20

3.  The Risks in the Litigation Undertaken on a Contingent Fee Basis ...................... 20

4.  The High Quality of Representation and Public Policy ......................................... 22

5.  Plaintiff Approved the Requested Fee, As Did the Rest of the Class ................... 23

6.  A Lodestar Cross-check Confirms the Requested Fee's Reasonableness.............. 23

VIII.  COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY ............... 24

IX.    PLAINTIFF SHOULD RECEIVE A REASONABLE AWARD ............................ 25

X.     CONCLUSION .................................................................................................... 25

ii

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ............................................................ 30

*Aponte v. Comprehensive Health Mgmt.*,
 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ............................................................ 27

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ............................................................ 18

*Blum v. Stenson*,
 465 U.S. 886 (1984) ........................................................................................... 25, 26

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) ................................................................................................. 24

*Camden I Condo. Ass'n v. Dunkle*,
 946 F.2d 768 (11th Cir. 1991) ................................................................................. 25

*Castagna v. Madison Square Garden, L.P.*,
 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ............................................................ 21

*Christine Asia Co., Ltd. v. Yun Ma*,
 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................... 16, 20, 21, 24

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) .............................................................................. 6, 7, 28

*City of Providence v. Aeropostale, Inc.*,
 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................................................... 22, 25

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
 502 F.3d 91 (2d Cir. 2007) ........................................................................................ 8

*Erlandson v. Triterras, Inc.*,
 *et al.*, 2021 WL 4737633 (S.D.N.Y. Sept. 8, 2022) ................................................. 26

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000) ............................................................................... passim

*Gottlieb v. Barry*,
 43 F.3d 474 (10th Cir. 1994) ................................................................................... 25

iii

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) .......................................................................................... 25

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................................................. 15

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ..................................................................................... 29

*In re "Agent Orange" Prod. L*iab. Litig.,
  597 F. Supp. 740 (E.D.N.Y. 1984) .............................................................................. 22

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................... 6, 15, 23

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010) .......................................................................... 28

*In re AOL Time Warner, Inc. Sec. & "ERI*SA" Litig.,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................ 12, 22

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ......................................................................................... 25

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......................................................................... 19

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y. July 16, 2007) .............................................................. 31

*In re China Sunenergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) .............................................................. 31

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019) .................................................................. 8

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) .............................................................. 30

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018) ....................................................................11, 20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................................................12, 29, 30, 31

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .............................................................. 19

iv

*In re IMAX Sec. Litig.*,
　283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................... 14

*In re Marsh ERISA Litig.*,
　265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................... 29

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
　249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................... 23, 24

*In re Northern Dynasty Minerals Ltd. Sec. Litig.*,
　2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) .................................................... 26, 31, 32

*In re PPDAI Grp. Inc. Sec. Litig.*,
　2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................................................. 26

*In re Prothena Corp. PLC Sec. Litig.*,
　2019 WL 6528672 (S.D.N.Y. Dec. 4, 2019) ................................................................ 30

*In re Signet Jewelers Ltd. Sec. Litig.*,
　2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................................. 9

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
　2008 WL 1956267 (S.D.N.Y. May 1, 2008) ................................................................ 22

*In re Sumitomo Copper Litig.*,
　189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................. 12, 27

*In re Telik, Inc. Sec. Litig.*,
　576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......................................................... 7, 14, 25, 27

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
　56 F.3d 295 (1st Cir. 1995) ......................................................................................... 25

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
　724 F. Supp. 160 (S.D.N.Y. 1989) .............................................................................. 31

*In re Veeco Instruments Inc. Sec. Litig.*,
　2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................................................... 18, 23, 28, 31

*In re WorldCom, Inc. Sec. Litig.*,
　388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................... 23, 25

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
　364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................ 29

*Jenkins by Agyei*,
　491 U.S. 274 (1989) ............................................................................................... 26, 31

v

*Lea v. Tal Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .............................................................. 25, 26, 32

*McMahon v. Olivier Cheng Catering & Events, LLC,*
2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........................................................................ 21

*Mikhlin v. Oasmia Pharm. AB.*,
2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ..................................................................... 14, 17

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
2019 WL 13150344 (S.D.N.Y. Mar. 8, 2019) ....................................................................... 10

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ................................................................................................ 22

*Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No.,
2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ...................................................................... 26

*Pelzer v. Vassalle*,
655 F. App'x 352 (6th Cir. 2016) ........................................................................................ 17

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ............................................................................................. 25

*Rawlings v. Prudential-Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) .................................................................................................. 25

*Reynolds v. Repsol YPF, S.A.*,
2008 WL 11383317 (S.D.N.Y. May 7, 2008) ....................................................................... 31

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ........................................................................................... 29

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ............................................................................................... 29

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................................. 15

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) .............................................................................................. 25

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................................. 7

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) .............................................................................................. 25

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................. 25

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................... passim

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
  2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ................................... 28, 29

**Statutes**

15 U.S.C. §78u-4(a)(4) ........................................................................ 1, 3, 32
15 U.S.C. §78u-4(a)(6) ............................................................................... 25
15 U.S.C. §78u-4(a)(7) ............................................................................... 24
U.S.C. §77z-1(a)(4)..................................................................................... 26

**Rules**

Fed. R. Civ. P. 23.................................................................................... 1, 23
Fed. R. Civ. P. 23(c) ................................................................................... 21
Fed. R. Civ. P. 23(c)(2)(B), (e)(1)(B)........................................................ 23
Fed. R. Civ. P. 23(e)(2)(A) ........................................................................ 10
Fed. R. Civ. P. (a) and 23(b)(3) ................................................................... 5
Fed. R. Civ. P. (e)(2) .................................................................................. 10
Fed. R. Civ. P. (e)(2)(C)(i) ..........................................................................11
Fed. R. Civ. P. (e)(2)(C)(ii) ........................................................................ 16
Fed. R. Civ. P. (e)(2)(C)(iv) ....................................................................... 17
Fed. R. Civ. P. (e)(2)(D).............................................................................. 17

