# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER D'ARCY, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>   v.<br><br>YEHUDA SHMIDMAN, KAREN MURRAY, GARY KLEIN, ANDREW COOPER, CHAD WAGENHEIM, PETER LOPS, DAVID CONN, DANIEL HANBRIDGE, LORRAINE DISANTO, WILLIAM SWEEDLER, AARON HOLLANDER, AL GOSSETT, STEWART LEONARD, JR., COHNREZNICK LLP, STEPHEN WYSS, STEPHEN JACKSON, and ROBERT HILBERT,<br><br>      Defendants. | Case No.: 1:21-cv-07296<br><br>CLASS ACTION<br><br>Honorable J. Paul Oetken<br><br>**DECLARATION OF IVY T. NGO IN SUPPORT OF PLAINTIFF'S MOTION FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) APPROVAL OF PLAN OF ALLOCATION, AND (3) LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)** |

I, Ivy T. Ngo, an attorney for Lead Plaintiff, declares as follows:

1.      I am a member in good standing of the bars of California, Colorado, and the District of Columbia and counsel in the firm of Freedman Normand Friedland LLP, counsel for Court-appointed CJD Finance Company, LLC ("Lead Plaintiff" or "CJD") and lead counsel for the proposed class in the above-captioned action (the "Litigation" or "Action"). I have personal knowledge of the majority of the matters set forth herein based on my active participation and supervision of all material aspects of the Litigation. As to the remaining matters, I have reviewed our litigation files and consulted with other attorneys and support staff who worked on this case. If called upon, I could and would testify completely to the matters set forth herein.

2.      I submit this declaration in support of Plaintiff's Motion for (1) Final Approval of Class Action Settlement, (2) Approval of Plan of Allocation, and (3) Lead Counsel's Application for an Award of Attorneys' Fees and Expenses and Award to Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4)[1].

## I.    PRELIMINARY STATEMENT

3.      The $9.75 million proposed Settlement is the culmination of several years of hard-fought litigation. As detailed below, Plaintiff, through Lead Counsel, zealously prosecuted its claims throughout this Action through investigating and filing a detailed amended complaint, opposing five motions to dismiss, consulting with accounting and damages consultants, and steadfastly advocating for the Class when negotiating settlements with the Individual Defendants and the Auditor Defendants after the Company itself filed bankruptcy. The Settlement represents approximately 34.7% of the estimated recoverable damages, under a single-trader model, for the

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated October 30, 2024 (the "Stipulation") (ECF 147-1) "¶" citations are to the Complaint (ECF 44).

three corrective disclosures alleged in the Complaint, as calculated by Plaintiff's consultant, and is an excellent result for the Class.

4.    As further detailed herein, the Court may have dismissed parts of or the entire action before even getting to class certification, summary judgment, and then a jury trial – with each stage presenting substantial risks. In agreeing to settle the Action now, Plaintiff and Lead Counsel carefully considered the strengths of the case, as well as the substantial risks they faced by continuing the Litigation. In opting to settle, Plaintiff and Lead Counsel determined that settlement on the terms obtained was in the Class's best interest. Plaintiff's representative – who supervised Lead Counsel and remained well informed during the Litigation – ultimately approved the Settlement. *See* Declaration of Lead Plaintiff CJD Property Finance Company, LLC in Support of Application for Award of Attorneys' Fees and Expenses ("CJD Decl."), submitted herewith.

5.    The substantial investigation, motion practice, in-person mediation, and settlement negotiations as outlined herein meaningfully informed Lead Counsel of the case's strengths and weaknesses. Lead Counsel consistently considered this information in determining the best course of action for the Class. And while Plaintiff is confident that proceeding through fact and expert discovery could unveil further evidence in support of its claims, Plaintiff understands the substantial risk and delays inherent in proceeding with the rest of motion to dismiss, discovery, class certification, summary judgment, trial, and any possible appeals.