Pursuant to Federal Rule of Civil Procedure 23, Lead Plaintiff CJD Finance Company, LLC respectfully submits this memorandum of law in support of its motion for approval of (1) the $9,750,000 settlement; (2) the proposed plan of allocation; and (3) Lead Counsel's application for attorneys' fees and expenses and a $3,000 service award to Plaintiff. The Court preliminarily approved the Settlement on November 8, 2024, revising the notice process on December 4, 2024.[1]

## I.    PRELIMINARY STATEMENT

The Settlement is especially beneficial to the Class given the substantial litigation risks Plaintiff faced against the now bankrupt Company. The gravamen of Plaintiff's claims was that during the Class Period, the Individual Defendants made material misstatements and omissions concerning the value of Sequential's goodwill and the basis for the multiple changes to its methodology for assessing goodwill, the existence and materiality of the SEC investigation into its goodwill, and the adequacy of its disclosure controls and procedures and internal controls. ¶17. Plaintiff further alleged that the Auditor Defendants helped document Sequential's audit files and signed off on its SEC filings to support delaying a write-off for a year, an SEC investigation disclosure for six months, and an SEC Complaint for eight months. *Id*. When the Company finally disclosed the goodwill write-off on February 28, 2018, the SEC investigation on March 31, 2020, and the SEC Complaint on December 11, 2020, Sequential's stock price fell in response – $12.00, $5.20, and $2.03 per share, respectively – thereby damaging Plaintiff and the Class. ¶18.

While Plaintiff believes in the merit of its claims, Defendants had strong and credible arguments that could have been successful in persuading the Court or jury that, among other things: (i) they did not make any actionable misstatements or omissions; (ii) they did not act with scienter, but rather, believed their statements were true and accurate when made, and were simply unable

---

[1] Order Preliminarily Approving Settlement and Providing for Notice (ECF 150) ("Preliminary Approval Order"); Order Revising Notice Process (ECF 152). Unless otherwise noted, capitalized terms used herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement ("Stipulation") (ECF 147-1), all emphasis is added, and internal citations are omitted.

to reach consensus regarding goodwill; (iii) any misstatements regarding Sequential's goodwill, internal controls, or risk of an SEC complaint were immaterial; and (iv) even if Plaintiff was able to prove their liability, damages were minimal or non-existent. *Id*., ¶¶37-38. Had Plaintiff failed to establish any element of its claims or failed to refute Defendants' contentions, the case could have been lost, or damages could have been found to be much lower, if any at all. *Id*.

As detailed in the Ngo Declaration, Plaintiff and Lead Counsel fully understood the Action's strengths and weaknesses before settling it, as they had conducted a thorough factual and legal investigation before and after filing the Complaint, opposing the five motions to dismiss, preparing their mediation statement and demonstratives, negotiating with the Individual Defendants' counsel through a skilled and highly reputable mediator – Robert A. Meyer, Esq. of JAMS, and negotiating at-length with the Auditor Defendants' counsel. Plaintiff thus knew that Defendants may have succeeded in whole or in part at motion to dismiss, class certification, summary judgment, or trial – resulting in a lower recovery or nothing at all. Continuing to litigate would not have guaranteed more than the 34.7% of estimated damages recovered in the Settlement, particularly given that the SEC recovered far less in its case against Sequential and CohnReznick. Moreover, Mr. Meyer had proposed the $6.25 million settlement with the Individual Defendants.

Given the risks to proceeding and the favorable recovery obtained, Plaintiff respectfully submits that the $9.75 million Settlement and the Plan of Allocation – which was prepared with the assistance of Plaintiff's damages expert and is substantially similar to other such plans that have been approved in this Circuit and by this Court – are fair and reasonable in all respects.

Class Members have reacted positively to the Settlement. Pursuant to the Preliminary Approval Order, the Summary Notice was sent to 36,040 potential Class Members and nominees, published in *Investor's Business Daily*, transmitted over *PR Newswire*, and provided via a website created for the Settlement. *See* Declaration of Dawn M. Cody of Angeion Group, Regarding: (A)

Notice Mailing; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections Received ("Cody Decl."), ¶¶2-10 and Ex. A, submitted herewith. To date, not one objection nor exclusion has been received. *Id.*, ¶15-16. Accordingly, Plaintiff requests that the Court grant final approval of the Settlement and approve the Plan of Allocation.

Given the very favorable result achieved and the contingent nature of its representation, Lead Counsel also requests a fee award of 25% of the Settlement Amount and $38,927.19 in expenses related to the Litigation, plus interest on both amounts. Plaintiff, an institutional investor with meaningful losses, fully supports this request, which is in the range of (if not below) awards in comparable securities class action settlements in this District and nationwide. In addition, under 15 U.S.C. §78u-4(a)(4), Plaintiff seeks a $3,000 service award for its efforts representing the Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid burdening the Court with duplicative information, Plaintiff provides a summary of the procedural history here and a more fulsome description in the Ngo Declaration, ¶¶14-30.

The initial complaint was filed on March 16, 2021. *Id.*, ¶14. On June 11, 2021, Plaintiff was appointed as lead plaintiff with Freedman Normand Friedland LLP ("FNF") as Lead Counsel. *Id.* On August 31, 2021, Sequential filed for bankruptcy. *Id.*, ¶15. On February 22, 2022, the Bankruptcy Court enjoined the continuation of this Action against Sequential. *Id.* As a result, Plaintiff moved to dismiss Sequential, which this Court granted on September 26, 2022. *Id.*

On November 14, 2022, Plaintiff filed the Complaint, alleging that Defendants violated §§10(b) and 20(a) of the Exchange Act by making material misstatements and omissions about Sequential's goodwill, internal controls, and risk of an SEC complaint from November 9, 2016 through December 11, 2020 ("Class Period"). ECF 44. The Complaint alleged that the Individual Defendants materially misled investors about the value of Sequential's goodwill and the basis for the changes to its methodology for assessing goodwill, the existence and materiality of the SEC

investigation into its goodwill, and the adequacy of its disclosure and internal controls. *Id*., ¶¶134-224. The Complaint also alleged that the Auditor Defendants helped document Sequential's audit files and signed off on its SEC filings to support delaying a write-off for a year, an SEC investigation disclosure for six months, and an SEC Complaint for eight months. *Id*., ¶¶254-301. The Complaint further alleged that the truth slowly emerged through a series of disclosures – the goodwill write-off on February 28, 2018, the SEC investigation on March 31, 2020, and the SEC Complaint on December 11, 2020 – which caused Sequential's stock price to fall $12.00, $5.20, and $2.03 per share, respectively, damaging Class Members. *Id*., ¶¶7-14, 319-27.