6.    Plaintiff alleges that in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, Defendants made false and misleading statements and omitted material facts in filings with the U.S. Securities and Exchange Commission ("SEC") and in earnings calls and other public statements to investors and the media. Specifically, Plaintiff claims that the Individual Defendants made materially false and

misleading statements about Sequential's business, financial well-being, goodwill, and the SEC investigation during the Class Period. Plaintiff further claims that the Auditor Defendants failed to comply with auditing standards by issuing clean audit reports that they knew or should have known contained false or misleading statements. As a result of Defendants' conduct, the Complaint alleged that the price of Sequential securities was artificially inflated and declined when the truth was slowly revealed. Defendants, on the other hand, argued that the alleged false statements were true when made and they had no duty to disclose the goodwill impairment or the SEC investigation earlier than they did because the goodwill was not impaired until the impairment was disclosed, the investigation and subsequent lawsuit were not material, and at the time of the investigation, litigation was not substantially certain to occur. Among other arguments, Defendants also argued that Plaintiff will be unable to prove scienter, because at the time the alleged false or misleading statements were made, they had no motive to defraud investors. *See, e.g.*, ECF 105, 109, 111, 115, 119. There is no doubt that Defendants would have continued to vigorously pursue these defenses throughout the Litigation and at trial.

7.     Accordingly, the proposed Settlement avoids the substantial additional costs and risks of further litigating liability and damages if this case were to continue. Indeed, Plaintiff faced substantial risk that the case would be fully or partially adjudicated against it following the five motions to dismiss from Defendants. And, in addition to the standard complexities and uncertainties inherent in securities litigation, Plaintiff also faced the additional hurdle posed by Sequential having filed bankruptcy and thus relevant Company witnesses no longer being under the control of the Company. This meant that Plaintiff and the Class faced the costly and lengthy endeavor of pursuing third-party discovery of all former employees with potentially relevant information outside the Defendants. For all its efforts, there could be no guarantee that Plaintiff

would be able to obtain the evidence necessary to prove its claims. Given the significant risks in continuing to litigate this Action, Plaintiff and Lead Counsel concluded that the $9,750,000 cash Settlement is in the best interest of the Class.

8.      As detailed herein, the Settlement – in both amount and terms – is the product of a comprehensive investigation, detailed analyses, and extensive arm's-length negotiations by experienced counsel directly involved in and deeply familiar with the Action. The negotiations with the Individual Defendants were facilitated by a highly experienced and respected mediator, Robert A. Meyer, Esq. of JAMS, who ultimately recommended a $6,250,000 resolution to the Action, which the parties accepted. And the lengthy negotiations with the Auditor Defendants were conducted by experienced counsel who staunchly advocated for their clients. Lead Counsel, working closely with Plaintiff, negotiated both the Settlements with a thorough understanding of the strengths and weaknesses of the claims asserted against all Defendants. The Settlement has Plaintiff's full support. *See* CJD Decl.

9.      Plaintiff also seeks approval of the proposed Plan of Allocation, which Lead Counsel submits is fair and reasonable. Lead Counsel drafted the Plan of Allocation with the assistance of Lead Plaintiff's damages consultant. As further described below and in the Notice, the Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on such information as when the person purchased and sold shares of Sequential stock on the open market. Each Authorized Claimant, including Plaintiff, will receive a pro rata distribution pursuant to the Plan of Allocation, and Plaintiff will be subject to the same formula for distribution of the Net Settlement Fund. Importantly, the Plan of Allocation does not treat Plaintiff or any other Class Member preferentially.

10.      Lead Counsel prosecuted the Litigation on a wholly contingent basis, advancing

and incurring substantial litigation expenses and charges over the years. Lead Counsel shouldered substantial risk in doing so, and, to this date, has not received any compensation for its efforts. Accordingly, in consideration of its significant efforts on behalf of the Class, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Amount, plus its litigation expenses of $38,927.19, with interest thereon earned at the same rate as the Settlement Fund. The fee request is made pursuant to an agreement with Plaintiff and has Plaintiff's full support.

11.    The requested fee is within the range of fees awarded in similar Private Securities Litigation Reform Act of 1995 ("PSLRA") securities class action settlements and is fully justified in light of the substantial benefits conferred on the Class, the significant risks overcome in achieving the Settlement, the quality of representation, and the nature and extent of the legal services Lead Counsel performed in this complex litigation. To date, no Class Members have objected, which suggests Class wide approval of both the Settlement and the requested fees. Lead Counsel submits that the fee application is fair to the Class under all applicable standards and warrants the Court's approval.

12.    Lead Counsel also seeks payment in the amount of $38,927.19, plus interest, for expenses and charges reasonably and necessarily committed to the prosecution of the Litigation over the last three years. These expenses include, for example: (a) fees of Plaintiff's accounting, auditing, market efficiency, loss causation, and damages consultants; (b) online factual and legal research; (c) administrative expenses; (d) filing fees; and (e) mediation expenses.

13.    The following summarizes the principal events during the Litigation and the legal services Lead Counsel provided to Plaintiff and the Class.