On March 23, 2023, Defendants filed five motions to dismiss. On May 25, 2023, Plaintiff filed an omnibus opposition. ECF 104-20, 128. On August 7, 2023, the Auditor Defendants filed a reply. ECF 135. Meanwhile, counsel for the Individual Defendants and for Plaintiff agreed to stay motion to dismiss pending mediation, which the Court ordered on July 21, 2023. ECF 134.

After exchanging mediation statements on October 3, 2023, counsel for the Individual Defendants and Plaintiff engaged in a full-day mediation on October 10, 2023. It ended with the parties accepting Mr. Meyer's recommendation to settle their case for $6,250,000. Ngo Decl., ¶23. In the following months, counsel for the Auditor Defendants and Plaintiff participated in numerous settlement conversations. *Id*., ¶25. After multiple offers and counteroffers, the parties agreed to settle their case for $3,500,000 in March 2024. All Parties then informed the Court that they had reached an agreement in principle, subject to final documentation of the Settlement's terms.

On October 30, 2024, Plaintiff moved for preliminary approval of the Settlement, which the Court granted on November 7, 2024, and revised on December 4, 2024. ECF 145, 150, 152.

## III.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT

In granting preliminary approval, the Court found the Rule 23(a) and 23(b)(3) requirements had been satisfied and preliminarily certified the following Class for settlement purposes:

> [A]ll persons and entities (each a "Class Member") who purchased or

4

otherwise acquired Sequential Securities between November 9, 2016 and December 11, 2020, inclusive. Excluded from the Class are (i) Defendants, (ii) Immediate Family Members of Defendants; (iii) any partners and employees of CohnReznick during the Class Period and members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the above have or had a controlling interest, and (iv) any directors and officers of Sequential during the Class Period and members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the above have or had a controlling interest… Also excluded from the Class are those persons and entities who timely and validly request exclusion from the Class pursuant to the requirements described below and in the Notice of Pendency and Proposed Settlement of Class Action[.]

ECF 150, ¶¶2-3. The Court also preliminarily appointed Plaintiff as class representative and FNF as class counsel. *Id.*, ¶5. Since entry of that order, nothing has occurred to alter the reasonableness of those rulings. Accordingly, for the reasons stated in its memorandum in support of preliminary approval, ECF 146 ("Preliminary Approval Brief", incorporated herein by reference), Plaintiff requests that the Court affirm its Preliminary Approval Order, certify the Class under Rules 23(a) and 23(b)(3) for settlement and appoint Plaintiff as class representative and FNF as class counsel.

## IV.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

### A.    <u>Standards for Final Approval of Class Action Settlements</u>

"The law favors settlement, particularly in class actions … where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014). Therefore, when exercising discretion to approve a settlement, courts are "mindful of the 'strong judicial policy in favor of settlements.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Indeed, the Second Circuit has cautioned that, while a court should not just "rubber stamp" a settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

Rule 23(e)(2) instructs Courts to consider the following factors when determining whether a class action settlement is "fair, reasonable, and adequate," thereby warranting final approval:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i)  the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D)  the proposal treats class members equitably relative to each other.

Courts in the Second Circuit also consider the following factors in evaluating whether to approve a class action settlement (the "*Grinnell* factors"):

> "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463).

In finding a settlement fair, reasonable and adequate, the Court need not find for every factor but "should consider the[ir] totality" given the circumstances. *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). In doing so, a court may not substitute its "business judgment for that of counsel, absent evidence of fraud or overreaching." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008). Plaintiff respectfully submits that the proposed Settlement is fair, reasonable, and adequate, satisfying Rule 23(e)(2) and all the *Grinnell* factors.

    **B.**    <u>**The Settlement Is Fair, Adequate, and Reasonable**</u>

        **1.  The Settlement Satisfies the Requirements of Rule 23(e)(2)**

As explained in the Preliminary Approval Order, the Settlement meets the requirements imposed by Rule 23(e)(2) and the Second Circuit in *Grinnell*. That nothing has changed since then "counsel[s] equally in favor of final approval now." *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019).

a.    <u>Plaintiff and Lead Counsel Adequately Represented the Class</u>

Plaintiff satisfies the first Rule 23(e)(2) factor. Determining adequacy "'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest[s] of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Plaintiff's interests are directly aligned with the Class. Its claims "are typical of and coextensive with those of other Class Members and [it] has no interests antagonistic to those of other Class Members. Like other Class Members, . . . Plaintiff has an interest in obtaining the largest possible recovery." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020).

In addition, Plaintiff and Lead Counsel have adequately represented the Class as the Settlement arose from a thorough factual and legal investigation and an effective litigation and negotiation strategy, bolstered by an extensive analysis of damages and a deep understanding of the claims' strengths and weaknesses. Ngo Decl., ¶¶5, 8, 16, 55. Lead Counsel investigated and analyzed over four years of SEC filings, press releases, news articles, analyst research reports, and other public statements issued by or concerning Sequential. *Id.*, ¶55. Lead Counsel evaluated this information, conducted legal research, and consulted with an accounting and auditing expert to draft the detailed, 375-paragraph Complaint. Lead Counsel conducted more research and analysis to oppose the five motions to dismiss and to prepare its mediation statement and demonstratives. And Lead Counsel negotiated the two extremely favorable all-cash settlements with the two defendant groups, which fairly value the claims and provide an immediate benefit to the Class.