## II.  THE NATURE AND HISTORY OF THE LITIGATION

### A.  Plaintiff CJD Finance Company, LLC Moves for and Is Appointed Lead Plaintiff

14.    On March 16, 2021, Peter D'Arcy filed a class action complaint in the United States District Court for the Central District of California, bringing claims under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 against Sequential, Shmidman, Murray, Klein, and Cooper. ECF 37. On March 17, 2021, that action was assigned to the Honorable District Judge John F. Walter. On May 17, 2021, CJD and a group comprised of James Conlon and Glenn Daniel Payne both moved to be appointed Lead Plaintiff. On June 11, 2021, Judge Walter granted CJD's motion and approved its selection of Freedman Normand Friedland LLP (f/k/a Roche Freedman LLP) as Lead Counsel for the class in the Action. *Id*.

15.    The parties stipulated to transfer the action to the United States District Court for the Southern District of New York, where the action filed by the SEC was pending ("SEC Action"). After the stipulation was granted, this Court received the action on August 31, 2021. That same day, Sequential filed for Chapter 11 bankruptcy relief. On February 22, 2022, the Bankruptcy Court confirmed the First Amended Joint Plan of Liquidation, which enjoined the continuation of this action against Sequential. *Id*. Accordingly, Plaintiff moved to voluntarily dismiss Sequential on September 20, 2022, which was granted on September 26, 2022. *Id*. Meanwhile, in the SEC Action, this Court upheld the complaint filed by the SEC and denied Sequential's motion to dismiss on September 30, 2021. The SEC subsequently charged and settled against Klein, CohnReznick, Wyss, Jackson, and Hilbert on June 8, 2022

**B.  Plaintiff Vigorously Pursues Its Claims at the Pleading Stage**

16.    Before and after being appointed in this Action, Lead Counsel conducted an extensive investigation of the alleged securities law violations at issue, analyzing over four years of Sequential's public filings with the SEC, media reports, analyst reports, and trading data. Prior to filing the Complaint, Lead Counsel also performed legal research to evaluate exactly which

theories of liability Plaintiff could allege and how to allege them. In addition, Lead Counsel consulted with an accounting consultant to determine what accounting and auditing standards applied, and whether Defendants complied with them. Following that investigation, on November 14, 2022, Plaintiff filed a consolidated amended complaint (the "Complaint"). ECF 44.

17.    The Complaint asserts claims against the Individual Defendants under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5, against CohnReznick under §10(b) and Rule 10b-5, and against Wyss, Jackson, and Hilbert under §20(a) on behalf of all persons who purchased or otherwise acquired Sequential securities during the period November 9, 2016 and December 11, 2020, inclusive, and who were damaged thereby. ¶¶1, 342-75. Specifically, the Complaint alleged that during the Class Period, the Individual Defendants made materially false and misleading statements and omissions concerning the value of Sequential's goodwill and the basis for the multiple changes to its methodology for assessing goodwill, the existence and materiality of the SEC investigation into the Company, and the adequacy of its disclosure controls and procedures and internal controls over financial reporting. ¶¶134-224. The Complaint also alleged that the Auditor Defendants helped the Individual Defendants document Sequential's audit files and signed off on its SEC filings to support delaying the write-off for a year, the SEC investigation disclosure for six months, and the SEC Complaint for eight months. ¶¶254-301.

18.    The Complaint further alleged that Class members suffered enormous losses as the truth about Sequential emerged through a series of disclosures that wiped out millions of dollars in shareholder value. ¶¶327. The disclosures about the goodwill write-off (February 28, 2018), the SEC investigation (March 31, 2020), and the SEC Complaint (December 11, 2020) caused Sequential's stock price to fall $12.00 per share (13%), $5.20 per share (48%), and $2.03 per share (11%), respectively. ¶¶7-14, 319-26.

19.    On March 23, 2023, Defendants filed five separate motions to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and the PSLRA. ECF 104-20. Defendants argued, among other things, that Plaintiff failed to plead: (i) falsity with particularity; (ii) materiality; (iii) a strong inference of scienter; (iv) scheme liability; and (v) control person liability. Defendants further argued that alleged misstatements made before November 14, 2017 are barred by the statute of repose, and those after February 28, 2020 are barred by the statute of limitations. In accordance with the PSLRA, discovery in the Action was stayed until the Court ruled on Defendants' motions to dismiss. Lead Plaintiff filed an omnibus opposition to Defendants' five motions to dismiss on May 25, 2023 (ECF 128), and the Auditor Defendants replied on August 7, 2023 (ECF 135).