Further, in overseeing and participating in this Litigation, Plaintiff, working with Lead Counsel, monitored the investigation, reviewed documents before and after filing, submitted a declaration in support of its lead plaintiff motion, and supervised settlement negotiations. CJD Decl., ¶¶5-7. Plaintiff also retained highly experienced and well-respected counsel who zealously

prosecuted the Litigation and secured a very favorable settlement. *Id.*, ¶7. This diligent and adequate representation of the Class supports final approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

### b.    The Settlement Resulted from Robust Arm's-Length Negotiations

The second Rule 23(e)(2) factor is met because the Settlement resulted from extensive, arm's-length negotiations. The settlement with the Individual Defendants was before a neutral, experienced securities class action mediator, Mr. Meyer, with no hint of collusion and reached only after multiple rounds of discussions with him before receiving his recommendation. Ngo Decl., ¶¶8, 22-23. Likewise, the settlement with the Auditor Defendants involved multiple rounds of offers and counteroffers between experienced counsel over many months. *Id.*, ¶¶8, 24-25.

The arm's-length nature of the negotiations demonstrates that the Settlement did not result from collusion. *See Wal-Mart*, 396 F.3d at 116; *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 2019 WL 13150344, at \*2 (S.D.N.Y. Mar. 8, 2019), *aff'd as modified sub nom.*, 28 F.4th 357 (2d Cir. 2022) (mediating is evidence of arm's-length negotiations). Moreover, that they were "carried out under the direction" of Plaintiff "suggests procedural fairness." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018), *aff'd sub nom.*, 822 F. App'x 40 (2d Cir. 2020).

### c.    The Settlement Is Adequate Given the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth, and fifth *Grinnell* factors concern the substantive adequacy of the Settlement. Rule 23(e)(2)(C)(i) advises district courts to consider "the costs, risks, and delay of trial and appeal," while the relevant *Grinnell* factors overlap and address the risks of establishing liability and damages. Fed. R. Civ. P. 23(e)(2)(C)(i).

#### 1)    The Risks of Establishing Liability at Trial

Securities class actions present numerous hurdles for plaintiffs to overcome. Indeed, courts in this district "'have long recognized that [securities] litigation is notably difficult and notoriously

uncertain.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)); s*ee also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at \*11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation."). These risks support final approval here because while Lead Counsel and Plaintiff believe its claims are meritorious, continued litigation posed major risks that made any recovery uncertain.

Defendants argued in multiple of their motions to dismiss, for example, that the statute of repose applied to bar those claims that are based on alleged misstatements or omissions before November 14, 2017. Ngo Decl., ¶56. If the Court had resolved this issue in Defendants' favor, it would have had profound implications for the Action because the Class would not have been able to recover losses from those alleged misstatements and omissions.

In addition, while Plaintiff believes that its claims would have been borne out in the evidence, it would have had to conduct discovery post-bankruptcy from former Company employees who may have been difficult to locate, and who likely would have had few documents and little memory of details relating to events which went as far back as 2016.

Moreover, Defendants articulated defenses at motion to dismiss that they undoubtedly would have raised at summary judgment and trial. Specifically, they maintain that the statements about Sequential's goodwill are non-actionable opinions and those about the SEC investigation and the Company's internal controls are true and complete. ECF 115 at 18-29. The Individual Defendants also maintain that scienter cannot be proven because they believed their statements were accurate when made, *id*. at 33-34, and at most, they committed an accounting error, not fraud, *id*. at 31. The Auditor Defendants similarly maintain that their statements were accurate based on then-known information, and at most, their conduct was negligent, not fraudulent. ECF 105 at 15-22. If Defendants prevailed on any one of these grounds, the Class would recover nothing.

Furthermore, to certify the class, and to prove its claims at summary judgment and trial, Plaintiff would need to rely extensively on expert witnesses to analyze key issues, including accounting and auditing standards, market efficiency, loss causation, and damages. Each expert's testimony would be critical to maintaining this case as a class action and demonstrating the validity of Plaintiff's claims, but their conclusions likely would be hotly contested. Plaintiff's case is thus particularly susceptible to the dangers inherent in reliance on expert witnesses, including that they would be subject to Daubert challenges. If the Court determined that even one of Plaintiff's experts should be excluded from testifying, its case would be that much more difficult to prove.

Plaintiff also faced risks in establishing damages. If Defendants successfully challenged loss causation on any of the corrective disclosures, the Class's recoverable damages would have materially decreased. Ngo Decl., ¶¶35, 39. Both sides would inevitably have highly qualified experts on loss causation and damages, who would provide conflicting calculations on the "true" amount of damages; such an unpredictable and contentious "battle of the experts" would leave Plaintiff and the Class open to a significant risk of a smaller recovery than their expert currently estimates, or none at all. *Id*.; *see Mikhlin v. Oasmia Pharm. AB.*, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021), final approval granted at 19-cv-04349-NGG-RER, ECF 46 ("Both parties would present expert testimony on the issue of damages, which makes it 'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[D]amages calculations in securities class actions often descend into a battle of experts."); *Telik*, 576 F. Supp. 2d at 579-80 ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found.").

These major risks to proving liability and damages weigh heavily in favor of final approval.