## III.    THE SETTLEMENT

### A.  Reaching the Settlement

20.    The Settlement is a product of intense and hard-fought negotiations.

21.    The Settlement with the Individual Defendants was conducted at arm's length between experienced counsel and supervised by Robert A. Meyer, Esq. of JAMS, who has extensive experience in mediating securities class actions.

22.    Prior to the mediation, Plaintiff and the Individual Defendants each submitted detailed opening mediation statements to Mr. Meyer explaining their positions on the Individual Defendants' allegedly false and misleading statements and omissions and issues concerning scienter, loss causation, damages, scheme liability, and statutes of limitations and repose. The parties exchanged those statements on October 3, 2023, and proceeded to engage in a full-day mediation session on October 10, 2023. The session ended with an agreement in principle to settle the Action and release all claims against the Individual Defendants in return for a $6,250,000.00

cash payment for the benefit of the Settlement Class, subject to the negotiation of a formal settlement agreement and approval by the Court.

23.    The Settlement with the Auditor Defendants likewise was conducted at arm's length between experienced counsel, both of whom have substantial experience in litigating and mediating securities class actions.

24.    Over the course of several months after the Auditor Defendants filed their reply in support of their motion to dismiss on August 7, 2023, counsel for the Auditor Defendants and Lead Plaintiff participated in numerous conversations discussing their respective positions on the Auditor Defendants' allegedly false and misleading statements and omissions and issues concerning scienter, loss causation, damages, scheme liability, and statutes of limitations and repose. As a result of multiple offers and counter-offers, the parties agreed to settle the Action for $3.5 million in March 2024, subject to the negotiation of a formal settlement agreement and approval by the Court.

### B.  The Settlement Is Preliminarily Approved and Notice Sent

25.    On October 30, 2024, Plaintiff filed a motion for preliminary approval of the Settlement. ECF 145. In that motion, Plaintiff requested that the Court approve the proposed forms of notice, which, among other things, described the terms of the Settlement, advised Class Members of their rights, and set forth the proposed Plan of Allocation, the maximum amount of attorneys' fees and the expenses that Lead Counsel would request, and the procedure for submitting Proofs of Claim. ECF 146-48.

26.    On November 8, 2024, the Court preliminarily approved the terms of the Settlement. The hearing before the Court to address final approval of the Settlement will take place telephonically on February 25, 2025, at 12:00 PM eastern time. ECF 150 ("Preliminary Approval

Order"). On December 4, 2024, the Court approved revisions to the notice process. ECF 152 ("Revised Preliminary Approval Order").

27.      The Preliminary Approval Order, among other things, appointed Angeion Group as the Claims Administrator. The Revised Preliminary Approval Order, among other things, directed Angeion to cause the mailing of the Notice Packet to all potential Class Members identifiable with reasonable effort within seven calendar days of December 4, 2024.

28.      In addition, the Preliminary Approval Order directed Lead Counsel to cause the Summary Notice to be and transmitted over a national newswire service, and the Revised Preliminary Approval Order directed Lead Counsel to cause the Summary Notice to be published once in the national edition of *Investor's Business Daily,* no later than seven calendar days after the Notice Date.

29.      As explained in the Declaration of Dawn M. Cody of Angeion Group, Regarding: (A) Notice Mailing; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections Received ("Cody Decl."), submitted herewith, 1,579 Summary Notices were mailed to potential Class Members, banks, brokers and nominees by December 11, 2024 (the "Notice Date"), and the Summary Notice was published in *Investor's Business Daily* on December 16, 2024, and transmitted over *PR Newswire* on December 18, 2024, in compliance with the provisions of the Preliminary Approval Order and Revised Preliminary Approval Order. Cody Decl., ¶¶5,10. As of January 20, 2025, a total of 36,290 Summary Notices were mailed or emailed to potential Settlement Class Members and Nominees. *Id.*, ¶9.

30.      To date, no objections to any aspect of the Settlement have been filed and no requests for exclusion have been received. *Id.*, ¶¶15-16.