*2) The Added Costs and Delay of Recovery in Continued Litigation*

If not for this Settlement, the Litigation would still be hotly contested, and its complexity, cost, and duration would be high. *See Advanced Battery*, 298 F.R.D. at 175 ("[T]he complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement,"); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Continuing to litigate would see the parties completing motion to dismiss, conducting fact and expert discovery, briefing class certification, summary judgment, and motions *in limine*, and preparing for a multi-week trial. Any appeal or post-trial motion would add months, if not years, to this nearly four-year-old Litigation. A prolonged period of pretrial proceedings and a lengthy and uncertain trial and appeals process would inject more risk to achieving a favorable recovery, running counter to the interests of the Class compared to the immediate benefits of the Settlement. Rule (e)(2)(C)(i) and the first, fourth, and fifth *Grinnell* factors thus all support final approval.

d.    The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Plaintiff and Lead Counsel have taken appropriate steps to ensure that Class Members are notified about the Settlement. A total of 36,290 Summary Notices were emailed or mailed, and it was published in *Investor's Business Daily* and transmitted over *PR Newswire*. Cody Decl., ¶¶9-10. Additionally, a settlement-specific website was created where key Settlement documents were posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, ¶11. The claims process proposed here is similar to that used

11

in other securities class action settlements, providing for straightforward cash payments based on the trading information provided. *Id.*; *see also Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) ("This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective."). This claims process will "'deter or defeat unjustified claims' without imposing an undue demand on class members." *Mikhlin*, 2021 WL 1259559 at *6. This factor thus supports final approval.

e.   The Requested Attorneys' Fees Are Reasonable

Consistent with the Notice, and as discussed further below, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Amount and expenses of $38,927.19, plus interest on both amounts. Lead Counsel's fee request is reasonable given its substantial efforts, its excellent result, the contingent nature of its representation, the fee awards in similar securities class actions in this District, and the significant risks of the Litigation. Moreover, since this is not a "claims made" settlement, the entire Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible, so there is no risk that they will not be paid, but counsel will.[2]

f.   The Only Agreement Between the Parties Is the Stipulation

Beyond the Stipulation (ECF 147-1), which is standard in securities fraud class actions, the parties have no other agreements that must be disclosed under Rule 23(e)(2)(C)(iv).

g.   The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires the Court to examine whether a settlement treats all class members equitably. The Settlement is designed to do just that. The Plan of Allocation situates and treats all Class Members equitably relative to each other, based on the timing of their Sequential buys, acquisitions, and sales, by providing that each Authorized Claimant, including Plaintiff, shall

---

[2] The Stipulation provides that attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an order awarding such fees and expenses. *See Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) (approving a similar provision as it "does not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses.

————————

Based on the foregoing, Plaintiff and Lead Counsel respectfully submit that each Rule 23(e)(2) factor supports granting final approval of the Settlement.

### 2.    The Settlement Satisfies the Remaining *Grinnell* Factors

#### a.    The Lack of Objections to Date Supports Final Approval

The reaction of the Class to the Settlement is "perhaps 'the most significant'" indicator of its adequacy. *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007). "A favorable reception by the class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval." *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010). That no Class Member has objected to the Settlement or sought exclusion from the Class, *see* Cody Decl., ¶¶15-16, strongly supports final approval.

#### b.    Plaintiff Had Sufficient Information to Resolve the Case

To obtain final approval, the parties must have been able to "'intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). "To satisfy this factor," however, "formal or extensive discovery" is not required. *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014). Here, Plaintiff had more than enough information to make an informed decision. As discussed above, §IV.B.1.a, when the Settlement was reached, Lead Counsel had conducted an extensive investigation, filed a detailed Complaint, opposed five motions to dismiss, consulted with an accounting and auditing expert and a market efficiency, causation and damages expert, and prepared a mediation statement and demonstratives. Ngo Decl., ¶¶3, 55. Plaintiff thus knew that the SEC had recovered nothing from Sequential, $20,000 from Klein, and as part of a global settlement with Sequential and a client unrelated to

13

this case, $1.9 million from CohnReznick. *Id.*, ¶¶15, 33. Mr. Meyer also provided a candid, meaningful, and unbiased assessment of the strengths and weaknesses of Plaintiff's claims and the Individual Defendants' defenses during the mediation. *Id.*, ¶¶22-23. Plaintiff and Lead Counsel thus had "sufficient information to make an intelligent appraisal of the value of the case by assessing the strengths and weaknesses of the claims." *Christine Asia*, 2019 WL 5257534, at *11.

c.   <u>Maintaining All Misstatements and Corrective Disclosures, the Class Period, and Class Action Status Through Trial Presents Substantial Risk</u>

While Plaintiff believes it would have prevailed against Defendants' motions to dismiss, this Court could have fully or partially adjudicated the issues raised against Plaintiff and the Class. If any alleged misstatements or corrective disclosures were not upheld, the estimated recoverable damages would have decreased dramatically. Ngo Decl., ¶¶7, 35. Even if the Action survived the pleading stage unscathed, Plaintiff would have had to conduct discovery against a bankrupt company – an expensive and risky endeavor. *Id.*, ¶¶7, 36. And any shortage of evidence increased the risk of losing at summary judgment or trial. *Id.*, ¶¶7, 38; *see also Facebook*, 343 F. Supp. 3d at 412 ("The inherent risks to establishing liability support [final] approval," which "included an unfavorable decision on summary judgment, an unfavorable outcome at trial, and lengthy appeals even if Plaintiffs prevailed. Such risks could limit recovery or eliminate it altogether.")

Further, Plaintiff believes it would have been able to garner enough evidence to certify the Class, but Defendants would have vigorously fought it. Even if they lost, they may have filed a Rule 23(f) petition or later moved to decertify the Class or shorten the Class Period – adding risk to a favorable outcome. *See Christine Asia*, 2019 WL 5257534, at *13 (that "a class certification order may be altered or amended any time before a decision on the merits" weighed in favor of final approval); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time). "The risk of maintaining class status throughout trial . . . weighs in favor of final approval." *McMahon v. Olivier Cheng Catering & Events, LLC,* 2010 WL 2399328, *5 (S.D.N.Y. Mar. 3, 2010).

14

### d.    Defendants' Ability to Withstand a Greater Judgment

A "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014) (courts "generally do not find the ability of a defendant to withstand a greater judgment to [impede] settlement when the other factors favor" it), *aff'd sub nom.*, 607 F. App'x 73 (2d Cir. 2015). A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Even if Defendants could satisfy – and Plaintiff could enforce – a larger judgment, all other factors support final approval.