**C.  Reasons for the Settlement**

31.    Plaintiff and Lead Counsel strongly endorse the Settlement. CJD is a sophisticated institutional investor and has actively overseen the prosecution of this Litigation since 2021. Lead Counsel, meanwhile, specializes in complex civil and class litigation and is highly experienced in securities litigation. *See* Exhibit C to the accompanying Declaration of Ivy T. Ngo Filed on Behalf of Freedman Normand Friedland LLP in Support of Application for Award of Attorneys' Fees and Expenses ("FNF Declaration"). Based on their experience and intimate knowledge of the strengths and weaknesses of the case, Lead Counsel and Plaintiff determined that the Settlement is in the best interest of the Class.

32.    An all-cash payment of $9,750,000 represents a significant recovery for the Class given the substantial risks involved in the Court upholding the sufficiency of all of Plaintiff's allegations, including all relevant false and misleading statements and all corrective disclosures. Indeed, the $9,750,000 Settlement represents approximately 34.7% of estimated recoverable damages. In contrast, the median ratio of settlement amount to investor losses for securities class action settlements in 2023 was 1.8%.

33.    This recovery is a particularly good result for the Class given the risks and challenges posed by continued litigation of the Action. While Plaintiff believes in the merits of its claims, there were numerous hurdles it would have had to clear in order to secure a recovery for the Class at trial, many of which would be costly and complex.

34.    For example, while Plaintiff believes that its Complaint meets all the applicable pleading requirements, the Court may have agreed with some or all of Defendants' motion to dismiss arguments. And if the Court allowed only some of Plaintiff's claims through to discovery, the estimated recoverable damages would materially decrease if any alleged misstatements or alleged corrective disclosures were no longer a part of the Litigation. Regardless of the Court's

decision on Defendants' motions to dismiss, the losing party likely would have appealed (a frequent occurrence in securities fraud litigation), causing months-long (if not years-long) delays.

35.    In addition, while Plaintiff is confident that fact discovery would have yielded evidence corroborating the Complaint's allegations, obtaining that discovery was going to be a costly and extremely hard-fought endeavor. Defendants, and perhaps the Court, likely would have taken a substantially over-narrow view of the information that could be discovered in this Action. Moreover, because Sequential has filed for bankruptcy, all relevant Company witnesses outside the Individual Defendants are not under their control. Accordingly, those witnesses most likely no longer have any Company documents and have little interest in spending any more time on this Action than necessary. Undoubtedly, there would have been discovery disputes which would have necessitated motions to compel. And even those third-party witnesses who would have been willing to cooperate likely would have a hard time remembering details about events that went back as far as 2016.

36.    Next, while Plaintiff believes that this Action meets all the requirements of Rule 23(a) and 23(b)(3) for class certification, there was no guarantee that the Court would certify the full Class. There is no doubt that Defendants would oppose class certification, and if the Court agreed with Defendants that Plaintiff had not met any element of Rule 23's requirements, the Action could not be sustained on a class-wide basis and members of the putative Class would need to commence individual actions (if timely) to pursue recovery. Most Class members likely would choose not to do so, given the difficulty and cost involved in litigating securities fraud actions individually. And if a Class was certified, Defendants likely would have appealed that decision, delaying the Action. Even if a Class was certified, the Court could still de-certify the Action, or particular claims, as a class action, before trial.

37.    Plaintiff and the Class would face further significant risk at summary judgment and trial. Throughout the Litigation, Defendants have vigorously contested liability, maintaining that all the allegedly false and misleading statements were true when made and that in any event, the alleged misstatements were not material and thus Defendants had no duty to disclose any of the alleged omissions. Defendants also hotly contested scienter, arguing that the varying goodwill conclusions between the Auditor Defendants and the Individual Defendants simply suggest a lack of consensus, rather than fraud, and that Plaintiff could not provide sufficient circumstantial evidence that, at the time the statements were made, Defendants made them with knowledge of or reckless disregard to the falsity of the statements. Instead, Defendants have argued, and would likely continue to argue, that each of the statements alleged reflects the Defendants' honest belief in the Company's then-current goodwill valuation and likelihood of an SEC action against them. Plaintiff disputes these arguments and believes that it could defeat them. However, Plaintiff recognizes that a jury could find such arguments reasonable, in which case, the Class would not be able to recover any losses.

38.    And, even if Plaintiff succeeded in proving falsity and scienter, there remained a risk related to loss causation and damages. In securities fraud actions like this one, loss causation and damages are typically hotly contested issues and the subject of conflicting – and often confusing – expert testimony. There was thus significant risk that a jury could be persuaded by Defendants' expert on loss causation or damages, and could find that there were no, or only minimal, damages to the Class when the three operative corrective disclosures removed the alleged inflation from Sequential's stock price rather than the $28 million in damages estimated by Plaintiff's consultant.