### e.    The Settlement Amount Is More Than Reasonable

The last two *Grinnell* factors are also satisfied here. The settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Accordingly, the settlement amount need only fall within a "range of reasonableness" which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The $9.75 million Settlement here is an excellent result for the Class. As explained in the Preliminary Approval Brief (at 10), Plaintiff estimates recoverable damages of $28.1 million, and thus, the Settlement represents a 34.7% recovery – or more if Defendants' arguments had been accepted. This percentage far exceeds the median 1.8% recovered in securities class actions settled in 2023. Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review*, at 26, Fig. 22 (NERA Jan. 24, 2024) (attached as Ex. A hereto). And the recovery exceeds what the SEC recovered against Sequential and CohnReznick. Ngo Decl., ¶33.

15

Offering this relief to the Class now, particularly given the unique legal and factual issues that must be overcome, undoubtedly favors the Class. *See AOL*, 2006 WL 903236 at *13 ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

## V.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approving a plan of allocation is the same as for a settlement: "'it must be fair and adequate.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "'When formulated by competent and experienced class counsel,'" a plan of allocation "'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180. Here, the Plan was prepared with Plaintiff's damages expert's help and applies the same methodology as its damages estimate, *i.e.*, calculating the amount of artificial inflation in Sequential's stock price due to the alleged misstatements during the Class Period. It fairly apportions the Net Settlement Fund among Authorized Claimants based on, and is consistent with, the claims. *See* Ngo Decl., ¶¶9, 46, 48.

The Net Settlement Fund will be distributed to Authorized Claimants, *i.e.*, Class Members who submit timely and valid Proofs of Claim which are approved for payment from the Net Settlement Fund. The Plan treats all Class Members, including Plaintiff, similarly: everyone who does not request exclusion and submits a timely and valid claim will receive a *pro rata* share of the Net Settlement Fund in the proportion their claim bears to the total of Authorized Claimants' claims (if payment is $10.00 or more, as is customary). The Plan is therefore fair and reasonable and further supported by the lack of objections to date. *See Veeco*, 2007 WL 4115809, at *7.

## VI.    NOTICE TO THE CLASS SATISFIES RULE 23 AND DUE PROCESS

At preliminary approval, Plaintiff established that the Notice comports with Rule 23 and settled law. Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and in a "reasonable manner." Fed. R. Civ. P. 23(c)(2)(B), (e)(1)(B). "Notice need not be perfect" or

16

received by all, but it must be reasonable under the circumstances. *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members." *Id*.

The Notice and means used to disseminate it to potential Class Members readily satisfy these standards. The Notice apprises Class Members of the following information to help them decide whether to participate in the Settlement: (1) the Litigation and the Class's claims; (2) the Settlement terms; (3) the proposed Plan of Allocation; (4) the right to, and procedure for, seeking exclusion from the Class or objecting to the Settlement, Plan of Allocation, or requested awards; (5) the scope of the release and binding effect of a judgment; (6) Lead Counsel's application for an award of attorneys' fees and expenses and Plaintiff's requested award; and (7) the date, time, and place of the Settlement Hearing. *See* Cody Decl., Ex. A. The Notice also directs Class Members to the Claims Administrator, Lead Counsel, and the Settlement website for further information, and contains the information required by the PSLRA (*see* 15 U.S.C. §78u-4(a)(7)).

In accordance with the Preliminary Approval Order, Angeion Group ("Angeion"), as the Claims Administrator, commenced mailing the Notice by first-class mail to potential Class Members, brokers, and nominees on December 11, 2024, published it in *Investor's Business Daily* on December 16, 2024, and transmitted it over *PR Newswire* on December 18, 2024. Cody Decl., ¶¶5-9. In addition, Angeion posted the Notice and other Settlement-related materials, including the Stipulation, on the Settlement website, which allows for the electronic submission of claims. *Id*., ¶10. These methods of notice are common and appropriate in securities class actions. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *16 (approving similar means of disseminating notice).

## VII.    REASONABLE ATTORNEYS' FEES SHOULD BE AWARDED

### A.    <u>Attorneys' Fees and Expenses Should Be Awarded from the Common Fund</u>

The Supreme Court has long recognized that "a lawyer who recovers a common fund for

the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Such awards are important and serve a salutary purpose because they "encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons" and "discourage future alleged misconduct of a similar nature." *Aeropostale*, 2014 WL 1883494, at \*10-11.

**B.        The Court Should Award a Reasonable Percentage of the Common Fund**

The Supreme Court has further indicated that attorneys' fees in common-fund cases should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[A] reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit has approved the percentage method, recognizing that the lodestar method, while acceptable, "proved vexing" and led to "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-50. In fact, the Second Circuit has acknowledged the "trend in this Circuit . . . toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *accord Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at \*11 (S.D.N.Y. Nov. 30, 2021); *Aeropostale*, 2014 WL 1883494, at \*11.

All Courts of Appeal to consider the issue have approved the use of the percentage method.[3] The PSLRA likewise supports its use. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered). Indeed, several courts have concluded that Congress, in using this language in the statute, expressed a preference for the percentage method in securities class actions. *See, e.g.*, *Telik*, 576 F. Supp. 2d at 586; *WorldCom*, 388 F. Supp. 2d at 355.

---

[3] *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305-07 (1st Cir. 1995); *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir. 1994); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (requiring use of the percentage method in common fund cases); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993) (same).