39.    Ultimately, although Plaintiff firmly believes that the documentary and testimonial

evidence it would offer at summary judgment and trial fully substantiates its claims, there is no way of predicting with certainty which testimony, inferences, or interpretations the Court or jury would accept.

40.    While Plaintiff remains confident in its ability to prove its claims and successfully counter all of Defendants' arguments, when weighed against the certain and substantial benefits of Settlement, the risks of having the Action dismissed or materially narrowed prior to trial, or losing at trial, indicate that the Settlement is in the best interests of the Class. There was certainly risk that Plaintiff would not prevail at any subsequent stage of the Litigation and the Class would recover nothing. Lead Counsel submits that these factors militate strongly in favor of the Settlement.

41.    In addition, the decision to settle at this time is supported by the anticipated duration and expense of additional litigation, which would include substantial resources that would be expended to proceed through trial, as well as a likely post-trial appellate process, all without any guarantee of a better resolution for the Class. These expenditures would result in a considerable expense to be borne by the Class out of any potential recovery at trial. Securities class actions are inherently complex, time consuming, and expensive, which is magnified when such cases proceed through trial. The Settlement avoids these expenditures and provides an immediate recovery for the Class. Therefore, this factor favors the Settlement.

42.    Finally, the lack of opposition to the Settlement also supports final approval of the Settlement. As outlined below, notice has already been widely disseminated to potential Class Members. The lack of any objections to the Settlement or opt outs to the Class to date weigh in favor of the Settlement. Any objections and requests to opt out will be presented with Plaintiff's reply papers.

43.     In light of the significant risks of establishing liability and damages, Lead Counsel and Plaintiff respectfully submit that the Settlement represents a very favorable result for the Class. It provides Class Members with a very substantial benefit now, where there is a significant likelihood of less recovery or no recovery at all following trial.

**D.  The Plan of Allocation Is Fair and Should Be Approved**

44.     The Plan of Allocation is set forth in the Notice (*see* Wilmot Decl., ECF 148) and provides that the Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proofs of Claim that show a "Recognized Claim" according to the Court-approved Plan of Allocation. Given the costs of distributing payments, the Net Settlement Fund will be allocated among all Authorized Claimants whose distribution amount is $10.00 or greater.

45.     The Plan of Allocation proposed by Plaintiff, which was prepared with the assistance of Plaintiff's damages consultant, is designed to achieve an equitable and rational distribution of the Net Settlement Fund to eligible claimants and is consistent with Plaintiff's damages theories. Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.

46.     Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Proof of Claim and all required information no later than March 11, 2025. ECF 150, ¶19. Claims may be submitted to the Claims Administrator through the mail or submitted online using the case website. As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Expenses, applicable taxes, and any other fees or expenses approved by the Court, the Net Settlement Fund will be distributed according to the Court-approved Plan of Allocation.

47.     The Net Settlement Fund will be distributed to Authorized Claimants on a pro rata basis, based on the relative size of their Recognized Claims. A distribution amount will be calculated for each Authorized Claimant. The Plan of Allocation considers the amount of alleged artificial inflation in the per share price of Sequential securities, as estimated by Plaintiff's damages consultant. The calculations take into account several factors, including price changes in Sequential securities in reaction to public disclosures that allegedly corrected the respective alleged misrepresentations and omissions, adjusting the price change for factors that were attributable to market or industry forces, and for non-fraud related Company-specific information.

48.     After the Effective Date of the Settlement, in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund will be distributed to Authorized Claimants whose distribution amount is $10.00 or more. After the distribution, if there is any balance remaining in the Net Settlement Fund after a reasonable amount of time from the date of the initial distribution, and after payment of any outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, Lead Counsel will, if feasible, reallocate the balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any de minimis balance that still remains after re-distribution(s) and after payment of any outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, will be donated to the New York Bar Foundation, or a non-profit and non-sectarian organization chosen by the Court.

49.     To date, there have been no objections to the Plan of Allocation. The Plan of Allocation is fair and reasonable, and should be approved.

## IV.    LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

### A.  The Requested Fees Are Fair and Reasonable

50.    Lead Counsel respectfully requests that the Court award attorneys' fees of 25% of the Settlement Amount. Lead Counsel believes that such a fee is reasonable and appropriate given the competence and skill with which FNF litigated this matter, the resources FNF expended in prosecuting the case, the inherent risk of nonpayment from representing the Class on a contingent basis, and the aggregate monetary benefit conferred on the Class in a challenging case. Lead Counsel further requests payment of $38,927.19 in litigation expenses. The legal authorities supporting the requested fees and expenses are set forth in the accompanying memorandum of law.