C.    **The Requested Fee Is Reasonable Under the Percentage-of-the-Fund Method**

An appropriate court-awarded fee is intended to approximate what counsel would receive if bargaining for its services in the marketplace. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285-86 (1989). If this were not a class action, the customary fee arrangement would be contingent and in the range of one-third of the recovery. *See Blum*, 465 U.S. at 904, n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

The requested 25% fee is below that customary one-third and below what other courts in this Circuit have awarded in comparable securities cases. *See*, *e.g.*, Order Awarding Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to U.S.C. §77z-1(a)(4), ECF 82 at 1, ¶4, *Erlandson v. Triterras, Inc., et al.*, 2021 WL 4737633 (S.D.N.Y. Sept. 8, 2022) (awarding one-third of $9 million) (attached as Ex. B hereto); Order Awarding Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to U.S.C. §77z-1(a)(4), ECF 130 at 1, ¶4, *Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) (awarding one-third of $7.5 million) (attached as Ex. C hereto); *Lea*, 2021 WL 5578665, at *11 (same); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *16 (E.D.N.Y. Jan. 21, 2022) (one-third of $9M "constitutes a proportion routinely approved as reasonable"); *In re Northern Dynasty Minerals Ltd. Sec. Litig.*, 2024 WL 308242, at *16 (E.D.N.Y. Jan. 26, 2024) (awarding one-third of $6.375 million).

D.    **Considering the Relevant Factors Confirm the Requested Fee Is Reasonable**

When considering whether a request for attorneys' fees in a common-fund or lodestar case is reasonable, courts in the Second Circuit look at: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. These factors all support the fee requested here.

1.  **The Time and Labor Expended by Counsel**

19

Lead Counsel has expended substantial time and effort litigating the Action on behalf of the Class for over three years without receiving any compensation. That work included (i) analyzing over four years of Sequential SEC filings, conference call transcripts, analyst reports, and other materials; (ii) condensing that information to draft the Complaint; (iii) thoroughly researching and analyzing the applicable law to oppose five motions to dismiss; (iv) consulting with accounting, auditing, loss causation, and damages experts; (v) preparing a mediation statement and demonstratives; (vi) answering questions from the mediator in preparation for and during the mediation with the Individual Defendants; and (vii) preparing for and participating in lengthy settlement discussions with the Auditor Defendants. *See* Ngo Decl., ¶55. In addition, Lead Counsel will be assisting Class Members with claims, responding to their inquiries, and monitoring the Claims Administrator and claims process. *See Aponte v. Comprehensive Health Mgmt.*, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013). Its substantial work in securing the Settlement, coupled with its ongoing commitment, supports the reasonableness of the requested fee.

### 2. The Magnitude and Complexity of the Litigation

Securities actions are "'notably difficult and notoriously uncertain.'" *Flag*, 2010 WL 4537550, at *27 (quoting *Sumitomo*, 189 F.R.D. at 281). This Litigation was no exception. It raised complex legal issues under §§10(b) and 20(a), and unique procedural and factual issues due to the Company's bankruptcy and the alleged accounting fraud – magnifying the difficulty of proof. The complex challenges Plaintiff faced at motion to dismiss on materiality, falsity, scienter, and loss causation undoubtedly would arise in later stages. The magnitude (damages of over $28 million) and complexity of this Litigation support the fairness and reasonableness of the requested fee.

### 3. The Risks in the Litigation Undertaken on a Contingent Fee Basis

The risk undertaken in an action is often considered the most important *Goldberger* factor. *See, e.g., Lea*, 2021 WL5578665 at *12; *Telik*, 576 F. Supp. 2d at 592. In a case undertaken on a

20

contingent fee basis, the risk of nonpayment is a key factor in determining a proper fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Grinnell*, 495 F.2d at 470. When considering the reasonableness of fees in a contingency action, the Court should consider the litigation risks at the time the case was undertaken. *See Goldberger*, 209 F.3d at 54-55; *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) ("[T]he risk of the litigation" is "one of the most important factors . . . [p]articularly when lawyers undertake a case on a contingency fee basis, and thus assume a great deal of risk, the Second Circuit has held that it is appropriate to award fees that exceed the lodestar amount").

Unlike counsel for Defendants, who are paid their hourly rate and expenses on a regular basis, Lead Counsel undertook this case on a contingent basis, knowing it could last for years and require substantial attorney time and significant expenses with no guarantee of recovery. Ngo Decl., ¶¶58-60. Although the case reached a successful conclusion, this was far from guaranteed at the outset. This Litigation was a particularly challenging and risky proposition given the Company's bankruptcy and Defendants' legal arguments. As discussed above, §VII.D.3, securities actions are "notoriously uncertain" and this was particularly true here, as there was no guarantee Lead Counsel would obtain the facts needed to prove every §10(b) element at trial.

"There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *Veeco*, 2007 WL 4115808, at *6. Securities cases have been dismissed on the pleadings and at summary judgment, lost at trial, and even reversed after plaintiffs prevailed at trial, as the law is complex and continually evolving. *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556, at *1 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (claims based on purchases on foreign exchanges eliminated by

21

the Supreme Court's "new 'transactional' rule").[4] Quite simply, "Defendants prevail outright in many securities suits." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

Lead Counsel's assumption of a contingency-fee risk strongly supports the reasonableness of its requested fee. *See Flag*, 2010 WL 4537550, at *27 ("[T]he risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("Counsel should be rewarded for having borne and successfully overcome that [significant] risk [of non-payment].").

### 4.    The High Quality of Representation and Public Policy

Lead Counsel litigated this case efficiently and diligently, from its robust investigation of the facts for the Complaint to its fulsome analysis of the law in settlement negotiations, to obtain an exceptional result for the Class. Indeed, the quality of legal representation is best evidenced by the result achieved. The Settlement represents a recovery that is multiples above the median 1.8% recovery in securities class actions settled in 2023 (NERA Study, Fig. 22), and far above what the SEC recovered from Sequential and CohnReznick. Lead Counsel demonstrated a great deal of effectiveness to achieve a settlement at this level, at this juncture, in this case.

The result is even more impressive given the quality of defense counsel. *See Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). Defense counsel here included prominent international law firms with extensive securities litigation experience. They did not, and would not, settle the Action without serious and thorough deliberation.