### 1.   The Results

51.    The fact that Lead Counsel was able to obtain such a substantial result for the Class supports the requested fee. The $9,750,000 cash Settlement represents approximately 34.7% of the estimated recoverable damages, based on a single-trader model, for the three corrective disclosures alleged in the Complaint. The Settlement is more than 19 times the size of the median percentage recovery for securities class actions settled in 2023. *See* Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review, at 26, Fig. 22 ("Since 2021, the median ratio of settlement amount to Investor Losses has remained stable at 1.8%.").

52.    Lead Counsel was able to obtain such a substantial result because they were fully ready and willing to take this Action to trial and/or appeal. While law firms which specialize in class actions generally, or securities fraud specifically, may have considered the estimated recoverable damages in this case to be too small to try to a jury, or to appeal, FNF is a relatively young firm with a business model which does not rely on contingency cases to cover its overhead. FNF thus has the ability to move forward with appeals and towards trial on contingency cases

which it believes have merit. *See, e.g., Pappas v. Qutoutiao Inc.*, No. 23-1233, 2024 WL 4588491 (2d Cir. Oct. 28, 2024).

### 2. The Risk and Complexity Inherent in the Litigation

53.     As detailed above, the Action involved challenging issues of law and fact against a bankrupt company, making discovery in this case even more complex than in the typical Exchange Act action. The Litigation was highly complex both procedurally and substantively, and rendered the path to resolution time-consuming, difficult, and fraught with risk. Lead Counsel vigorously prosecuted the Class's claims for over three years against five of New York's top defense firms.

54.     FNF's representation of the Class in this Action required considerable investigation before moving for lead plaintiff, as well as substantial work during the Action, including: (i) analyzing a massive amount of information, including over four years of Sequential SEC filings, conference call transcripts, analyst reports, and other publicly available materials, and thoroughly researching the law pertinent to the claims and defenses asserted; (ii) condensing that information to draft the Complaint; (iii) opposing Defendants' five motions to dismiss; (iv) consulting with external experts on accounting, auditing, loss causation, and damages; (v) drafting its mediation statement and preparing exhibits; (vi) answering questions from the mediator in preparation for and during the full-day mediation session and participating in subsequent negotiations with the Individual Defendants; and (vii) preparing for and participating in lengthy negotiations with the Auditor Defendants.

55.     An example of a challenging legal issue was Defendants' argument that the statute of repose applied to bar Plaintiff's claims based on alleged misstatements or omissions before November 14, 2017. Plaintiff argued that those claims were timely because those misstatements and omissions were (1) pled in the initial complaint in this Action and (2) part of the alleged scheme which was not fully revealed until the last corrective disclosure. While Defendants' argument

relied on this Court's opinion in *Abu Dhabi Inv. Auth. v. Mylan N.V.*, 2021 WL 516310 (S.D.N.Y. Feb. 10, 2021) which rejected the argument that the statute of repose runs from the last violation, Plaintiff's argument relied on the Supreme Court's expansion and alteration of the scope of scheme liability in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019). Because this Court has not yet considered how the statute of repose applies in scheme liability cases, either party could have lost and would have appealed the issue.

56.    Given the multiple complex factual and legal issues presented during the Litigation and the substantial risks that were overcome to achieve the excellent result for the Class, Lead Counsel submits that the 25% fee is fair, reasonable, and should be approved.

3.    <u>The Contingent Nature of the Representation and the Financial Burden Carried by Lead Counsel</u>

57.    Lead Counsel prosecuted this Litigation on an "at-risk" contingent-fee basis. At the outset in 2021, Lead Counsel knew it was embarking on complex and expensive litigation with no guarantee of compensation for the time, money, and effort it poured into this case over its multi-year lifespan. Accordingly, Lead Counsel fully assumed the risk of an unsuccessful result and to date has received no compensation for services rendered or the significant expenses incurred in litigating this Action. Had this case not settled, Lead Counsel was prepared to litigate this case through the rest of motion to dismiss, fact discovery, expert discovery, class certification, summary judgment, trial, and appeal.