Public policy also favors rewarding firms for successfully litigating securities actions. *See Woburn*, 2017 WL 3579892 at *7 (Fee award "appropriate, and not excessive, to encourage future

---

[4] "Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following partial plaintiffs' jury verdict); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81M jury verdict).

securities class actions"); *Flag*, 2010 WL 4537550, at *29 (to carry out the "important public policy" of enforcing the PSLRA, "courts should award fees which will adequately compensate Lead Counsel for . . . their efforts, taking into account the[ir] enormous risks").

### 5.   Plaintiff Approved the Requested Fee, As Did the Rest of the Class

Plaintiff was actively involved in prosecuting and resolving this Litigation and approved the requested fee and expense awards, which it understands is contingent on this Court's approval. *See* CJD Decl., ¶8.. In additional, other Class Members have indicated their approval as no one has objected to that, or any other, aspect of the Settlement – despite the Notice advising Class Members that counsel would ask the Court for an award of attorneys' fees of up to 25% of the Settlement Amount. These factors thus further support the reasonableness of the fee request.

### 6.   A Lodestar Cross-check Confirms the Requested Fee's Reasonableness

To ensure the reasonableness of a fee award under the percentage method, the Second Circuit permits a "cross-check" against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. In cases like this, fees representing multiples of lodestar are regularly awarded to reflect, among other things, the contingency-fee risk and attorneys' skill. *See, e.g.*, *Flag*, 2010 WL 4537550, at *26 ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'"); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where ... counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Accordingly, in complex contingent litigation in this Circuit, lodestar multipliers of 2 to 5 are commonly awarded. *See Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("2.42 [wa]s well within the range of lodestar multipliers approved by courts in the Second Circuit"); *In re Prothena Corp. PLC Sec. Litig.*, 2019 WL 6528672, at *1-2

(S.D.N.Y. Dec. 4, 2019) (30% awarded, 2.67 multiplier); *Reynolds v. Repsol YPF, S.A.*, 2008 WL 11383317, at *2 (S.D.N.Y. May 7, 2008) (25% awarded, 2.37 multiplier); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (30% awarded, 2.99 multiplier "f[ell] well within the parameters set in this district and elsewhere"); *Northern Dynasty*, 2024 WL 308242, at *16 (33 1/3% awarded, 3.5 multiplier); *Wal-Mart*, 396 F.3d at 123 (upholding 3.5 multiplier).

If the Court decides to consider it here, a lodestar cross-check supports the requested fee. After devoting 1,948.7 hours of attorney and staff time to prosecuting this Action for the past over three years, Lead Counsel recovered 34.7% of reasonably recoverable class-wide damages. Its lodestar – derived by multiplying each person's hours by their current hourly rates – is $1,449,416.50. *See* Declaration of Ivy T. Ngo Filed on Behalf of Freedman Normand Friedland LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. A.[5] The requested fee of 25% of the Settlement Amount represents a multiplier of 1.68, which is fully within the range of approved lodestars.

## VIII.  COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY

Lead Counsel also requests a $38,927.19 expense award, plus interest at the same rate earned by the Settlement Fund. Knowing that recovering expenses was not guaranteed, it minimized expenses where possible, while still vigorously litigating the Action. Ngo Decl., ¶12. It carefully detailed its expenses, which it may properly recover. FNF Decl.; *see, e.g.*, *In re China Sunenergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (awarding "reasonable out-of-pocket expenses incurred and customarily charged to their clients [that] were 'incidental and necessary to the representation'"); *Flag*, 2010 WL 4537550, at *30 ("[C]ounsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

---

[5] The Supreme Court and courts in this Circuit have long approved calculating counsel's lodestar using current hourly rates to account for its delayed compensation inherent in class actions, inflationary losses, and loss of access to legal and monetary capital that could have been deployed elsewhere. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; *Jenkins*, 491 U.S. at 284.

These expenses are routine and typical expenditures in securities cases (such as expert and mediation fees and travel), were necessarily incurred, and are of the type customarily charged to clients billed hourly. Further, Plaintiff approved these expenses (*see* CJD Decl., ¶8), and no Class Member has objected to them. Every expense is thus reasonable and should be approved.

## IX.    PLAINTIFF SHOULD RECEIVE A REASONABLE AWARD

Plaintiff seeks a $3,000 service award for its efforts in representing the Class. The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). This type of award "'provide[s] an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.'" *Signet*, 2020 WL 4196468, at *22. Courts have awarded more in similar securities cases. *See Erlandson*, ECF 82 at 3 (awarding each plaintiff $10,000); *Lea*, 2021 WL 5578665, at *13 (awarding each plaintiff $7,500); *Northern Dynasty*, 2024 WL 308242, at *20 (awarding $20,000 to lead, $5,000 to named, plaintiff).

As its declaration shows, Plaintiff dedicated significant time and attention to this Litigation by interfacing with counsel, monitoring developments, reviewing documents before and after filing, supervising the mediation process and negotiations, and otherwise assisting counsel. *See* CJD Decl., ¶¶3-6. In short, without Plaintiff's involvement and contribution, the Class would have no recovery. The requested service award would support the sound policy of incentivizing investors to assist in meritorious securities class actions. Class Members received notice of this request, and no objection has been received. The modest service award requested is proper here.

## X.    CONCLUSION

Plaintiff respectfully requests, for the foregoing reasons, that the Court certify the Class and approve (1) the Settlement and Plan of Allocation; (2) an award of 25% of the Settlement in fees and $38,927.19 in expenses to Lead Counsel; and (3) a $3,000 service award to Plaintiff.

Dated: January 21, 2025        Respectfully,

/s/ *Ivy T. Ngo*
Ivy T. Ngo (*pro hac vice*)
Devin (Velvel) Freedman
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
ingo@fnf.law
vel@fnf.law
Tel.: 786.924.2900
Fax: 646.392.8842

26

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2025, a true and correct copy of the foregoing was filed electronically using the Court's electronic filing system and notice of this filing will be sent to all registered parties.

/s/ *Ivy T. Ngo*

Ivy T. Ngo, Esq.

27