58.    In undertaking the responsibility for prosecuting the Litigation, Lead Counsel assured that sufficient attorney resources were dedicated to advancing Plaintiff's and the Class's claims over the years, and that sufficient funds were available to advance the expenses required to zealously pursue the best possible result for the Class. Lead Counsel received no compensation, while at the same time incurring over $1.4 million in lodestar and over $38,000.00 in litigation

expenses and charges in prosecuting this Litigation for the benefit of the Class.

59.    Lead Counsel also shouldered the risk that no recovery would be achieved. Lead Counsel knows from experience that success in contingent-fee litigation is never assured, and that the commencement of a class action in no way guarantees a recovery. Instead, it takes diligence, commitment, and years of tireless work by skilled counsel to secure a recovery for the Class.

60.    Courts have repeatedly found that having experienced and able counsel enforce the securities laws promotes the public interest. Vigorous private enforcement of the federal securities laws can only occur if private plaintiffs – particularly institutional investors like Plaintiff – can obtain some parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the substantial risks inherent in prosecuting securities class actions on a contingent-fee basis. That is particularly true where, as here, the fee requested is based upon a percentage of the recovery after discussion with and approval by the Plaintiff, *see* CJD Decl., ¶8, and is similar to other requests approved by judges in this District, as set forth in the accompanying memorandum.

4.    The Standing and Expertise of Lead Counsel and Quality of Representation

61.    The Settlement represents a substantial recovery for the Class – one that is attributable to the diligence, determination, hard work, and reputation of Lead Counsel. As illustrated by Lead Counsel's firm biography, attached as Exhibit E to the FNF Declaration, Lead Counsel is experienced and skilled in securities and other complex and class action litigation.

62.    The quality of work Lead Counsel provided in attaining the Settlement should also be evaluated in light of the quality of opposing counsel in this Litigation. Defendants were well-represented by experienced lawyers from Gibson, Dunn & Crutcher LLP, Hogan Lovells US LLP, Proskauer Rose LLP, Cyrulnik Fattaruso LLP, and Allen Overy Shearman Sterling U.S. LLP –

most of which are prominent international defense firms. Defense counsel has a reputation for successfully defending complex securities cases such as this. The ability of Lead Counsel to obtain a favorable settlement for the Class in the face of such formidable opposition confirms the excellence of Lead Counsel's representation.

### B. Application for Litigation Expenses and Charges

63.    FNF seeks an award of $38,927.19 in expenses and charges in connection with the prosecution of the Action.

64.    FNF submits that the expenses are reasonable and were necessary for the successful prosecution of this Action. Lead Counsel was aware that it may not recover any of these expenses unless and until this Action was successfully resolved. Lead Counsel also understood that, even assuming the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds it had dedicated to this Litigation. Accordingly, FNF took steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of Plaintiff's claims.

65.    FNF's expenses reflect routine and typical expenditures incurred in the course of litigation, such as the costs of travel, online legal and factual research fees, fees for consultants, mediation fees, and filing fees. Lead Counsel believes these expenses are reasonable and were necessary for the successful prosecution of the Action.

## V. PLAINTIFF'S APPLICATION FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) BASED ON REPRESENTATION OF THE CLASS

66.    The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of

reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

67.    Here, as explained in the CJD Declaration, Plaintiff is seeking an award of $3,000.00 for its time related to its active participation in the Action. *See* CJD Decl., ¶9.

68.    Many courts, including those in this Circuit, have approved reasonable payments to compensate plaintiffs for the time and effort they devoted to pursuing claims on behalf of a class. Plaintiff here dedicated time and effort to interfacing with counsel, monitoring the investigation, reviewing documents before and after filing (as necessary), supervising the mediation process and negotiations, reviewing updates and factual developments, and otherwise assisting counsel, as asked. Simply put, without its involvement in this Action and its contributions to date, there would be no recovery for the Class. As such, Lead Counsel respectfully submits that the Court should grant Plaintiff's requested award in its entirety.

## VI.    CONCLUSION

69.    For the reasons set forth above and in the accompanying memorandum of law, I respectfully submit that: (i) the Settlement is fair, reasonable and adequate, and should be finally approved; (ii) the Plan of Allocation represents a fair method for the distribution of the Net Settlement Fund among Authorized Claimants and should also be approved; and (iii) the application for an award of attorneys' fees of 25% of the Settlement Amount and expenses of $38,927.19, with interest thereon earned at the same rate as the Settlement Fund, plus an award of $3,000.00 in the aggregate to Plaintiff, should be granted in its entirety.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 21, 2025 in Denver, Colorado.

*/s Ivy T. Ngo*
Ivy T. Ngo, Esq.